B. David Mehmet
130 Church Street
New York, NY 10007
Tele: (212) 920-7602
Fax: (212) 387-9387
Email: David@AppellateTerm.com

Plaintiff

**FILED**

ADR

14 P 3: 10

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

Fee Paid
$1



# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | | |
|---|---|---|
| B. David Mehmet, | ) | **C08 01961** RS |
| Plaintiff, | ) | |
| | ) | Case No. _____ |
| vs. | ) | |
| | ) | COMPLAINT |
| Paypal, Inc. | ) | **DEMAND FOR JURY TRIAL** |
| Defendant. | ) | |
| | ) | |

1.   **Original Jurisdiction**.   This court has original jurisdiction over this complaint pursuant 28 U.S.C. 1332 as the amount in dispute exceeds SEVENTY FIVE THOUSAND DOLLARS ($75,000.00) and the defendant holds residence in California while the Plaintiff holds residence in New York.

2.   **Venue**.   Venue is appropriate in this court pursuant to 28 U.S.C. 1391 because the defendant resides within the County of San Jose, California.

3.    **Intradistrict Assignment.** This lawsuit should be assigned to the San Jose Division of this Court because the parties agreed to this Division within their contract.

## FACTS

**Defendant Blocked Plaintiff's Account and Froze his Funds without GOOD CAUSE**

4.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 4 with the same force and effect as if more fully set forth herein.

5.    That the Defendant operates an Internet based website at www.Paypal.com that transfers money from one person to another person over the Internet (Hereinafter "money transfer service").

6.    That the Plaintiff used the Defendant's money transfer service to send SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) to Eric Anderson.

7.    That the Defendant obtained the SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) by electronically withdrawing funds from the Plaintiff's bank account at Wachovia bank on or about July 25, 2007 by utilizing the Plaintiff's debit card, which had the following four last digits …9024.

7.    That the Defendant blocked the Plaintiff's account after he paid Eric Anderson SEVEN HUNDRED AND FIFTY DOLLARS ($750.00).

8.    That the Defendant blocked the account of Eric Anderson after the Plaintiff paid Eric Anderson SEVEN HUNDRED AND FIFTY DOLLARS ($750.00).

9.    That the Defendant blocked the account of Eric Anderson after Eric Anderson transferred the SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) to his bank account.

10.    That the Defendant deducted an additional SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) from Eric Anderson's account located at www.Paypal.com after Eric Anderson transferred SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) to his bank account.

11.    That the Defendant demanded that Eric Anderson repay the SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) he transferred into his bank account.

### Defendant Falsely Accused the Plaintiff of Fraud

12.    That on August 6, 2007, the Defendant sent Eric Anderson an email that stated quote: **"We received notification that the funds in question used for this transaction were possibly fraudulent. We did an investigation and it was determined that the funds, indeed, were fraudulent. As such, we had to return the funds to the party that had them taken from them without their authorization."**

13.    That the Defendant's email dated August 6, 2007 to Eric Anderson noted in paragraph 12 above was referring to the SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) the Plaintiff paid to Eric Anderson through the Defendant's money transfer service.

14.    That the Defendant's email dated August 6, 2007 noted in paragraph 12 above was referring to the SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) the Defendant electronically withdrew from the Plaintiff's bank account at Wachovia bank.

15.    That contrary to the Defendant's statement in its August 6, 2007 email to Eric Anderson that it conducted an "investigation", the Defendant DID NOT conduct an investigation on the SEVEN HUNDRED AND FIFTY DOLLAR ($750.00) payment to Eric Anderson prior to sending Eric Anderson that email.

16.     That contrary to the Defendant's statement in its August 6, 2007 email to Eric Anderson that the Plaintiff's SEVEN HUNDRED AND FIFTY DOLLAR ($750.00) payment to Eric Anderson was "fraudulent", it was not.

17.     That contrary to the Defendant's statement in its August 6, 2007 email to Eric Anderson that it had to return the Plaintiff's SEVEN HUNDRED AND FIFTY DOLLAR ($750.00) **"to the party that had them taken from them without their authorization"**, there was no other party that had SEVEN HUNDRED AND FIFTY DOLLAR ($750.00) taken from them by the Plaintiff.

