FILED

UNITED STATES DISTRICT COURT 2008 MAY 27 P 2: 57

NORTHERN DISTRICT OF CALIFORNIA RICHARD W. WIEKING
CLERK
SAN JOSE DIVISION U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

| | | |
|---|---|---|
| B. David Mehmet, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:08-cv-01961 (RMW) |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Paypal, Inc. | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITY IN OPPOSTION TO DEFENDANT'S MOTION AND IN SUPPORT OF THE CROSS-MOTION

B. David Mehmet
Plaintiff Pro Se
130 Church Street
New York, NY 10007
Tele: (212) 920-7602
Fax: (212) 387-9387
Email: David@AppellateTerm.com

# CONTENT

**PRELIMINARY STATEMENT**................................................................................. 7

**STATEMENT OF FACTS** ...................................................................................... 7

**ARGUMENT** ..................................................................................................... 10

**I.   SUBJECT MATTER JURISDICTION** ........................................................ 10

      A. Amount in Controversy ...................................................................11
      B. Compensatory Damages (General and Special) ...............................11
      C. Treble Damages ............................................................................12
      D. Punitive Damages ........................................................................ 13
      E. 18 U.S.C. §§ 1962 (RICO) .......................................................... 16

**II. PARTIAL SUMMARY JUDGMENT** ............................................................ 19

      A. Liability on Defamation ..................................................................19
      B. Liability on Defamation Per Se .......................................................20

**CONCLUSION** ................................................................................................21

# CASE LAW

_Antonovich v. Sup. Ct_. 234 Cal.App.3d 1041, 1048-1049 (1991) ................................15

_Barnes-Hind vs. Superior Court_,
181 Cal. App. 3d 377, 382, 226 Cal. Rptr. 354 (1986) .............................................14,20

_BMW of North America, Inc. v. Gore_,
517 U.S. 559 (1996) ...............................................................................................15

_Burnett v. Nat. Enquirer, Inc._ 144 Cal.App.3d 991, 1009 (1983) ................................. 15

_Church of Scientology of California vs. Flynn_,
77 F2d 694, 697 (9th Cir. 1984) ............................................................................... 19

_Colonial Life & Accident Ins. Co. v. Superior Court_
31 Cal.3d 785, 792; 183 Cal.Rptr. 810, 647 P.2d 86 (1982) ........................................ 13

_Contento v. Mitchell_
28 Cal.App.3d 356, 358(1972) ................................................................................. 20

_Contreras vs. Metro Life Ins. Co._
2007 U.S. Dist. Lexis 9025 .......................................................................................11

_Fashion 21 vs. Coalition for Humane Immigrant Rights of Los Angeles_
117 Cal. App. 4th 1138, 1145 fn 7, 12 Cal. Rptr 3d 493 (Cal. Ct App. 2004) ...................20

_Gail Crum v. Circus Circus Enterprises; Circus Circus Casinos, Inc.;_
_Circus Circus Hotel Casino_, 231 F.3d 1129 (9th Cir. 2000) ........................................ 21

_Gilbrook v. City of Westminster_,
177 F.3d 839 (9th Cir. 1999) ................................................................................... 19

_Karam v. City of Birbank_,
352 F.3d 1188, 1192 (9th Cir. 2003) ....................................................................... 10

_Kevin Moda, AKA Houman Moghaddam vs. Priceline.com, Inc._
2006 U.S. App. LEXIS 28642 (9th Cir, 2006) ............................................................ 14

_Haroco vs. Am. Nat'l Bank & Trust Co._,
747 F.2d 384, 404 aff'd on other grounds, 473 U.S. 606 (1985) .....................................18

_Holmes v. Securities Investor Protection Corp._,
503 U.S. 258 (1992) ...............................................................................................18

_HS Services, Inc. v. Nationwide Mutual Insurance Co._,
109 F.3d 642, 644 (9th Cir. 1997) ............................................................................. 14

_Institute of Veterinary Pathology v. California Health Laboratories, Inc.,_
116 Cal. App. 3d 111, 127 (1981) .............................................................................. 14

_In re Exxon Valdez_
270 F.3d 1215, 1240-41 (9th Cir. 2001) ..................................................................... 14

_LiMandri v. Judkins_
52 Cal.App.4th 326, 336-337 (1997) ......................................................................... 16

