1  COOLEY GODWARD KRONISH LLP
   MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2  OLEG CROSS (246680) (ocross@cooley.com)
   4401 Eastgate Mall
3  San Diego, CA  92121
   Telephone: (858) 550-6000
4  Facsimile: (858) 550-6420

5  Attorneys for Defendant
   PAYPAL, INC.
6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11

12  B. DAVID MEHMET,                    Case No. 5:08-cv-01961-RMW

13              Plaintiff,              REPLY IN SUPPORT OF MOTION TO
                                        DISMISS FOR LACK OF SUBJECT-MATTER
14       v.                             JURISDICTION

15  PAYPAL, INC.,                       DATE:     July 25, 2008
                                        TIME:     9:00 a.m.
16              Defendant.              CTRM:     6, 4th Floor
                                        JUDGE:    Hon. Ronald M. Whyte
17

18

19

20

21

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

## I.    INTRODUCTION

A week after Defendant PayPal, Inc. ("PayPal") filed the present motion to dismiss for lack of subject-matter jurisdiction, Plaintiff amended his Complaint. (*See* Doc. # 13.)[1] Apparently recognizing that his lawsuit is not properly in federal court, Plaintiff's new Verified Amended Complaint ("Amended Complaint" or "AC") added a RICO claim – in a transparent effort to manufacture federal question jurisdiction. As shown below, however, Plaintiff's newly added claim is "wholly insubstantial and frivolous," and cannot form the basis for federal jurisdiction.

In addition, Plaintiff's Amended Complaint, Opposition, and accompanying exhibits confirm that this case should be dismissed for lack of diversity jurisdiction under 28 U.S.C. § 1332(a).    Plaintiff relies on a highly improbable combination of treble, punitive, and consequential damages to satisfy the $75,000 amount-in-controversy threshold of 28 U.S.C. § 1332(a). However, as shown below, Plaintiff is not entitled to any of those damages as a matter of law, and the amount-in controversy remains, at most, $1,950.00. Accordingly, this Court lacks subject-matter jurisdiction over this matter both under 28 U.S.C. §§ 1331 and 1332, and this case should be dismissed.

## II.    PLAINTIFF'S NEWLY ADDED RICO CLAIM IS "WHOLLY INSUBSTANTIAL AND FRIVOLOUS" AND CANNOT FORM A BASIS FOR FEDERAL JURISDICTION UNDER 28 U.S.C. § 1331.

The party seeking to prove jurisdiction must overcome the presumption that a federal court lacks subject-matter jurisdiction. *See Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). "A claim invoking federal-question jurisdiction under 28 U.S.C. § 1331. . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513, n. 10 (2006) (internal citations omitted); *see also Bell v. Hood*, 327 U.S. 678, 682-83 (1945) (holding that "wholly insubstantial and frivolous" claims, including claims "made solely for the purpose of obtaining jurisdiction"

---

[1] All "Doc. # __" references are to the Docket in this case.

1    should be dismissed on jurisdictional grounds).[2]

2        A week after this motion to dismiss was filed, and simultaneously with Plaintiff's

3    opposition to this motion, Plaintiff amended his Complaint, adding a RICO claim against PayPal,

4    in an effort to manufacture federal question jurisdiction. (*See* AC ¶¶ 1; 202-221.) However, it is

5    clear on the face of the Complaint that a RICO cause of action simply does not lie based on the

6    alleged facts.[3]

7        To state a civil RICO claim, Plaintiff must allege: "(1) conduct (2) of an enterprise (3)

8    through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to

9    plaintiff's 'business or property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing

10   18 U.S.C. §§ 1964(c), 1962(c)).

11       "Racketeering activity" is defined as "(A) any act or threat involving murder, kidnapping,

12   gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled

13   substance or listed chemical" or "(B) any act which is indictable" under the federal statutes listed

14   in 18 U.S.C. § 1961. Federal courts have cautioned that "RICO was intended to combat

15   organized crime, not to provide a federal cause of action and treble damages to every tort

16   plaintiff." *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992), *rev'd on other*

17   *grounds, Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008).

18       Here, Plaintiff does not even allege a cognizable "racketeering activity" (i.e. the predicate

19   indictable illegal act), much less satisfy the remaining elements of a RICO claim. Plaintiff's

20   supposed "racketeering activity" by PayPal, framed as wire fraud (*see* ¶¶ 210-216), is a global

21

22   [2] A Rule 12(b)(1) challenge to subject-matter jurisdiction should be decided before other grounds
     for dismissal because the other grounds will become moot if dismissal is granted. *See Alvares v.*

23   *Erickson*, 514 F.2d 156, 160 (9th Cir.1975).

24   [3] Although it is clear on the face of the complaint that the RICO claim is immaterial, this Court is
     not confined to the four corners of the complaint in evaluating whether this claim supports federal

25   jurisdiction. "Rule 12(b)(1) … allows the court to look beyond the bare allegations of the
     complaint in order to determine the existence of jurisdiction." *Ass'n of Am. Med. Colleges v.*

26   *United States*, 217 F.3d 770, 784 (9th Cir. 2000); *see also Roberts v. Corothers*, 812 F.2d 1173,

27   1177 (1987) ("To determine whether subject matter jurisdiction exists, the court can consider
     extrinsic evidence."). Accordingly, the Court can also look to Plaintiff's supporting papers and

28   exhibits submitted along with its Amended Complaint.

3.

REPLY IN SUPPORT OF MOTION TO DISMISS FOR
LACK OF SUBJECT- MATTER JURISDICTION

1    conspiracy to deprive Plaintiff (and all other PayPal users) of interest earned on the money

2    transfers PayPal temporarily suspends for security reasons (such as suspicion of fraud). (*See* ¶

3    207.) This claim has no basis and is squarely contradicted both by the allegations in the

4    Complaint and judicially noticeable facts.

5         *First*, Plaintiff (as all PayPal users) waived the right to any interest earned on the funds

6    PayPal handled for him by executing PayPal's User Agreement. (AC ¶ 58.) Specifically, Section

7    5.2 of that User Agreement states:

8              *You agree that you will not receive interest* or other earnings on the funds
               that Paypal handles as your agent and places in Pooled Accounts. In
9              consideration for your user of [PayPal's] Service, *you irrevocably transfer
               and assign to PayPal any ownership right that you have in any interest
10             that may accrue* on funds held in Pooled Accounts.

11

12   (Request for Judicial Notice ("RJN"), Ex. A at 6.) (Emphasis added.)

13        *Second*, that same User Agreement states that PayPal may hold users' funds "for up to

14   180 days if reasonably needed to protect against the risk of liability." (Section 10.2.e., User

15   Agreement, RJN Ex. A, at 10.) Plaintiff's practice of circumventing previously locked accounts,

16   opening new accounts, and using new accounts to make transfers without rectifying past debs to

17   PayPal created a substantial risk of further monetary liability for PayPal and constituted fraud on

18   PayPal. (*See* Doc. # 10, at 2-3; *see also* Declaration of Tina Taylor in support of Opposition to

19   Plaintiff's Motion for Partial Summary Judgment.) In fact, Plaintiff concedes in the AC that: (1)

20   he is the owner of a delinquent account that PayPal closed due to a prolonged negative balance of

21   $695.00 (AC ¶ 212); and (2) the $695.00 has been referred to a collection agency. (AC ¶ 88.)

22   Accordingly, PayPal was entirely within its right to briefly suspend Plaintiff's transfers (from

23   Plaintiff's new account) in the amount of $1,950.00 (which it promptly returned) in the course of

24   its investigation of Plaintiff's old accounts and not pay him interest allegedly accrued on that

25   amount during the period of two and a half weeks.[4] More importantly, it is clear, in light of the

26   [4] The miniscule amount of interest at issue in Plaintiff's RICO claim (interest earned on
     $1,950.00 over a two-and-a-half week period) exemplifies the frivolous nature of Plaintiff's
27   action. For illustration purposes only, even assuming *arguendo* that funds held by PayPal earned
     an average interest of 5% per year (*see* AC ¶ 74) (which is highly implausible given this short
28   period of time), interest earned over a two-and-a-half week period would equal approximately $

1    User Agreement incorporated into Plaintiff's complaint by reference, that PayPal's act of not

2    paying interest to Plaintiff cannot possibly constitute an indictable crime for which RICO

3    provides a private right of action.[5]

4         Courts have routinely rejected such misplaced consumer tort claims, styled as RICO

5    actions, as frivolous. *See, e.g., Lindquist v. Chapman*, No. C-06-06822-WHA, slip op., 2007 WL

6    1232058, at *3 (N.D. Cal. Apr. 26, 2007) (dismissing a RICO action under Rule 12(b)(1) for lack

7    of subject-matter jurisdiction as "wholly insubstantial and frivolous" where the plaintiff filed a

8    RICO claim based on defendant's receiving an "illegal order" from an Oregon bankruptcy court);

9    *Barnes v. MBNA American Bank, N.A.*, No. 06-CV-352-JLQ, slip op., 2007 WL 2405010, at *4

10   (E.D. Wash. Aug. 17, 2007) ("filing a Complaint alleging RICO violations against someone

11   attempting to collect on a valid debt owed by the Plaintiffs reduced to a judgment is a *frivolous*

12   *complaint.*") (emphasis added).[6]

13        Because the alleged wrong (i.e. illegal predicate act) underlying Plaintiff's RICO claim

14   (i.e. temporarily holding Plaintiff's funds and not paying interest on those funds to Plaintiff) will

15   not change, leave to amend cannot cure this claim's deficiency.  Accordingly, Plaintiff's RICO

16   _____

17   4.50. This factor alone shows that Plaintiff's RICO claim is insubstantial and frivolous.

18   [5] Plaintiff's RICO claim is especially misplaced given that PayPal promptly returned Plaintiff's
     $1,950 (AC ¶ 24) even though Plaintiff owed (and continues to owe) PayPal $2088.66 in
19   unresolved bad debts for his other accounts. (*See* Taylor Decl. at 1-4.)

20   [6] Furthermore, because the RICO claim is predicated on fraud (*see* AC ¶ 210), the heightened
     pleading requirements of Rule 9(b) apply.   Federal courts, including this Court, have held that
21   where a RICO claim is based on allegations of fraud, that claim must satisfy Rule 9(b)
     particularity mandate in order to survive. *See Gabor v. County of Santa Clara Bd. of Supervisors*,
22   No. No. C-07-04266-RMW-(HRL), slip op., 2008 WL 902407, at *4 (Whyte, J.) (dismissing a
     RICO claim where "it is . . . unclear even after numerous actions by plaintiffs alleging RICO
23   violations what conduct is alleged to form the basis for plaintiffs' claim."); *see United Centrifugal*
     *Pumps v. Schotz*, 1991 U.S. Dist. LEXIS 21100 (N.D. Cal. June 12, 1991).  Under Rule 9(b),
24   "'conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough.'"
25   *Alfus v. Pyramid Technology Corp.*, 745 F. Supp. 1511, 1519 (N.D. Cal. 1990) (internal citations
     omitted); *Mazur v. eBay Inc.*, No. C 07-03967-MHP, slip. op., 2008 WL 618988, at *13-*14
26   (dismissing RICO and other fraud-based claims for lack of particularity under Rule 9(b)).  Here,
27   Plaintiff's conclusory assertions that PayPal engaged in a "fraudulent scheme" indictable under
     RICO (as opposed to simply temporarily suspending Plaintiff's transfers for security reasons) fall
28   woefully short meet the Rule 9(b) pleading requirements. (*See* ¶¶ 209-221.)

1    claim should be rejected as "wholly insubstantial and frivolous."