18.     That on or about July 25, 2007, the Defendant withheld a total of ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00) from the Plaintiff.

19.     That the SEVEN HUNDRED AND FIFTY DOLLAR ($750.00) payment to Eric Anderson was part of the ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00) being withheld by the Defendant on or about July 25, 2007.

20.     That on or about July 25, 2007, the Plaintiff demanded the Defendant return the ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00) to him and the Defendant refused.

21.     That the Defendant did return the ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00) after the Plaintiff filed a lawsuit against it in New York on August 1, 2007.

22.     That the Defendant DID NOT pay the Plaintiff the interest earned on his ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00) that was deposited into the Defendant's pooled account.

23.     That in returning the Plaintiff's ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00), the Defendant admitted that the SEVEN HUNDRED AND FIFTY DOLLAR ($750.00) payment to Eric Anderson was a lawful transaction.

24.    That in returning the Plaintiff's ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00), the Defendant admitted that it had no knowledge that there was another "party" that had SEVEN HUNDRED AND FIFTY DOLLAR ($750.00) taken from them by the Plaintiff.

25.    That in returning the Plaintiff's ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00), the Defendant admitted that the August 6, 2007 email sent to Eric Anderson contained false statements.

26.    That the Defendant defamed the Plaintiff in its August 6, 2007 email to Eric Anderson.

27.    That Eric Anderson uploaded a copy of a contact between the Plaintiff and himself to the Defendant's website at www.Paypal.com prior to the Defendant returning the SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) to the Plaintiff.

28.    That due to the Defendant's false statements to Eric Anderson within its August 6, 2007 email, Eric Anderson terminated a contract with the Plaintiff and demanded that the Plaintiff pay him the total amount of EIGHTEEN THOUSAND FIVE HUNDRED AND THIRTY EIGHT DOLLARS ($18,538.00) for his services, which was SEVENTEEN THOUSAND AND THIRTY EIGHT DOLLARS ($17,038.00) above and beyond the contract terms, which the Plaintiff could not afford.

29.    That due to Eric Anderson terminating his contract with the Plaintiff, the Plaintiff lost another contract with **Carmike Cinemas, Inc**. who were going to exhibit a film in 600-1,000 movie screens across the United States, which film was to be produced by the Plaintiff. Thus, the Plaintiff has lost future income estimated in the hundreds of thousands of dollars from the inability to exhibit his film.

## Defendant Concealed a Vital Material Fact

30.    That the Plaintiff agreed to the Defendant's user agreement prior to August 1, 2007.

31.    That the Defendant did represent to the Plaintiff within its contract that it would not interfere with the Plaintiff's money transfers via its website located at www.Paypal.com without good cause.

32.    That the Defendant did represent to the Plaintiff within paragraph ten (10) of its contract that it would not interfere with the Plaintiff's money transfers via its website located at www.Paypal.com unless the Plaintiff violated paragraph nine (9) of the contract entitled "Restrictive Activities".

33.    That the Plaintiff was not in violation of the Defendant's contract when the Defendant blocked his account. Specifically, the Plaintiff did not committed fraud as the Defendant claimed in its August 6, 2007 email to Eric Anderson.

34.    That the Defendant did not place the Plaintiff on notice of any violation prior to blocking his account and withholding ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00) of Plaintiff's money.

35.    That the Defendant had knowingly and intentionally concealed vital **material facts** from the Plaintiff concerning false positives produced by its anti-fraud detection software when the Plaintiff entered into contract with the Defendant.

36.    That Plaintiff's ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00) was withheld by the Plaintiff because its anti-fraud detection software produced a false positive.

37.    That the Defendant's anti-fraud detection software produced a false positive because Eric Anderson transferred Plaintiff's SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) out of the Defendant's pooled bank account and into his own bank account soon after the Plaintiff made the payment.

38.    That the Defendant has inserted filters in its anti-fraud detection software that blocks its member's accounts when there is an immediate transfer of monies from its pooled bank accounts to another bank account that is not controlled by the Defendant after a transaction between its members has concluded.

39.    That in justifying its actions in blocking member's accounts, the Defendant emails its members messages containing false reasons why their accounts are being blocked.

40.    That many of the emails the Defendant sends to its members contains defamatory and inflammatory wording that causes members to rise against each other and motivates the increase of complaints and requests for refunds, which in turn allows the Defendant to freeze member's funds for up to six months while collecting interest on the funds.