_Los Angeles Mem'l Stadium Coliseum Comm'n vs. Nat'l Football League,_
_791 F.2d 1356_, 1365 (9th Cir. 1986) ......................................................................... 21

_Lujan vs. Defenders of Wildlife,_
504 U.S. 555, 561, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992) ................................. 18

_Mendoza, et al vs  V. Zirkle Fruit Co.,_
_301 F. 3d 1163 (9th Cir. 2002) ................................................................................. 18

_Neibel v. Trans World Assurance Co._,
108 F.3d 1123, 1128 (9th Cir. 1997) .................................................................... 16,18

New York Times Co. v. Sullivan, 376 U.S. 254(1964) ..............................................15

_NOW vs. Scheidler,_
510 U.S. 249, 256, 127 L. Ed. 2d 99, 114 S. Ct. 798 (1994) ....................................18

_Odom v. Microsoft Corp._,
486 F.3d 541 (9th Cir. 2007) ................................................................................... 18

_Rent-a-Car, Inc. v. Higashiguchi,_
109 F.3d 1471, 1473 (9th Cir. 1997) ......................................................................... 11

_Richard Allan Funk vs.  Sperry Corp. d/b/a Sperry Univac,_
842 F.2d 1129 (9th Cir. 1988) ................................................................................ 17

_Sedima v. Imrex Co., Inc._,
473 U.S. 479, 496 (1985) .......................................................................................... 18

_Sanchez v. Monumental Life Ins. Co._,
102 F.3d 398, 405 (9th Cir. 1996) ............................................................................. 14

_Savage v. Pac. Gas & Elec. Co.,_
21 Cal.App. 4th 434, 444 (1993) ............................................................................... 19

*Schomer v. Smidt*
113 Cal.App.3d 828, 834 (1980) ……………………………………………………… 20

Sebastian International, Inc. vs. Vincenzo Russolillo,
128 F.Supp.2d 630 (C.D.Cal. 2001) …………………………………………………… 17

*St. Paul Mercury Indemnity Co. v. Red Cab. Co. ,*
303 U.S. 283 (1938) ………………………………………………………………… 10

*State Farm Mut. Automobile, Ins. Co. vs. Campbell*
538 U.S. 408 (2003) ………………………………………………………………… 16

*Stellar vs. State Farm General Insurance Co.*
157 Cal.App.4th 1498 (9th Cir. 2007) ………………………………………………… 19

*Ticor Title Ins. Co. v. Florida,*
937 F.2d 447, 450 (9th Cir.1991) …………………………………………………… 18

*Tomaselli vs. Transamerica, Ins. Co.*
5 Cal. App. 4th 1269, 1287, 31 Cal. Rptr 2d 433 (1994) …………………………… 13

*Weinberg vs. Feisel.*
110 Cal.App.4th 1122, 2 Cal.Rptr.3d 385 (9th Cir. 2003) …………………………… 20

*Zimmerman v. City of Oakland,*
255 F.3d 734, 737 (9th Cir. 2001) …………………………………………………… 10

# STATUTES

18 U.S.C. §§ 1961 (RICO) ……………………………………………………………… 7

18 U.S.C. § 1961(4) …………………………………………………………………… 18

18 U.S.C. § 1962 ………………………………………………………………… 9,16,18,21

18 U.S.C. § 1964 ………………………………………………………………………… 9,21

18 U.S.C. §1964(c) ………………………………………………………………… 12,16

28 U.S.C. 1331 ………………………………………………………………………… 9

Cal. Civil Code § 45 ……………………………………………………………… 13,18

Cal. Civil Code § 45a ................................................................................................................13,20

Cal. Civil Code § 47(c) ...........................................................................................................15

Cal. Civil Code § 48a(4)(a) .................................................................................................. 11,12

Cal. Civil Code § 48a(4)(b) ..................................................................................................11,12

Cal. Civil Code § 1572 ...........................................................................................................13

Cal. Civil Code §§ 17200 ........................................................................................................7

Cal. Civil Code § 1780 ...........................................................................................................13

Cal. Civil Code § 3345 ...........................................................................................................12

Cal. Civil Code § 3294 ...........................................................................................................13

Cal. Civil Code § 3294(1) .......................................................................................................13

Cal. Civil Code § 3294(3) .......................................................................................................13