2    **III.    THE COMPLAINT ON ITS FACE FAILS TO SATISFY THE "AMOUNT IN CONTROVERSY" REQUIREMENT OF 28 U.S.C. § 1332(A).**

3
4    Plaintiff relies on a highly improbable combination of treble, consequential, and punitive

5    damages, to satisfy the amount-in-controversy of § 1332(a).  (*See* Doc. # 13, Opposition at 11-

6    15.)  As shown below, Plaintiff is not entitled to any of those categories of these damages as a

7    matter of law.    Therefore, because the real amount-in-controversy in this action is at most

8    $1950.00 (and certainly substantially less than $75,000), the court should dismiss this action for

9    lack of diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

10   **A.    Plaintiff Is Not Entitled To Treble Damages As A Matter of Law Because Plaintiff Cannot State A RICO Claim And Because Damages Under Cal. Civil Code § 3345 Are Not Available To Plaintiff.**

11
12   Plaintiff relies, in part, on treble damages to satisfy the 75,000 amount-in-controversy

13   requirement of 15 U.S.C. 1332(a).  (*See* Opposition at 12.)   Specifically, Plaintiff claims that he

14   is entitled to treble damages under 8 U.S.C. § 1964(c) and California Civil Code § 3345.  (*See id.*)

15   Under 8 U.S.C. § 1964(c), treble damages are only available to plaintiffs with valid RICO

16   claims.  As shown above, Plaintiff's RICO claim is wholly insubstantial and frivolous.  Plaintiff

17   may not merely slap a RICO label on his tort claim to bolster the amount-in-controversy in his

18   case, thus establishing diversity jurisdiction. *See Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F.

19   Supp. 2d 1090, 1095 (S.D. Cal. 2006) (dismissing complaint pursuant to Rule 12(b)(1) where

20   "Plaintiff's claim … was '*not made in good faith*, but rather is stated for the sole purpose of

21   attempting to manufacture jurisdiction'") (emphasis added).

22   Not can Plaintiff recover treble damages under California Civil Code § 3345 because that

23   statute protects senior citizens and disabled individuals.  Plaintiff is not alleged to be a senior

24   citizen or disabled individual as defined in California Civil Code §§ 1761(f), 1761(g), nor has he

25   brought this action "on behalf of, or for the benefit of" such persons.   (*See* AC, *passim.*)

26   Accordingly, Plaintiff is not entitled to treble damages.

27   /

28   /

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

6.

REPLY IN SUPPORT OF MOTION TO DISMISS FOR
LACK OF SUBJECT-MATTER JURISDICTION

**B.    Plaintiff Is Not Entitled to Lost Profits, Special, or Consequential Damages Because PayPal's User Agreement, Which Plaintiff Executed, Precluded Liability for Those Damages.**

Plaintiff also relies on consequential damages to meet the amount-in-controversy requirement of 15 U.S.C. 1332(a). (*See* Opposition at 11-12.) Specifically, Plaintiff alleges that he lost two contracts as a result of PayPal's alleged false e-mail to another user, Eric Anderson. Plaintiff alleges that a result of this allegedly defamatory statement, Plaintiff lost a contract with Anderson (*see* Opposition at 12), which Plaintiffs values at $17,038.00. (*See* Opposition at 8.) On top of that, Plaintiff alleges that, as a result of losing the contract with Anderson (and not being able to deliver the purported "film treatment"), Plaintiff lost another contract with a third party, Carmike Cinemas, Inc., resulting in "loss of revenue and profits" (from the production and distribution of a film) in the amount of $1,600,000.00 (*See* Opposition at 12, 16.)  Aside from the fact that Plaintiff's calculation of the $1,600,000.00 figure is highly speculative and improbable (*see* AC ¶ 49 for Plaintiff's formula),[7] Plaintiff is legally precluded from recovering lost profits, incidental, special or consequential damages.

Section 14.7 of PayPal's User Agreement, which Plaintiff admittedly executed (AC ¶ 58), states:

> IN NO EVENT SHALL WE, OUR PARENT, EMPLOYEES OR OUR SUPPLIERS BE LIABLE FOR LOST PROFITS OR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH OUR WEB SITE, OUR SERVICE, OR THIS AGREEMENT (HOWEVER ARISING, INCLUDING NEGLIGENCE).

(*Id.*, RJN Ex. A, at 19.) (Capitalization in original.)  Accordingly, Plaintiff cannot legally recover the alleged lost profits on the two purported contracts.  California federal courts have upheld such contractual limitations on liability.  *See, e.g., Consol. Freightways Corp. v. Travelers Ins. Co.*, NO. C-00-20726 RMW, 2003 U.S. Dist. LEXIS 26984, at *16 (N.D. Cal. Mar. 26, 2003) (Whyte, J.) (holding that contractual limitation on consequential damages "precluded liability" for such

---

[7] *See Piscitelli v. Friedenberg*, 87 Cal. App. 4th 953, 989 (2001) ("[I]t is fundamental that 'damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery.'") (quoting *Frustuck v. City of Fairfax*, 212 Cal. App. 2d 345, 367-68 (1963)).

CooLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

7.

REPLY IN SUPPORT OF MOTION TO DISMISS FOR
LACK OF SUBJECT- MATTER JURISDICTION

1  damages); *Kesel v. UPS*, No. C-00-3741-SI, 2002 U.S. Dist. LEXIS 12350, at *18 (N.D. Cal. Jan.

2  16, 2002) (upholding a contractual limitation on "special, incidental or consequential damages."),

3  *aff'd on different grounds by Kesel v. UPS*, 339 F.3d 849 (9th Cir. 2003).  Accordingly, PayPal's

4  User Agreement bars liability for precisely the consequential damages that Plaintiff alleged.

5  Because Plaintiff cannot recover such damages, they cannot be used to satisfy the amount-in-

6  controversy requirement of § 1332(a).

7         **C.**    **Plaintiff Is Not Entitled to Punitive Damages Over $75,000 As a Matter of Law**

8

9         Plaintiff also relies on punitive damages to satisfy the amount-in-controversy requirement

   of § 1332(a).  (*See* Opposition at 13-16.)  Plaintiff's Amended Complaint, as well as supporting
10
   documents and exhibits Plaintiffs submitted, show that the real amount-in-controversy is at most
11
   $1,950.00 plus interest (which, based on Plaintiff's alleged interest rate of 5%, would be at most
12
   around $4.50).[8]  It is well established that any punitive damages must bear a "reasonable
13
   relationship" to plaintiff's actual damages.  *See, e.g., Exxon Valdez v. Exxon Mobile Corp.*, 490
14
   F.3d 1066, 1083 (9th Cir. 2007) ("a ratio of punitive damages to actual harm of less than 10 to 1
15
   was more likely to comport with due process than an award with a higher ratio.") (internal
16
   citations omitted).  Even if Plaintiff's actual damages were $1,950.00 (which they are not, as
17
   PayPal admittedly returned those funds to Plaintiff), punitive damages could not legally exceed
18
   $20,000, much less $75,000.  *See Larkin v. Brown*, 41 F.3d 387, 388 (8th Cir. 1994) (affirming
19
   district court's decision that plaintiff could not recover punitive damages in excess of the
20
   jurisdictional amount where he "claimed only $ 200 in medical expenses and $ 10,000 of lost
21
   wages.")
22
          Nor is PayPal's conduct at issue remotely the type that could be considered reprehensible
23
   and warrant punitive damages.  Reversing a money transfer due to Plaintiff's deceptive practice
24
   of maintaining multiple accounts, refunding Plaintiff the money, but not paying interest, does not
25
   give rise to a credible claim of punitive damages.  Accordingly, Plaintiff is not entitled to punitive
26

27  ――――――――――――
   [8] In reality, because Plaintiff is not entitled to consequential damages (*see supra* Section III.A.) or
28  interest (*see supra* at 4) and because PayPal admittedly returned to Plaintiff the $1,950.00 at issue
   (*See* AC ¶ 24), it is difficult see to what possible monetary damages Plaintiff could legally claim.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

8.

REPLY IN SUPPORT OF MOTION TO DISMISS FOR
LACK OF SUBJECT- MATTER JURISDICTION

1    damages in excess of $20,000 as a matter of law, and thus cannot use inflated figures of punitive

2    damages to satisfy the amount-in-controversy of § 1332(a).

3    **IV.    CONCLUSION**

4           Because Plaintiff's RICO claim is immaterial, "wholly insubstantial and frivolous"

5    Plaintiff cannot rely on to invoke federal question jurisdiction under 28 U.S.C. § 1331.    Further,

6    because Plaintiff is not entitled to treble and consequential damages as a matter of law, Plaintiff

7    may not rely on those damages to satisfy the amount-in-controversy requirement of § 1332(a) and

8    invoke diversity jurisdiction.    Finally, Plaintiff is not entitled to punitive damages in excess of

9    $20,000 as a matter of law.    Thus, Plaintiff cannot satisfy the $75,000 amount-in-controversy

10   requirement of 28 U.S.C. § 1332(a).    Accordingly, PayPal respectfully asks that the Court dismiss

11   this action with prejudice "to enable [Plaintiff] to bring his [tort action] in the appropriate state

12   court." *Larkin*, 41 F.3d at 389.

13

14   Dated: June 27, 2008                    COOLEY GODWARD KRONISH LLP
                                             MICHAEL G. RHODES (116127)
15                                           OLEG CROSS (246680)

16

17

18                                           /s/
                                             _____
                                             Oleg Cross
19                                           Attorneys for Defendant
                                             PAYPAL, INC.
20

21

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

9.

REPLY IN SUPPORT OF MOTION TO DISMISS FOR
LACK OF SUBJECT- MATTER JURISDICTION

1    COOLEY GODWARD KRONISH LLP
     MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2    OLEG CROSS (246680) (ocross@cooley.com)
     4401 Eastgate Mall
3    San Diego, CA  92121
     Telephone: (858) 550-6000
4    Facsimile: (858) 550-6420

5    Attorneys for Defendant
     PAYPAL, INC.
6

7

8                        UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11

12   B. DAVID MEHMET,                      Case No. 5:08-cv-01961-RMW

13            Plaintiff,                   **REQUEST FOR JUDICIAL NOTICE IN
                                           SUPPORT OF REPLY IN SUPPORT OF
14       v.                                MOTION TO DISMISS FOR LACK OF
                                           SUBJECT-MATTER JURISDICTION**
15   PAYPAL, INC.,
                                           DATE:      July 25, 2008
16            Defendant.                   TIME:      9:00 a.m.
                                           CTRM:      6, 4th Floor
17                                         JUDGE:     Hon. Ronald M. Whyte

18

19          Defendant PayPal, Inc. ("PayPal") respectfully requests, in support of its Reply in support

20   of Motion to Dismiss for Lack of Subject-Matter Jurisdiction, that the Court take judicial notice

21   of the document listed below and attached to the declaration of Oleg Cross, pursuant to Federal

22   Rule of Evidence 201.  Federal Rule of Evidence 201 provides that "a judicially noticed fact must

23   be one not subject to reasonable dispute in that it is either (1) generally known within the

24   territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by

25   resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).

26   **DOCUMENTS:**

27   1.      Attached as Exhibit A is a true and correct copy of PayPal's User Agreement in

28   effect as of January 10, 2007.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO                                  REQUEST FOR JUDICIAL NOTICE I/S/O REPLY

I.    **JUDICIAL NOTICE OF "EXHIBIT A" IS PROPER BECAUSE IT IS EXTENSIVELY REFERENCED IN THE COMPLAINT.**

Plaintiff cites to and relies upon Exhibit A throughout his Verified Amended Complaint ("Amended Complaint" or "AC").   (*See, e.g.,* AC ¶¶ 59, 60, 61, 63, 89, 114, 115, 118 119, 132, 135, 141.)  The Ninth Circuit has specifically authorized courts, in ruling on a motion to dismiss, to consider documents alleged in a complaint under the incorporation by reference doctrine.  *See Ronconi v. Larkin*, 253 F.3d 423, 427 (9th Cir. 2001).   When a plaintiff references part of a document in the complaint, the document is incorporated by reference, and the *full text* of the document becomes part of the allegations.  *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (defendant may offer a document referenced in the complaint "and the district court may treat such a document as part of the complaint, *and thus may assume that its contents are true. . .*") (emphasis added).