41.    That in the worst case, the Defendant's defamatory and inflammatory emails caused a number of members to turn against each other that ended in two people being falsely arrested and charged with Felony Internet Fraud. Sara Holland, a single mother of three and a volunteer firefighter, was falsely arrested due the Defendant's email accusing her of fraud, which is a similar false accusation found in the Defendant's August 6, 2007 email to Eric Anderson. Matt Miller, who works for homeland security, was also arrested when one of his clients filed a criminal complaint against him after receiving Defendant's defamatory and inflammatory email that also accused him of fraud.

42.    That on July 31, 2007, after the Plaintiff's account with the Defendant was blocked and his funds withheld; but before the New York lawsuit was filed, the Plaintiff called the

Defendant's customer service department and spoke to an employee of the Defendant named "Rene". The Defendant's customer service representative informed the Plaintiff that his account was blocked by their anti-fraud detection software and that there was a limited amount of employees who review blocked accounts to identify false positives, which would result in the release of the Plaintiff's account. The Defendant's customer service representative then informed the Plaintiff that his account was blocked due to an old account, which had a debit of SIX HUNDRED AND NINTY FIVE DOLLARS ($695.00). This explanation was not only devoid of any proof of such debt; but contradicted the Defendant's statements to Eric Anderson in its email dated August 6, 2007 that stated the Plaintiff had defrauded someone.

43.   That due to the inability of the Defendant's anti-fraud detection Software to determine whether the Plaintiff's payment to Eric Anderson was legal or illegal, it created a false positive, which severely damaged the Plaintiff.

44.   That the Defendant had failed to inform the Plaintiff of the existence of false positives and the danger associated with them. Instead, the Defendant intentionally concealed this vital material fact from the Plaintiff to induce him to enter into contract with it and to use its money transfer service without restrain.

45.   That if the Defendant disclosed the fact about false positives, the Plaintiff would have never used the Defendant's money transfer service to pay Eric Anderson. Nor would the Plaintiff have allowed the Defendant to withdraw ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00) from his Wachoiva bank account.

46.   That the Defendant has joined teams with its controlling company, eBay, and together they have made it mandatory to use the Defendant's money transfer service on eBay. In addition, many other Internet services only use the Defendant's money transfer services with no alternative method of paying, which forces a person to use the Defendant's money transfer

services. However, with the knowledge of false positives, a person has the control to protect themselves from great financial loss by not risking large amounts of money with the Defendant.

**Defendant's Continued Misconduct against Consumers**

47.    That the Defendant has a history of bad conduct in harming consumers and having a disregard for the law to further its own profit agenda over the well-being of California consumers and all consumers Worldwide.

48.    That the Defendant was sued in 2002 under caption ***Comb, et al vs. Paypal, Inc***. **docket 02-1227** within The United States District Court for the Northern District of California. The complaint alleged that because the Defendant "**exceeded its operational capacity**" it was "**unable to maintain and manage accounts in a manner required by applicable state and federal legislation**." And the Defendant refused "**to provide details or explanations with respect to its investigations**" of frozen accounts. In addition, the Complaint alleged that when consumers where able to contact the Defendant's **"representatives, the representatives are combative and rude, refuse to answer specific questions, hang up in the middle of phone calls, provide "canned" responses to individualized problems, require customers to fax information while providing inoperative fax numbers, and refuse to allow customers to speak to managers."** Judge Fogel, who presided over this lawsuit, issued a ruling that stated "**the Court concludes that the User Agreement and arbitration clause are substantively unconscionable**"

49.    That again, in 2004, the Defendant was sued this time by New York State's Attorney General, Eliot Spitzer, who alleged that the Defendant's User Agreement "**misrepresented certain terms and conditions to its members, which included statements that it provided its**

members "**the rights and privileges expected of a credit card transaction. In fact, members were often denied these rights by the Defendant**."