Cal. Penal Code § 484 ...........................................................................................................20

Rule 15(a)(1) Fed. R. Civ. P. ....................................................................................................7,

Rule 56(d)(2) Fed. R. Civ. P ...................................................................................................7,21

Rule 56(e)(1) Fed. R. Civ. P. ...................................................................................................19

Rule 56(e)(2) Fed. R. Civ. P. ...................................................................................................19

# PRELIMINARY STATEMENT

This Memorandum of Points and Authority is in opposition to Defendant's Motion to Dismiss and in support of the Plaintiff's Cross-Motion for partial summary judgment on liability for defamation and defamation per se pursuant to Rule 56(d)(2) of the Fed. R. of Civ. P., and to amend the Amended Complaint.

On April 15, 2008, the initial Complaint was properly served on the Defendant. Thereafter, a Verified Amended Complaint was served on the Defendant pursuant to Rule 15(a)(1) of the Fed. R. of Civ. P. as the Defendant has not answered the initial Complaint.

The Amended Complaint alleges causes of action sounding in (1) fraudulent misrepresentation, (2) fraudulent concealment, (3) fraudulent inducement, (4) negligent misrepresentation, (5) defamation, (6) defamation per se, (7) conversion, (8) tortious interference with business relationship, (9) intentional infliction of emotional distress (10) violation of Cal. Civil Code §§ 17200 "unlawful, unfair and fraudulent business practices", and (11) violation of 18 U.S.C. §§ 1961 (RICO).

# STATEMENT OF FACTS

## SUBJECT MATTER JURISDICTION
(Amount in controversy)

The Amended Complaint identifies a formula that was used to calculate special damages against the Defendant, which a jury at trial can reasonably agree with. The calculation of all damages, at minimum, is calculated to be over $1,600,000.00. Profits from the distribution of the Plaintiff's movie is estimated to be $330,500.00. The important issue here is that the formula used to calculate damages is non-conclusory; but a reasonable and practical method that a jury

at trial can employ to determine damages against the Defendant. The actual amount of the damages is an issue of fact for the jury to determine.

The Amended Complaint identifies a lost contract benefit with Carmike Cinemas, Inc. who were going to distribute and exhibit the Plaintiff's film on 600-1,000 of their movie screens, which contract was negotiated on the Plaintiff's behalf by Mr. Michael Burks. Mr. Burks produced the successful movie George and the Dragon staring Patrick Swayze and James Purefoy.

The Amended Complaint identifies a lost contract benefit with Mann Productions, a California production company, which previously produced two (2) TV commercials for the Plaintiff and who were going to produce his film "The Ultimate Hit" (www.TheUltimateHit.com).

The Amended Complaint identifies a lost benefit with a private investor, Bahia M. Bin Chambi, who was going to invest $250,000 with the Plaintiff to produce his film "The Ultimate Hit", which was contingent on the delivery of the film treatment by Mr. Eric Anderson.

The Amended Complaint identifies a lost future contract with actor James Purefoy who stared in the 2007 film "Frankenstein", which actor was introduced to the Plaintiff by Michael Burks.

The Amended Complaint identifies a lost future contract with Centurion Entertainment for additional funding, if needed, which benefit was arranged for the Plaintiff by Mr. Michael Burks. And which was contingent on the Plaintiff securing the funding from his private investor.

The Amended Complaint identifies a lost contract benefit with Eric Anderson in the amount of $17,038.00.

The Amended Complaint identifies that the above lost benefits establish damages resulting from the course of events caused by the Defendant's defamatory email sent to Eric Anderson. The amount of damages noted in the Amended Complaint was made in good faith, and it did not change the amount of damages claimed in the initial Complaint; but merely added

more specific details on how the damages were calculated, which a jury at trial can reasonably agree with.

The Amended Complaint identifies the Plaintiff's failure in mitigating his damages from the Defendant's wrongful conduct due to his in ability to obtain the film treatment from Eric Anderson and from his failure to obtain the financing from his investor, including the inability to obtain new financing.