II.    **CONCLUSION**

Accordingly, the Court should take judicial notice of Exhibit A.

Dated: June 27, 2008

COOLEY GODWARD KRONISH LLP
MICHAEL G. RHODES (116127)
OLEG CROSS (246680)

/s/ _____
Oleg Cross
Attorneys for Defendant
PAYPAL, INC.

1   COOLEY GODWARD KRONISH LLP
    MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2   OLEG CROSS (246680) (ocross@cooley.com)
    4401 Eastgate Mall
3   San Diego, CA  92121
    Telephone: (858) 550-6000
4   Facsimile: (858) 550-6420

5   Attorneys for Defendant
    PAYPAL, INC.

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12   B. DAVID MEHMET,                    Case No. 5:08-cv-01961-RMW

13              Plaintiff,               **DECLARATION OF OLEG CROSS IN
                                         SUPPORT OF REPLY IN SUPPORT OF**
14        v.                             **MOTION TO DISMISS COMPLAINT FOR
                                         LACK OF SUBJECT-MATTER**
15   PAYPAL, INC.,                       **JURISDICTION**

16              Defendant.              DATE:   July 25, 2008
                                        TIME:   9:00 a.m.
17                                      CTRM:   6, 4th Floor
                                        JUDGE:  Hon. Ronald M. Whyte
18

19

20

21

22

23

24

25

26

27

28

1

2          I, Oleg Cross, declare as follows:

3          1.  I am an associate with the law firm of Cooley Godward Kronish LLP, attorneys for

4   Defendant PayPal Inc. ("PayPal") in the above-captioned action.  I submit this declaration in

5   support of PayPal's Motion to Dismiss for Lack of Subject-Matter Jurisdiction.  I am fully

6   familiar with the facts set forth herein and, if called as a witness, would competently testify

7   thereto.

8          **1.**     Attached as Exhibit A is a true and correct copy of PayPal's User Agreement in

9   effect as of January 10, 2007.

10         **2.**     Attached as Exhibit B is a true and correct copy on an e-mail sent by Paypal to

11  Eric Anderson on August 6, 2007.

12         I hereby declare under penalty of perjury under the laws of the United States and the State

13  of California that the foregoing is true to the best of my knowledge.

14  Dated:  June 27, 2008

15

16

17                                        _____
                                          OLEG CROSS
18
                                          COOLEY GODWARD KRONISH LLP
19                                        MICHAEL G. RHODES (116127)
                                          (rhodesmg@cooley.com)
20                                        OLEG CROSS (246680)
                                          (ocross@cooley.com)
21                                        4401 Eastgate Mall
                                          San Diego, CA  92121
22                                        Telephone:(858) 550-6000
                                          Facsimile:(858) 550-6420
23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

# Exhibit A

This Agreement is a contract between you and PayPal and applies to your use of PayPal's Services. You must read, agree with and accept all of the terms and conditions contained in this Agreement. We may amend this Agreement at any time by posting a revised version on our website. The revised version will be effective at the time we post it. In addition, if the revised version includes a Substantial Change, we will provide you with 30 Days' prior notice of Substantial Change by posting notice on the "Policy Updates" page of our website. We last modified this Agreement on January 10, 2007.

This Agreement contains fifteen sections, and you may jump directly to any section by selecting the appropriate link below. The headings and subheadings below are for reference only and do not limit the scope of each section. Some capitalized terms have specific definitions, and we have provided them in section 15. You will also find underlined words in this Agreement and on our website that hyperlink to relevant information.

1.   **Our Relationship With You**
2.   **Eligibility and Types of Accounts**
3.   **Sending Money**
4.   **Receiving Money**
5.   **Account Balances**
6.   **Withdrawing Money**
7.   **Closing your Account**
8.   **Fees**
9.   **Restricted Activities**
10.  **Your Liability – Actions We May Take**
11.  **Seller Protection Policy**
12.  **Errors and Unauthorized Transactions**
13.  **Disputes between Buyers and Sellers - Buyer Protection Programs**
14.  **Disputes with PayPal**
15.  **Definitions**

**1. Our Relationship With You**

**1.1 PayPal is only a Payment Service Provider.** PayPal helps you make payments to and accept payments from third parties. PayPal is an independent contractor for all purposes, except that PayPal acts as your agent only with respect to the custody of your funds. PayPal does not have control of or liability for the products or services that are paid for with our Service. We do not guarantee the identity of any User or ensure that a buyer or a seller will complete a transaction.

**1.2 Your Privacy.** Protecting your privacy is very important to PayPal. Please review our Privacy Policy in order to better understand our commitment to maintaining your privacy, as well as our use and disclosure of your Information.

**1.3 Privacy of Others.** If you receive Information about another PayPal User through the Service, you must keep the Information confidential and only use it in connection with the Service. You may not disclose or distribute a PayPal User's Information to a third party or use the Information for marketing purposes unless you receive the User's express consent to do so.

**1.4 Intellectual Property.** "PayPal.com," "PayPal," and all related logos, products and services described in our website are either trademarks or registered trademarks of PayPal or its licensors. You may not copy, imitate or use them without PayPal's prior written consent. In addition, all page headers, custom graphics, button icons, and scripts are service marks, trademarks, and/or trade dress of PayPal. You may not copy, imitate, or use them without our prior written consent. You may use HTML logos provided by PayPal through our merchant services, auction tools features or affiliate programs without prior written consent for the purpose

of directing web traffic to the Service. You may not alter, modify or change these HTML logos in any way, use them in a manner that is disparaging to PayPal or the Service or display them in any manner that implies PayPal's sponsorship or endorsement.

**1.5 Assignment.** You may not transfer or assign any rights or obligations you have under this Agreement without PayPal's prior written consent. PayPal reserves the right to transfer or assign this Agreement or any right or obligation under this Agreement at any time.

**1.6 Notices to You.** You agree that PayPal may provide notice to you by posting it on our website, emailing it to the email address listed in your Account, or mailing it to the street address listed in your Account. Such notice shall be considered to be received by you within 24 hours of the time it is posted to our website or email to you unless we receive notice that the email was not delivered. If the notice is sent by mail, we will consider it to have been received by you three Business Days after it is sent. You may request a paper copy of any legally required disclosures and you may terminate your consent to receive required disclosures through electronic communications by contacting PayPal as described in section 1.7 below. PayPal will charge you a Records Request Fee (per section 8) to provide a paper copy. PayPal reserves the right to close your Account if you withdraw your consent to receive electronic communications.

**1.7 Notices to PayPal.** Except as otherwise stated below in section 12 (Errors and Unauthorized Transactions) and section 14 (Disputes with PayPal), notice to PayPal must be sent by postal mail to: PayPal, Inc., Attention: Legal Department, 2211 North First Street, San Jose, California 95131.

**1.8 Transaction History.** You can access your full transaction history and Balance at any time by logging into your Account and clicking on the "History" tab.

**1.9 Regulation E Disclosures.** Our commitments to you in this Agreement related to liability for unauthorized transactions, stop-payment rights and procedures, error resolution rights and procedures, Fees, contact information, our Business Days, limitations we may impose on transfers, and your rights to statements of your transaction history, constitute disclosures under the Electronic Fund Transfer Act and Federal Reserve Board Regulation E, 12 C.F.R. § 205.1 *et seq.*

**1.10 Singapore Consumer Advisory.** The PayPal payment service is regarded as a stored value facility under Singapore law. PayPal, the holder of the PayPal stored value facility, does not require the approval of the Monetary Authority of Singapore. Consumers are advised to read these terms and conditions carefully.

## 2. Eligibility and Types of Accounts

**2.1 Eligibility.** To be eligible for our Services, you must be at least 18 years old and a resident of the United States or one of the countries listed on the PayPal World-Wide page. This Agreement applies only to Users who are residents of the United States and Singapore. If you are a resident of another country, you may access your agreement from our website in your country (if applicable).

**2.2 Personal, Premier and Business Accounts.** We offer three different types of Accounts: Personal, Premier and Business Accounts. You may only hold one Personal Account and either one Premier or one Business Account. By opening a Premier or Business Account and accepting the terms as outlined in this Agreement, you attest that you are not establishing the Account primarily for personal, family, or household purposes.

**2.3 Identity Authentication.** You authorize PayPal, directly or through third parties, to make any inquiries we consider necessary to validate your identity. This may include asking you for further information, requiring you to take steps to confirm ownership of your email address or financial

instruments, ordering a credit report and verifying your Information against third party databases or through other sources.

### 3. Sending Money

**3.1 Sending Limits.** We may, at our discretion, impose limits on the amount of money you can send through our Service. You can view your sending limit, if any, by logging into your Account and clicking on the "View Limits" link on the "Account Overview" page. If you have a Verified Account, we may increase the amount of, or remove, your sending limit.

**3.2 Default Funding Sources.** When you make a payment, PayPal will fund your transaction as follows:

| | |
|---|---|
| Balance | If you have a Balance in your Account, PayPal will always use your Balance to fund your payment. |
| Funding Sources | If you do not have a Balance, or your Balance is not sufficient to fund your entire transaction, PayPal will fund your transaction, or the remainder of your transaction, in the following order:<br>• Balance (if any)<br>• Instant Transfer from your bank account<br>• Buyer Credit or PayPal Plus Credit Card<br>• credit card/debit card<br>• eCheck |
| Preapproved Payments and Subscriptions | If you have a Balance at the time the merchant processes your payment, PayPal will use your Balance instead of your Preferred Funding Source. |
| Merchant Processing Delay | If there is a Merchant Processing Delay and you have a Balance at the time the merchant processes your payment and completes the transaction, PayPal will use your Balance instead of your Preferred Funding Source. |

**3.3 Preferred Funding Source.** If you would like to select a Preferred Funding Source, you may do so at the time you are sending a payment or setting up a Preapproved Payment or Subscription. You may select a Preferred Funding Source by clicking the link on the payment confirmation page and selecting from your available Funding Sources. If you have a Balance in your Account, your Balance will be used instead of your Preferred Funding Source. The only exception is that you may select eCheck or Buyer Credit as your Preferred Funding Source instead of Balance. If you have a Balance and do not want to use it to fund your next payment, you must withdraw your Balance before initiating your next payment.

**3.4 Funding Source Limitations.** In order to manage risk, PayPal may limit the Funding Sources available for a transaction. If we limit the Funding Sources, we will alert you that there is a higher-than-normal level of risk associated with the payment. Such a notice does not mean that either party to the transaction is acting in a dishonest or fraudulent manner. It means there may be a higher-than-normal level of risk associated with the transaction. You may choose to continue with the transaction with the understanding that you may have fewer avenues available for dispute resolution should the transaction turn out to be unsatisfactory.

**3.5 Bank Transfers.** When Instant Transfer or eCheck is used as your Funding Source, or when you initiate an Add Funds transaction, you are requesting an electronic transfer from your bank account. For these transactions, PayPal will make electronic transfers via ACH from your bank account in the amount you specify. You agree that such requests constitute your authorization to PayPal to make the transfers. You give PayPal the right to resubmit any ACH debit you authorized that is returned for insufficient or uncollected funds.

**3.6 Refused Transactions.** When you send money, the recipient is not required to accept it. You agree that you will not hold PayPal liable for any damages resulting from a recipient's decision not to accept a payment made through the Service. We will return any unclaimed or denied payment to your Balance at the time it is denied or 30 Days after you initiated the payment, whichever is sooner.