50.    That yet again, in 2005, the Defendant was sued in a class action lawsuit by 28 Attorney generals from Alabama, Arizona, California, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Minnesota, Mississippi, Nebraska, Nevada, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Vermont, Washington and West Virginia. The 28 Attorney Generals accused the Defendant of "**hidden fees, misrepresentations, as well as problems with account settings dealing with source of funding that resulted in monies being withdrawn from Defendant Paypal's members' bank account although other payment sources were preferred.**"

51.    That yet again, the Defendant was sued in a class action lawsuit in 2005 within the United States District Court Eastern District of New York under caption *__Mike Steele, et al vs. Paypal and Essex Technology Group, Inc__*. docket 05-01720 based on allegations of "**deceptive trade practices, fraudulent inducement, misrepresentation and breach of contract.**"

52    That although the Defendant has been sued multiple times in addition to the above lawsuits, the Defendant continues to engage in bad conduct against its consumers in an effort to increase its flow of profits. The Defendant has taken the stance that these lawsuits against it are just a **part of doing business**, and the Defendant resolved each of the lawsuits out of court to then only continue its bad conduct. For example, as shocking and unbelievable as it may sound, the Defendant's concealment of false positives and the danger associated with them, caused Matt Miller in 2004 and Sarah Holland in 2007 to be falsely arrested and charged with felony internet fraud.

53.    That Sarah Holland is a single mother of three and was a firefighter until she lost her job due to the Defendant's false positives. Matt Miller is a firefighter in the next town from Ms. Holland and also works for Homeland Security. Due to the false positives that sent out computer generated emails to Ms. Holland's and Mr. Miller's police officer clients containing the words "suspicion of fraud", "suspicious activities" and "fraud", their police officer clients had them arrested and charged with Felony Internet Fraud.

## FIRST CAUSE OF ACTION
(Fraudulent Misrepresentation)

54.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 53 with the same force and effect as if more fully set forth herein.

55.    That the Defendant made representations to the Plaintiff within its contract that if the Plaintiff utilized its services to make payments to third-parties, the Defendant would forward the funds to such third-parties and would not wrongly interfere with such payments unless the Plaintiff violated paragraph 9 of the contract entitled "**Restricted Activities**".

56.    That the Defendant intended the Plaintiff to have reliance on its representation within its contract when the Plaintiff agreed to its terms.

57.    That in reliance of Defendant's representations, the Plaintiff utilized the Defendant's service to send funds to third-parties.

58.    That contrary to Defendant's assurance that it would not wrongly interfere with Plaintiff's fund transfers, the Defendant on or about July 25, 2007 did wrongly withhold Plaintiff's funds and had wrongly refused to release the funds to the Plaintiff after the Plaintiff requested that the Defendant release his funds.

59.    That the Plaintiff did not violate the Defendant's contract nor did the Plaintiff commit fraud.

60.    That the Defendant had no intentions of honoring its representations to the Plaintiff.

61.    That the Defendant represented to the Plaintiff that if he provided additional verification, the Defendant would release his funds.

62.    That the Plaintiff, having reliance on the Defendant's statements, provided the additional verification requested by the Defendant.

63.    That once again, the Defendant had no intentions of honoring its representations to the Plaintiff.

64.    That after the Plaintiff provided the Defendant with the requested verification; the Defendant did fail to release the Plaintiff's funds and had continued to refuse to release such funds to the Plaintiff.

65.    That once the Plaintiff filed this action against the Defendant, the Defendant deposited the Plaintiff's funds into his bank account at Wachovia Bank via the Plaintiff's debit card ending in ...9024.

66.    That the Defendant has wrongly converted the interest earned from the Plaintiffs money within the Defendant's pooled account to its own use.

67.    That at the time the Defendant had entered into contract with the Plaintiff, it had knowledge that it's anti-fraud detection software could create a false positive against the Plaintiff and interfere with Plaintiff's fund transfers; but the Defendant intentionally and maliciously failed to disclose this fact to the Plaintiff to induce him to enter into contract with it.

68.    That the Defendant's anti-fraud detection software did create a false positive and did interfere with Plaintiffs funds by blocking Plaintiff's account and freezing his funds with the Defendant and refusing to forward the funds to his business associate.

69.   That due to the Defendant's fraud, the Plaintiff has suffered economic and emotional damages.

70.   By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).


## SECOND CAUSE OF ACTION
(Fraudulent Concealment)

71.   That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 70 with the same force and effect as if more fully set forth herein.

72.   That the Defendant did represent to the Plaintiff within its contract that it would not interfere with the Plaintiff's fund transfers without good cause.