The Amended Complaint further identifies evidence from an ex-interim vice President of the Defendant, Eric M. Jackson, who admitted in 2004 that the Defendant knew about false positives and the dangers associated with them; but the Defendant held the attitude that it was quote: "**an acceptable cost**" unquote. The Defendant then devised a scheme, which it is presently implementing, to conceal millions of false positives, the dangers associated with them, and its inability to timely investigate millions of false positives from the Plaintiff and millions of consumers while wrongly withholding their funds and wrongly converting their interest payments to its own use. This is in addition to the Defendant's wrongful chargeback and reversal fees levied against innocent consumers who were victims of false positives.  The Defendant then used the ill-gotten gains to invest in other businesses.  The issue of false positives is so serious that the Defendant invested $169 Million in January 2008 for a new anti-fraud detection software by acquiring the overseas company "Fraud Sciences". Such software is meant to differentiate between illegal and legal transactions better, and thus, reduce the amount of false positives.

## SUBJECT MATTER JURISDICTION
### (Federal Question)

The Amended Complaint properly pleads a cause of action pursuant to 18 U.S.C. 1962 (RICO) against the Defendant. Therefore, this Court has jurisdiction over the Complaint pursuant to 28 U.S.C. 1331 and  18 U.S.C. § 1964.

PARTIAL SUMMARY JUDGMENT
(Liability on Defamation and Defamation Per Se)

The Amended Complaint properly pleads causes of action against the Defendant for

defamation and defamation per se that are supported by probative and admissible evidence,

which are attached to the Plaintiff's Cross-Motion.


# ARGUMENT


**"...the court must accept all facts alleged in a well-pleaded complaint as true and construe them in a light most favorable to the plaintiff."**

***Karam v. City of Birbank***, 352 F.3d 1188, 1192 (9th Cir. 2003) citing ***Zimmerman v. City of Oakland***, 255 F.3d 734, 737 (9th Cir. 2001)


## I.  SUBJECT MATTER JURISDITION

The test for determining the amount in controversy in a diversity case was established by

the Supreme Court in ***St. Paul Mercury Indemnity Co. v. Red Cab. Co.***, 303 U.S. 283 (1938),

in which case, the Court stated:

> **"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed."**

## A.  Amount in Controversy

The Court is to include "General, special and punitive damages to be calculated as amount in controversy" *Contreras vs. Metro Life Ins. Co.* 2007 U.S. Dist. Lexis 9025.

Contrary to the claims of the Defendant within its Motion to dismiss, the Plaintiff has established general, special and punitive damages against the Defendant in good faith, which is witnessed by the sworn affidavits attached to the Plaintiff's Cross-Motion attesting to the Plaintiff's damages. *Rent-a-Car, Inc. v. Higashiguchi*, **109 F.3d 1471, 1473 (9th Cir. 1997)** (dismissal for lack of jurisdiction not proper if claim exceeding jurisdictional amount is made in the complaint in good faith, even when later events reduce the amount recoverable)

The Plaintiff's loss of $250,000.00 from his investor is not a speculative amount based on the fact that it is verifiable by the sworn affidavit of the investor, Bahia M. Bin Chambi, and by emails produced in the course of business between the Plaintiff and the film producer Michael Burks that are attached to the Plaintiff's Cross-Motion.

## B. Compensatory Damages

California Civil Code § 48a(4)(a) defines general damages due to libel as **"damages for loss of reputation, shame, mortification and hurt feelings"**.

California Civil Code § 48a(4)(b) defines special damages due to libel as being "**all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel"**

11

The Plaintiff's loss of his reputation with Eric Anderson, his shame, mortification and hurt feelings due to the Defendant's defamatory statements to Eric Anderson constitutes general damages pursuant to California's Civil Code § 48a(4)(a).

The Plaintiff's loss of the contract with Eric Anderson and Carmike Cinema, Inc. and the resulting loss of revenue and profits from the distribution of his film due to the Defendant's defamatory statements to Eric Anderson constitutes special damages pursuant to California's Civil Code § 48a(4)(b).

The Plaintiff's loss of $250,000.00 from his investor, Bahia M. Bin Chambi, due to the Defendant's defamatory statements to Eric Anderson constitutes special damages as defined under California's Civil Code § 48a(4)(b).

## C. Treble Damages

In determining the amount in controversy, the Court is to include treble damages requested by the Plaintiff against the Defendant. See ***Contreras vs. Metro Life Ins. Co.*** *supra.*

A cause of action has been pleaded under RICO, which provides treble damages against the Defendant pursuant to 18 U.S.C. §1964(c).