**3.7 Merchant Processing Delay.** When you send a payment to certain merchants, you are providing an Authorization to the merchant to process your payment and complete the transaction. The payment will be held as pending until the merchant processes your payment. Some merchants may delay processing your payment. In such an instance, your Authorization will remain valid for up to 30 Days. If your payment requires a currency conversion, the amount of the Exchange Rate & Fee (per section 8) will be determined at the time the merchant processes your payment and completes the transaction.

**3.8 Preapproved Payments and Subscriptions.** PayPal offers Preapproved Payments and Subscription payments to allow you to provide advance Authorization to a merchant to pull money from your Account in accordance with your agreement with the merchant. You must enter into a Billing Agreement with PayPal to order to establish Preapproved Payments or Subscriptions When you establish a Preapproved Payment or Subscription you will have the option of selecting a Preferred Funding Source. If you do not select a Preferred Funding Source then the Default Funding Sources will apply.

**3.9 Waiver of Notice for Certain Preapproved Payments and Subscriptions.** When a Preapproved Payment or Subscription is made by Instant Transfer or eCheck, you have the right to contact the merchant and insist on 10 Days' advance notice before the payment is made, if the amount of the payment may vary. This is designed to protect you from having insufficient funds in your bank account. By establishing a Preapproved Payment or Subscription, you are agreeing to receive this advance notice only when your total payments to a merchant exceed the billing limit established between you and the merchant.

**3.10 Canceling Preapproved Payments and Subscriptions.** You may cancel a Preapproved Payment or Subscription at any time up to 3 Business Days prior to the date the payment is scheduled to be made. To cancel a Recurring Payment, log in to your Account, access the "My Account" tab, then access the "Profile" tab, then access the Financial Information" column and click on "Billing Agreements" and follow the instructions to cancel a Recurring Payment. If your recurring payment is not in this column, then access the "History" tab instead of the "Profile" tab and access "Subscriptions" and follow the directions to cancel a Recurring Payment. Please keep in mind that Recurring Payments are sometimes referred to as subscriptions or preapproved payments.

To cancel a Preapproved Payment, log in to your Account, access the "Profile" tab, click on the "Preapproved Payments" link under the "Financial Information" heading, access the applicable Preapproved Payment, and then click on the "Cancel" button to cancel the payment. To cancel a Subscription, log in to your Account, click the "History" sub-tab of the "My Account" tab, find the subscription in question, click the "Details" link, and then click "Cancel."

**3.11 Sending Money in Multiple Currencies.** You may send money in U.S. Dollars, Canadian Dollars, Euros, Pounds Sterling, Yen, Australian Dollars, Czech Koruna, Danish Krone, Hong Kong Dollar, Hungarian Forint, New Zealand Dollar, Norwegian Krone, Polish Zloty, Singapore Dollar, Swedish Krona and Swiss Franc. When you are sending money to a merchant who has requested a currency that is different than your primary currency, you will need to specify whether you want to pay the merchant in the merchant's requested currency, or in your currency (in some cases, the merchant may not give you a choice). If you send money in a currency that is not your primary currency, we follow these practices:

       a.   If you have a Balance in the requested currency, we will fund your transaction from your Balance.

b.  If you have a Balance in a different currency, we will perform a currency conversion and use it to fund your transaction.

c.  If you do not have a Balance, we will fund your transaction through your Default Funding Sources.

The Exchange Rate & Fee in section 8 of this Agreement will apply whenever PayPal performs a currency conversion.

## 4. Receiving Money

**4.1 Personal Account Receiving Limit.**  If you have a Personal Account, you may not receive more than $500 per month in funds when the sender selects as the "category of purchase": (a) eBay item, (b) auction goods, or (c) goods-other. Once you have received $500 in a month, we will place subsequent payments in pending status, and you will be required to upgrade to a Premier or Business Account to accept the pending payments.

**4.2 Receiving Different Types of Payments.**  If you have a Personal Account you may receive Balance/Bank Card Funded Payments for free, and up to 5 Card Funded Payments per 12 month period for a Fee, except that you may not receive Card Funded Payments into a Personal Account for an eBay transaction.  If you have a Premier or Business Account, you may receive an unlimited number of Card Funded Payments Please note that all payments received by a Premier or Business Account will be subject to a Fee in accordance with section 8 of this Agreement.

**4.3 Use of PayPal on eBay.**  Sellers who offer PayPal as a payment method in their eBay listings (either via logos or through text in the item description) must accept Card Funded Payments. Sellers must have a Premier or Business PayPal Account, or be willing to upgrade from a Personal PayPal Account to a Premier or Business Account upon receipt of a Card Funded Payment. Sellers may not communicate to buyers that they only accept Balance/Bank Funded Payments, or will not accept Card Funded Payments. eCheck is the only Funding Source that eBay Sellers are allowed to block.

**4.4 Risk of Reversals, Chargebacks and Claims.**  When you receive a payment, you are liable to PayPal for the full amount of the payment plus any Fees if the payment is later invalidated for any reason. If there is a Reversal, or if you lose a Chargeback or Claim, PayPal will debit your Balance in an amount equal to the Reversal, Chargeback or Claim and our Fees per section 8 (including a Chargeback Fee if applicable). If there are insufficient funds in your Balance to cover your liability, you agree to reimburse PayPal through other means. If the transaction is eligible under the Seller Protection Policy in section 11, PayPal will cover the amount of the Reversal or Chargeback and waive the Chargeback Fee, if applicable.

**4.5 Chargebacks Process.**  In the event of a Chargeback, we will determine whether we should dispute the Chargeback with the credit card company. If we dispute the Chargeback, we will place a temporary hold on the disputed funds in your Balance until the credit card company makes a decision. The credit card company will determine who wins the Chargeback.

**4.6 No Surcharges.**  You agree that you will not impose a surcharge or any other fee for accepting PayPal as a payment method. You may charge a handling fee in connection with the sale of goods or services, as long as the handling fee does not operate as a surcharge and is not higher than the handling fee you charge for non-PayPal transactions.

**4.7 No Splitting Payments.**  You may not split payments between a Personal Account and a Premier or Business Account by directing buyers paying with a credit card to send payments to your Premier or Business Account, and buyers paying with their Balance or bank account to send payments to your Personal Account. If you do so, we will charge you the Fees that would have applied to a Business or Premier Account.

**4.8 Receiving Money in Multiple Currencies.** You do not need to maintain a Balance in a particular currency to accept payments sent in that currency. If you already maintain a Balance in the currency in which you receive a payment, we will credit all payments received in that currency to your Balance. If you receive a payment in a currency for which you do not have a Balance, the payment will remain pending and we will ask you to manually accept or deny the payment unless you have a Premier or Business Account and have already established a preference in your Profile to automatically accept payments in that currency.

**4.9 Taxes.** It is your responsibility to determine what, if any, taxes apply to the payments you make or receive, and it is your responsibility to collect, report and remit the correct tax to the appropriate tax authority. PayPal is not responsible for determining whether taxes apply to your transaction, or for collecting, reporting or remitting any taxes arising from any transaction.

<u>5. Account Balances</u>

**5.1 Balances.** You do not need to maintain a Balance in your Account in order to make payments. If you do hold a Balance, PayPal will hold your funds separate from its corporate funds, will not use your funds for its operating expenses or any other corporate purposes and will not voluntarily make your funds available to its creditors in the event of bankruptcy. While your funds are in our custody, unless you enroll in the Money Market Fund sweep, PayPal may combine your funds with the funds of other Users and place those Pooled Accounts in one or more bank accounts in PayPal's name. Balances in U.S. Dollars that are held in Pooled Accounts may be eligible for FDIC pass-through insurance.

**5.2 Assignment of Interest to PayPal.** You agree that you will not receive interest or other earnings on the funds that PayPal handles as your agent and places in Pooled Accounts. In consideration for your use of the Service, you irrevocably transfer and assign to PayPal any ownership right that you may have in any interest that may accrue on funds held in Pooled Accounts. This assignment applies only to interest earned on your funds, and nothing in this Agreement grants PayPal any ownership right to the principal of the funds you maintain with PayPal. In addition to or instead of earning interest on Pooled Accounts, PayPal may receive a reduction in fees or expenses charged for banking services by the banks that hold your funds.

**5.3 Money Market Fund.** You will not receive any earnings on the funds that PayPal handles for you unless you enroll in the Money Market Fund. If you enroll in the Money Market Fund, PayPal's subsidiary, PayPal Asset Management Inc., will act as your agent to use any U.S. Dollar Balance in your Account on a daily basis to purchase shares in the Money Market Fund. In addition, all Balance funded payments that you make will be funded by redeeming your shares in the Money Market Fund. For more information on the Money Market Fund, please review the <u>prospectus</u>.

**5.4 Negative Balances and Multiple Currencies.** If one of the currency Balances in your Account is negative for any reason, PayPal may offset the negative Balance by using funds you maintain in a different currency Balance, and by deducting funds from any withdrawals you attempt to make. If, for a period of 21 Days, you have a negative Balance that is not in U.S. dollars, PayPal will convert your negative Balance to U.S. dollars.

**5.5 Risks of Maintaining Balances in Multiple Currencies.** You are responsible for all risks associated with maintaining Balances in multiple currencies. You agree that you will not attempt to use multiple currencies for speculative trading.

**5.6 Setoff of Balances.** If you have more than one Account, then PayPal may debit one of your Accounts to setoff a negative Balance in another Account, or to pay eBay any amounts that are past due for a period of 180 Days.

**5.7 Security Interest.**  To secure your performance of this Agreement, you grant to PayPal a lien on and security interest in your Account.

## 6.  Withdrawing Money

**6.1 How to Withdraw Money.**   You may withdraw funds by electronically transferring them to your bank account, requesting a physical check through the mail (U.S. Users only), or using your PayPal ATM/Debit Card (eligible Users only). Generally, we will send checks only to Confirmed Addresses, unless you have a Verified Account.  We will not send checks to P.O. Boxes. If you would like us to send a check to an address that does not meet these criteria, you must contact Customer Service and provide the documentation that we request to verify your association with the address.  If you fail to cash a check within 180 Days of the date of issuance, we will return the funds to your Balance (minus a Fee).

**6.2 Withdrawal Limits.**  Depending on the degree to which you have Verified your Account, we may limit you to withdrawing no more than $500 per month. You can view your withdrawal limit, if any, by logging into your Account and clicking on the "View Limits" link on the "Account Overview."  In addition, we may delay withdrawals of large sums of money while we screen for risk.

**6.3 Withdrawing Money in Multiple Currencies.**  If you have multiple currencies in your Balance, you will be able to choose from those when you withdraw funds, but the withdrawal will take place in your home currency.  The Exchange Rate & Fees stated in section 8 of this Agreement will apply if you withdraw your Balance in a currency other than your primary currency.

## 7.  Closing Your Account

**7.1 How to Close Your Account.** You may close your Account at any time by logging in to your Account, clicking on the "Profile" tab, clicking on the "Close Account" link, and then following the instructions. Upon Account closure, we will cancel any pending transactions and you will forfeit any Balances associated with Redemption Codes.  You must withdraw your Balance prior to closing your Account.

**7.2 Limitations on Closing Your Account.**  You may not close your Account to evade an investigation. If you attempt to close your Account while we are conducting an investigation, we may hold your funds for up to 180 Days to protect PayPal or a third party against the risk of Reversals, Chargebacks, Claims, fees, fines, penalties and other liability. You will remain liable for all obligations related to your Account even after the Account is closed.