73.   That the Defendant had knowledge of the falsity of its representations within its contract that it would not interfere with the Plaintiff's fund transfers without good cause.

74.   That the Defendant did intentionally and maliciously conceal material facts concerning false positives from the Plaintiff, which could have and did interfere with the Plaintiff's fund transfers without good cause.

75.   That the Plaintiff had reliance on the Defendant's representations due to its well-known and dominant position within the market.

76.   That due to the Defendant's concealment of false positives, the Plaintiff was severely harmed.

77.   By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

## THIRD CAUSE OF ACTION
(Fraudulent Inducement)

78.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 77 with the same force and effect as if more fully set forth herein.

79.    That the Defendant did represent to the Plaintiff within its contract that it would not interfere with the Plaintiff's fund transfers without good cause.

80.    That the Defendant had knowledge of the falsity of its representations within its contract that it would not interfere with the Plaintiff's fund transfers without good cause.

81.    That the Defendant did intentionally and maliciously conceal material facts concerning false positives from the Plaintiff for the purpose of inducing the Plaintiff to enter into contract with it.

82.    That the Plaintiff had reliance on the Defendant's representations due to its well-known and dominant position within the market.

83.    That due to the Defendant's concealment of false positives, the Plaintiff was severely harmed.

84.    By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

## FOURTH CAUSE OF ACTION
(Negligent Misrepresentation)

85.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 84 with the same force and effect as if more fully set forth herein.

86.    That the Defendant had a duty to disclose the fact about the false positives and the dangers associated with them to the Plaintiff prior to him entering into contract with the Defendant.

87.    That the Defendant made a false representation within its contract pertaining to its interference with the Plaintiff's fund transfers that it should have known was incorrect because the dangers associated with false positives could have and did cause the Plaintiff's account with the Defendant to be blocked without good cause, his funds frozen and a computer generated email was sent to the Plaintiff's business associate claiming he was under investigation for fraud, which was followed by a second email to the Plaintiff's business associate claiming that the Plaintiff did "in deed" commit fraud.

88.    That the Defendant had knowledge that the representations made within its contract would be relied on by the Plaintiff in deciding to enter into contract with it.

89.    That the Plaintiff did have reliance on the representations made in the Defendant's contract, which caused him to enter into contract with the Defendant.

90.    That due to the Plaintiff's reliance on the Defendant's false representation within its contract, the Plaintiff was prevented from taking steps to protect himself and was eventually harmed.

91.    By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

### FIFTH CAUSE OF ACTION
(Defamation)

92.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 91 with the same force and effect as if more fully set forth herein.

93.    That the Defendant made intentional and malicious false statements to Eric Anderson that the Plaintiff defrauded someone.

94.    That the Defendant made intentional and malicious false statements to Eric Anderson that the Plaintiff defrauded someone for the purpose of creating good cause for blocking Plaintiff's account and freezing his funds.

95.    That the Defendant knew at the time it made such statements to Eric Anderson that those statements were false.

96.    That the Defendant did, with intent and malice, make false statements to Eric Anderson with full knowledge that the Plaintiff would be defamed and his reputation would be damaged.

97.    That the Defendant did make false statements to Eric Anderson with reckless disregard as to the truth of the statements and whether the statements defamed the Plaintiff.

98.    That Eric Anderson did have reliance on the Defendant's statements due to its well-known and dominant position within the market.

99.    That due to the Defendant's false statements to Eric Anderson, the Plaintiff was severely harmed when he lost the benefits of a contract with Eric Anderson valued at SEVENTEEN THOUSAND AND THIRTY EIGHT DOLLARS ($17,038.00), which also caused him to lose a second and more valuable contract with Carmike Cinemas, Inc.

100.    By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

## SIXTH CAUSE OF ACTION
(Defamation Per Se)

101.   That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 100 with the same force and effect as if more fully set forth herein.

102.   That the Defendant made intentional, malicious and defamatory statements against the Plaintiff to Eric Anderson that the Plaintiff defrauded someone.

103.   That the Defendant knew, at the time it made the statements to Eric Anderson, they were false.

104.   That the Defendant did, with intent, make such false statements to Eric Anderson in its attempt to create good cause for blocking Plaintiff's account and freezing his funds.