A cause of action has also been pleaded under Cal. Civil Code §§ 17200 on behalf of the Plaintiff, and other consumers that include elderly citizens, which provides treble damages against the Defendant pursuant to Cal. Civil Code § 3345 **"(a) This section shall apply only in actions brought by, on behalf of, or for the benefit of senior citizens or disabled persons, as those terms are defined in subdivisions (f) and (g) of Section 1761, to redress unfair or deceptive acts or practices or unfair methods of competition."**

## D. Punitive Damages

California's Civil Code § 3294(1) defines malice as "**conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others**."

California's Civil Code § 3294(3) defines fraud as "**an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.**"

California's Civil Code § 1572 further defines fraud as "**1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; 3. The suppression of that which is true, by one having knowledge or belief of the fact; 4. A promise made without any intention of performing it; or, 5. Any other act fitted to deceive.**"

Pursuant to California's Civil Code § 45-45a, § 3294 and 1780, punitive damages against the Defendant are warranted by law. ***Colonial Life & Accident Ins. Co. v. Superior Court*** **31 Cal.3d 785, 792; 183 Cal.Rptr. 810, 647 P.2d 86 (1982);** "Under these statutory definitions, punitive damages thus may be predicated either on an intent to harm or a conscious disregard of another's rights".

It is reasonable to conclude that a jury at trial will award punitive damages against the Defendant due to the fact that the Defendant's false accusations that the Plaintiff committed a crime is reprehensible, a disregard for the law and a conscious disregard for the Plaintiff's rights. In fact, the Defendant has failed to apologize to the Plaintiff and Eric Anderson or retract its false statements. Punitive damages are also warranted due to the Defendant's fraud. ***Tomaselli vs.***

*Transamerica, Ins. Co.* 5 Cal. App. 4th 1269, 1287, 31 Cal. Rptr 2d 433 (1994). "Punitive damages are appropriate if the defendant's acts are reprehensible, fraudulent or in blatant violation of law, or policy".

The purpose of punitive damages is to punish and deter the Defendant from any continued bad conduct. An award against the Defendant of nine times the compensatory damages, on the defamatory causes of action is warranted and does not violate the fourteenth amendment. *In re Exxon Valdez* 270 F.3d 1215, 1240-41 (9th Cir. 2001). "In determining the amount of punitive damages toward the Defendant, the Court must consider the reprehensibility of the defendant's conduct and the harm inflicted on the defendant...as well as the defendant's wealth to determine the appropriate level of punitive damages". *HS Services, Inc. v. Nationwide Mutual Insurance Co.*, 109 F.3d 642, 644 (9th Cir. 1997); "Verdict on defamation claim for $1 million". *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996).

In determining the amount in controversy, the Court is to include the amount of punitive damages regardless if that amount is speculative as long as a cause of action allowing punitive damages has been pleaded. See *Institute of Veterinary Pathology v. California Health Laboratories, Inc.*, 116 Cal. App. 3d 111, 127 (1981); *Kevin Moda, AKA Houman Moghaddam vs. Priceline.com, Inc.* 2006 U.S. App. LEXIS 28642 (9th Cir, 2006) "We do not predict what Moda *will* recover, only what he *could* recover" citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 405 (9th Cir. 1996).

Actual malice by the Defendant is evidenced by the fact that the Defendant took the $750 to pay Eric Anderson directly from the Plaintiff's debit card ending in ....9024. The debit card contained the Plaintiff's name, which was the same name on his account with the Defendant. The Defendant then used the Plaintiff's same debit card to refund his money. Thus, when the Defendant sent the August 6, 2007 email to Eric Anderson, it had knowledge that the funds were

14

not fraudulent and the Plaintiff did not steal such funds from a third-party, which entitles the Plaintiff to punitive damages against the Defendant by law. In addition, the Defendant's actual malice deprives the Defendant of any privilege to the false statements pursuant to Cal. Civil Code § 47(c). See **_Burnett v. Nat. Enquirer, Inc._** 144 Cal.App.3d 991, 1009 (1983), "to vex, harass, annoy or injure"; **_Antonovich v. Sup. Ct._** 234 Cal.App.3d 1041, 1048-1049 (1991); **_New York Times Co. v. Sullivan,_** 376 U.S. 254 (1964).