**7.3 Escheatment of Dormant Accounts.**  If you do not log in to your Account for two or more years, PayPal may close your Account and send the Balance to your primary address. If PayPal does not close your Account and the Account remains dormant, or if PayPal does close your Account but your primary address is incorrect, PayPal may be required to escheat your Balance to your state of residency. PayPal will determine your residency based on the state listed in your primary address. If your address is unknown or registered as a foreign country, your funds will be escheated to the state of Delaware. Where applicable, PayPal will send you a notice prior to escheating or closing your Account. If you fail to respond to this notice, your Balance will be escheated to the state. If you would like to claim your funds from the state, please contact your state's Unclaimed Property Administrator.

## 8.  Fees

Fees for U.S. Users are as follows:

| | |
|---|---|
| Sending Payments (excluding Mass Payments) | Free |

| Sending Payments through Mass Payments | 2% up to a maximum of $1.00 per recipient |
|---|---|
| Receiving Balance/Bank Funded Payments into a Personal Account | Free |
| Receiving Card Funded Payments into a Personal Account (limited to 5 per 12 month period) | 4.9% + $0.30 for domestic payments<br>5.9% + $0.30 for cross border payments |
| Receiving Payments into a Business or Premier Account (applies to all payments) | Standard rates:<br>2.9% + $0.30 for domestic payments<br>3.9% + $0.30 for cross border payments<br>Merchant rates (based on monthly transaction volume and a one-time application):<br>1.9% - 2.5% + $0.30 for domestic payments<br>2.9% - 3.5% + $0.30 for cross border payments |
| Withdrawing your Balance | Free to transfer to a bank*<br>$1.50 for a physical check*<br>$1.00 for a PayPal ATM/Debit Card cash withdraw from an ATM.<br>$3.00 for a PayPal ATM/Debit Card cash withdraw from a bank that requires a signature.<br>*Plus the Exchange Rate & Fee if you are converting your Balance to a different currency. |
| Chargeback Fee | $10.00 per Chargeback filed unless you are protected by the Seller Protection Policy. |
| Exchange Rate & Fee | The exchange rate is the retail foreign exchange rate as determined by PayPal at the time a transaction is completed. The exchange rate is adjusted regularly, based on market conditions, and includes a 2.5% Fee above the rate at which PayPal obtains foreign currency. The 2.5% Fee is retained by PayPal. |
| Expanded Use Fee | $ 1.95<br>This amount will be refunded when you successfully complete your expanded use enrollment and send your next payment. |
| Records Request Fee | $10 (per item)<br>We will not charge you for records requested in connection with your good faith assertion of an error in your Account. |

Fees for Singapore Users can be found on this page.

## 9.  Restricted Activities

**9.1 Restricted Activities.**  In connection with your use of our website, your Account, or the Services, or in the course of your interactions with PayPal, a User or a third party, you will not:

    a.   Breach this Agreement, the Card Processing Agreement, the Acceptable Use Policy or any other agreement that you have entered into with PayPal (including a Policy);

    b.   Violate any law, statute, ordinance, or regulation (for example, those governing financial services, consumer protections, unfair competition, anti-discrimination or false advertising);

    c.   Infringe PayPal's or any third party's copyright, patent, trademark, trade secret or other intellectual property rights, or rights of publicity or privacy;

    d.   Act in a manner that is defamatory, trade libelous, unlawfully threatening or unlawfully harassing;

    e.   Provide false, inaccurate or misleading Information;

f.   Send or receive what we reasonably believe to be potentially fraudulent funds;
g.   Refuse to cooperate in an investigation or provide confirmation of your identity or any Information you provide to us;
h.   Attempt to "double dip" during the course of a dispute by receiving or attempting to receive funds from both PayPal and the seller, bank, or credit card company for the same transaction;
i.   Use an anonymizing proxy;
j.   Control an Account that is linked to another Account that has engaged in any of these Restricted Activities. We may use evidence other than the Account Information to determine whether you control an Account in someone else's name, including but not limited to Internet Protocol addresses, common business names, eBay user IDs, phone numbers, and mailing addresses;
k.   Conduct your business or use the Services in a manner that results in or may result in complaints, Disputes, Claims, Reversals, Chargebacks, fees, fines, penalties and other liability to PayPal, a User, a third party or you;
l.   Have a credit score from a credit reporting agency that indicates a high level of risk associated with your use of the Services;
m.   Use your Account or the Services in a manner that PayPal, Visa, MasterCard, American Express or Discover reasonably believe to be an abuse of the credit card system or a violation of credit card association rules;
n.   Allow your Account to have a negative Balance;
o.   Provide yourself a cash advance from your credit card (or help others to do so);
p.   Access the Services from a country that is not included on PayPal's <u>permitted countries list</u>;
q.   Disclose or distribute another User's Information to a third party, or use the Information for marketing purposes unless you receive the User's express consent to do so;
r.   Send unsolicited email to a User or use the Services to collect payments for sending, or assisting in sending, unsolicited email to third parties;
s.   Take any action that imposes an unreasonable or disproportionately large load on our infrastructure;
t.   Facilitate any viruses, Trojan horses, worms or other computer programming routines that may damage, detrimentally interfere with, surreptitiously intercept or expropriate any system, data or Information;
u.   Use any robot, spider, other automatic device, or manual process to monitor or copy our website without our prior written permission;
v.   Use any device, software or routine to bypass our robot exclusion headers, or interfere or attempt to interfere, with our website or the Services;
w.   Take any action that may cause us to lose any of the services from our internet service providers, payment processors, or other suppliers;
x.   Use the Service to test credit card behaviors.

## 10.  Your Liability – Actions We May Take

**10.1 Your Liability.**  You are responsible for all Reversals, Chargebacks, Claims, fees, fines, penalties and other liability incurred by PayPal, a PayPal User, or a third party caused by or arising out of your breach of this Agreement, and/or your use of the Services. You agree to reimburse PayPal, a User, or a third party for any and all such liability.

**10.2 Actions by PayPal.**  If you engage in any Restricted Activities, we may take various actions to protect PayPal, eBay, a User, a third party, or you from Reversals, Chargebacks, Claims, fees, fines, penalties and any other liability. The actions we may take include but are not limited to the following:

a.   We may close, suspend, or limit your access to your Account or the Services (such as limiting access to any of your Funding Sources, and your ability to send money, make withdrawals, or remove financial Information);

    b.   We may contact buyers who have purchased goods or services from you, contact your bank or credit card issuer, and warn other Users, law enforcement, or impacted third parties of your actions;

    c.   We may update inaccurate Information you provided us;

    d.   We may refuse to provide our Services to you in the future;

    e.   We may hold your funds for up to 180 Days if reasonably needed to protect against the risk of liability; and

    f.   We may take legal action against you.

PayPal, in its sole discretion, reserves the right to terminate this Agreement, access to its website, or access to the Service for any reason and at any time upon notice to you and payment to you of any unrestricted funds held in custody for you.

**10.3 Account Closure and Limited Access.**  If we close your Account, we will provide you with notice of Account closure and the ability to withdraw any undisputed funds that we are not holding. If we limit access to your Account, we will provide you with notice and opportunity to request restoration of access if appropriate.

**10.4 Reserves for Premier and Business Accounts.**  When managing risk for Premier and Business Accounts, we may take various steps, such as establishing a Reserve, changing the speed or method of payment for withdrawals, and/or requiring you to deposit funds with us as security for your obligations to us or third parties. The following types of events may cause us to establish a Reserve:

    a.   You cease a substantial portion of or your business or adversely alter your business/operations;

    b.   There is a material adverse change in your business;

    c.   Your business becomes insolvent;

    d.   We receive a disproportionate number of customer complaints, Reversals, Chargebacks, Claims, fees, fines, penalties or other liability related to your Account; or

    e.   We reasonably believe that you will not be able to perform your obligations under this Agreement, the Card Processing Agreement, or any other agreement you have entered into with PayPal.

We may immediately establish a Reserve if we reasonably believe that it is warranted under this section. If we establish a Reserve, we will provide you with notice specifying the terms of the Reserve. You may close your Account if you object to the Reserve. We may increase or decrease the amount of the Reserve, provided that in our reasonable judgment the amount of the Reserve is related to the risk for which it was created. If your Premier or Business Account is closed for any reason, we have the right to hold the Reserve for up to 180 Days. The Reserve will not be enrolled in the Money Market Fund even if the remainder of your Balance is enrolled in the Money Marked Fund, so you will not receive dividends or other earnings on Reserve funds.

**10.5 Acceptable Use Policy Violation - User Fines.**  If you violate the Acceptable Use Policy as set forth below in clauses (a), (b), or (c) below, then we may fine you $500 for each such violation and may take legal action against you to recover additional losses we incur. You acknowledge and agree that $500 is presently a reasonable minimum estimate of PayPal's damages, considering all currently existing circumstances, including the relationship of the sum to the range of harm to PayPal that reasonably could be anticipated and the anticipation that proof of actual damages may be impractical or extremely difficult. PayPal may deduct such fines directly from any existing Balance in the offending Account, or any other PayPal Account you control. The specific activities that may subject you to fines by PayPal are:

    a.   Using the Service to receive payments for any sexually oriented or obscene materials or services in violation of the Mature Audiences section of the Acceptable Use Policy;

b.  Using the Service to receive payments for any narcotics, other controlled substances, steroids or prescription drugs in violation of the  <u>Prescription Drugs and Devices</u> and the <u>Illegal Drugs and Drug Paraphernalia</u> section of the Acceptable Use Policy; or

c.  Using the Service to receive payments for wagers, gambling debts or gambling winnings, regardless of the location or type of gambling activity.

**10.6 Attorneys' Fees for Acceptable Use Policy Litigation/Arbitration.** If either you or PayPal commence litigation or arbitration in connection with a fine or other action taken related to our Acceptable Use Policy, the prevailing party will be entitled to recover reasonable attorneys' fees and costs in addition to any other relief to which it may be entitled.

## 11.  Seller Protection Policy

**11.1 Benefits.**   The Seller Protection Policy, which applies only to Verified Business and Premier Accounts, reimburses sellers of certain types of goods who follow certain sound selling practices. If your transaction is eligible for the Seller Protection Policy, PayPal will reimburse you for the amount of the Chargeback or Reversal and, if applicable, waive the Chargeback Fee.

**11.2. Coverage.**  The Seller Protection Policy is limited to the following payout amounts per year for combined eligible Chargebacks and Reversals:

- $5,000.00 USD
- $6,500.00 CAD
- €4,000.00 EUR
- £3,250.00 GBP
- ¥550,000 JPY
- $7,000.00 AUD

Please note that the combined annual total may not exceed the limit for any one currency.

A Chargeback is covered if it was due to non-receipt of merchandise, or an unauthorized payment. A Reversal is covered if it was due to an unauthorized payment. The Seller Protection Policy does not cover claims for Significantly Not as Described, or sales of intangible goods, services, or licenses for digital content.

**11.3 Eligibility.**  In order to be eligible for coverage under the Seller Protection Policy, you must meet the following requirements:

a.  You must have a Verified Business or Verified Premier Account at the time of the transaction,

b.  The transaction must be between a US, UK or Canadian buyer and a US, UK or Canadian seller,

c.  The payment must be listed as "Seller Protection Policy Eligible" on the "Transaction Details" page,

d.  You must accept a single payment from one PayPal Account for the purchase,

e.  You must not charge a surcharge for accepting PayPal,

f.  You must ship the purchased item to the address listed on the "Transaction Details" page, and that address must be identified as a Confirmed Address,

g.  You must ship the item to the buyer within 7 Days of receiving payment,

h.  You must have trackable online proof of delivery from an independent shipper to the address on the "Transaction Details" page. For transactions involving $250 or more, you must provide a proof of receipt that was signed or otherwise acknowledged by the buyer, and

i.  You must respond to PayPal's requests for information within the time period PayPal specifies.

Please note that in order to be eligible for our Seller Protection Policy you must *ship* the item as required in this section. If you hand deliver an item, or provide delivery in any manner other than required in this section, your transaction will not be eligible for the Seller Protection Policy.