105.   That  the Defendant did act negligently in failing to learn whether the statements made to Eric Anderson were false and defamed the Plaintiff prior to making such statements.

106.   That due to the Defendant's false statements to Eric Anderson, the Plaintiff was severely harmed when he lost the benefits of a contract with Eric Anderson valued at SEVENTEEN THOUSAND AND THIRTY EIGHT DOLLARS ($17,038.00), which also caused him to lose a second and more valuable contract with Carmike Cinemas, Inc.

107.   By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

## SEVENTH CAUSE OF ACTION
(Conversion)

108.   That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 107 with the same force and effect as if more fully set forth herein.

109.   That the Defendant did wrongly gain possession of Plaintiff's funds.

110.  That the Defendant did wrongly refuse to forward Plaintiff's funds to Plaintiff's business associate.

111.  That the Defendant did wrongly refuse to return Plaintiff's funds after Plaintiff requested such funds from the Defendant.

112.  That the Defendant Paypal did wrongly convert Plaintiff's interest to its own use.

113.  By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).


## EIGHT CAUSE OF ACTION
### (Tortious Interference with Business Relationship)

114.  That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 113 with the same force and effect as if more fully set forth herein.

115.  That the Plaintiff did have an economic relationship with his business associate giving him a benefit valued at SEVENTEEN THOUSAND AND THIRTY EIGHT DOLLARS ($17,038.00).

116.  That the Defendant did have knowledge of the economic relationship between the Plaintiff and his business associate.

117.  That the Defendant did with intent and malice interfere with Plaintiff's business relationship with his business associate.

118.  That the Defendant did with reckless disregard interfere with Plaintiff's business relationship with his business associate.

119.  That due to the Defendant's interference, the Plaintiff's business relationship with his business associate was terminated.

120.    That due to the Defendant's interference with the Plaintiff's business relationship with his business associate, the Plaintiff was severely harmed when he lost the benefits of a contract with his business associate valued at SEVENTEEN THOUSAND AND THIRTY EIGHT DOLLARS ($17,038.00), which also caused him to lose a second and more valuable contract with Carmike Cinemas, Inc.

121.    By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

### NINTH CAUSE OF ACTION
(Violation of Cal. Bus. Prof. Code §§ 17200
Unlawful, Unfair and Fraudulent Business Practices)

122.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 121 with the same force and effect as if more fully set forth herein

123.    That the Defendant's false representations within its contract pertaining to its interference of Plaintiff's fund transfers and its concealment of a material fact concerning false positives, which were meant to induce the Plaintiff to enter into contract with it constitutes a deceptive trade practice under .

124.    That California's Consumer Protection Act creates a private right to take legal action by any person who has been harmed from the Defendant's violation of  Cal. Bus. Prof. Code 17200.

125.    That the Defendant's false representations within its contract and the concealment of false positives has deceived the Plaintiff and millions of other consumers who have been injured by the Defendant's deceptive practices. Furthermore, the Defendant is continuing to deceive millions of other consumers to induce them to enter into contract with it.

134.  By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

**Wherefore**, I demand a jury trial and pry for judgment against the Defendant as follows:

1)  Liability against the Defendant, and

2)  Rescind the defendant's contract, and

4)  Enjoin the defendant from further withholding Plaintiff's interest, and

5)  Enjoin the defendant from further concealing false positives and the dangers associated with them from all consumers, and

6)  Enjoin the defendant from using any damaging words  such as "suspicion of fraud", "suspicious activities" or "fraud" within any consumer email prior to an investigation being concluded, and

7)  Compensatory damages in the amount of TEN MILLIONS DOLLARS ($10,000,000.00), and

8)  Treble damages against the defendant, and

9)  Punitive damages against the Defendant in the amount of ONE HUNDRED MILLION DOLLARS ($100,000,000.00), and

10)  Costs and for such other and further relief as this Court deems just and proper.

Dated; New York, NY
      April 3, 2008

B. David Mehmet
Plaintiff
130 Church Street, Ste 251
New York, NY  10007
Tel: (212) 920-7602
Fax: (212) 387-9387
Email: David@AppellateTerm.com

To: Paypal, Inc.
2030 Main Street, Ste 1030
Irvine, CA  92614