If this Court were to accept the Defendant's argument that the amount at stake is only $18,988.00 due to the lost contract with Eric Anderson, this Court would also need to accept, by law, that treble damages apply to that amount, which increases the amount at stake to $56,964.00. The Court would also need to accept, by law, that punitive damages also apply to the amount at stake, and with only a minimum punitive award of double the compensatory amount of $56,964.00, a jury could award punitive damages in the amount of $113,928.00. This increases the total amount at stake to $170,892.00. Since general damages pertaining to loss of reputation, shame, mortification and hurt feelings are presumed by law under defamation per se, a jury could award additional general damages on top of the $170,892.00.[1]

Even without treble damages, the statutory amount of $75,000.01 is met for federal jurisdiction because the U.S. Supreme Court held that punitive awards, which consist of a single ratio multiplier, do not violate the due process clause of the fourteenth amendment. In this case, any general and special damage award multiplied by nine (9) would be upheld by the Courts. Specifically, an actual award of $18,988.00 multiplied by nine (9) would allow punitive damages of $170.892.00. If the jury agrees with the Plaintiff that he has suffered additional special

---

[1] The double punitive award estimate does not violate the due process clause of the fourteenth amendment pertaining to grossly excessive or arbitrary punishments on a tortfeasor. Especially given the fact that the Defendant has and is harming thousands of consumers besides harming the Plaintiff, and it is a company that has an estimated value of over one Billion dollars. A jury at trial could award such punitive damages that would be allowed by this Court. **BMW of North America, Inc. v. Gore** , 517 U.S. 559 (1996).

damages from the lost contract with Carmike Cinema, Inc., the jury may award punitive damages at a multiple of nine (9) times on the estimated compensatory loss of $1,600,000.00, which would give the plaintiff an award of $14,400,000.00. See **_State Farm Mut. Automobile, Ins. Co. vs. Campbell_** 538 U.S. 408 (2003).[2]

## E.  18 U.S.C. §§ 1962 (RICO)

The Amended Complaint clearly identifies a scheme devised by the Defendant to manage millions of false positives while wrongly increasing its profits, which scheme entails: (1) concealing false positives and the dangers associated with them, (2) intentionally making misrepresentations to falsely create good cause for  blocking accounts and freezing funds, (3) utilizing electronic communications throughout the United States to further its scheme, (4) wrongly withholding funds for 180 days, (5) wrongly converting interest payments to the Defendant's own use, (6) wrongly charging victims of false positives a chargeback and reversal fee, (7) investing the ill-gotten interest payments and fees into other businesses. This fraudulent scheme by the Defendant involves millions of consumers besides the Plaintiff, which spanned across multiple States and over multiple years, and which scheme is continuing.

The Amended Complaint identifies damages caused by the Defendant's fraudulent scheme that involves many consumers besides the Plaintiff (a) losing their business, (b) losing their reputation, (c) losing their principal funds, (d) losing their products, (e) losing their interest payments, (f) losing causes of action against the Defendant, (g) causing consumers to turn against each other, and (h) causing consumers to suffer extreme emotional distress. In the worst case, innocent consumers have been arrested due to the Defendant's defamatory emails that

---

[2] **Neibel v. Trans World Assurance Co., 108 F.3d 1123, 1132 (9th Cir. 1997)** "finding a 6:1 ratio of punitive damages to compensatory damages permissible under *BMW, supra,* where defendant's reprehensible tortious behavior "led to the financial ruin of many of the plaintiffs".

were meant to fabricate good cause for blocking their accounts and freezing their funds while concealing that the consumers were actually victims of a false positive.

The Amended Complaint identifies that the Defendant's conduct meets the essential elements of wire fraud due to the Defendant (1) devising a scheme to defraud another by means of a material misrepresentation, (2) having the intent to defraud, and (3) used interstate electronic communications to implement its fraud. See **Sebastian International, Inc. vs. Vincenzo Russolillo, 128 F.Supp.2d 630 (C.D.Cal. 2001).** "However, in addition to wire and mail fraud, Plaintiff has alleged Defendants have engaged in other predicate criminal acts.... Thus, Plaintiff's RICO claims could proceed, even if the Court were to find the wire and mail fraud allegations were not sufficiently pled."