**11.4 Process.** If there is a Chargeback or Reversal, and the seller's account is a Verified Business or Premier Account, we will place a temporary hold on the transaction amount, and evaluate the transaction to determine whether it is eligible for our Seller Protection Policy. (If the seller's Account is not Verified, or is a Personal Account, then there will be no temporary hold placed on the funds; rather, the amount of the payment will be automatically transferred to PayPal, and PayPal will automatically transfer the funds back to the buyer's Account.) If we determine that the transaction qualifies for Seller Protection, we will lift the temporary hold and restore your access to the funds. Please note that eligibility under the Seller Protection Policy is not a requirement to win a Claim filed by a buyer under section 13.

**12. Errors and Unauthorized Transactions**

**12.1 Identifying Errors and/or Unauthorized Transactions.** You can inspect your transaction history at any time by logging in to your Account on the PayPal website and clicking the "History" tab. It is very important that you immediately notify PayPal if you have reason to believe any of the following activities have occurred: (i) there has been an unauthorized transaction from your Account; (ii) there has been an unauthorized access to your Account; (iii) your password or mobile PIN has been compromised; (iv) your PayPal ATM/Debit Card or PayPal mobile-activated phone has been lost or stolen, or (v) someone has transferred or may transfer money using your Account without your permission (collectively called "Improper Account Access").

**12.2 Notifying PayPal of Errors and/or Unauthorized Transactions.** To notify us if you believe there has been or will be an error or unauthorized transaction on your Account, telephone PayPal Customer Service at (402) 935-7733, contact us using this report form, or write to PayPal, Attn: Error Resolution Department, P.O. Box 45950, Omaha, NE 68145-0950. If you initially provide information to us via the telephone, we may require that you send your complaint or question in writing within 10 Business Days after the phone contact. Please complete the affidavit form and submit it online or mail it to PayPal, Attn: Error Resolution Department, P.O. Box 45950, Omaha, NE 68145-0950.

**12.3 Review of Reports of Errors and/or Unauthorized Transactions.** We will advise you of the results of our investigation within 10 Business Days after we receive your notice (or 20 Business Days for transactions done at a point of sale terminal or outside the United States). If we have made an error, we will correct it promptly. If we need more time, however, we may take up to 45 Days to investigate your complaint or question (and 90 Days for transactions made at a point of sale terminal or outside the United States). If we decide that we need more time, we will provisionally re-credit your Account for the amount you think is in error within 10 Business Days after we receive your notice; so that you will have use of the money during the time it takes us to complete our investigation. If you initially provided information to us via the telephone and we do not receive your complaint or question in writing within 10 Business Days after your oral notice, we are not required to provisionally re-credit your Account.

At the end of our investigation, we will advise you of the results within 3 Business Days. If we determine that there was no error, we will send you a written explanation and we may debit any provisional credit that we previously credited to you in relation to the alleged error. You may ask for copies of the documents that we used in our investigation.

**12.4 Liability for Unauthorized Transactions.** If you report and we verify that there has been an Improper Account Access related to your Account, we will reimburse you in full for all unauthorized transactions sent from your Account that occur within 60 Days of the time that you knew or should have known about the Improper Account Access. If you do not report the Improper Account Access to PayPal within 60 Days of the time that you knew or should have

known about it, we will still reimburse you in full for all unauthorized transactions that took place within or before that 60-Day period, but you may be liable for all unauthorized transactions resulting from the Improper Account Access that occur on Day 61 and beyond (if we can demonstrate that we could have avoided any losses if you had notified us in a timely manner).

**12.5 Errors.**  If we discover a processing error, we will rectify the error. If the error resulted in your receiving less money than you were entitled to, PayPal will credit your Account for the difference. If the error results in you receiving more money than you were entitled to, PayPal may debit the extra funds from your PayPal Account. If the error resulted in our not completing a transaction on time or in the correct amount, we will be liable for your losses or damages directly and proximately caused by this failure, unless:

    a.  through no fault of ours, you did not have enough available funds to complete the transaction,

    b.  our system was not working properly and you knew about the breakdown when you started the transaction, or

    c.  circumstances beyond our control (such as fire or flood or loss of Internet connection) prevented the transaction, despite our reasonable precautions.

## 13.  Disputes between Buyers and Sellers - Buyer Protection Programs

**13.1 Buyer Protection Programs.**  If you buy an item using PayPal and either do not receive the item or receive an item that you believe is significantly not as described by the seller, we encourage you to open a Dispute with the seller in our Resolution Center. By doing so, you will initiate our Online Dispute Resolution Process—a step-by-step system designed to facilitate communication between you and the seller in order to get resolution of the issue. If your dialogue with the seller fails to produce a satisfactory result, you can then escalate the Dispute into a Claim that we will evaluate for reimbursement under one of the following programs:

    a.  PayPal Buyer Complaint Policy – Our best efforts program to reimburse Users for losses only to the extent we are able to recover the funds from sellers.

    b.  PayPal Buyer Protection Policy – Our program to reimburse Users for losses for up to $2,000 for eligible items purchased on eBayand $200 for all other items purchased on eBay except those excluded below (see section 13.9 to determine what coverage applies.)  This section 13.1.b is effective for items purchased on or after 01/17/07. To view the PayPal Buyer Protection terms and conditions for items purchased prior to 01/17/07 please refer to **Exhibit A** below.

    c.  Buyer Protection for eBay Express – Our program to reimburse Users for the full amount of losses for items purchased on eBay Express.

    d.  Extended Buyer Protection with PayPal Credit – Our program to reimburse Users for the full amount of losses for items purchased using the PayPal Plus Credit Card or PayPal Buyer Credit.

These programs only cover payments for tangible, physical goods. All other payments, such as payments for intangibles, for services or for licenses and other access to digital content are not covered by any Buyer Protection Program that we offer (but may be covered by Chargeback rights).

**13.2 Assumption of Rights.**  If PayPal pays out a Claim, Reversal or Chargeback that you file against a recipient of your payment, you agree that PayPal assumes your rights against the recipient and third parties related to the payment, and may pursue those rights directly or on your behalf, in PayPal's discretion.

**13.3 Filing Deadlines.** We will not grant any Claim unless you first initiate a Dispute in our Resolution Center within 45 Days of the date of the relevant payment and then escalate the Dispute into a Claim within 20 Days of the date you file your Dispute. It is your responsibility to keep track of the deadlines under this section.

**13.4 Online Dispute Process.** Once you file a Dispute as a buyer, PayPal will notify the seller of the Dispute, and while the Dispute is open, you and the seller are able to access the details of the Dispute via the Resolution Center and post messages to each other in connection with the Dispute. Any message you post is viewable by PayPal and the other party to the Dispute. If the Dispute is escalated to a Claim, PayPal may review and use the content of all posted messages during evaluation of the Claim. If you subsequently file a Chargeback, PayPal may use the content of any messages to dispute the Chargeback. You may not post any message that is offensive, discourteous, false, misleading, profane, abusive, threatening or otherwise inappropriate.

**13.5 Closing Online Disputes.** You or we will close all Disputes in one of the following ways:

    a. Closing the Dispute as "resolved." The buyer can close the Dispute as "resolved" from the time it is filed until 20 Days after it is filed. Once a buyer closes a Dispute as "resolved," we will not allow it to be reopened or escalated to a Claim.

    b. Escalating the Dispute into a Claim. Either party may close the Dispute by escalating the Dispute into a Claim within 20 Days of the date the Dispute is filed.

    c. Issuing a full refund. The seller may choose to close the Dispute by issuing a full refund to the buyer. If we process a full refund in this way, we will close the Dispute and not allow escalation to a Claim. If the seller does not have a sufficient Balance to close the Dispute but tries to close the Dispute by issuing a full refund, we will automatically escalate the Dispute into a Claim.

    d. Reaching other settlement. If the seller and buyer agree to a settlement other than a full refund, both parties agree to reflect the agreed settlement in the messages posted in the Resolution Center (so that we avoid resolving the Claim in a contrary manner).

    e. Dispute auto-closure after 20 Days. We will automatically close Disputes 20 Days after initiation if the buyer has not escalated it to a Claim within that time period. Once we close a Dispute in this way, we will not allow the buyer to re-open the Dispute or file a Claim relating to the transaction. In certain circumstances, we may escalate a Dispute into a Claim (for example, where a number of other buyers have opened Disputes against a seller who has failed to respond to the notices of Dispute).

**13.6 Escalating Disputes into Claims.** If you are unable to reach a resolution with the seller within 20 Days of filing the Dispute or if you have reached a resolution with the seller but it has not been fully executed (for example: you have not received the refund or you have not received an exchange item that the seller agreed to send you), you should escalate the Dispute into a Claim in order to maintain your rights under the programs identified in section 13.1. You cannot file a Claim for reimbursement without first filing a Dispute in the Resolution Center.

**13.7 Claims Procedures.** If you escalate a Dispute into a Claim, we will gather information from you and the seller and determine eligibility for reimbursement under the programs identified in section 13.1. Here are some important things to remember about the Claim process:

    a. If a buyer files a Claim asserting receipt of a Significantly Not as Described item, we will generally require the buyer to return the item to the seller at the buyer's expense and to provide proof of return delivery. In some circumstances, we may require the buyer to send the item to us or to a third party specified by us, to obtain documentation from a qualified third party substantiating the Claim, or to provide evidence that the item has been destroyed. In some instances, we may ask a buyer to support a Claim by filing and supplying a copy of a police report.

    b. If a buyer initiates a Dispute/Claim and the amount in Dispute is greater than $100, PayPal will place the disputed amount (to the extent it remains in the seller's Account) on hold until the Dispute/Claim is resolved, and the seller will not be able to withdraw this amount while the Dispute/ Claim remains unresolved.

    c. You may only file one Dispute/Claim per payment. You are not permitted to file a Dispute/Claim based on an "item not received" and then convert the same Dispute/Claim so that it is based on a Significantly Not as Described claim (or vice versa) if circumstances change following the filing of your initial Dispute/Claim.

    d. Other than adding information you may not edit or change a Claim after filing it.

    e. We may ask a buyer to identify the minimum refund that would be acceptable to settle the Claim. If you specify a refund amount that is less than the amount of the original transaction, and the seller agrees to refund the amount you specified, PayPal will consider the Claim to be successfully resolved.

After we close a Claim in favor of a buyer, a seller may appeal our decision on the Claim, but we generally will only grant the appeal if the seller is able to show that the buyer sent the item back to the seller in condition different than when the item was sold (with more than the normal wear from shipping). PayPal does not guarantee recovery of money from a buyer for a seller if a seller wins an appeal.

**13.8 Claims Eligibility.** In addition to the other limitations called out within this Agreement, the following limitations apply to Claims:

    a. The PayPal Buyer Complaint Policy only applies to items purchased outside of eBay or eBay Express, the PayPal Buyer Protection Policy only applies to items purchased on eBay and Buyer Protection for eBay Express only applies to items purchased on eBay Express. To the extent that this section 13.8.a relates to the Buyer Complaint Policy, it is effective for items purchased on or after 01/17/07. To view the Buyer Complaint Policy terms and conditions for items purchased prior to 01/17/07 please refer to **Exhibit B** below.

    b. Only registered PayPal members in good standing are eligible for reimbursement. If you purchase an item on eBay Express and you are not a registered PayPal User, you will have to sign up for a PayPal Account in order to seek reimbursement via the process outlined here.

    c. Claims must be for payments for tangible, physical goods that can be shipped, and not all other payments, such as payments for intangibles, for services or for licenses and other access to digital content.

    d. Items prohibited in the PayPal Acceptable Use Policy are ineligible for coverage.

    e. For purposes of eBay items, the buyer must have sent a single PayPal payment for the full price of the item to the PayPal Account specified by the seller in the listing, and must have either used the "Pay Now" button or associated the payment with the eBay listing by entering the item number into the PayPal payment instructions. If the buyer sent payment to a different PayPal Account or by a different method, even at the seller's request, the transaction will not be covered.

    f. For purposes of eBay Express items, the buyer must have completed the transaction by paying on the eBay Express website using either a PayPal Account or a credit card.

    g. Buyers may only receive one reimbursement per eBay or eBay Express listing.