The Defendant's scheme, which is implemented to conceal false positives and the dangers associated with them from the Plaintiff and other consumers, is considered to be a material fact because such fact would have and will affect consumers' decision making concerning whether they will or will not use the Defendant's money transfer service. And upon a decision to use the Defendant's money transfer service, such consumers will decide how much money to risk. At this time, the Defendant's scheme has caught thousands of consumers off guard to their detriment and has left millions more without the knowledge to protect themselves.

The Defendant has a duty to disclose such facts to the Plaintiff and other consumers due to the Defendant's superior knowledge and the severity of the foreseeable harm. Defendant's concealment of false positives and their danger is actionable when (1) the defendant had exclusive knowledge of material facts not known to the plaintiff; (2) the defendant actively conceals a material fact from the plaintiff; and (3) when the defendant makes partial representations but also suppresses some material facts (no fiduciary duty is required). See **LiMandri v. Judkins** 52 Cal.App.4th 326, 336-337 (1997); **Richard Allan Funk vs. Sperry**

17

*Corp. d/b/a Sperry Univac*, **842 F.2d 1129 (9th Cir. 1988)**. "It is true that a duty to disclose can also arise when one party has superior knowledge, or uses half-truths to mislead another party."

Due to the fact that the Defendant, which is an enterprise, engaged in an intentional pattern of fraudulent conduct that also involved wire fraud against the Plaintiff and other consumers throughout the United States, and continues to engaged in such fraudulent conduct as detailed within the Amended Complaint, the Defendant has Violation 18 U.S.C. §§ 1962 (RICO). See *Sedima v. Imrex Co., Inc.*, **473 U.S. 479, 496 (1985)**; *Neibel v. Trans World Assurance Co.*, **108 F.3d 1123, 1128 (9th Cir. 1997)**; *Ticor Title Ins. Co. v. Florida*, **937 F.2d 447, 450 (9th Cir.1991)**.

The Plaintiff need not prove the RICO cause of action at the Complaint level; but only properly plead it in the Complaint. *See Haroco vs. Am. Nat'l Bank & Trust Co.*, **747 F.2d 384, 404** (reversing a dismissal for failure to state a claim because there are "no grounds for demanding that a civil RICO plaintiff essentially plead evidence and prove the case in the complaint"), *aff'd on other grounds*, **473 U.S. 606 (1985)**. *NOW vs. Scheidler*, **510 U.S. 249, 256, 127 L. Ed. 2d 99, 114 S. Ct. 798 (1994)**; *Lujan vs. Defenders of Wildlife*, **504 U.S. 555, 561, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992)**. To demonstrate RICO standing, a plaintiff must allege that it suffered an injury to its "business or property," 18 U.S.C. § 1964(c), as a proximate result of the alleged racketeering activity, *Holmes v. Securities Investor Protection Corp.*, **503 U.S. 258 (1992)**. (*Newcal Industries, Inc. vs. Ikon Office Solutions*. **CV-04-02776 (9th Cir. 2008)**. "In other words, RICO standing requires compensable injury and proximate cause."); *Mendoza, et al vs V. Zirkle Fruit Co.*, **301 F. 3d 1163 (9th Cir. 2002)**.

As a corporation, the Defendant is considered to be an enterprise pursuant to 18 U.S.C. § 1961(4). *Odom v. Microsoft Corp.*, **486 F.3d 541 (9th Cir. 2007)**.

## II.    PARTIAL SUMMARY JUDGMENT

If the Defendant does not establish a triable issue of fact by submitting evidence pursuant to Rule 56(e)(1) of the Fed. R. Civ. P., partial summary judgment on liability is warranted pursuant to Rule 56(e)(2) of the Fed. R. Civ. P. See also **_Gilbrook v. City of Westminster,_ 177 F.3d 839 (9th Cir. 1999)**. "stating that the threshold question in a defamation suit is whether "a reasonable fact finder [could] conclude that the contested statement implies an assertion of objective fact".