For multiple-listings paid with a single PayPal payment, each qualified listing is eligible for up to the maximum payout in coverage, but buyers may file only one Claim per PayPal payment. If you purchased multiple qualified items with a single payment, you must identify all the items on which you are seeking reimbursement in a single Claim.

**13.9 eBay Items Eligible for PayPal Buyer Protection.** Every item on eBay (except Live Auctions and vehicles) that meets the above requirements is eligible for PayPal Buyer Protection up to , but items are only eligible for PayPal Buyer Protection up to (and should be identified as eligible items in the eBay listing) if:

    a.  The seller's eBay feedback rating is at least 50; at least 98% of the seller's eBay
         feedback is positive, the seller is a PayPal User from an eligible country, the seller has a
         Verified Premier or Verified Business Account in good standing; and
    b.  The listing was on an eligible eBay site (eBay.com and certain other eBay sites self
         identified as such) and PayPal is listed as an acceptable payment method.

This section 13.9 is effective for items purchased on or after 01/17/07. To view the PayPal Buyer
Protection terms and conditions for items purchased prior to 01/17/07 please refer to **Exhibit A**
below. To view the Buyer Complaint Policy terms and conditions for items purchased prior to
01/17/07 please refer to **Exhibit B** below.

**13.10 Significantly Not As Described.** To the extent that we provide reimbursement for losses
for items that are Significantly Not as Described when received by the buyer (which we may do
under all programs except the Buyer Complaint Policy), an item is Significantly Not as Described
if the seller clearly misrepresented the details of the item in a way that affects its value or
usability. This does not include cases where the buyer is merely disappointed with the item or
where the item did not meet the buyer's expectations. Here are some of the reasons that an item
may be considered Significantly Not as Described:

    a.  The item is a completely different item than that represented by the seller in the listing,
         e.g. an audio book instead of a printed book, a desktop computer instead of a laptop, a
         picture of an item instead of the actual item; or an empty box.
    b.  The condition of the item is significantly different. For example, if the item has clearly
         been used multiple times rather than "almost new" or "still in box" or is obviously
         repackaged rather than "mint."
    c.  The item is unusable and was not disclosed as such. For example, if there are missing
         major parts or components, will not function or turn on or is spoiled or past a relevant
         date. This applies to the item in its received state, no matter what the condition when it
         was shipped.
    d.  The item was advertised as authentic but is not authentic. For example, a fake or knock-
         off item that was advertised as authentic or a completely different or inferior brand of a
         similar product.
    e.  The item is missing a major portion or quantity. For example, if the buyer ordered four
         dozen golf balls but only received one dozen or four golf balls, or the item is missing a
         primary component, like a blender missing a top or a coffee maker missing the bottom
         plate.

An item is not Significantly Not as Described if:

    a.  The defect in the item was correctly described in the listing. For example, if the listing
         states one of the following: "Item may not work properly," "Item is missing some
         parts," or "See picture for scratches or damages."
    b.  The item was properly described but you didn't want it after you saw it in person.
    c.  The description could have been reasonably misinterpreted. For example, if the item
         is a slightly different color than advertised (e.g. the item is aquamarine but was
         advertised as teal).
    d.  The item was properly described but did not meet your expectations.
    e.  The item has minor scratches and was listed as "used condition."

Please note that these are representative examples. There may be other circumstances where
the characteristics of the item or the situation are not exactly covered in the listing but do not
render the item Significantly Not as Described. PayPal encourages all buyers and sellers to
communicate with each other before and after the transaction to prevent these issues from
occurring. We may make a decision as to whether an item is Significantly Not as Described if the
buyer and seller cannot agree. For items that we believe do not qualify as Significantly Not as
Described, we still encourage the buyer and seller to find an equitable solution.

**13.11 Buyer Complaint Policy Benefits.** If we grant a Claim under our Buyer Complaint Policy, PayPal will seek to collect from the seller by debiting the seller's PayPal Account up to the amount of your loss, and you will receive a recovery to the extent that the seller has funds available in the Account at the time we debit the seller's Account. If there is more than one Claim against the same Account, we will process the Claims in the order they are filed, and will pay out on each granted Claim up to the amount of funds in the seller's Account at the time the Claim is awarded, but not more than the amount of the Claim.

**13.12 Buyer Protection Policy Benefits.** If we grant a Claim under our Buyer Protection Policy, we will reimburse you in the currency of the original PayPal payment, up to the maximum payout listed in the table below:

Currency of original payment:
- $2,000.00 USD
- $2,000.00 CAD
- €500.00 EUR
- £500.00 GBP
- ¥112,000 JPY
- $1,500.00 AUD

**13.13 Buyer Protection for eBay Express Benefits.** If we grant a Claim under Buyer Protection for eBay Express, we will reimburse you for losses up to the full amount of your eBay Express purchase. Your reimbursement will be paid in the currency of the original PayPal payment up to the full purchase amount.

**13.14 Extended Buyer Protection with PayPal Credit Benefits.** If we grant a Claim on a purchase you made with PayPal Buyer Credit or with the PayPal Plus Credit Card as the Funding Source, we will reimburse you for losses up to the full amount of your purchase.

**13.15 Relationship between PayPal Protection Programs and Chargeback Rights.** The following information relates to reimbursement for losses from purchases where you used a credit card to fund a PayPal purchase:

a. Credit card chargeback rights, if they apply, are broader than PayPal Buyer Protection; among other things chargeback rights are not limited to $2,000 per transaction, can be filed more than 45 days after the payment, and may cover unsatisfactory items even if they are not Significantly Not as Described.
b. You can choose to file a Dispute through our Online Dispute Resolution process and escalate the Dispute into a Claim or to exercise your Chargeback rights. However, you cannot pursue both at the same time or seek a double recovery. If you initiate a Dispute through the Online Dispute Resolution process and you then, while the Dispute or Claim is pending, file a Chargeback, PayPal will cancel your Dispute or Claim, and you will have to rely solely on your Chargeback rights.
c. If you close your Dispute or it is otherwise closed, or if you cancel a Claim or it is denied or results in no refund, you may still be able to pursue Chargeback rights.
d. If you timely file a Dispute and then escalate it to a Claim, and we do not complete processing of that Claim until after your credit card issuer's imposed deadline for filing a Chargeback or after your bank's deadline for filing an Electronic Fund Transfer Act dispute, and you recover less than the full amount you would have been entitled to recover from the credit card issuer or the bank, we will reimburse you for the remainder of your loss (minus any amount you have already recovered from the seller or any other buyer protection Policy). PayPal reserves the right to contest Chargebacks, in accordance with the rules of the applicable card issuer or card association.

**13.16 Seller and Buyer Cooperation.** If you or another User you have sent money to or received money from initiates a Dispute, Claim or Chargeback, you agree to provide to any requesting party on a timely basis any documentation necessary to resolve the Dispute, Claim or Chargeback. You also agree to fully cooperate with PayPal in all aspects of our Dispute and Claim processes, and to reimburse your Account to the extent it goes negative because we decide to grant a Claim submitted by another User. We will cancel Claims of buyers who do not respond to inquiries regarding the Claim within the time specified. Sellers who fail to respond in a timely manner to our inquiries regarding a Claim forfeit any right to appeal, and we will reimburse the buyer from the seller's PayPal Account.

**13.17 Release of PayPal.** If you have a dispute with one or more Users, you release PayPal (and our officers, directors, agents, joint ventures and employees) from any and all Claims, demands and damages (actual and consequential) of every kind and nature arising out of or in any way connected with such disputes. In addition, you waive California Civil Code §1542, which says: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if not known by him must have materially affected his settlement with the debtor."

## 14.  Disputes with PayPal

**14.1 Contact PayPal First.** If a dispute arises between you and PayPal, our goal is to learn about and address your concerns and, if we are unable to do so to your satisfaction, to provide you with a neutral and cost effective means of resolving the dispute quickly. Disputes between you and PayPal regarding our Services may be reported to Customer Service online through the PayPal Help Center at any time, or by calling (402) 935-2050 from 6 AM to midnight Central Time.

**14.2 Alternative Dispute Resolution.** If you are unable to resolve your issue by working directly with us, PayPal will consider reasonable requests to resolve disputes through alternative dispute resolution procedures, such as mediation or binding arbitration as alternatives to litigation. Accordingly, you and PayPal agree to resolve any claim in accordance with this Agreement, or as otherwise agreed to in writing.

**14.3 Arbitration.** For any claim (excluding claims for injunctive or other equitable relief) where the total amount of the award sought is less than $10,000, the party requesting relief may elect to resolve the dispute in a cost effective manner through binding non-appearance-based arbitration. If a party elects arbitration, that party will initiate such arbitration through an established alternative dispute resolution ("ADR") provider mutually agreed upon by the parties. The ADR provider and the parties must comply with the following rules: a) the arbitration shall be conducted by telephone, online and/or be solely based on written submissions, the specific manner shall be chosen by the party initiating the arbitration; b) the arbitration shall not involve any personal appearance by the parties or witnesses unless otherwise mutually agreed by the parties; and c) any judgment on the award rendered by the arbitrator may be entered in any court of competent jurisdiction.

**14.4 Law and Forum for Disputes.** Except as otherwise agreed by the parties or as described in section 14.3 above, you agree that any claim or dispute you may have against PayPal must be resolved by a court located in Santa Clara County, California. You agree to submit to the personal jurisdiction of the courts located within Santa Clara County, California for the purpose of litigating all such claims or disputes.  This Agreement shall be governed in all respects by the laws of the State of California, without regard to conflict of law provisions.

**14.5 Improperly Filed Litigation.** All claims you bring against PayPal must be resolved in accordance with section 14 of this Agreement. All claims filed or brought contrary to section 14 shall be considered improperly filed and a breach of this Agreement. Should you file a claim contrary to section 14, PayPal may recover attorneys' fees and costs (including in-house

attorneys and paralegals) up to $1,000, provided that PayPal has notified you in writing of the improperly filed claim, and you have failed to promptly withdraw the claim.

**14.6 No Waiver.** Our failure to act with respect to a breach by you or others does not waive our right to act with respect to subsequent or similar breaches.

**14.7 Limitations of Liability.** IN NO EVENT SHALL WE, OUR PARENT, EMPLOYEES OR OUR SUPPLIERS BE LIABLE FOR LOST PROFITS OR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH OUR WEB SITE, OUR SERVICE, OR THIS AGREEMENT (HOWEVER ARISING, INCLUDING NEGLIGENCE). Some states do not allow the exclusion or limitation of incidental or consequential damages so the above limitation or exclusion may not apply to you. OUR LIABILITY, AND THE LIABILITY OF OUR PARENT, EMPLOYEES AND SUPPLIERS, TO YOU OR ANY THIRD PARTIES IN ANY CIRCUMSTANCE IS LIMITED TO THE ACTUAL AMOUNT OF DIRECT DAMAGES.