The Plaintiff has presented admissible and probative evidence to this Court, which proves (1) that the defendant made a defamatory communication – i.e., that he communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement as being defamatory; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm. **_Savage v. Pac. Gas & Elec. Co.,_ 21 Cal.App. 4th 434, 444 (1993).**

Although the Defendant's email doesn't mention the Plaintiff by name, it infers that he is a fraudster and that he stole funds for a third party. See **_Church of Scientology of California vs. Flynn,_ 77 F2d 694, 697 (9th Cir. 1984)**. "Under California law, there is no requirement that the person defamed be mentioned by name. It is sufficient if from the evidence the jury can infer the defamatory statements applies to the Plaintiff or if the publication points to the Plaintiff by description or circumstances tending to identify him"

### A.  Liability on Defamation

Defendant's statements to Eric Anderson in its email dated August 6, 2007 that stated the Plaintiff's funds to him were "fraudulent" and that the Plaintiff stole the money from a third-party is considered to be libel pursuant to California's Civil Code § 45. **_Stellar vs. State Farm General Insurance Co._. 157 Cal.App.4th 1498 (9th Cir. 2007).**

## B. Liability on Defamation Per Se

The Defendant's statements within its August 6, 2007 email to Eric Anderson stating that the Plaintiff's funds to him were "fraudulent" and that the Plaintiff stole the funds from a third-party was libelous per se due to the fact that it accused the Plaintiff of violating California's Penal Code § 484, which defamation is clear on its face and requires no special damages to be proven to recover damages against the Defendant pursuant to California's Civil Code § 45a. See **_Barnes-Hind vs. Superior Court_,** 181 Cal. App. 3d 377, 382, 226 Cal. Rptr. 354 (1986) "Damages to plaintiff's reputation is conclusively presumed and he need not introduce any evidence of actual damages in order to obtain or sustain an award of damages including, in appropriate case, punitive damages". Also see **_Contento v. Mitchell_** 28 Cal.App.3d 356, 358(1972); **_Schomer v. Smidt_** 113 Cal.App.3d 828, 834 (1980); **_Weinberg vs. Feisel_.** 110 Cal.App.4th 1122, 2 Cal.Rptr.3d 385 (9th Cir. 2003); **_Fashion 21 vs. Coalition for Humane Immigrant Rights of Los Angeles_** 117 Cal. App. 4th 1138, 1145 fn 7, 12 Cal. Rptr 3d 493 **(Cal. Ct App. 2004)** "An allegation the plaintiff is guilty of a crime is libelous on its face".

When the Defendant accused the Plaintiff of violating California's Penal Code § 484 to Eric Anderson, the Defendant placed the Plaintiff in immanent danger of having Eric Anderson file a criminal complaint and having the Plaintiff arrested.

Therefore, the Defendant cannot establish with a legal certainty that damages of less then $75,000.00 will be awarded to the Plaintiff by a jury at trial since the need to prove pecuniary loss is no longer required on the defamation per se cause of action and the mere probability that a jury may award compensatory and punitive damages above $75,000.00 prevents the dismissal of the Plaintiff's complaint by law.

## CONCLUSION

Clearly, the Defendant has failed to establish that the amount in controversy to a legal certainty is less then $75,000.01. See *Gail Crum v. Circus Circus Enterprises; Circus Circus Casinos, Inc.; Circus Circus Hotel Casino*, 231 F.3d 1129 (9th Cir. 2000). Defendant has completely failed to show this Court how a jury would not award general, special and punitive damages against the Defendant above $75,000.00 on the pleaded causes of action. See *Los Angeles Mem'l Stadium Coliseum Comm'n vs. Nat'l Football League*, 791 F.2d 1356, 1365 (9th Cir. 1986). Since a cause of action pursuant to 18 U.S.C. 1962 (RICO) has been properly pleaded within the Amended Complaint, jurisdiction within this Court is also proper pursuant to 18 U.S.C. § 1964. Nevertheless, the jury could agree that compensatory damages include the $250,000.00 loss from the Plaintiff's investor.

Finally, based on the evidence submitted to this Court, partial summary judgment on liability for defamation and defamation per se against the Defendant pursuant to Rule 56(d)(2) is warranted by law as there are no material issues of fact in dispute that warrant a trial.

Dated; New York, NY
    May 19, 2008

B. David Mehmet
Plaintiff Pro Se
130 Church Street, Ste 251
New York, NY 10007
Tel: (212) 920-7602
Fax: (212) 387-9387
Email: David@AppellateTerm.com

To: Mr. Oleg Cross
    Cooley Godward Kronish, LLP.
    4401 Eastgate Mall
    San Diego, CA 92121
    (858) 550-6000
    (858) 550-6420
    email: ocross@cooley.com

21