**14.8 No Warranty.** PAYPAL, OUR PARENT, EMPLOYEES AND OUR SUPPLIERS PROVIDE OUR SERVICES "AS IS" AND WITHOUT ANY WARRANTY OR CONDITION, EXPRESS, IMPLIED OR STATUTORY. PAYPAL, OUR PARENT, EMPLOYEES AND OUR SUPPLIERS SPECIFICALLY DISCLAIM ANY IMPLIED WARRANTIES OF TITLE, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. PayPal does not have any control over the products or services that are paid for with our Service and PayPal cannot ensure that a buyer or a seller you are dealing with will actually complete the transaction. PayPal does not guarantee continuous, uninterrupted or secure access to our Service, and operation of our site may be interfered with by numerous factors outside of our control. PayPal will make reasonable efforts to ensure that requests for electronic debits and credits involving bank accounts, credit cards, and check issuances are processed in a timely manner but PayPal makes no representations or warranties regarding the amount of time needed to complete processing because our Service is dependent upon many factors outside of our control, such as delays in the banking system or the U.S. or international mail service. Some states do not allow the disclaimer of implied warranties, so the foregoing disclaimers may not apply to you. This paragraph gives you specific legal rights and you may also have other legal rights that vary from state to state.

**14.9 Indemnification.** You agree to defend, indemnify and hold PayPal, its parent, officers, directors and employees harmless from any claim or demand (including attorneys' fees) made or incurred by any third party due to or arising out of your breach of this Agreement and/or your use of the Services.

**14.10 State Agencies.** In addition to reporting complaints against PayPal directly to PayPal as described in section 14 above, you may report complaints to the Complaint Assistance Unit of the Division of Consumer Services of the California Department of Consumer Affairs by contacting them in writing at 400 R Street, Sacramento, California 95814, or by telephone at (800) 952-5210. Florida residents may contact the Florida Department of Financial Services in writing at 200 East Gaines Street, Tallahassee, Florida, 32399, or by telephone at 1-800-342-2762. If you are a California resident, you have a right to receive the same information in section 1.7 by email. To make such a request, send a letter to PayPal at the address listed in section 1.6, include your email address, and request the information provided in section 1.7.

**14.11 Complete Agreement.** This Agreement sets forth the entire understanding between you and PayPal with respect to the Service. Sections 1, 7, 8, 10, 14 and 15, as well as any other terms which by their nature should survive, will survive the termination of this Agreement. If any provision of this Agreement is held to be invalid or unenforceable, such provision shall be struck and the remaining provisions shall be enforced.

**15. Definitions.**

    a.  **"ACH"** means the Automated Clearing House network.

b. "**Account**" or "**PayPal Account**" means a Personal, Business or Premier Account.

c. "**Add Funds**" means your ability to add money into your Account.

d. "**Agreement**" means this agreement including all subsequent amendments.

e. "**Authorize**" or "**Authorization**" means you authorize a merchant to collect a payment from your Account.

f. "**Balance**" means any money that you have in your PayPal Account. The terms "money" and "funds" are used interchangeably in this Agreement.

g. "**Balance/Bank Funded Payment**" means a payment that is fully funded through Instant Transfer, eCheck and/or Balance.

h. "**Billing Agreement**" means the agreement that you enter into with PayPal to allow a merchant to receive a Preapproved Payment or Subscription Payment from your Account.

i. "**Business Account**" and "**Premier Account**" means an Account used primarily for business purposes and not for personal, family, or household purposes.

j. "**Business Days**" means Monday through Friday, excluding Holidays.

k. "**Buyer Credit**" means a personal credit account exclusively for PayPal Users.

l. "**Buyer Protection Program**" means the PayPal Buyer Complaint Policy, PayPal Buyer Protection Policy, Buyer Protection for eBay Express, and Extended Buyer Protection with PayPal Credit  all as further described in section 13 of this Agreement.

m. "**Card Funded Payment**" means a payment that is fully or partially funded through a credit card, debit card or Buyer Credit.

n. "**Card Processing Agreement**" means the agreement that commercial entities are required to enter into directly with PayPal's payment processor(s).

o. "**Chargeback**" means a request made by a buyer directly to his or her credit card company to invalidate a payment.

p. "**Claim**" means a request for reimbursement under a Buyer Protection Program.

q. "**Confirmed Address**" means an address that has been reviewed by PayPal and found highly likely to be that of the User to which it is associated.

r. "**Customer Service**" is PayPal's customer support which can be accessed online through the PayPal Help Center at any time, or by calling (402) 935-2050 from 6 AM to midnight Central Time.

s. "**Days**" means calendar days.

t. "**Default Funding Sources**" means the order in which PayPal uses your Funding Sources to fund a transaction if you do not select a Preferred Funding Source.

u. "**Dispute**" means a dispute filed by a User (buyer) in the Online Resolution Center.

v. "**eBay**" means eBay Inc.

w. "**eCheck**" means a payment funded from a sender's bank account that is held pending and not received by the recipient until it clears.  When you send money using eCheck it will usually be held pending for 3-4 Business Days.  The amount of time that it is held pending will increase if the payment is sent from a bank account outside the United States.

x. "**Fees**" means those amounts stated in section 8 of this Agreement.

y. "**Funding Source**" means the payment method used to fund a transaction.  The following payment methods may be used to fund a transaction: Balance, Instant Transfer, eCheck, Buyer Credit, credit card, debit card and Redemption Codes.

z. "**Holidays**" means New Year's Day (January 1), Birthday of Martin Luther King, Jr. (the third Monday in January), Washington's Birthday (the third Monday in February), Memorial Day (the last Monday in May), Independence Day (July 4), Labor Day (the first Monday in September), Columbus Day (the second Monday in October), Veteran's Day (November 11), Thanksgiving Day (the fourth Thursday in November) and Christmas Day (December 25).  If a Holiday falls on a Saturday, PayPal shall observe the Holiday on the prior Friday.  If the Holiday falls on a Sunday, PayPal shall observe the Holiday on the following Monday.

aa. "**Information**" means any confidential and/or personally identifiable information or other information related to an Account or User, including but not limited to the following: name, email address, billing/shipping address, phone number and financial information.

bb. **"Instant Transfer"** means a payment funded from the sender's bank account in which PayPal credits the recipient instantly.

cc. **"Mass Payments"** means the ability to send multiple payments at the same time.

dd. "Merchant Processing Delay" means a delay between the time you Authorize a payment and the merchant processes your payment.

ee. **"Money Market Fund"** means the PayPal Money Market Fund offered to U.S. Users as an option for investing Balances in their PayPal Account, as further described in the prospectus.

ff. **"PayPal," "we,"** "us" or **"our"** means PayPal, Inc. and its subsidiaries and affiliates.

gg. **"PayPal ATM/Debit Card"** means a PayPal branded debit card that is accepted anywhere that accepts MasterCard.

hh. "PayPal Plus Credit Card" means a credit card that is associated with your PayPal Account that can be used anywhere MasterCard is accepted.

ii. **"Personal Account"** means an Account used primarily for personal, family, or household purposes.

jj. **"Policy,"** or **"Policies"** means any Policy or other agreement between you and PayPal that you entered into on the PayPal website, or in connection with your use of the Services.

kk. **"Pooled Accounts"** means Accounts at one or more FDIC-insured banks in which PayPal will place User Balances that are not invested in the Money Market Fund.

ll. "Preapproved Payment" and "Subscription Payment" means a payment in which you provide advance Authorization to a merchant to pull money from your Account on a regular, one-time, sporadic or irregular basis in accordance with your agreement with the merchant.

mm. **"Preferred Funding Source"** means a Funding Source that you select to fund a payment instead of using the Default Funding Sources.

nn. "Redemption Code" means the electronic code needed to obtain the benefit of gift certificates, eBay Anything Points, or other promotional coupons.

oo. "Reserve" means a percentage of the funds received into your Account that we hold in order to protect against the risk of Reversals, Chargebacks, Claims or any other liability related to your Account and/or use of the Services.

pp. **"Restricted Activities"** means those activities described in section 9 of this Agreement.

qq. "Reversal" means a payment that you received has been removed from your Balance for any reason other than a Chargeback or Claim pursuant to a Buyer Protection Program.

rr. **"seller"** and **"merchant"** are used interchangeably and mean a User who is selling goods and/or services and using the Services to receive payment.

ss. **"Send Money"** means your ability to send money though the Service.

tt. "Service" means all payment services and related products available through www.paypal.com.

uu. **"Significantly Not as Described"** means the definition provided in section 13.10 of this Agreement.

vv. **"Substantial Change"** means a change to the terms of this Agreement that reduces your rights or increases your responsibilities.

ww. **"Verified"** means that you have completed our verification process in order to help establish your identity with PayPal. Verification does not constitute an endorsement of a User, or guarantee a User's business practices.

xx. **"User," "you"** or **"your"** means you and any other person or entity using the Service.

# Exhibit B

*"pending-reversal@paypal.com" <pending-reversal@paypal.com>* wrote:

Date: Mon, 6 Aug 2007 05:51:03 -0500 (CDT)
From: "pending-reversal@paypal.com" <pending-reversal@paypal.com>
To: Eric Anderson <eanderso@yahoo.com>
Subject: Re: Protections/Privacy/Security (Routing Code:C840-L001-Q414-T3335-S111) :kd2
(KMM78622I96L0KM)

Dear Eric Anderson,

Thank you for contacting PayPal. We regret the delay in responding to
your service request.

We regret that you have had this experience. We received notification
that the funds in question used for this transaction were possibly
fraudulent. We did an investigation and it was determined that the
funds, indeed, were fraudulent. As such, we had to return the funds to
the party that had them taken from them without their authorization.
You are not protected from this reversal of funds under our Seller
Protection Policy, as this transaction was not listed as eligible. I do
regret any frustration that this may cause.

Thanks again for writing, and thank you for being part of the PayPal
community.

Sincerely,
PayPal Account Review Department
PayPal, an eBay Company


Original Message Follows:
------------------------
Form Message
customer subject: I'm trying to figure out why a claim has been filed.
customer message: Additional Information: 'I'm trying to determine if
this
is simply a part of PayPal's security process, or if the client reversed

the charges.

Eric Anderson'

1  COOLEY GODWARD KRONISH LLP
   MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2  OLEG CROSS (246680) (ocross@cooley.com)
   4401 Eastgate Mall
3  San Diego, CA  92121
   Telephone:    (858) 550-6000
4  Facsimile:    (858) 550-6420

5  Attorneys for Defendant
   PAYPAL, INC.

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12  B. DAVID MEHMET,                    Case No.  C08 01961

13              Plaintiff,              **PROOF OF SERVICE**

14       v.

15  PAYPAY, INC.,

16              Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE
## (FRCP 5)

I am a citizen of the United States and a resident of the State of California. I am employed in San Diego County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen years, and not a party to the within action. My business address is Cooley Godward Kronish LLP, 4401 Eastgate Mall, San Diego, California 92121. On the date set forth below I served the documents described below in the manner described below:

1.   **REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION;**

2.   **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION;**

3.   **DECLARATION OF OLEG CROSS IN SUPPORT OF REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT-MATTER JURISDICTION**

☒   (BY U.S. MAIL) I am personally and readily familiar with the business practice of Cooley Godward Kronish LLP for collection and processing of correspondence for mailing with the United States Postal Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at San Diego, California.

☐   (BY MESSENGER SERVICE) by consigning the document(s) to an authorized courier and/or process server for hand delivery on this date.

☐   (BY FACSIMILE) I am personally and readily familiar with the business practice of Cooley Godward Kronish LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

☐   (BY OVERNIGHT MAIL) I am personally and readily familiar with the business practice of Cooley Godward Kronish LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by _____ for overnight delivery.

☒   (BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Cooley Godward Kronish LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following part(ies) in this action:

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

586844 v1/SD                                     1.                          5:08-CV-01961-RMW
PROOF OF SERVICE

1

B. David Mehmet
130 Church Street, Suite 251
2   New York, NY 10007

3   Executed on June 27, 2008, at San Diego, California.

4

5

Shelley Williams

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

586844 v1/SD

2.

5:08-CV-01961-RMW
PROOF OF SERVICE