B. David Mehmet
130 Church Street
New York, NY 10007
Tele: (212) 920-7602
Fax: (212) 387-9387
Email: David@AppellateTerm.com

Plaintiff Pro Se



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| B. David Mehmet, | ) | Case No. 5:08-CV-01961 (RMW) |
| | ) | |
| Plaintiff, | ) | **NOTICE OF MOTION**<br>**FOR RECONSIDERATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| Paypal, Inc. | ) | DATE:   Sept. 26, 2008 |
| Defendant. | ) | TIME:   9:00 a.m. |
| | ) | CTRM:   6, 4th Floor |
| | ) | JUDGE:  Hon. Ronald M. Whyte |

**PLEASE TAKE NOTICE** that on September 26, 2008, at 9:00 a.m., in Courtroom 6, Fourth Floor of the above entitled Court, located at 280 South 1st Street, San Jose California, the Plaintiff, Pro Se, will move the Court for an order granting reconsideration of the partial summary judgment motion pursuant to Fed. R. Civ. P. § 60(b)(6). In support of this motion, the Court is respectfully referred to the accompanying memorandum of points and authorities, Plaintiff's declaration, and attached exhibits.

Respectfully submitted,

B. David Mehmet

## MEMORANDUM OF POINTS AND AUTHORITY

### Facts and Litigation History

I. See Summons and Amended Verified Complaint attached hereto as exhibit "A"

II. See Plaintiff's notice of cross-motion for partial summary judgment attached hereto as exhibit "B"

III. See Defendant's opposition attached hereto as exhibit "C"

IV. See Plaintiff's reply in support attached hereto as exhibit "D"

V. See Court's final order attached hereto as exhibit "E"

VI. Rule 60(b)(6) of the Fed. R. Civ. P.

"Absent exceptional circumstances, only three types of arguments provide an appropriate basis for a motion for reconsideration: arguments based on newly discovered evidence, arguments that the court has committed clear error, and arguments based on "an intervening change in the controlling law." *89 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.1999)."

*Smith v. Penrose* Slip Copy, 2007 WL 1051416

VII Rule 56(f) of the Fed. R. Civ. P.

"The party seeking additional discovery bears the burden of showing what specific facts she hopes to discover that will raise an issue of material fact. Terrell, 935 F.2d at 1018; Hall v. Hawaii, 791 F.2d 759, 761 (9th Cir.1986); cf. Mackey v. Pioneer Nat'l Bank, 867 F.2d 520 (9th Cir.1989) (party must show how additional discovery would preclude summary judgment, and why the party cannot immediately provide specific facts demonstrating an issue of material fact). The party opposing summary judgment also bears the burden of showing that the evidence sought actually exists. Terrell, 935 F.2d at 1018; see also VISA Int'l Serv. Ass'n v. Bankcard Holders of Am., 784 F.2d 1472, 1475 (9th Cir.1986). "Denial of a Rule 56(f) application is proper where it is clear that the evidence sought is almost certainly nonexistent or is the object of pure speculation." Terrell, 935 F.2d at 1018. "The nonmovant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts...." United States v. $5,644,540.00 in United States Currency, 799 F.2d 1357, 1363 (9th Cir.1986).

"A party requesting a continuance pursuant to Rule 56(f) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment....In a declaration supporting Tatum's opposition, her counsel stated that he had not yet received transcripts of several witness' depositions, including those of Officer Torres, Officer Busalacchi, and a paramedic who treated Fullard. The declaration does not, however, refer to any specific fact in these depositions or explain why the information contained in them was "essential to justify [Tatum's] opposition." Fed.R.Civ.P. 56(f)."

**_Tatum v. City and County of San Francisco_**
441 F.3d 1090 C.A.9 (Cal.), 2006.

VIII. Conclusion

The Defendant clearly failed to identify <u>specific facts</u> in its declaration that would preclude the partial summary motion for liability on the defamation claims. Facts pertaining to "<u>**accounts**</u>", "<u>**unresolved debts**</u>", "<u>**receipt of the email**</u>", and "<u>**cancellation of his contract**</u>", which are mentioned in the Defendant's declaration, do NOT meet the burden under 56(f) as a matter of law due to the fact that they cannot uncover a third-party that never existed nor funds [$750.00] that were never stolen. The Court only needs to look at the interpretation of the email to grant liability for defamation against the Defendant. Especially since Eric Anderson submitted a sworn statement that he received the email from the Defendant, which the Defendant admitted sending him and the Defendant has admitted that the funds [$750.00] were NOT stolen from any third-party. See ¶ IV of the Defendant's opposition papers, which clearly identifies the Defendant's failure to explain how any discovery could preclude the partial summary motion on liability for defamation:

> "IV....Paypal should be granted the opportunity to discover, inter alia, evidence pertaining to the alleged falsity of the e-mail in question as a matter of course. Such discovery would likely include: (a) written discovery from Plaintiff regarding ownership of multiple accounts with Paypal and unresolved debts on some of those accounts; (b) deposition of Plaintiff on the same issues; and (c) deposition of Eric Anderson regarding the circumstances surrounding receipt of the email in question and cancellation of his contract with Plaintiff. Such discovery is essential to Paypal's ability to oppose Plaintiff's defamation claim."

New York, N.Y.
August 12, 2008

B. David Mehmet
Plaintiff Pro Se

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| B. David Mehmet, ) | |
| ) | |
| Plaintiff, ) | Case No. 5:08-CV-01961 (RMW) |
| ) | |
| vs. ) | **PLAINTIFF'S DECLARATION** |
| ) | |
| Paypal, Inc. ) | |
| ) | |
| Defendant. ) | |

**B. David Mehmet**, states the following to be true and correct under the penalty of perjury:

1.      That I have conferred with the Defendant's counsel and we had come to a mutual agreement on the return date of this motion of September 26, 2008.

2.      That this declaration is in support of my motion for reconsideration of my prior motion for partial summary judgment on the grounds that this Court has made an error in law and fact because <u>no evidence exists to oppose the partial summary motion, and the Defendant has completely failed to explain how the additional discovery would preclude the summary motion. The Defendant has also failed to identify that the evidence exists</u>. This motion is timely pursuant to Fed. R. Civ. P. § 60(c)(1).

3.      That it is impossible that any discovery by the Defendant would produce the factious third-party it created that had funds stolen from them by me, nor could it ever produce a stolen $750.00, which was also fabricated by the Defendant. Thus, the Defendant could never prove the truth of its statements in the August 6, 2007 email, and its request for further discovery should have been denied as a matter law. See *Terrell v. Brewer* 935 F.2d 1015 (9 Cir. 1991)(Defendant failed to show evidence exists to warrant further discovery). Therefore, partial summary judgment on liability for defamation should have been granted.[1]

---

[1] In paragraph 18 of my Reply in support of the partial summary motion, I stated "…(2) that the facts exist, and (3) the facts sought are to be used to oppose the motion. See *Cal. On behalf of Cal. Dep't of Toxic Substances Control vs. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). See also *Brae Transp., Inc. vs. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986)." No facts exist due to a non-existent third-party and $750.00 that was never

4.    That the evidence submitted to the Court in support and in opposition to the partial summary motion established the following facts;

5.    That the Defendant falsely accused me of fraud in its August 6, 2007 email, and falsely accused me of violating Cal. Penal Code § 484 when it stated in that email that "**As such we had to return the funds to the party that had them taken from them without their authorization**".

6.    That in the Defendant's August 6, 2007 email, the Defendant fabricated the existence of a third-party, and fabricated that this third-party had $750.00 stolen from them by me.

7.    That the Defendant did NOT produce, nor did it identify any third-party that had $750.00 stolen from them by me.

8.    That the Defendant did NOT return the $750.00 to any third-party that had it stolen from them by me.

9.    That the Defendant admitted in the affidavit of Tina Taylor (P.11 & 18) that the $750.00 was NOT stolen from any third-party, and that the Defendant obtained and then refunded the $750.00 to me via my debit card ending in ..9024. **See Tina Taylor's affidavit attached to Defendant's opposition papers attached hereto as exhibit "C".**

10.    That since there was no third-party who had $750.00 stolen from them by me, the Defendant's statements in its August 6, 2007 email were false and defamed me.

---

stolen. Thus, discovery could never produce evidence, which does not exist to prove that the Defendant's statements in its August 6, 2007 email are true. **See Plaintiff's Reply attached hereto as exhibit "D".** See also *Washburn v. Fagan* Slip Copy, 2006 WL 1072057 (N.D.Cal.,2006)(The moving party must "specifically identif[y]" the relevant information, show "some basis for believing that the information actually exists", and that this information would "prevent summary judgment." *VISA Intern. Service Ass'n v. Bankcard Holders of America*, 784 F.2d 1472, 1475 (9th Cir.1986)).

11.    That the Defendant, in its attempt to manufacture an issue of fact, asked this Court to accept that its statements in its August 6, 2007 email were referring to the <u>fraudulent opening of accounts</u> rather then a <u>theft of funds</u>; but the Defendant failed to explain how the following statement fits in that argument, which clearly indicates that funds [$750.00] were stolen from a third-party [by me]: **"As such we had to return the funds to the party that had them taken from them without their authorization".**

12.    That in section IV of the Defendant's opposition to the partial summary motion, the Defendant stated that it could NOT establish a defense to the summary motion unless it was given the opportunity to obtain **"<u>(a) written discovery from Plaintiff regarding ownership of multiple accounts with Paypal and unresolved debts on some of those accounts; (b) deposition of Plaintiff on the same issues; and (c) deposition of Eric Anderson regarding the circumstances surrounding receipt of the email in question and cancellation of his contract with Plaintiff.</u>"** The Defendant has failed to explain how this further discovery would uncover an issue of fact to preclude summary judgment for liability on the defamation causes of action. In fact, further discovery would NOT uncover an issue of fact.[2]

13.    That it is the Defendant who conducted the investigation that determined that the funds [$750.00] were stolen from a third-party. Thus, the Defendant already has

---

[2] To warrant the denial of the partial summary motion under 56(f), the Defendant MUST explain how further discovery will create an <u>issue of fact</u> to preclude the partial summary judgment. See *Biggs v. Wilson* **2 F.3d 1156 (9 Cir. 1993)**("An opposing party has the burden under Rule 56(f) to show what facts she hopes to discover to raise an issue of material fact. An affidavit by counsel which does not do so fails to meet the requirements of Rule 56(f)."). See also *Anthoine v. North Cent. Counties Consortium* — F.Supp.2d —, **2008 WL 2705034 (E.D.Cal.,2008)**("The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Chance v. Pac-Tel Teletrac Inc.* ., 242 F.3d 1151, 1161 n. 6 (9th Cir.2001)). See also *Family Home and Finance Center, Inc. v. Federal Home Loan Mortg. Corp.* **525 F.3d 822 (9 Cir., 2008).**

evidence of the alleged stolen funds [$750.00] and the identify of the third-party who had them stolen from them. However, the Defendant fabricated the existence of the third-party and fabricated the stolen funds, which the Defendant has NOT denied.

14.    That it is impossible that any type of discovery would disclose a third-party who never existed and the funds [$750.00] that were never stolen. Therefore, the Defendant could never prove that its statements in its August 6, 2007 email were truthful even if it deposed me or Eric Anderson.

15.    That since the Defendant falsely accused me of stealing $750.00 from a third-party, which constitutes a violation of Cal. Penal Code § 484, the Defendant is guilty of defamation per se as a matter of law pursuant to Cal. Civil Code § 45a.

16.    That since the Defendant had personal knowledge prior to August 6, 2007 that the funds [$750.00] were not stolen; but belonged to me and not to any third-party, the Defendant did NOT have a reasonable belief to the truth of its statement in its August 6, 2007 email sent to Eric Anderson, and it acted with reckless disregard, which constitutes malice as a matter of law pursuant to California's Civil Code § 3294(c)(1).

17.    That since the Defendant is guilty of malice by law, punitive damages are warranted by law pursuant to Cal. Civil Code § 3294(a).

18.    That NO other motion requesting the relief herein has previously been made.

19.    Therefore, based on the forgoing facts, this Court made an error in granting the Defendant's request for further discovery and denying the partial summary motion.

WHEREFORE, Plaintiff prays for an order granting reconsideration of the partial summary motion and upon reconsideration, the granting of partial summary judgment on liability for defamation and defamation per se, for costs, and such other and further relief as this Court deems proper. In addition, damages are to be held in abeyance until trial.

Dated; New York, NY
  August 12, 2008


I B. David Mehmet pursuant to 28 U.S.C. § 1746 declare under the penalty of perjury that the forgoing statements are true and correct:


B. David Mehmet
Plaintiff Pro Se


To: Mr. Oleg Cross
  Cooley Godward Kronish, LLP.
  4401 Eastgate Mall
  San Diego, CA 92121
  (858) 550-6000
  (858) 550-6420
  email: ocross@cooley.com

B. David Mehmet
130 Church Street
New York, NY 10007
Tele: (212) 920-7602
Fax: (212) 387-9387
Email: David@AppellateTerm.com

Plaintiff Pro Se

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| B. David Mehmet,<br><br>         Plaintiff,<br><br>vs.<br><br><br>Paypal, Inc.<br><br>         Defendant. | Case No. C08-01961 (RMW)<br><br>**VERIFIED<br>AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1.    **Original Jurisdiction.**   This Court has original jurisdiction over this complaint pursuant to 28 U.S.C. §1332 as the amount in dispute exceeds $75,000.00 and the defendant holds residence in California while the Plaintiff holds residence in New York. In addition, this Court has original jurisdiction over the Complaint pursuant to 28 U.S.C. § 1331 as a cause of action pursuant to 18 U.S.C. 1962 (RICO) has been pleaded, and thus, jurisdiction within this Court is proper pursuant to 18 U.S.C. § 1964.

2.   **Venue**. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because the defendant resides within the County of San Jose, California.

3.   **Intradistrict Assignment**. This lawsuit should be assigned to the San Jose Division of this Court because the parties agreed to this Division within a forum selection clause within their contract.

## FACTS

**Defendant Blocked Plaintiff's Account and Froze his Funds without GOOD CAUSE**

4.   That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 3 with the same force and effect as if more fully set forth herein.

5.   That the Defendant operates an Internet based website at www.Paypal.com that transfers money from one person to another person over the Internet (Hereinafter "money transfer service").

6.   That the Plaintiff used the Defendant's money transfer service to send $750.00 to Eric Anderson.

7.   That the Defendant obtained the $750.00 by electronically withdrawing the funds from the Plaintiff's bank account at Wachovia bank on or about July 25, 2007 by utilizing the Plaintiff's debit card, which had the following four last digits ...9024.

8.   That the Defendant blocked the Plaintiff's account after he paid Eric Anderson $750.00.

9.   That the Defendant blocked the account of Eric Anderson after the Plaintiff paid Eric Anderson $750.00.

10.    That the Defendant blocked the account of Eric Anderson after Eric Anderson transferred the $750.00 out of the Defendant's pooled bank account and into his bank account.

11.    That the Defendant deducted an additional $750.00 from Eric Anderson's account located at www.Paypal.com after Eric Anderson transferred the Plaintiff's $750.00 to his bank account.

12.    That the Defendant demanded that Eric Anderson repay the $750.00 he transferred into his bank account.

## Defendant Falsely Accused the Plaintiff of Fraud

13.    That on August 6, 2007, the Defendant sent Eric Anderson an email that contained the subject: **"Re: Protections/Privacy/Security (Routing Code: C840-L001-Q414-T3335-S111): kd2 (KMM78622196LOKM)"**.

14.    That the Defendant's email sent to Eric Anderson, which had the above subject, contained the following statement quote: **"We received notification that the funds in question used for this transaction were possibly fraudulent. We did an investigation and it was determined that the funds, indeed, were fraudulent. As such, we had to return the funds to the party that had them taken from them without their authorization"** Unquote.

15.    That the Defendant's email dated August 6, 2007 to Eric Anderson noted in the paragraph above was referring to the $750.00 the Plaintiff paid to Eric Anderson through the Defendant's money transfer service.

16.    That the Defendant's email dated August 6, 2007 noted in the paragraph above was referring to the $750.00 the Defendant electronically withdrew from the Plaintiff's bank account at Wachovia bank.

17.    That contrary to the Defendant's statement in its August 6, 2007 email to Eric Anderson that it conducted an "investigation", the Defendant did NOT conduct an investigation on the $750.00 payment to Eric Anderson prior to sending Eric Anderson that email.

18.    That contrary to the Defendant's statement in its August 6, 2007 email to Eric Anderson that the Plaintiff's $750.00 payment to Eric Anderson was "fraudulent", it was not.

19.    That contrary to the Defendant's statement in its August 6, 2007 email to Eric Anderson that it had to return the $750.00 **"to the party that had them taken from them without their authorization"**, there was no other party that had $750.00 wrongly taken from them by the Plaintiff.

20.    That on or about July 25, 2007, the Defendant withheld a total of ONE $1,950.00 from the Plaintiff.

21.    That the $750.00 payment to Eric Anderson was part of the $1,950.00 being withheld by the Defendant on or about July 25, 2007.

22.    That on or about July 25, 2007, the Plaintiff demanded the Defendant return the $1,950.00 to him and the Defendant refused.

23.    That a copy of the contract between the Plaintiff and Eric Anderson was uploaded to the Defendant's website at www.Paypal.com in an effort to have the Defendant release the $750 to Eric Anderson.

24.    That when the Defendant return the $1,950.00 to the Plaintiff, it wrongly converted the Plaintiff's interest payments within its pooled bank account to its own use and it charged Eric Anderson a reversal fee when it had knowledge that the Plaintiff and Eric Anderson were victims of a false positive produced by the Defendant's anti-fraud detection software.

25.    That the Defendant did NOT pay the Plaintiff the interest payments earned on his $1,950.00, which was earned in the Defendant's pooled bank account.

26.     That in returning the Plaintiff's $1,950.00, the Defendant admitted that the $750.00 payment to Eric Anderson was a lawful transaction.

27.     That in returning the Plaintiff's $1,950.00, the Defendant admitted that it had no knowledge that there was another "party" that had $750.00 taken from them by the Plaintiff.

28.     That in returning the Plaintiff's $1,950.00, the Defendant admitted that the August 6, 2007 email sent to Eric Anderson contained false statements.

29.     That the Defendant defamed the Plaintiff in its August 6, 2007 email to Eric Anderson.

30.     That because of the Defendant's false statements to Eric Anderson that the Plaintiff committed fraud, Eric Anderson, who never did business with the Plaintiff before, became fearful of the Plaintiff.

31.     That due to the Defendant's false statements to Eric Anderson within its August 6, 2007 email, Eric Anderson terminated a contract with the Plaintiff and demanded that the Plaintiff pay him the total amount of $18,538.00 for his services, which was $17,038.00 above and beyond the contract terms, which the Plaintiff could not afford.

32.     That the Plaintiff was not able to pay Eric Anderson the extra funds requested above and beyond the contract amount.

33.     That the Plaintiff was unable to deliver the film treatment to his investor, which prevented the investor from investing in the Plaintiff's film.


**Defendant Caused Additional Damages to the Plaintiff**


34.     That due to Eric Anderson terminating his contract with the Plaintiff, the Plaintiff lost another contract with **Carmike Cinemas, Inc**. who were going to distribute and exhibit a film of

his in 600-1,000 movie screens across the United States, which film was to be produced by the Plaintiff. Thus, the Plaintiff has lost future revenue and profits from the inability to exhibit his property.

35.    That Darren man, who operates Mann Production Company in California, produced two TV commercials for the Plaintiff. Mr. Mann was to produce the movie "The Ultimate Hit" for the Plaintiff (hereinafter "Plaintiff's film"). Prior to August 6, 2007, Mr. Mann and the Plaintiff had estimated a low budget for the movie of $250,000.00 (www.TheUltimateHit.com).

36.    That the Plaintiff had a wealthy investor, Bahia M. Bin Chambi, who was going to invest the $250,000.00 needed to produce the Plaintiff's film, which investment was contingent on Eric Anderson delivering the film treatment to the Plaintiff. Without this investor, the Plaintiff would have not been able to finance his film on his own.

37.    That **Carmike Cinemas, Inc**. agreed to enter into contract with the Plaintiff to distribute the film within their movie theaters throughout the United States, and they guaranteed that the film would be distributed and exhibited on 600-1,000 of their movie screens. Such an agreement was agreed to by Carmike Cinemas, Inc. due to the fact the Plaintiff had an investor to finance his film.

38.    That Michael Burks agreed to help bring on board the famous actor James Purefoy to play a role in the Plaintiff's film. James Purefoy stared in the 2007 film "Frankenstein".

39.    That Michael Burks was involved in the successful production of the film George and the Dragon staring Patrick Swayze and James Purefoy.

40.    That the Plaintiff was also working with Michael Burks on another move called REDEEMED. Michael Burks had obtained a commitment letter from James Purefoy and director Tom Reeves for the film REDEEMED.

41.    That Michael Burks was introducing the Plaintiff to top people in the film industry and helping the Plaintiff secure these lucrative deals.

42.    That Michael Burks was doing all of the above for the Plaintiff because the Plaintiff had an investor willing to invest in the Plaintiff's film.

43.    That the Plaintiff suffered humiliation, embarrassment, outrage and extreme emotional distress due to the Defendant's false statements to Eric Anderson.

44.    That Michael Burks informed the Plaintiff that If the Plaintiff needed more funding, Michael Burks would assist the Plaintiff in obtaining the additional funding through the production company Centurion Entertainment. However, such additional funding was contingent on the Plaintiff obtaining the initial funding from his investor, Bahia M. Bin Chambi.

45.    That due to the Plaintiff's inability to obtain the film treatment, and his inability to obtain the financing to produce his film, the Plaintiff lost the distribution contract with **Carmike Cinemas, Inc.**

46.    That the Plaintiff was unable to employ the actor James Purefoy or any other actor.

47.    That after communicating with countless film production companies and investors the Plaintiff was unable to secure other financing to pay Eric Anderson for the film treatment.

48.    That the estimated damages to the Plaintiff from the Defendant's tortious conduct exceed $1,600.000.00.

49.    That at an average price of $8 a movie ticket, and with a low estimate of 200,000 paid admissions throughout the united states within Carmike Cinemas theaters, which breaks down to only 200 paid admissions per movie screen (1,000 screens), the gross income would have been a minimum of $1,600,000.00.

50.    That the 200,000 paid admissions estimate was generated from an average sale of the super low budget B movies produced between 2006-2007 that were financed for $200,000 to $700,000 and which grossed several million dollars.

51.    That the actors for the Plaintiff's film would have been paid $150,000 with an additional 10% of the gross profits going to the staring actor (total: $310,000).

52.    That Carmike Cinemas, Inc. would have taken 50% of the balance (Total: $645,000).

53.    That the Plaintiff would have been left with about $645,000.00.

54.    That $250,000 would have been paid back to the Plaintiff's investor, Bahia M. Bin Chambi, with 10% return on the investment from the Plaintiff's 50% share ($64,500.00),

55.    That the Plaintiff would have received about $330,500.00 in profits.

56.    That since B rated films have regularly given a return in the millions of dollars, especially one that stars a well-known actor, it is reasonable to conclude that a jury at trial will agree with the above formula in calculating damages against the Defendant.

57.    That it is reasonable to conclude that a jury at trial will agree that the damages identified above, resulted from the normal course of events caused by the Defendant's defamatory email sent to Eric Anderson.

**Defendant Intentionally Concealed a Vital Material Fact**

58.    That the Plaintiff agreed to the Defendant's user agreement prior to July 25, 2007.

59.    That the Defendant did represent to the Plaintiff within its contract (hereinafter "User-Agreement") that it would not interfere with the Plaintiff's money transfers via its website located at www.Paypal.com without good cause.

60.    That the Defendant did represent to the Plaintiff within paragraph ten (10) of its User-Agreement that it would not interfere with the Plaintiff's money transfers via its website located at www.Paypal.com unless the Plaintiff violated paragraph nine (9) of the User-Agreement entitled "Restrictive Activities".

61.    That the Plaintiff was not in violation of the Defendant's User-Agreement when the Defendant blocked his account and froze his funds. Specifically, the Plaintiff did not commit fraud as the Defendant claimed in its August 6, 2007 email to Eric Anderson.

62.    That the Defendant did not place the Plaintiff on notice of any violation prior to blocking his account and freezing $1,950.00 of Plaintiff's money within its money transfer system.

63.    That the Defendant had knowingly and intentionally concealed vital material facts from the Plaintiff at the time the Plaintiff agreed to its User-Agreement that concerned false positives and the dangers associated with them, which false positives were and are produced by the Defendant's anti-fraud detection software.

64.    That Plaintiff's account was blocked and his $1,950.00 was frozen by the Defendant because its anti-fraud detection software produced a false positive.

65.    That the Defendant's anti-fraud detection software produced a false positive when Eric Anderson transferred the Plaintiff's $750.00 out of the Defendant's pooled bank account and into his own bank account.

66.    That the Defendant has inserted filters in its anti-fraud detection software that had automatically blocked the Plaintiff's and other consumers' accounts with the Defendant and froze

their funds when they attempted to transfer their funds out of the Defendant's pooled bank accounts and into their bank accounts.

67.     That the Defendant had devised a scheme to conceal false positives and the dangers associated with them from the Plaintiff and other consumers by fabricating good cause in electronic communications for the purpose of (1) inducing the Plaintiff and other consumers to enter into contract with it, (2) inducing the Plaintiff and other consumers to use its money transfer service without restraint, (3) to hold funds for 180 days to filter out and reduce its risk to fraudulent transactions to the detriment of innocent consumers, (4) to give a false impression that it was and is able to handle the millions of false positives produced by its anti-fraud detection software, (5) to wrongly convert consumers interest payments to its own use, (6) to increase its fees by charging a $10 chargeback and reversal fee when consumers turn against each other, and (7) to conceal causes of action against it when the Plaintiff and other consumers are damaged.

68.     That in justifying its actions in blocking the Plaintiff's and other consumers' accounts and freezing their funds, the Defendant utilized emails and telecommunications to fabricate good cause in blocking such accounts and freezing such funds. Which fabrication was also made to conceal that the Plaintiff and the other consumers were victims of a false positive.

69.     That many of the emails the Defendant sends to its consumers contain defamatory and inflammatory wording that causes consumers to turn against each other and motivates consumers to file complaints, requests for reversals and chargebacks. Which allows the Defendant to charge a $10 chargeback and reversal fee. And thus, enables the Defendant to increase its fees from 2.9% to 200% return on a $5.00 transaction, or about a 16% return on a $62.00 transaction.

70.     That in 2006, the Defendant reported that in its second quarter alone, it processed 143.3 million transactions. At a rate of 1% for false positives created by the Defendant's anti-fraud

detection software, the Defendant was hit with a minimum of 1.4 million false positives in the second quarter of 2006.

71. That in the first quarter of 2007, the Defendant reported that it processed 177 Million transaction, which would have created over 1.7 million false positives at a rate of 1% for false positives.

72. That the creation of millions of false positives is an accumulative amount that prevents the Defendant from effectively and timely investigating each one of them manually to determine whether they are false positives or not.

73. That the Defendant devised a scheme to manage the millions of false positives while benefiting from the Plaintiff and other consumers' detriment. For example, the Defendant fabricates good cause to consumers by utilizing electronic communications to hold consumers' funds for 180 days, which it uses to filter out the fraudulent transactions so it does not have to manually investigate each an every one of them. The Defendant then wrongly converts the innocent consumers' interest payments to its own use and charges the innocent consumers chargeback and reversal fees after the innocent consumers' clients start requesting chargebacks and reversals.

74. That in the first quarter of 2007, the Defendant reported that its total money transfers were $11 Billion, which consisted of 177 million transaction, which means the average transaction was about $62. Thus, with a 1% false positive rate on 177 million transactions (1.7 million false positives), and upon information and belief, the Defendant had in and around $105,400,000.00 affected by false positives in the first quarter of 2007. At a rate of 5% interest from the Defendant's bank, the Defendant wrongly converted in and around $439,000.00 per month of interest payments belonging to honest consumers. This calculation doesn't include all the funds being held by the Defendant from other quarters for 180 days, which will bring the monthly

conversion rate higher. It is estimated that the Defendant has been wrongly converting millions of dollars in interest payments each month from honest consumers who have been victimized by the Defendant's anti-fraud detection software that continues to produce millions of false positives. This is in addition to the chargeback and reversal fees wrongly charged to consumers victimized by false positives.

75.    That in the worst case, the Defendant's fabrication of good cause, by sending out defamatory and inflammatory emails to consumers, motivated a number of consumers to turn against each other, which caused two people, Sarah Holland and Matt Miller, to be falsely arrested and charged with Felony Internet Fraud.

76.    That in 2004, Matt Miller, who works for homeland security, was falsely arrested and charged with felony Internet fraud when one of his clients filed a criminal complaint against him after receiving Defendant's defamatory and inflammatory email that accused him of fraud.

77.    That in 2007, Sara Holland, a single mother of three and a volunteer firefighter, was falsely arrested due the Defendant's email that was sent to her client accusing her of fraud, Which caused her client to file a criminal complaint against her. She lost her job and had to pay $5,000.00 in bail to get out of jail.

78.    That in 2007, the Defendant also sent a defamatory and inflammatory email to the Plaintiff's business associate, Eric Anderson, that accused the Plaintiff of fraud and caused the Plaintiff to suffer serious damages.

79.    That on July 31, 2007, after the Plaintiff's account with the Defendant was blocked and his funds withheld; but before the Plaintiff filed a lawsuit against the Defendant in New York, the Plaintiff called the Defendant's customer service department and spoke to an employee of the Defendant named "Rene".

80.    That the Defendant's customer service representative informed the Plaintiff that his account was blocked by their anti-fraud detection software and that there was a limited amount of employees who review blocked accounts to identify false positives, which would result in the release of the Plaintiff's account.

81.    That the Defendant's customer service representative informed the Plaintiff that his account was blocked due to an old account, which had a debit of $695.00. This explanation was not only devoid of any proof of such debt; but contradicted the Defendant's statements to Eric Anderson in its email dated August 6, 2007 that stated the Plaintiff had defrauded someone.

82.    That a customer service representative of the Defendant requested that the Plaintiff mail the $695.00 via the U.S. Postal service since the old account was blocked.

83.    That after the Plaintiff was informed about this alleged outstanding balance, he investigated the matter further and uncovered that due to the Defendant's intentional and fraudulent attempts to avoid bank charges, the Defendant intentionally went into the Plaintiff's bank account to collect the $695.00 instead of using his debit card as the Plaintiff instructed the Defendant to do.

84.    That the multiple attempts by the Defendant to collect the $695.00 from his bank account instead of his debit card that was attached to another account, which includes one other similar incident uncovered so far, caused the Plaintiff's bank account to be charged over $1,000.00 in overdraft fees.

85.    That because the Plaintiff's bank charged him one single lump sum with the Defendant's name noted on it, Paypal, the Plaintiff believed that the Defendant had already collected its funds and he did not carefully scrutinize the charge to identify it was, in fact, an overcharge fee that was originating from his other account.

86.    In 2005, 28 U.S. Attorney Generals throughout the United States sued the Defendant and alleged that the Defendant was going into consumers' bank accounts instead of using their credit or debit cards as instructed. Even after agreeing not to commit this wrongful act against consumers in a 2006 settlement with the Attorney Generals, the Defendant violated that agreement when it attempted to collect funds from the Plaintiff's bank account instead of his debit card as instructed.

87.    That the Defendant is liable to the Plaintiff for over $1,000.00 in overdraft fees caused by its wrongful conduct and the Plaintiff owes no money to the Defendant.

88.    That, upon information and belief, the Defendant had sold the rights to the $695.00 debt to a collection agency prior to it sending the August 6, 2007 defamatory email to the Plaintiff's business associate, Eric Anderson.

89.    That prior to agreeing to the Defendant's User-Agreement, the Plaintiff had no knowledge of false positives and the dangers associated with them.

90.    That it was not until the Plaintiff uncovered a book by the Defendant's ex-employee, Eric M. Jackson, which identified false positives and some of the dangers associated with them that the Plaintiff started to understand how false positives affected the Defendant's money transfer service.

91.    That the ex-interim vice President of marketing, Mr. Eric M. Jackson, who was employed by the Defendant admitted in his book published in 2004 and entitled "The Paypal Wars, Battles with eBay , the Media, the Mafia and the Rest of Planet Earth" that quote: "**"Paypal's success in fighting back fraud also produced false positives that inconvenienced honest users."** And that **"as bad as the false positives experience for innocent users and resulting negative publicity for the company might have been, it was an acceptable cost"** unquote.

92.    That the Defendant has been using the excuse of fighting fraud to commit fraud against the Plaintiff and other consumers, and at the same time, reaping a financial benefit to the detriment of the Plaintiff and other consumers.

93.    That if the Defendant disclosed the fact about false positives to the Plaintiff, the Plaintiff would have never used the Defendant's money transfer service to pay Eric Anderson. Nor would the Plaintiff have allowed the Defendant to withdraw $1,950.00 from his Wachovia bank account.

94.    That there are millions of consumers that have no knowledge of the Defendant's false positives and the dangers associated with them. Nor are these consumers aware that they may, at any time, be victimized by a false positive that could cause them to suffer great harm.

95.    That in its concealment of false positives from the Plaintiff and other consumers, the Defendant sent emails that requested verification prior to releasing their funds. When such verification was provided to the Defendant, the Defendant requested additional verification and when the additional verification was provided to the Defendant, the Defendant then issued a final refusal informing the Plaintiff and other consumers that their funds would be held for 180 days.

**PAYPAL BOILER PLATE EMAIL:**

"As part of our security measures, we regularly screen activity in the PayPal system. During a recent screening, we noticed an issue regarding your account. We are very sorry, but in accordance with the PayPal User Agreement, we are no longer able to have you as a customer. We have had to close your account for the following reason: Recent account activity has made it necessary for us to collect additional verification information. We apologize for any inconvenience this account closure may cause. You may still log in to PayPal to view your transactions history and personal information for a limited time. To review your account and some or all of the information that PayPal used to make its decision to limit your account access, please visit the Resolution Center. If, after reviewing your account information, you seek further clarification regarding your account access, please contact PayPal by visiting the Help Center and clicking "Contact Us". The funds in your account will be held for 180 days, due to the risk of outstanding chargebacks and complaints. After 180 days, any remaining funds will be available to you for withdrawal. We thank you for your prompt attention to this matter. Sincerely, PayPal Account Review Department PayPal"

96.    That although the Defendant states in its email that "**To review your account and some or all of the information that PayPal used to make its decision to limit your account access, please visit the Resolution Center**", the Defendant did not and does not provide any information that discloses the reason why an account has been blocked and the funds frozen. The Defendant only provides an ability to upload the requested verification.

97.    That Sherri Frost built a successful eBay business over four years with a near perfect feedback rating. She became a victim of the Defendant's false positives and scheme. Her frozen funds prevented her from paying her drop shippers. Her buyers filed complaints, requested chargebacks and reversals. In addition, they posted negative feedback on eBay accusing her of fraud, which destroyed her business.

98.    That on average, thousands of consumers have suffered damage to their reputation, loss of their business, loss of their products, loss of their principal funds, loss of their interest payments and loss of their causes of action against the Defendant due to the false positives and the Defendant's fraudulent scheme to conceal them while reaping benefits.

99.    That the following consumers are some of the thousands of consumers who were victims of the Defendant's false positives and scheme: Payment from Andrew Karas  Jul. 8, 2005, $250.00 USD; Payment to Mike Phelps  Jul. 7, 2005, $500.00; Payment to Billy's Bass Place Jul. 6, 2005 $39.95; Payment to Tracey Cruz  Jul. 6, 2005 $1,450.00 USD; Payment from Carlos Rojas  Jul. 6, 2005  $2,288.00 USD. The Defendant sent each of these consumers an email that fabricated good cause for freezing their funds.

100.    That the Defendant has even victimized numerous elderly consumers. For example, after Barbara Hopper, who is 65 years old, became a victim of a false positive produced by the Defendant's anti-fraud detection software in and around July 2007, Ms. Hopper became so desperate for help that she turned to the Internet forum boards where she posted a desperate

plea for help by posting a message to the public that stated quote: "i'm 65 yrs. old and i withdrew $500.00 of my own money. they say im laundering money. no one has made any complaints against me or my acct. they treat me hoorible when i try to striaghting this out. a class action law suit is in order. please help me."

101.    That the problem of false positives being produced by the Defendant's anti-fraud detection software is so serious that a supporter of the presidential candidate Ron Paul was affected by the Defendant's false positives in 2008.

102.    That the supporter of presidential candidate Ron Paul called the 'Granny Warriors' (hereinafter "supporter") was collecting donations via the Defendant's money transfer service to pay for a recount of the New Hampshire votes.

103.    That when the supporter attempted to transfer the donated monies out of the Defendant's pooled bank account and into its own bank account to pay the New Hampshire Secretary of State, the Defendant's anti-fraud detection software created a false positive and froze $55,600.00 on or before January 15, 2008, which caused the supporter to borrow money to meet the deadline for the recount.

104.    That when the Plaintiff spoke to a principal of the "Granny Warriors", she informed the Plaintiff that she did not know why the funds were frozen and that she had no knowledge of false positives and how they affect her account with the Defendant.

105.    That the Defendant has joined teams with its controlling company, eBay, and together they have made it mandatory to use the Defendant's money transfer service on eBay. In addition, many other Internet websites only use the Defendant's money transfer services with no alternative method of paying, which forces a consumer to use the Defendant's money transfer service.

106.   That with the knowledge of false positives, a consumer has the ability to protect themselves from great financial loss by not risking large amounts of money with the Defendant.

### Defendant's Continued Misconduct against Consumers

107.   That the Defendant has a history of bad conduct in harming consumers and having a disregard for the law to further its own profit agenda over the well-being of California consumers and all consumers Worldwide.

108.   That the Defendant was sued in 2002 under caption *Comb, et al vs. Paypal, Inc*. **docket 02-1227** within The United States District Court for the Northern District of California. The complaint alleged that because the Defendant "**exceeded its operational capacity**" it was "**unable to maintain and manage accounts in a manner required by applicable state and federal legislation**." And the Defendant refused "**to provide details or explanations with respect to its investigations**" of frozen accounts. In addition, the Complaint alleged that when consumers where able to contact the Defendant's "**representatives, the representatives are combative and rude, refuse to answer specific questions, hang up in the middle of phone calls, provide "canned" responses to individualized problems, require customers to fax information while providing inoperative fax numbers, and refuse to allow customers to speak to managers.**" Judge Fogel, who presided over this lawsuit, issued a ruling that stated "**the Court concludes that the User Agreement and arbitration clause are substantively unconscionable**"

109.   That again, in 2004, the Defendant was sued this time by New York State's Attorney General, Eliot Spitzer, who alleged that the Defendant's User Agreement "**misrepresented certain terms and conditions to its members, which included statements that it provided its**

members "the rights and privileges expected of a credit card transaction. In fact, members were often denied these rights by the Defendant."

110.   That yet again, in 2005, the Defendant was sued in a class action lawsuit by 28 Attorney generals from Alabama, Arizona, California, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Minnesota, Mississippi, Nebraska, Nevada, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Vermont, Washington and West Virginia. The 28 Attorney Generals accused the Defendant of "hidden fees, misrepresentations, as well as problems with account settings dealing with source of funding that resulted in monies being withdrawn from Defendant Paypal's members' bank account although other payment sources were preferred."

111.   That yet again, the Defendant was sued in a class action lawsuit in 2005 within the United States District Court Eastern District of New York under caption *Mike Steele, et al vs. Paypal and Essex Technology Group, Inc.* docket 05-01720 based on allegations of "deceptive trade practices, fraudulent inducement, misrepresentation and breach of contract."

112.   That although the Defendant has been sued multiple times in addition to the above lawsuits, the Defendant continues to engage in bad conduct against its consumers in an effort to increase its flow of profits. The Defendant has taken the stance that these lawsuits against it are just a part of doing business, and the Defendant resolved each of the lawsuits out of court to then only continue its bad conduct.

## FIRST CAUSE OF ACTION
(Fraudulent Misrepresentation)

113.   That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 112 with the same force and effect as if more fully set forth herein.

114.   That the Defendant made representations to the Plaintiff within its User-Agreement that if the Plaintiff utilized its services to make payments to third-parties, the Defendant would forward the funds to such third-parties and would not wrongly interfere with such payments without good cause.

115.   That the Defendant intended the Plaintiff to have reliance on its representation within its User-Agreement when the Plaintiff agreed to its terms.

116.   That in reliance of Defendant's representations, the Plaintiff utilized the Defendant's service to send funds to third-parties.

117.   That contrary to Defendant's assurance that it would not wrongly interfere with Plaintiff's fund transfers, the Defendant on or about July 25, 2007 did wrongly withhold Plaintiff's funds and had wrongly refused to release the funds to the Plaintiff after the Plaintiff requested that the Defendant release his funds.

118.   That the Plaintiff did not violate the Defendant's User-Agreement nor did the Plaintiff commit fraud.

119.   That the Defendant had no intentions of honoring its representations within its User-Agreement to the Plaintiff.

120.   That the Defendant represented to the Plaintiff that if he provided additional verification of his identify, the Defendant would release his funds.

121.   That the Plaintiff, having reliance on the Defendant's statements, provided the additional verification requested by the Defendant.

122.   That the Defendant had no intentions of honoring its representations to the Plaintiff that it would release his funds if he provided the requested verification.

123.   That after the Plaintiff provided the Defendant with the requested verification; the Defendant did fail to release the Plaintiff's funds and had continued to refuse to release such funds to the Plaintiff.

124.   That once the Plaintiff filed a lawsuit in New York State against the Defendant, the Defendant deposited the Plaintiff's funds back into his bank account at Wachovia Bank via the Plaintiff's debit card ending in ...9024.

125.   That the Defendant had wrongly converted the interest earned from the Plaintiffs money within the Defendant's pooled bank account to its own use.

126.   That at the time the Defendant had entered into contract with the Plaintiff, it had knowledge that its anti-fraud detection software could create a false positive against the Plaintiff and interfere with Plaintiff's fund transfers; but the Defendant intentionally and maliciously failed to disclose this fact to the Plaintiff to induce him to enter into contract with it and to use its money transfer service without restraint.

127.   That the Defendant's anti-fraud detection software did create a false positive and did wrongly interfere with the Plaintiff's funds by blocking the Plaintiff's account and freezing his funds.

128.   That the Defendant did refuse to release the Plaintiff's funds to his business associate, Eric Anderson.

129.   That due to the Defendant's fraudulent misrepresentation, the Plaintiff has suffered general and special damages.

130.   By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

## SECOND CAUSE OF ACTION
(Fraudulent Concealment)

131.  That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 130 with the same force and effect as if more fully set forth herein.

132.  That the Defendant did represent to the Plaintiff within its User-Agreement that it would not interfere with the Plaintiff's fund transfers without good cause.

133.  That the Defendant had knowledge of the falsity of its representations within its User-Agreement that it would not interfere with the Plaintiff's money transfers without good cause.

134   That the Defendant did intentionally and maliciously conceal material facts concerning false positives and the dangers associated with them from the Plaintiff, which could have and did interfere with the Plaintiff's money transfers without good cause.

135.  That the Defendant intentionally and maliciously concealed false positives and the dangers associated with them from the Plaintiff to gain the Plaintiff's reliance on its representations within its User-Agreement that it would not interfere with the Plaintiff's money transfers without good cause.

136.  That the Plaintiff had reliance on the Defendant's representations within its User-Agreement due to its well-known and dominant position within the market.

137.  That in furtherance of its concealment of false positives, the Defendant fabricated good cause for blocking the Plaintiff's account and freezing his funds by defaming the Plaintiff to his business associate, Eric Anderson.

138.  That due to the Defendant's fraudulent concealment, the Plaintiff suffered general and special damages.

139.  By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

## THIRD CAUSE OF ACTION
### (Fraudulent Inducement)

140.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 139 with the same force and effect as if more fully set forth herein.

141.    That the Defendant did represent to the Plaintiff within its User-Agreement that it would not interfere with the Plaintiff's fund transfers without good cause.

142.    That the Defendant had knowledge of the falsity of its representations within its User-Agreement that it would not interfere with the Plaintiff's fund transfers without good cause.

143.    That the Defendant did intentionally and maliciously conceal material facts concerning false positives from the Plaintiff for the purpose of inducing the Plaintiff to enter into contract with it and to use its money transfer service without restraint.

144.    That the Plaintiff had reliance on the Defendant's representations due to its well-known and dominant position within the market.

145.    That due to the Defendant's fraudulent inducement, the Plaintiff has suffered general and special damages.

146.    By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

## FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation)

147.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 146 with the same force and effect as if more fully set forth herein.

148.    That the Defendant had a superior knowledge of false positives and the dangers associated with them, and thus, had a duty to disclose this fact to the Plaintiff prior to him agreeing to its User-Agreement.

149.   That the Defendant made a false representation within its User-Agreement that the Defendant would not interfere with the Plaintiff's money transfers without good cause that it should have known was incorrect because the possibility that the Plaintiff could have been victimized by a false positive and his funds automatically frozen by its anti-fraud detection software was foreseeable.

150.   That the Defendant had knowledge that the representations made within its User-Agreement would be relied on by the Plaintiff in deciding whether to agree to such User-Agreement.

151.   That the Plaintiff did have reliance on the representations made in the Defendant's User-Agreement, which caused the Plaintiff to agree to the Defendant's User-Agreement.

152.   That due to the Plaintiff's reliance on the Defendant's false representation within its User-Agreement, the Plaintiff was prevented from taking steps to protect himself and was eventually harmed.

153.   That due to the Defendant's negligent misrepresentation, the Plaintiff has suffered general and special damages.

154.   By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

### FIFTH CAUSE OF ACTION
(Defamation)

155.   That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 154 with the same force and effect as if more fully set forth herein.

156.   That the Defendant made intentional and malicious false statements to Eric Anderson that the Plaintiff defrauded someone.

157.    That the Defendant made intentional and malicious false statements to Eric Anderson that the Plaintiff defrauded someone for the purpose of fabricating good cause for blocking Plaintiff's account and freezing his funds.

158.    That the Defendant knew at the time it made such statements to Eric Anderson that those statements were false.

159.    That the Defendant did, with intent and malice, make false statements to Eric Anderson with full knowledge that the Plaintiff would be defamed and his reputation would be damaged.

160.    That the Defendant did make false statements to Eric Anderson with reckless disregard as to the truth of the statements and whether the statements defamed the Plaintiff.

161.    That Eric Anderson did have reliance on the Defendant's statements due to its well-known and dominant position within the market.

162.    That due to the Defendant's defamatory statements to Eric Anderson, the Plaintiff suffered general and special damages.

163.    By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

## SIXTH CAUSE OF ACTION
### (Defamation Per Se)

164.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 163 with the same force and effect as if more fully set forth herein.

165.    That the Defendant made intentional, malicious and defamatory statements against the Plaintiff to Eric Anderson that the Plaintiff defrauded someone.

166.    That the Defendant made intentional, malicious and defamatory statements against the Plaintiff to Eric Anderson that constitutes a violation of California's Penal Code § 484.

167.    That the Defendant knew, at the time it made the statements to Eric Anderson, they were false.

168.    That the Defendant did, with intent and malice, make such false statements to Eric Anderson in its attempt to create good cause for blocking Plaintiff's account and freezing his funds.

169.    That the Defendant did act negligently in failing to learn whether the statements made to Eric Anderson were false and defamed the Plaintiff prior to making such statements.

170.    That the Plaintiff suffered embarrassment, humiliation, outrage and extreme distress due to the Defendant's defamatory statements against him to Eric Anderson.

171.    That due to the Defendant's defamatory statements to Eric Anderson accusing the Plaintiff of committing a crime, the Plaintiff has suffered general and special damages.

172.    By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

## SEVENTH CAUSE OF ACTION
(Conversion)

173.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 172 with the same force and effect as if more fully set forth herein.

174.    That the Defendant did wrongly gain possession of the Plaintiff's funds.

175.    That the Defendant did wrongly refuse to forward Plaintiff's funds to Plaintiff's business associate, Eric Anderson.

176.    That the Defendant did wrongly refuse to return Plaintiff's funds after Plaintiff requested such funds from the Defendant.

177.    That the Defendant did wrongly convert Plaintiff's interest payments to its own use, and has refused to release such interest to the Plaintiff after the Plaintiff requested its release.

178.    That due to the Defendant's wrongful conversion of the Plaintiff's interest payments to its own use, the Plaintiff has suffered general damages.

179.    By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).


### EIGHT CAUSE OF ACTION
(Tortious Interference with Business Relationship)

180.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 179 with the same force and effect as if more fully set forth herein.

181.    That the Plaintiff did have an economic relationship with his business associate, Eric Anderson, which gave the Plaintiff a benefit valued at SEVENTEEN THOUSAND AND THIRTY EIGHT DOLLARS ($17,038.00).

182.    That the Defendant did have knowledge of the economic relationship between the Plaintiff and his business associate due to the fact the Defendant was in possession of a copy of the contract between the Plaintiff and Eric Anderson while the Defendant was in possession of the Plaintiff's funds.

183.    That the Defendant did with intent and malice interfere with Plaintiff's business relationship with his business associate by failing to forward the Plaintiff's funds to Eric Anderson and false accusing the Plaintiff of fraud.

184.    That the Defendant did with reckless disregard interfere with Plaintiff's business relationship with his business associate by failing to forward the Plaintiff's funds to Eric Anderson and falsely accusing the Plaintiff of fraud.

185.    That due to the Defendant's interference, the Plaintiff's contract and business relationship with his business associate, Eric Anderson, was terminated, and the Plaintiff lost the contract benefit of SEVENTEEN THOUSAND AND THIRTY EITGHT DOLLARS ($17,038.00).

## ELEVENTH CAUSE OF ACTION
(Violation of the Rico Act, 18 U.S.C. §§ 1961)

202.  That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 201 with the same force and effect as if more fully set forth herein.

203.  That the defendant violated the RICO Act by engaging in two or more criminal acts as described under 18 U.S.C. §1962 (Prohibited activities) against the Plaintiff and other consumers throughout the United States.

204.  That the Defendant devised a scheme to manage millions of false positives by concealing the false positives from the Plaintiff and other consumers while reaping financial benefits to the Plaintiff's and consumers' detriment.

205.  That the defendant committed a pattern of criminal acts as part of its scheme to conceal false positives and the dangers associated with them from the Plaintiff and millions of consumers.

206.  That in furtherance of its scheme, the Defendant fabricated good cause in blocking the Plaintiff's and other consumers' accounts and freezing their funds.

207.  That in furtherance of its scheme, the Defendant wrongly converted to its own use the interest payments earned from the Plaintiff's funds and from the funds of other consumers that were held in the Defendant's pooled bank accounts when it had knowledge that they were victims of a false positive.

208.  That in furtherance of its scheme, the Defendant wrongly charged Eric Anderson and other consumers' chargeback and reversal fees when it had knowledge that they were victims of a false positive.

209.  That the Defendant is continuing its fraudulent scheme with other consumers and it is wrongly continuing to convert consumers' interest payments to its own use and it is continuing

to charge fees for chargebacks and reversals when it has knowledge that such consumers were victims of a false positive.

210.    That the Defendant repeatedly engaged in this fraudulent scheme against the Plaintiff and other consumers and continues to engage in this fraudulent scheme by utilizing electronic communications (email and telecommunications), which constitutes wire fraud pursuant to 18 U.S.C. § 1343.

211.    That in furtherance of its fraudulent scheme, the Defendant utilized electronic communications by posting a User Agreement on its website at www.Paypal.com to the Plaintiff and millions of other consumers that was and still is devoid of any mention of false positives and the dangers associated with them.

212.    That on July 31, 2007, and in furtherance of its scheme, the Defendant did have its customer service employee, Rene, utilize telecommunications in California to falsely inform the Plaintiff in New York that his account was blocked and his funds frozen due to a past due balance of $695.00 when, in fact, the Plaintiff's account was blocked and his funds frozen due to a false positive created when Eric Anderson transferred the Plaintiff's funds out of the Defendant's pooled bank account, and upon information and belief, the right to the $695.00 debt had previously been sold by the Defendant to a collection agency.

213.    That on August 6, 2007, and in furtherance of its scheme, the Defendant did utilize electronic communications from California in the form of an email sent to Eric Anderson in Illinois that falsely informed Eric Anderson that the Plaintiff's funds were fraudulent, that the Defendant conducted an investigation, which concluded the Plaintiff's funds were "indeed" fraudulent and that the Defendant had to give the funds back to the person the Plaintiff stole them from.

214.    That on or about July 25, 2007, and in furtherance of its scheme, the Defendant did utilize electronic communications from California to New York in the form of an email and falsely informed Web Scribble Solutions, Inc. why the Plaintiff's funds were frozen.

215.    That on or about July 25, 2007, and in furtherance of its scheme, the Defendant did utilize electronic communications from California in the form of an email sent to the Plaintiff in New York, which falsely informed the Plaintiff that if he submitted additional verification of his identity, the Defendant would release his funds.

216.    That in furtherance of its scheme, the Defendant has and continues to utilize electronic communications to falsely inform other consumers throughout multiple States within the United States that if they submit additional verification of their identity, their funds would be released.

217.    That in furtherance of its scheme, the Defendant concealed false positives and the dangers associated with them from the Plaintiff and millions of other consumers to induce them to enter into contract with it and to use its money transfer service without restraint.

218.    That the Defendant has utilized the ill-gotten financial gains from its fraudulent scheme to invest in other companies. Specifically, the Defendant used the ill-gotten financial gains to acquire Fraud Sciences, a private overseas company.

219.    That as a corporation, which repeatedly engaged in a pattern of fraud over multiple years against the Plaintiff and other consumers and continues to engage in a pattern of fraud against other consumers as described above, the Defendant is considered to be an enterprise pursuant to 18 U.S.C. §1961(4) that has violated the RICO Act and is continuing to violate the RICO Act as defined by federal law pursuant to 18 U.S.C. § 1961(1).

220.    That due to the Defendant's fraudulent scheme, the Plaintiff has suffered both general and special damages.

221.    By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

**Wherefore**, Plaintiff demands a jury trial and prays for judgment against the Defendant as follows:

1) Liability against the Defendant, and

2) Rescind the defendant's contract, and

3) Enjoin the defendant from further withholding Plaintiff's interest payments, and

4) Enjoin the defendant from further concealing false positives and the dangers associated with them from all consumers, and

5) Enjoin the defendant from using any damaging words such as "suspicion of fraud", "suspicious activities" or "fraud" within any consumer communications prior to a valid investigation being concluded, and

6) Compensatory damages, consisting of general and special damages, in the amount of TEN MILLIONS DOLLARS ($10,000,000.00), and

7) Treble damages against the defendant, and

8) Punitive damages against the Defendant in the amount of ONE HUNDRED MILLION DOLLARS ($100,000,000.00), and

9) Costs and for such other and further relief as this Court deems just and proper.

Dated: New York, NY
      May 19, 2008

B. David Mehmet
Plaintiff

To: Mr. Oleg Cross
    Cooley Godward Kronish, LLP.
    4401 Eastgate Mall
    San Diego, CA 92121
    (858) 550-6000
    (858) 550-6420

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

B. David Mehmet,

      Plaintiff,

     -against-

Paypal, Inc.

      Defendant.

Civil Case No. 5:08-01961 (RS) (RMW)

**VERIFICATION OF COMPLAINT**

I, Badisse David Mehmet, declare:

1. I am the Plaintiff in the above captioned matter. Amended *BM*

2. I verify that the foregoing Verified Complaint was duly prepared by me and that the allegations therein are true and correct to the best of my knowledge, information, and belief.

3. I declare under the penalty of perjury that the foregoing is true and correct.

Executed in New York, N.Y. on May 19th, 2008.

**ON THIS DAY OF** _May 19th_ **IN THE YEAR OF 2008, THE ABOVE SIGNED PERSON BADISSE DAVID MEMET PERSONALLY KNOWN, WHO, BEING DULY SWORN, DID EXECUTE THE FOREGOING VERIFICATION AND DID SO AS HIS FREE ACT AND DEED. IN WITNESS WHEREOF, I HEREUNTO SET MY HAND AND OFFICIAL SEAL**

        **NOTARY**

Respectfully submitted

B. David Mehmet
Plaintiff
130 Church Street, Ste 251
New York, NY 10007
Telephone: (212) 920-7602
Facsimile: (212) 387-9387
Email: David@AppellateTerm.com

JEAN-PAUL GRECZI
Notary Public, State of New York
No. 01GR6119330
Qualified in Queens County
Commission Expires November 29, 2008

B. David Mehmet
130 Church Street
New York, NY 10007
Tele: (212) 920-7602
Fax: (212) 387-9387
Email: David@AppellateTerm.com

Plaintiff Pro Se

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| B. David Mehmet,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Paypal, Inc.<br>　　　　　　Defendant. | Case No. 5:08-cv-01961 (RMW)<br><br>**NOTICE OF<br>CROSS-MOTION**<br><br>DATE:　June 27, 2008<br>TIME:　9:00 a.m.<br>CTRM:　6, 4th Floor<br>JUDGE:　Hon. Ronald M. Whyte |

**PLEASE TAKE NOTICE** that on June 27, 2008, at 9:00 a.m., in Courtroom 6, Fourth Floor of the above entitled Court, located at 280 South 1st Street, San Jose California, and pursuant to Rule 15 and Rule 56 of the Federal Rules of Civil Procedure, the Plaintiff, Pro Se, will move the Court for an order granting partial summary judgment and to amend the Amended Complaint. The grounds for partial summary judgment is that there are no genuine issues of material fact as to the defamation and defamation per se causes of action, and the Plaintiff is entitled to judgment as a matter of law on liability against the Defendant pursuant to Rule 56(d)(2). In support of this cross-motion, the Court is respectfully referred to the accompanying memorandum of points and authorities, Plaintiff's affidavit, and attached exhibits.

Respectfully submitted,

B. David Mehmet

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | | |
|---|---|---|
| B. David Mehmet, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:08-cv-01961 (RMW) |
| | ) | |
| vs. | ) | **PLAINTIFF AFFIDAVIT** |
| | ) | |
| Paypal, Inc. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**B. David Mehmet**, states the following to be true under the penalty of perjury:

1.    That I have personal knowledge of the facts stated herein and I am making the following statements in opposition to the Defendant's motion to dismiss, in support of my cross-motion for partial summary judgment against the Defendant on liability for defamation and defamation per se pursuant to Rule 56(d)(2) of the Fed. R. of Civ. P. and to amend the Amended Complaint, if necessary, pursuant to Rule 15(a)(1) of the Fed. R. of Civ. P. Furthermore, I respectfully request that the Defendant's motion and my cross-motion be made on submission and without oral arguments as it would be a burden on me to travel from the State of New York to California to repeat arguments that are already stated in my opposition and moving papers. At the least, I would respectfully request that oral arguments be scheduled by telephone if the Court deems oral arguments to be necessary. **<u>See proposed Order attached hereto as exhibit "H"</u>**.

## FACTS

2.      That on April 15, 2008, the initial Complaint was properly served on the Defendant. Thereafter, a Verified Amended Complaint was served on the Defendant pursuant to Rule 15(a)(1) of the Fed. R. of Civ. P. as the Defendant has not answered the initial Complaint. **See a copy of the initial Complaint, Amended Complaint  and certificates of service attached hereto as exhibit "A"**

3.      That the Defendant alleges in its MEMORANDUM OF PONTS AND AUTHORITIES (Hereinafter "memo. of law") in support of its motion to dismiss that I knowingly "failed to rectify" an old balance in a separate account with the Defendant and that this was the reason why the Defendant "suspended" (hereinafter "blocked") my account and froze my funds.

4.      That I had a right by contract with the Defendant to have two accounts with the Defendant.

5.      That contrary to the Defendant's claims, I never opened an account in anyone else's name besides my own. My wife and my mother were doing business with me and we were splitting the profits from a business bank account. They had their own Paypal accounts that were connected to the business bank account.

6.      That I never fabricated any personal information I gave the Defendant in opening any accounts.

7.      That to the best of my knowledge, I never had more then two accounts open at any one time with the Defendant.

8.      That the Defendant intentionally and knowingly developed software features that allows anyone to open additional accounts with the same personal information even if they had a prior account blocked with the same personal information.

9.      That the Defendant has the ability to stop consumers from opening up additional accounts with the same personal information; but the Defendant intentionally and knowing allows anyone to open additional accounts even after their accounts have been blocked. The Defendant now comes into Court complaining about its own business practices and attempting to use its own business practices as a defense to its wrongful conduct against me and other consumers.

10.     That I, my wife and mother were doing business with eBay when the Defendant partnered with eBay and engaged in conduct to force us to use the Defendant's money transfer service by displaying messages on an eBay payment page for our customers that scared our customers by telling them that we did not use the Defendant's money transfer service and that they were at risk for fraud. The Defendant with eBay further placed our customers in fear by telling them on the eBay payment page that if they purchased our products without utilizing the Defendant's money transfer service, our customers would not receive $200 in protection. The Defendant with eBay further forced us to use the Defendant's money transfer service by bundling the Defendant's payment service with eBay's BUY IT NOW fixed price feature. eBay refused to allow us to list any products via the BUY IT NOW feature unless we selected the Defendant's money transfer service as a payment source for our customers.

11.     That I never committed fraud against the Defendant or anyone else, and the Defendant has failed to prove that I have committed fraud.

12.     That contrary to the Defendant's claims that my account was blocked due to my old account, my account was actually automatically blocked by the Defendant's anti-fraud detection software that created a false positive when Eric Anderson transferred $750.00 of the funds I sent him out of the Defendant's pooled bank account and into his personal bank account. The Defendant then, without notice to me, fabricated good cause by defaming me in an August 6, 2007 email to Eric Anderson in explaining why his account was blocked and his funds frozen.

13.     That it was due to the Defendant's fraudulent attempts to avoid bank card fees in collecting the $695.00 from my debit card that caused the negative balance in my old account with the Defendant.[1]

14.     That instead of the Defendant collecting the $695.00 from my debit card as I instructed the Defendant to do, the Defendant intentionally and without authority went directly into my bank account, which was not connected to my debit card, to collect the funds to avoid bank card fees. **See Defendant's boilerplate email and my response attached hereto as exhibit "B".**

15.     That when I briefly reviewed my bank records, I identified that I was charged a large amount of money and the bank records had the Defendant's name, Paypal, noted on the charge. I did not give it a second thought that the charges were overdraft fees nor did I notice it was coming out of my other account. I believed the Defendant had collected its funds.

16.     That I was not aware that the Defendant had submitted multiple attempts to collect the owed funds directly from my bank account instead of from my debit card as I instructed it to do. Nor did I know that it was possible for the Defendant to submit multiple payment requests to my bank on a single transaction that would raise the overdraft fee above and beyond $35.00. Which made me believe that the Defendant had been paid. My bank later informed me that the Defendant intentionally bypassed the bank's security features that blocks identical payment requests. The Defendant did this by cleverly and electronically changing the payment codes on its payment requests to my bank that caused my bank's computer system to treat each payment request from the Defendant as a NEW payment request. So, every time my bank rejected the Defendant's request for payment and noting the rejection as "insufficient funds", the Defendant

---

[1] The Defendant pays no bank fees when it collects funds directly from a bank account. However, the Defendant has to pay bank fees if a credit card or debit card is used to fund a money transfer through its system.

had its software programmed to change the payment code and resubmit it to my bank. In turn, my bank charged me an overdraft fee for each and every payment request received from the Defendant for that single transaction.

17.    That my bank informed me that this practice engaged by the Defendant in bypassing the bank's security systems makes it impossible for the bank to stop the Defendant from causing multiple overdraft fees on a single transaction nor to prevent the Defendant from collecting funds from consumers' bank accounts even when the consumers place a bank stop on the funds. Which Placed me and millions of consumers in serious danger from having money withdrawn from our bank accounts by fraudsters utilizing the Defendant's money transfer service even when we placed a bank stop payment on a suspected fraudulent transaction.  And because the Defendant was wrongly bypassing consumers' credit cards, and going directly into their accounts without authorization, consumers were wrongly losing fraud protection via their credit cards and losing the ability to initiate a charge back.

18.    That I have uncovered, so far, that the Defendant caused me to suffer over $1,000 in overdraft fees. After reviewing my past bank records for this lawsuit, I uncovered that this was not the first time that the Defendant wrongly went into my bank account when I specifically instructed it to use my debit card. Nor was I the only consumer that the Defendant perpetrated this wrongful conduct against. In a separate and single transaction, I uncovered that the Defendant caused me to be charged over $500.00 in overdraft fees by its deliberate bypassing of my bank's security system to submit multiple payment requests. Therefore, the Defendant is liable to me for over $1,000 in overdraft fees alone and no money is owed to the Defendant on the old account due to its wrongful conduct in bypassing my bank's security systems in its attempt to avoid bank card fees it would have sustained if it used my debit card.

19.    That in 2005, 28 U.S. Attorney Generals around the United States sued the Defendant and alleged that the Defendant had quote: "**problems with account settings dealing with source of funding that resulted in monies being withdrawn from Defendant Paypal's members' bank account although other payment sources were preferred**" Unquote. In 2006, the Defendant paid $5.2 Million to settle the lawsuit with the Attorney Generals and agreed to refrain from wrongfully collecting funds from a consumer's bank account when another payment source was to be used. However, the Defendant violated its settlement agreement of 2006 with the Attorney Generals when it went into my bank account instead of using my debit card as I instructed it to do.

20.    That upon information and belief, the Defendant had already sold its right to the $695.00 debt in the old account to a collection agency prior to it sending the August 6, 2007 email to my business associate, Eric Anderson, which falsely claimed that my funds were fraudulent. Thus, the Defendant had no standing to claim any rights to the $695.00 debt. Therefore, the Defendant has misrepresented to this Court that its actions in defaming me to Eric Anderson was due to the debt in the old account, which makes no sense since the debt does not equate to fraud.

21.    That in and around 2006 and 2007, I co-produced two TV commercials with Mann Productions in California, and I was in the process of producing my film "The Ultimate Hit" (www.TheUltimateHit.com) until the Defendant defamed me to Eric Anderson, which prevented me from obtaining the financing I needed and caused me to lose a distribution contract with Carmike Cinema, Inc.

22.    That on August 6, 2007, the Defendant sent Eric Anderson an email that contained the subject: "**Re: Protections/Privacy/Security (Routing Code: C840-L001-Q414-T3335-S111): kd2 (KMM78622196LOKM)**".

23.    That the Defendant's August 6, 2007 email to Eric Anderson identified above contained the following statement quote: **"We received notification that the funds in question used for this transaction were possibly fraudulent. We did an investigation and it was determined that the funds, indeed, were fraudulent. As such, we had to return the funds to the party that had them taken from them without their authorization"** unquote. **See sworn statement and emails from Eric Anderson attached hereto as exhibit "C"[2]**

24.    That the Amended Complaint identifies damages of $1,600.000.00 resulting from the lost contracts pertaining to the production and distribution of my film, which is in addition to the lost $250,000 investment from my investor, Bahia M. Bin Chambi. I have attached here an affidavit from my investor, and I have also attached business email dated July 25, 2007 between myself and Mr. Michael Burks witnessing that I had an investor to produce my film. **See investor's affidavit and business email attached hereto as exhibit "D".**

25.    In reference to my contract with Mr. Eric Anderson, the Defendant fails to correctly calculate the true value of the contract. The Defendant merely calculates the value of the contract as to its terms and fails to calculate the loss of revenue and profits from the fruits of the contract, which was the film treatment. The film treatment was worth $250,000 from the investor and over $1,600,000.00 in lost revenue from Carmike Cinema, Inc., which includes $330,500.00 in profits to me.

26.    That I have been absolutely humiliated and embarrassed by the Defendant's defamatory email to Eric Anderson. These people work with big film studios like Disney and MGM, and who talk to each other and pass information to each other. **See business emails from Mr.**

---

[2] Mr. Eric Anderson is an accomplished writer. He recently wrote and directed the documentary "Red, White & Blue: A Tale of Two Americas" that pertains to the divide between red and blue States in the past presidential election campaign and the current state of the Country.

**Burks attached hereto as exhibit "E".** Which puts me in serious danger of Mr Anderson and Mr. Burks passing on information to other film executives that I am a fraudster, and which would completely destroy any opportunity I have to make it in the film industry. In fact, Mr. Burks had so much confidence in me that he was having me work with him on another film project called "REDEEMED" that the actor James Purefoy and the movie producer Tom Reeves committed themselves to. Any reasonable person, as those people who will make up the jury at trial, can conclude that my feelings of humiliation, outrage and extreme distress from the Defendant's defamatory email is a reasonable reaction and foreseeable in such a situation. **See letters of intent from James Purefoy and Tom Reeves attached hereto as exhibit "F".** [3]

27.   The Defendant has failed to send Mr. Anderson a retraction of its defamatory statements against me in its August 6, 2007 email. I am absolutely outraged, emotionally distraught and I have suffered extreme emotional distress over this situation because as witnessed by Mr. Anderson's recent replies to me, which I have attached here, he has no respect for me any longer and he uses profanity when speaking to me now when he never did. It is clear that Mr. Anderson believes that I'm a fraudster due to the Defendant's email adamantly informing him that it conducted an investigation, which concluded that my funds were fraudulent and that I stole the money from a third party. Also, it is NOT unreasonable to believe that a recipient of the Defendant's email accusing me of a crime may file a criminal complaint against me with a law enforcement agency. **See my contract with Eric Anderson attached hereto as exhibit "G".**

28.   That if this Court determines that my Amended Complaint is deficit in its pleadings to warrant a dismissal; but that a further amendment of the Complaint can correct the deficiency, I respectfully request that I be granted an opportunity to further amend the complaint and that such

---

[3] Tom Reeves produced and co-produced very successful major motion pictures. For example, he co-produced the movie "The Musketeer" staring Tim Roth, Mena Suvari, Stephen Rea, and Bill Treacher among others who are major actors engrained in the film industry. The Defendant's defamatory statements against me also threatened my standing with these people .

deficiency be thoroughly identified to enable me to properly correct the deficiency within a second amended complaint.

29.    That no other motion requesting the relief herein has been previously filed with this Court.

**Wherefore,** I pry for an order denying the Defendant's motion to dismiss, granting my request to amend the amended complaint, if it is not deemed a moot issue, and granting my cross-motion for partial summary judgment on liability for defamation and defamation per se, costs and for such other and further relief as this court deems just and proper. I respectfully request that any arguments and determination on damages be held in abeyance until trial.

Dated; New York, NY
    May 19th, 2008

                                        B. David Mehmet
                                        Plaintiff Pro Se

ON THIS ____19th____ DAY OF MAY IN THE YEAR OF 2008, THE ABOVE SIGNED PERSON BADISSE DAVID MEMET PERSONALLY KNOWN, WHO, BEING DULY SWORN, DID EXECUTE THE FOREGOING AFFIDAVIT AND DID SO AS HIS FREE ACT AND DEED. IN WITNESS WHEREOF, I HEREUNTO SET MY HAND AND OFFICIAL SEAL

                    NOTARY

JEAN-PAUL GRECZI
Notary Public, State of New York
No. 01GR6119330
Qualified in Queens County
Commission Expires November 29, 2008

**A**

AO 440 (Rev. 03/08) Civil Summons

# UNITED STATES DISTRICT COURT

for the

### Northern District of California

B. David Mehmet _____
_____Plaintiff_____ )
                          )
                          )    Civil Action No.
Pay Pal, Inc. v.          )
_____Defendant_____ )    ADR

**C08  01961  RS**

Summons in a Civil Action

To: ___Pay Pal, Inc._____
        _(Defendant's name)_

A lawsuit has been filed against you.

   Within **30** days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:

   B. David Mehmet
   130 Church Street, Ste 251
   New York, NY 10007

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

                                    Richard W. Wieking
                                    Name of clerk of court

Date: __4/03/08__                   Tiffany Salinas-Harwell
                                    Deputy clerk's signature

*(Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States allowed 60 days by Rule 12(a)(3).)*

B. David Mehmet
130 Church Street
New York, NY 10007
Tele: (212)920-7602
Fax:  (212)387-9387
Email: David @appellateterm.com

**ORIGINAL
FILED**

08 APR 28 AM 9: 48

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA S.J

## UNITED STATES DISTRICT COURT
## *NORTHERN* DISTRICT OF CALIFORNIA

| B. David Mehmet | | CASE NUMBER: |
|---|---|---|
| | Plaintiff(s) | C0801961 RS |
| v. | | **PROOF OF SERVICE** |
| Paypal, Inc. | | SUMMONS AND COMPLAINT |
| | | (Use separate proof of service for each person/party served) |
| | Defendant(s) | |

1.  At the time of service I was at least 18 years of age and not a party to this action and I served copies of the *(specify documents):*
    a.  ☒ summons       ☒ complaint       ☐ alias summons       ☐ first amended complaint
                                                                      ☐ second amended complaint
                                                                      ☐ third amended complaint

        ☒ other *(specify):* ORDER SETTING INITIAL CASE MANAGEMENT & CONFERENCE AND ADR *DEADLINES;*
        *NOTICE OF ASSIGNMENT OF CASE TO A U.S. MAGISTRATE JUDGE; CIVIL*
        *COVER SHEET; ADR RESOLUTION PROCEDURES*

2.  **Person served:**
    a.  ☒ Defendant *(name):* PAYPAL, INC.
    b.  ☐ Other *(specify name and title or relationship to the party/business named):*
        **BY SERVING NATIONAL REGISTERED AGENTS, INC., REP. DENA LAPORTA
    c.  ☒ Address where papers were served: 2030 MAIN STREET,#1030, IRVINE, CA 92614

3.  Manner of Service in compliance with *(the appropriate box must be checked):*
    a.  ☐ Federal Rules of Civil Procedure
    b.  ☒ California Code of Civil Procedure

4.  I served the person named in Item 2:
    a.  ☒ By Personal service. By personally delivering copies. If the person is a minor, by leaving copies with a parent, guardian,
        conservator or similar fiduciary and to the minor if at least twelve (12) years of age.
        1.  ☒ Papers were served on *(date):* 4/15/08 _____ at *(time):* 3:20PM _____
    b.  ☐ By Substituted service. By leaving copies:
        1.  ☐ (home) at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a
            competent member of the household, at least 18 years of age, who was informed of the general nature of the papers.
        2.  ☐ (business) or a person apparently in charge of the office of place of business, at least 18 years of age, who was informed
            of the general nature of the papers.
        3.  ☐ Papers were served on *(date):* _____ at *(time):* _____
        4.  ☐ by mailing *(by first-class mail, postage prepaid)* copies to the person served in Item 2(b) at the place where the copies
            were left in Item 2(c).
        5.  ☐ papers were mailed on (date): _____
        6.  ☐ due diligence. I made at least three (3) attempts to personally serve the defendant.

---

**PROOF OF SERVICE - SUMMONS AND COMPLAINT**

CV-1 (04/01)                                                                                                    PAGE 1

c. ☐ **Mail and acknowledgment of service.** By mailing *(by first-class mail or airmail, postage prepaid)* copies to the person served, with two (2) copies of the form of Waiver of Service of Summons and Complaint and a return envelope, postage prepaid addressed to the sender. (Attach completed Waiver of Service of Summons and Complaint).

d. ☐ **Service on domestic corporation, unincorporated association (including partnership), or public entity. (F.R.Civ.P. 4(h)) (C.C.P. 416.10)** By delivering, during usual business hours, a copy of the summons and complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute and the statute so requires, by also mailing, by first-class mail, postage prepaid, a copy to the defendant.

e. ☐ **Substituted service on domestic corporation, unincorporated association (including partnership), or public entity. (C.C.P. 415.20 only)** By leaving during usual office hours, a copy of the summons and complaint in the office of the person served with the person who apparently was in charge and thereafter by mailing *(by first-class mail, postage prepaid)* copies to the persons at the place where the copies were left in full compliance with C.C.P. 415.20. Substitute service upon the California Secretary of State requires a court order. (Attach a copy of the order to this Proof of Service).

f. ☐ **Service on a foreign corporation.** In any manner prescribed for individuals by FRCP 4(f).

g. ☐ **Certified or registered mail service.** By mailing to an address outside California *(by first-class mail, postage prepaid, requiring a return receipt)* copies to the person served. (Attach signed return receipt or other evidence of actual receipt by the person served).

h. ☐ **Other** (specify code section and type of service):

5. Service upon the United States, and Its Agencies, Corporations or Officers.

a. ☐ by delivering a copy of the summons and complaint to the clerical employee designated by the U.S. Attorney authorized to accept service, pursuant to the procedures for the Office of the U.S. Attorney for acceptance of service, or by sending a copy of the summons and complaint by registered or certified mail addressed to the civil process clerk at the U.S. Attorneys Office.

   Name of person served:

   Title of person served:

   Date and time of service: *(date):* _____ at *(time):* _____

b. ☐ By sending a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States at Washington, D.C. (Attach signed return receipt or other evidence of actual receipt by the person served).

c. ☐ By sending a copy of the summons and complaint by registered or certified mail to the officer, agency or corporation (Attach signed return receipt or other evidence of actual receipt by the person served).

6. At the time of service I was at least 18 years of age and not a party to this action.

7. Person serving *(name, address and telephone number):*

   **WENDY DUFFIELD**
   **ALL AMERICAN ATTORNEY SERVICE, INC.**
   **714 W. OLYMPIC BLVD. #639**
   **LOS ANGELES, CA 90015**
   **(213) 746-8010**

   a. Fee for service: **$ 150.00**

   b. ☐ Not a registered California process server

   c. ☐ Exempt from registration under B&P 22350(b)

   d. ☒ Registered California process server

8. ☐ I am a California sheriff, marshal, or constable and I certify that the foregoing is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 4/21/08

_____
*(Signature)*

ORIGINAL
FILED

08 APR 14 PH 3: 11

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST OF CA S.J.

ADR

B. David Mehmet
130 Church Street
New York, NY 10007
Tele (212) 920-7602
Fax (212) 387-9387
Email: David@AppellateTerm.com

Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

B. David Mehmet,

　　　　　　Plaintiff

vs.

Paypal, Inc.

　　　　　　Defendant.

）
）
）
）
）
）
）
）
）
）
）
）
）

**C08 01961**

Case No _____

COMPLAINT

**DEMAND FOR JURY TRIAL**

RS

1　**Original Jurisdiction.** This court has original jurisdiction over this complaint pursuant 28 U.S.C 1332 as the amount in dispute exceeds SEVENTY FIVE THOUSAND DOLLARS ($75 000 00) and the defendant holds residence in California while the Plaintiff holds residence in New York

2.　**Venue** Venue is appropriate in this court pursuant to 28 U.S.C. 1391 because the defendant resides within the County of San Jose, California.

3      **Intradistrict Assignment.** This lawsuit should be assigned to the San Jose Division of this Court because the parties agreed to this Division within their contract

# FACTS

### Defendant Blocked Plaintiff's Account and Froze his Funds without GOOD CAUSE

4      That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 4 with the same force and effect as if more fully set forth herein.

5      That the Defendant operates an Internet based website at www.Paypal.com that transfers money from one person to another person over the Internet (Hereinafter "money transfer service")

6.      That the Plaintiff used the Defendant's money transfer service to send SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) to Eric Anderson.

7      That the Defendant obtained the SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) by electronically withdrawing funds from the Plaintiff's bank account at Wachovia bank on or about July 25, 2007 by utilizing the Plaintiff's debit card, which had the following four last digits   9024.

7      That the Defendant blocked the Plaintiff's account after he paid Eric Anderson SEVEN HUNDRED AND FIFTY DOLLARS ($750.00)

8      That the Defendant blocked the account of Eric Anderson after the Plaintiff paid Eric Anderson SEVEN HUNDRED AND FIFTY DOLLARS ($750.00)

9      That the Defendant blocked the account of Eric Anderson after Eric Anderson transferred the SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) to his bank account.

10.    That the Defendant deducted an additional SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) from Eric Anderson's account located at www.Paypal.com after Eric Anderson transferred SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) to his bank account.

11.    That the Defendant demanded that Eric Anderson repay the SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) he transferred into his bank account.

## Defendant Falsely Accused the Plaintiff of Fraud

12.    That on August 6, 2007, the Defendant sent Eric Anderson an email that stated quote "**We received notification that the funds in question used for this transaction were possibly fraudulent. We did an investigation and it was determined that the funds, indeed, were fraudulent. As such, we had to return the funds to the party that had them taken from them without their authorization.**"

13.    That the Defendant's email dated August 6, 2007 to Eric Anderson noted in paragraph 12 above was referring to the SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) the Plaintiff paid to Eric Anderson through the Defendant's money transfer service.

14.    That the Defendant's email dated August 6, 2007 noted in paragraph 12 above was referring to the SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) the Defendant electronically withdrew from the Plaintiff's bank account at Wachovia bank.

15.    That contrary to the Defendant's statement in its August 6, 2007 email to Eric Anderson that it conducted an "investigation", the Defendant DID NOT conduct an investigation on the SEVEN HUNDRED AND FIFTY DOLLAR ($750.00) payment to Eric Anderson prior to sending Eric Anderson that email.

16.     That contrary to the Defendant's statement in its August 6, 2007 email to Eric Anderson that the Plaintiff's SEVEN HUNDRED AND FIFTY DOLLAR ($750.00) payment to Eric Anderson was "fraudulent" it was not.

17.     That contrary to the Defendant's statement in its August 6, 2007 email to Eric Anderson that it had to return the Plaintiff's SEVEN HUNDRED AND FIFTY DOLLAR ($750.00) **"to the party that had them taken from them without their authorization"**, there was no other party that had SEVEN HUNDRED AND FIFTY DOLLAR ($750.00) taken from them by the Plaintiff.

18.     That on or about July 25, 2007, the Defendant withheld a total of **ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00)** from the Plaintiff.

19.     That the SEVEN HUNDRED AND FIFTY DOLLAR ($750.00) payment to Eric Anderson was part of the ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00) being withheld by the Defendant on or about July 25, 2007.

20.     That on or about July 25, 2007, the Plaintiff demanded the Defendant return the ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00) to him and the Defendant refused.

21.     That the Defendant did return the ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00) after the Plaintiff filed a lawsuit against it in New York on August 1, 2007.

22.     That the Defendant DID NOT pay the Plaintiff the interest earned on his ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00) that was deposited into the Defendant's pooled account.

23.     That in returning the Plaintiff's ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00), the Defendant admitted that the SEVEN HUNDRED AND FIFTY DOLLAR ($750.00) payment to Eric Anderson was a lawful transaction.

24    That in returning the Plaintiff's ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00) the Defendant admitted that it had no knowledge that there was another 'party' that had SEVEN HUNDRED AND FIFTY DOLLAR ($750.00) taken from them by the Plaintiff

25    That in returning the Plaintiff's ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00), the Defendant admitted that the August 6, 2007 email sent to Eric Anderson contained false statements

26    That the Defendant defamed the Plaintiff in its August 6, 2007 email to Eric Anderson.

27    That Eric Anderson uploaded a copy of a contact between the Plaintiff and himself to the Defendant's website at www.Paypal.com prior to the Defendant returning the SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) to the Plaintiff

28    That due to the Defendant's false statements to Eric Anderson within its August 6, 2007 email Eric Anderson terminated a contract with the Plaintiff and demanded that the Plaintiff pay him the total amount of EIGHTEEN THOUSAND FIVE HUNDRED AND THIRTY EIGHT DOLLARS ($18,538.00) for his services, which was SEVENTEEN THOUSAND AND THIRTY EIGHT DOLLARS ($17,038.00) above and beyond the contract terms, which the Plaintiff could not afford.

29    That due to Eric Anderson terminating his contract with the Plaintiff, the Plaintiff lost another contract with **Carmike Cinemas, Inc**. who were going to exhibit a film in 600-1,000 movie screens across the United States, which film was to be produced by the Plaintiff. Thus, the Plaintiff has lost future income estimated in the hundreds of thousands of dollars from the inability to exhibit his film.

**Defendant Concealed a Vital Material Fact**

30    That the Plaintiff agreed to the Defendant's user agreement prior to August 1 2007.

31    That the Defendant did represent to the Plaintiff within its contract that it would not interfere with the Plaintiff's money transfers via its website located at www.Paypal.com without good cause

32    That the Defendant did represent to the Plaintiff within paragraph ten (10) of its contract that it would not interfere with the Plaintiff's money transfers via its website located at www.Paypal.com unless the Plaintiff violated paragraph nine (9) of the contract entitled "Restrictive Activities".

33    That the Plaintiff was not in violation of the Defendant's contract when the Defendant blocked his account. Specifically, the Plaintiff did not committed fraud as the Defendant claimed in its August 6 2008 email to Eric Anderson

34    That the Defendant did not place the Plaintiff on notice of any violation prior to blocking his account and withholding ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00) of Plaintiff's money

35    That the Defendant had knowingly and intentionally concealed vital **material facts** from the Plaintiff concerning false positives produced by its anti-fraud detection software when the Plaintiff entered into contract with the Defendant.

36.    That Plaintiff's ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00) was withheld by the Plaintiff because its anti-fraud detection software produced a false positive

37    That the Defendant's anti-fraud detection software produced a false positive because Eric Anderson transferred Plaintiff's SEVEN HUNDRED AND FIFTY DOLLARS ($750.00) out of the Defendant's pooled bank account and into his own bank account soon after the Plaintiff made the payment.

38.    That the Defendant has inserted filters in its anti-fraud detection software that blocks its member's accounts when there is an immediate transfer of monies from its pooled bank accounts to another bank account that is not controlled by the Defendant after a transaction between its members has concluded.

39.    That in justifying its actions in blocking member's accounts, the Defendant emails its members messages containing false reasons why their accounts are being blocked.

40    That many of the emails the Defendant sends to its members contains defamatory and inflammatory wording that causes members to rise against each other and motivates the increase of complaints and requests for refunds, which in turn allows the Defendant to freeze member's funds for up to six months while collecting interest on the funds.

41    That in the worst case, the Defendant's defamatory and inflammatory emails caused a number of members to turn against each other that ended in two people being falsely arrested and charged with Felony Internet Fraud. Sara Holland, a single mother of three and a volunteer firefighter, was falsely arrested due the Defendant's email accusing her of fraud, which is a similar false accusation found in the Defendant's August 6, 2007 email to Eric Anderson. Matt Miller, who works for homeland security, was also arrested when one of his clients filed a criminal complaint against him after receiving Defendant's defamatory and inflammatory email that also accused him of fraud.

42    That on July 31, 2007, after the Plaintiff's account with the Defendant was blocked and his funds withheld; but before the New York lawsuit was filed, the Plaintiff called the

Defendant's customer service department and spoke to an employee of the Defendant named "Rene". The Defendant's customer service representative informed the Plaintiff that his account was blocked by their anti-fraud detection software and that there was a limited amount of employees who review blocked accounts to identify false positives, which would result in the release of the Plaintiff's account. The Defendant's customer service representative then informed the Plaintiff that his account was blocked due to an old account, which had a debit of SIX HUNDRED AND NINTY FIVE DOLLARS ($695.00). This explanation was not only devoid of any proof of such debt; but contradicted the Defendant's statements to Eric Anderson in its email dated August 6, 2007 that stated the Plaintiff had defrauded someone.

43.    That due to the inability of the Defendant's anti-fraud detection Software to determine whether the Plaintiff's payment to Eric Anderson was legal or illegal, it created a false positive, which severely damaged the Plaintiff.

44    That the Defendant had failed to inform the Plaintiff of the existence of false positives and the danger associated with them. Instead, the Defendant intentionally concealed this vital material fact from the Plaintiff to induce him to enter into contract with it and to use its money transfer service without restrain.

45.    That if the Defendant disclosed the fact about false positives, the Plaintiff would have never used the Defendant's money transfer service to pay Eric Anderson. Nor would the Plaintiff have allowed the Defendant to withdraw ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00) from his Wachovia bank account.

46    That the Defendant has joined teams with its controlling company, eBay, and together they have made it mandatory to use the Defendant's money transfer service on eBay. In addition, many other Internet services only use the Defendant's money transfer services with no alternative method of paying, which forces a person to use the Defendant's money transfer

services  However. with the knowledge of false positives. a person has the control to protect themselves from great financial loss by not risking large amounts of money with the Defendant.

### Defendant's Continued Misconduct against Consumers

47    That the Defendant has a history of bad conduct in harming consumers and having a disregard for the law to further its own profit agenda over the well-being of California consumers and all consumers Worldwide.

48    That the Defendant was sued in 2002 under caption ***Comb, et al vs. Paypal, Inc***. **docket 02-1227** within The United States District Court for the Northern District of California. The complaint alleged that because the Defendant "**exceeded its operational capacity**" it was "**unable to maintain and manage accounts in a manner required by applicable state and federal legislation**." And the Defendant refused "**to provide details or explanations with respect to its investigations**" of frozen accounts. In addition. the Complaint alleged that when consumers where able to contact the Defendant's "**representatives, the representatives are combative and rude, refuse to answer specific questions, hang up in the middle of phone calls, provide "canned" responses to individualized problems, require customers to fax information while providing inoperative fax numbers, and refuse to allow customers to speak to managers.**" Judge Fogel  who presided over this lawsuit. issued a ruling that stated "**the Court concludes that the User Agreement and arbitration clause are substantively unconscionable**"

49    That again. in 2004. the Defendant was sued this time by New York State's Attorney General  Eliot Spitzer. who alleged that the Defendant's User Agreement "**misrepresented certain terms and conditions to its members, which included statements that it provided its**

members **"the rights and privileges expected of a credit card transaction. In fact, members were often denied these rights by the Defendant**."

50.    That yet again, in 2005, the Defendant was sued in a class action lawsuit by 28 Attorney generals from Alabama, Arizona, California, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Minnesota, Mississippi, Nebraska, Nevada, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Vermont, Washington and West Virginia. The 28 Attorney Generals accused the Defendant of **"hidden fees, misrepresentations, as well as problems with account settings dealing with source of funding that resulted in monies being withdrawn from Defendant Paypal's members' bank account although other payment sources were preferred."**

51    That yet again, the Defendant was sued in a class action lawsuit in 2005 within the United States District Court Eastern District of New York under caption ***Mike Steele, et al vs. Paypal and Essex Technology Group, Inc*.** **docket 05-01720** based on allegations of **"deceptive trade practices, fraudulent inducement, misrepresentation and breach of contract."**

52    That although the Defendant has been sued multiple times in addition to the above lawsuits the Defendant continues to engage in bad conduct against its consumers in an effort to increase its flow of profits. The Defendant has taken the stance that these lawsuits against it are just a **part of doing business**, and the Defendant resolved each of the lawsuits out of court to then only continue its bad conduct. For example, as shocking and unbelievable as it may sound, the Defendant's concealment of false positives and the danger associated with them, caused Matt Miller in 2004 and Sarah Holland in 2007 to be falsely arrested and charged with felony internet fraud

53.    That Sarah Holland is a single mother of three and was a firefighter until she lost her job due to the Defendant's false positives. Matt Miller is a firefighter in the next town from Ms Holland and also works for Homeland Security. Due to the false positives that sent out computer generated emails to Ms. Holland's and Mr. Miller's police officer clients containing the words "suspicion of fraud", "suspicious activities" and "fraud", their police officer clients had them arrested and charged with Felony Internet Fraud.

## FIRST CAUSE OF ACTION
(Fraudulent Misrepresentation)

54    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 53 with the same force and effect as if more fully set forth herein.

55.    That the Defendant made representations to the Plaintiff within its contract that if the Plaintiff utilized its services to make payments to third-parties. the Defendant would forward the funds to such third-parties and would not wrongly interfere with such payments unless the Plaintiff violated paragraph 9 of the contract entitled "**Restricted Activities**"

56.    That the Defendant intended the Plaintiff to have reliance on its representation within its contract when the Plaintiff agreed to its terms

57    That in reliance of Defendant's representations. the Plaintiff utilized the Defendant's service to send funds to third-parties

58.    That contrary to Defendant's assurance that it would not wrongly interfere with Plaintiff's fund transfers. the Defendant on or about July 25 2007 did wrongly withhold Plaintiff's funds and had wrongly refused to release the funds to the Plaintiff after the Plaintiff requested that the Defendant release his funds

59.    That the Plaintiff did not violate the Defendant's contract nor did the Plaintiff commit fraud

60.    That the Defendant had no intentions of honoring its representations to the Plaintiff.

61.    That the Defendant represented to the Plaintiff that if he provided additional verification, the Defendant would release his funds

62.    That the Plaintiff having reliance on the Defendant's statements, provided the additional verification requested by the Defendant.

63.    That once again the Defendant had no intentions of honoring its representations to the Plaintiff.

64.    That after the Plaintiff provided the Defendant with the requested verification; the Defendant did fail to release the Plaintiff's funds and had continued to refuse to release such funds to the Plaintiff.

65.    That once the Plaintiff filed this action against the Defendant, the Defendant deposited the Plaintiff's funds into his bank account at Wachovia Bank via the Plaintiff's debit card ending in 9024.

66.    That the Defendant has wrongly converted the interest earned from the Plaintiffs money within the Defendant's pooled account to its own use.

67.    That at the time the Defendant had entered into contract with the Plaintiff, it had knowledge that it's anti-fraud detection software could create a false positive against the Plaintiff and interfere with Plaintiff's fund transfers, but the Defendant intentionally and maliciously failed to disclose this fact to the Plaintiff to induce him to enter into contract with it.

68.    That the Defendant's anti-fraud detection software did create a false positive and did interfere with Plaintiffs funds by blocking Plaintiff's account and freezing his funds with the Defendant and refusing to forward the funds to his business associate.

69.    That due to the Defendant's fraud, the Plaintiff has suffered economic and emotional damages

70.    By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00)

## SECOND CAUSE OF ACTION
### (Fraudulent Concealment)

71.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 70 with the same force and effect as if more fully set forth herein.

72.    That the Defendant did represent to the Plaintiff within its contract that it would not interfere with the Plaintiff's fund transfers without good cause.

73.    That the Defendant had knowledge of the falsity of its representations within its contract that it would not interfere with the Plaintiff's fund transfers without good cause.

74.    That the Defendant did intentionally and maliciously conceal material facts concerning false positives from the Plaintiff, which could have and did interfere with the Plaintiff's fund transfers without good cause

75.    That the Plaintiff had reliance on the Defendant's representations due to its well-known and dominant position within the market.

76.    That due to the Defendant's concealment of false positives, the Plaintiff was severely harmed

77.    By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00)

### THIRD CAUSE OF ACTION
(Fraudulent Inducement)

78.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 77 with the same force and effect as if more fully set forth herein

79.    That the Defendant did represent to the Plaintiff within its contract that it would not interfere with the Plaintiff's fund transfers without good cause.

80.    That the Defendant had knowledge of the falsity of its representations within its contract that it would not interfere with the Plaintiff's fund transfers without good cause.

81.    That the Defendant did intentionally and maliciously conceal material facts concerning false positives from the Plaintiff for the purpose of inducing the Plaintiff to enter into contract with it.

82.    That the Plaintiff had reliance on the Defendant's representations due to its well-known and dominant position within the market.

83.    That due to the Defendant's concealment of false positives, the Plaintiff was severely harmed.

84.    By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

### FOURTH CAUSE OF ACTION
(Negligent Misrepresentation)

85.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 84 with the same force and effect as if more fully set forth herein.

86.    That the Defendant had a duty to disclose the fact about the false positives and the dangers associated with them to the Plaintiff prior to him entering into contract with the Defendant.

87.    That the Defendant made a false representation within its contract pertaining to its interference with the Plaintiff's fund transfers that it should have known was incorrect because the dangers associated with false positives could have and did cause the Plaintiff's account with the Defendant to be blocked without good cause, his funds frozen and a computer generated email was sent to the Plaintiff's business associate claiming he was under investigation for fraud, which was followed by a second email to the Plaintiff's business associate claiming that the Plaintiff did "in deed" commit fraud.

88.    That the Defendant had knowledge that the representations made within its contract would be relied on by the Plaintiff in deciding to enter into contract with it.

89.    That the Plaintiff did have reliance on the representations made in the Defendant's contract, which caused him to enter into contract with the Defendant.

90.    That due to the Plaintiff's reliance on the Defendant's false representation within its contract, the Plaintiff was prevented from taking steps to protect himself and was eventually harmed.

91.    By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00)

## FIFTH CAUSE OF ACTION
### (Defamation)

92.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 91 with the same force and effect as if more fully set forth herein.

93.    That the Defendant made intentional and malicious false statements to Eric Anderson that the Plaintiff defrauded someone.

94.    That the Defendant made intentional and malicious false statements to Eric Anderson that the Plaintiff defrauded someone for the purpose of creating good cause for blocking Plaintiff's account and freezing his funds.

95.    That the Defendant knew at the time it made such statements to Eric Anderson that those statements were false

96.    That the Defendant did, with intent and malice, make false statements to Eric Anderson with full knowledge that the Plaintiff would be defamed and his reputation would be damaged.

97    That the Defendant did make false statements to Eric Anderson with reckless disregard as to the truth of the statements and whether the statements defamed the Plaintiff.

98    That Eric Anderson did have reliance on the Defendant's statements due to its well-known and dominant position within the market

99    That due to the Defendant's false statements to Eric Anderson, the Plaintiff was severely harmed when he lost the benefits of a contract with Eric Anderson valued at SEVENTEEN THOUSAND AND THIRTY EIGHT DOLLARS ($17,038.00), which also caused him to lose a second and more valuable contract with Carmike Cinemas, Inc.

100.    By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00)

## SIXTH CAUSE OF ACTION
(Defamation Per Se)

101.    That Plaintiff repeats. reiterates and realleges each and every allegation contained in paragraphs 1 through 100 with the same force and effect as if more fully set forth herein.

102    That the Defendant made intentional. malicious and defamatory statements against the Plaintiff to Eric Anderson that the Plaintiff defrauded someone.

103.    That the Defendant knew. at the time it made the statements to Eric Anderson, they were false.

104.    That the Defendant did. with intent. make such false statements to Eric Anderson in its attempt to create good cause for blocking Plaintiff's account and freezing his funds.

105.    That  the Defendant did act negligently in failing to learn whether the statements made to Eric Anderson were false and defamed the Plaintiff prior to making such statements.

106.    That due to the Defendant's false statements to Eric Anderson, the Plaintiff was severely harmed when he lost the benefits of a contract with Eric Anderson valued at SEVENTEEN THOUSAND AND THIRTY EIGHT DOLLARS ($17,038.00), which also caused him to lose a second and more valuable contract with Carmike Cinemas, Inc

107    By reason of the foregoing. Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00)

## SEVENTH CAUSE OF ACTION
(Conversion)

108.    That Plaintiff repeats. reiterates and realleges each and every allegation contained in paragraphs 1 through 107 with the same force and effect as if more fully set forth herein.

109    That the Defendant did wrongly gain possession of Plaintiff's funds.

110    That the Defendant did wrongly refuse to forward Plaintiff's funds to Plaintiff's business associate.

111    That the Defendant did wrongly refuse to return Plaintiff's funds after Plaintiff requested such funds from the Defendant.

112.    That the Defendant Paypal did wrongly convert Plaintiff's interest to its own use.

113    By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

## EIGHT CAUSE OF ACTION
(Tortious Interference with Business Relationship)

114.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 113 with the same force and effect as if more fully set forth herein.

115.    That the Plaintiff did have an economic relationship with his business associate giving him a benefit valued at SEVENTEEN THOUSAND AND THIRTY EIGHT DOLLARS ($17,038.00)

116.    That the Defendant did have knowledge of the economic relationship between the Plaintiff and his business associate

117.    That the Defendant did with intent and malice interfere with Plaintiff's business relationship with his business associate

118.    That the Defendant did with reckless disregard interfere with Plaintiff's business relationship with his business associate.

119.    That due to the Defendant's interference, the Plaintiff's business relationship with his business associate was terminated

120.    That due to the Defendant's interference with the Plaintiff's business relationship with his business associate, the Plaintiff was severely harmed when he lost the benefits of a contract with his business associate valued at SEVENTEEN THOUSAND AND THIRTY EIGHT DOLLARS ($17,038.00) which also caused him to lose a second and more valuable contract with Carmike Cinemas, Inc.

121.    By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00)

## NINTH CAUSE OF ACTION
(Violation of Cal. Bus. Prof. Code §§ 17200
Unlawful, Unfair and Fraudulent Business Practices)

122.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 121 with the same force and effect as if more fully set forth herein

123.    That the Defendant's false representations within its contract, pertaining to its interference of Plaintiff's fund transfers and its concealment of a material fact concerning false positives, which were meant to induce the Plaintiff to enter into contract with it constitutes a deceptive trade practice under

124.    That California's Consumer Protection Act creates a private right to take legal action by any person who has been harmed from the Defendant's violation of Cal. Bus. Prof. Code 17200

125.    That the Defendant's false representations within its contract and the concealment of false positives has deceived the Plaintiff and millions of other consumers who have been injured by the Defendant's deceptive practices. Furthermore, the Defendant is continuing to deceive millions of other consumers to induce them to enter into contract with it.

126    That due to the Defendant's deceptive trade practices, the Plaintiff was severely harmed when he lost the benefits of a contract with his business associate valued at SEVENTEEN THOUSAND AND THIRTY EIGHT DOLLARS ($17,038.00), which also caused him to lose a second and more valuable contract with Carmike Cinemas, Inc.

127.    By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00)

## TENTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)

128.    That Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 127 with the same force and effect as if more fully set forth herein.

129    That due to the Defendant's intentional acts against the Plaintiff, the Plaintiff has suffered extreme emotional distress.

130    That Plaintiff began to suffer extreme emotional distress on or about July 25, 2007 when the Defendant wrongly withheld ONE THOUSAND NINE HUNDRED AND FIFTY DOLLARS ($1,950.00) of the Plaintiff's money that was meant as payment on two (2) third-party contracts.

131.    That Plaintiff continuous to suffer from extreme emotional distress due to Defendant's tortuous conduct in wrongly withholding Plaintiff's funds and causing him to lose the benefit of two (2) third-party contracts.

132.    That Defendant had actual knowledge or should have known that Plaintiff's emotional distress would be the likely result of its conduct.

133.    That Defendant's conduct in wrongly withholding Plaintiffs fund's was extreme and outrageous.

134.   By reason of the foregoing, Plaintiff has suffered damages in the amount of TEN MILLION DOLLARS ($10,000,000.00).

**Wherefore**, I demand a jury trial and pry for judgment against the Defendant as follows:

1)   Liability against the Defendant, and

2)   Rescind the defendant's contract, and

4)   Enjoin the defendant from further withholding Plaintiff's interest, and

5)   Enjoin the defendant from further concealing false positives and the dangers associated with them from all consumers, and

6)   Enjoin the defendant from using any damaging words such as "suspicion of fraud", "suspicious activities" or "fraud" within any consumer email prior to an investigation being concluded, and

7)   Compensatory damages in the amount of TEN MILLIONS DOLLARS ($10,000,000.00), and

8)   Treble damages against the defendant, and

9)   Punitive damages against the Defendant in the amount of ONE HUNDRED MILLION DOLLARS ($100,000,000.00), and

10)   Costs and for such other and further relief as this Court deems just and proper.

Dated: New York, NY
    April 3, 2008

B. David Mehmet
Plaintiff
130 Church Street, Ste 251
New York, NY  10007
Tel: (212) 920-7602
Fax: (212) 387-9387
Email: David@AppellateTerm.com

To  Paypal. Inc.
    2030 Main Street. Ste 1030
    Irvine. CA  92614

**B**

**YAHOO! MAIL**                                                    Print - Close Window

**Date:**    Thu, 14 Jun 2007 14:36:33 -0400

**To:**    "Badisse Mehmet" <FleaMarket@MyStockroom.com>

**Subject:**    Re: BankAccounts (Routing Code: C840-L001-Q220-T2505-S111) QID1998 (KMM57882196V45970L0KM) :kd1

**From:**    webform@paypal.com

Dear Badisse Mehmet,

Hello my name is Lynda, I will be happy to assist you with your
question
regarding your recent transaction.  I am sorry for your inconvenience.

If you have registered a credit card and a confirmed bank account,
Instant
Transfer from your bank account is the default method of payment when
the
PayPal account balance is insufficient to complete the payment.

The default method of payment cannot be changed; however, if you would
like
to fund your payment with a credit card, please follow these steps:

   1.  On the final payment page, click the "More Funding Options" link
and
choose the credit card you would like to use to fund the payment.

   2.  Click "Continue."

   3.  Click "Yes" to confirm the use of your credit card.

   4.  Review the details of your payment.

   5.  Click "Pay" or "Send Money" to complete the payment or click
"Change" if any changes are needed. NOTE: If you change your payment
details, the payment method will return to the default method of
payment.

If you have applied for and been approved for a PayPal Plus Credit Card
or
a PayPal Buyer Credit account, you can switch your payment method to
one of
these options.

I appreciate the opportunity to assist you. We are committed to making
your
experiences at PayPal pleasant and rewarding.

Sincerely,
Lynda
PayPal Community Support
PayPal, an eBay Company


Original Message Follows:
------------------------
Form Message
customer subject: I closed my bank account - stop trying to transfer
customer message: Additional Information: 'Paypal was suppose to use my

debit card to pull the money as the first option. There was plenty of
money
there. But Paypal used my savings account as the first option when
there
was no money in the account. Paypal has been hitting me with electronic

*EX. B*

attempts to transfer money from my savings account and my bank has been

rejecting the attempts and charging me $## for each attempt by Paypal. Last
week, my bank charged me $###.## in total overdraft fees due to these
Paypal attempts. I had my bank give me credit for these attempts and void
the $###.##. The bank told me that they are unable to stop the Paypal
attempts so I had to close the account. But before I closed the account,
Paypal hit me again with two more charges and this time my bank took $## in
over draft fees.

I do not want my bank account to be associated with my Paypal account and
would like it to be removed. Also, please use the first funding source to
pay any outstanding charges. Thank You.  Badisse.'

C

 ebafilms    7346 Lake Street 1W | River Forest, Illinois 60305 | 708.366.0674 | www.ebafilms.com

May 2, 2008

B. David Mehmet
130 Church Street
New York, NY 10007

Re: The Ultimate Hit Script

I am making the following statement under the penalty of perjury for the purpose of clarifying my actions in canceling the contract dated July 17, 2007 between myself and Mr. Mehmet. I was completely justified in terminating the contract with Mr. Mehmet. Prior to entering into contract with Mr. Mehmet, I had no business relationship with Mr. Mehmet, nor did I have any history with him. My reason for terminating the contract with Mr. Mehmet was for the purpose of protecting myself. After Paypal froze my account and demanded the return of Mr. Mehmet's $750 initial payment to me, I wrote an email to Paypal asking them what was going on. Paypal sent me an email on August 6, 2007 that contained the following statement:

**Subject: Re: Protections/Privacy/Security (Routing Code: C840-L001-Q414-T3335-S111): kd2 (KMM78622196LOKM)**

**Dear Eric Anderson,**

**Thank you for contacting Paypal. We regret the delay in responding to your service request. We regret that you have had this experience. We received notification that the funds in question used for this transaction were possibly fraudulent. We did an investigation and it was determined that the funds, indeed, were fraudulent. As such, we had to return the funds to the party that had them taken from them without their authorization. You are not protected from this reversal of funds under our Seller Protection Policy, as this transaction was not listed as eligible. I do regret any frustration that this may cause. Thanks again for writing, and thank you for being part of the Paypal community. Sincerely, Paypal Account Review Department**

Paypal's email justified my termination of the contract with Mr. Mehmet. Paypal has never informed me that the statements in their email were false. I had no reason not to believe Paypal, as I had been doing business with them for some time and had never encountered this problem. Paypal's email caused me to doubt Mr. Mehmet's legitimacy, forcing me to terminate our contract. I still have some doubt regarding Mr. Mehmet due to Paypal's email, because they specifically stated they conducted an investigation that concluded the funds Mr. Mehmet sent me were fraudulent. At this time, I do not feel comfortable placing myself at risk with Mr. Mehmet as I did in the July 17, 2007 contract, when I offered to do the work with only a small deposit in advance. Since my account with Paypal remains frozen due to this transaction, the only way I am comfortable working with Mr. Mehmet going forward is in offering him the opportunity to pay me for my services in full prior to completing and delivering his film treatment to him. Otherwise, I am not interested.

Sworn to before me on 05/02/2008

_____
NOTARY

OFFICIAL SEAL
DOUGLAS COLBER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:09/30/12

_____
Eric Anderson

Yahoo! Mail - mhb20001@yahoo.com    http://us.f143.mail.yahoo.com/ym/ShowLetter?box=Inbox&MsgId...

# YAHOO! MAIL

Print - Close Window

| | |
|---|---|
| **Date:** | Mon, 6 Aug 2007 06:26:42 -0700 (PDT) |
| **From:** | "Eric Anderson" <eanderso@yahoo.com> |
| **Subject:** | Fwd: Re: Protections/Privacy/Security (Routing Code:C840-L001-Q414-T3335-S111) :kd2 (KMM78622I96L0KM) |
| **To:** | "Badisse Productions" <badisse@badisse.com> |

I would say we need to clear this up, wouldn't you?  It's not a happy Monday morning for me...

*"pending-reversal@paypal.com" <pending-reversal@paypal.com>* wrote:

Date: Mon, 6 Aug 2007 05:51:03 -0500 (CDT)
From: "pending-reversal@paypal.com" <pending-reversal@paypal.com>
To: Eric Anderson <canderso@yahoo.com>
Subject: Re: Protections/Privacy/Security (Routing Code:C840-L001-Q414-T3335-S111) :kd2
(KMM78622I96L0KM)

Dear Eric Anderson,

Thank you for contacting PayPal. We regret the delay in responding to
your service request.

We regret that you have had this experience. We received notification
that the funds in question used for this transaction were possibly
fraudulent. We did an investigation and it was determined that the
funds, indeed, were fraudulent. As such, we had to return the funds to
the party that had them taken from them without their authorization.
You are not protected from this reversal of funds under our Seller
Protection Policy, as this transaction was not listed as eligible. I do
regret any frustration that this may cause.

Thanks again for writing, and thank you for being part of the PayPal
community.

Sincerely,
PayPal Account Review Department
PayPal, an eBay Company

Original Message Follows:
-----------------
Form Message
customer subject: I'm trying to figure out why a claim has been filed.
customer message: Additional Information: I'm trying to determine if
this
is simply a part of PayPal's security process, or if the client reversed

the charges.

Eric Anderson'

*Exhibit "I"*

 **MAIL**

Print - Close Window

**Date:** Fri, 9 May 2008 09:00:04 -0700 (PDT)

**From:** "Eric Anderson" <eanderso@yahoo.com>

**Subject:** Re: LEGAL NOTICE: Federal Subpoena

**To:** badisse@badisse.com

What in God's name are you talking about? I've sent you numerous emails about this, and I told you that you're going to receive the damn letter this afternoon. I also sent you an email telling you to mail me the $30 I paid to overnight it to you, but this is the response I get? Can you see why I might have trust issues with you? So far, I'm out nearly $750 over this mess, between the original chargeback and the FedEx I sent last night.

*Badisse Productions <badisse@badisse.com> wrote:*

> Mr. Anderson,
>
> I have repeatedly requested that you provide me with a notarized letter, which you agreed to do explaining your reasons for terminating our contract. You agreed to overnight the letter to me as it was vital to an upcoming motion. However, after about two weeks, I have not received your letter.
>
> I understand your position and I do not blame you. I think if I received the email you received from Paypal, I may also react as you have.
>
> Nevertheless, I am giving you a heads up so you don't get caught without notice. I have requested that the federal Court in San Jose issue federal subpoenas to obtain the information I need for this motion due to my failure from obtaining it from you. My process server will be serving the subpoenas today. You will not be served with one; but companies that have the information I am looking for will be.
>
> If you have any questions, you are free to contact me.
>
> Thank You,
>
> B. David Mehmet


EBA Creative Agency
www.ebacreative.com

EBAFilms
www.ebafilms.com

"Red, White & Blue: A Tale of Two Americas" Documentary
filmriot.com/projects/30-rwbdocumentary

*Alena & the Favorite Thing*
Written by Eric B. Anderson, Illustrated by Jakub Kuzma
www.alenabooks.com

**D**

# YAHOO! MAIL

Print - Close Window

| | |
|---|---|
| **Date:** | Wed, 25 Jul 2007 07:23:01 -0700 (PDT) |
| **From:** | "Badisse Productions" <badisse@badisse.com> |
| **Subject:** | Re: Investors |
| **To:** | mfbravenhouse@aol.com |

I have a mixture of institutional investors who have invested in film before through a movie hedge fund and private individual investors who want to get their feet wet. The private investors are igniting the interest of the institutional investors since they don't have to hold the entire risk. One of the private investors is a family friend.

| United States District Court Northern District of California San Jose Division ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯X<br><br>B. David Mehmet<br><br>                            **Plaintiff,**<br><br><br>-against-<br><br><br>Paypal, Inc.,<br><br>                        **Defendant.**<br>⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯X | Index No.: 5:08-01961 (RS)<br><br><br>**AFFIDAVIT** |
|---|---|

**BAHIA M. BIN CHAMBI**, states the following to be true under the penalty of perjury:

1.      I do have personal knowledge of the information stated here.

2.      I am a business woman of over 30 years experience within real estate. Over the years I have been very successful. At this time, my estimated net worth is valued at over $16 Million, and I do invest in worthwhile projects as the one David Mehmet presented me with that involved producing a movie called 'the ultimate hit'. The movie idea is a good concept, there were top people involved and it looked like it had great potential.

3.      Prior to July 25, 2007, I did agree with David Mehmet that I would invest $250,000 with him to produce his movie. However, this agreement was on the condition that he deliver a movie treatment to me. The return on my investment was going to be the principal investment plus 10% of the profits David Mehmet received. To date, David Mehmet has not delivered any movie treatment to me so I have not invested any money with him.

4.      I was also aware that David Mehmet was working with some very high people in the movie industry, which caught my interest. He did provide me with proof that he was getting a distribution agreement with Carmika Cinema Inc to exhibit his film on a number of their movie

screens across America. Also, I was aware that he had been introduced to the actor James Purefoy who expressed an interest in the movie.

5.    David Mehmet has approached me for pre-treatment financing and has asked me for a considerable amount of money to finish the movie treatment. However, without having the movie treatment in my hands, I refused to give him the funds. The reason behind my refusal was that without the movie treatment, my funds are more at risk. The movie treatment would have given me a tangible product that had some worth.

6.    Unfortunately, and as I understand it, due to David Mehmet's problems with Paypal he is unable to deliver the movie treatment. My understanding is that Paypal defamed David Mehmet with Mr. Eric Anderson who has refused to deliver the movie treatment unless David Mehmet pays him a large sum of money, which I have been told he does not have. I am also aware that Mr. Micheal Burks, who was helping David Mehmet break into the movie industry by introducing him to top executives in the movie industry and by negotiating contracts for him has backed away from him due to my refusal to finance this project.

May 5/19/, 2008

Bahia M. Bin Chambi

Sworn to before me    05 / 19 / 2008

Notary Public

POLIN LO
Notary Public, State of New York
No. 01LO6141758
Qualified in Kings County
Commission Expires June 28, 2008

E

# YAHOO! MAIL

Print – Close Window

**To:** badisse@badisse.com

**Subject:** Carmike

**Date:** Tue, 17 Jul 2007 14:08:21 -0400

**From:** mfbravenhouse@aol.com

David,
   Did you receive my email in regards to the Carmike meeting this morning?

Mike

AOL now offers free email to everyone. Find out more about what's free from AOL at **AOL.com**.

# YAHOO! MAIL

Print - Close Window

**To:** badisse@badisse.com

**Subject:** Release

**Date:** Tue, 17 Jul 2007 11:30:00 -0400

**From:** mfbravenhouse@aol.com

David,
· Had a good meeting this morning. Your letter for exhibition of your film should go out in a couple of days.

Mike

AOL now offers free email to everyone. Find out more about what's free from AOL at **AOL.com**.

# YAHOO! MAIL

Print - Close Window

**From:** Mfbravenhouse@aol.com

**Date:** Mon, 23 Jul 2007 19:22:45 EDT

**Subject:** Re: Letter

**To:** badisse@badisse.com

I just checked on the status of your letter.  The head buyer is waiting on their in-house attorney to sign off on it. Hopefully it will go out in a day or two. Sorry for the delay, but they have their procedures.

Mike

Get a sneak peek of the all-new AOL.com.

# YAHOO! MAIL

Print - Close Window

| | |
|---|---|
| **To:** | badisse@badisse.com |
| **Subject:** | Ultimate Hit |
| **Date:** | Mon, 16 Jul 2007 15:12:21 -0400 |
| **From:** | mfbravenhouse@aol.com |

David,

    Just now got the treatment for Disney off to my manager, and can relax a spell.  Don't know if you received my last email of about 3 hours ago.  At any rate, if you go with Brian, I have other stuff to work on, so just let me know what you'd like to do.

Mike

AOL now offers free email to everyone. Find out more about what's free from AOL at **AOL.com**.

F

 **MAIL**

Print - Close Window

**To:** badisse@badisse.com

**Subject:** Intent ltrs

**Date:** Tue, 31 Jul 2007 09:35:30 -0400

**From:** mfbravenhouse@aol.com

David,
 Attached is an email I received from James Purefoy, who would like to play Pontius. And, an early email from the director, Tom Reeve. Note that Tom is absolutely on board. He and I, (and our wives) have been personal friends for 23 years.
 I'll get the EU financing letter off to you later today.

Mike

AOL now offers free email to everyone. Find out more about what's free from AOL at **AOL.com**.

### Plain Text Attachment

```
TO WHOM IT MAY CONCERN:

I, James Purefoy, let it be known that it is my intention to take
part in Michael F Burks's film 'Redeemed', providing that the final
shooting script meets with my approval.

Yours sincerely,

James Purefoy
```

### Plain Text Attachment

```
Dear Mike,
This email confirms that I am interested in directing the Motion
 Picture currently entitled REDEEMED subject, of course, to my availability
 and my approval of budget, schedule, cast, script and key crew.
We will also need to be able to agree upon the principal deal terms of
 my engagement.
Best wishes, Tom

Tom Reeve
TRS Enterprises
Luxembourg
```

G

646-536-2771

<u>**Writer for Hire Short Form Agreement**</u>

RE: "The Ultimate Hit"

The following are the terms of the agreement stipulated on July 17, 2007 between B. David Mehmet d/b/a Badisee Productions ("Producer" and "Company") and located at 130 Church Street, Ste 251, New York, NY  10007 for the production and distribution of the "The Ultimate Hit" feature motion picture and Eric Anderson, ("Writer") located at 7346 Lake Street #1W, River Forest, Illinois, 60305  for his writing services in connection with a treatment for a feature screenplay entitled "THE ULTIMATE HIT", collectively herein called "TREATMENT".

**COMPENSATION:**

Producer agrees to pay Writer and Writer agrees to accept, as full and complete compensation for Writer's services hereunder:

1) An advance of $1500 is payable to Writer by Producer upon commencement of this contract.

2) A guaranteed compensation of $18,538 USD, which is the standard rate identified by the Writers Guild of America for a treatment, minus any monies advanced to Writer by Badisee Productions, receipt of which will be presented by Writer when full compensation is due. This guaranteed compensation is payable to Writer by Producer or Financing Entity or Studio at the time Producer has secured full financing of this motion picture project "The Ultimate Hit", ("The Movie") and in any case no later than 4 weeks prior to commencement of principal photography of "The Ultimate Hit" movie.

**OWNERSHIP:**

The Writer acknowledges that the original Story, Characters and Screenplay are the original creation and/or sole property and/or copyright of the Producer and as such any and all additional Revenues from any sale and/or option of the Screenplay "The Ultimate Hit" –or any subsequent additions and/or revisions are also the sole copyright of the Producer– and that unless the writer's guaranteed compensation, will be paid solely to Producer or its assigns.

**POLISH AND CHANGES:**

If there are minor changes (no more than three passes) to be made to the Treatment, following instructions of Producer, the Writer will do so at no charge to Producer.

**CREDIT:**

On condition that Writer fully and completely keeps and performs all of Writer's obligations and agreements hereunder and as approved by Producer, Producer agrees to Writer on a minimum "Story By" screen credit and in all paid visual and written advertisements of the

Page 1 of 5

Exhibit "C"

**RESULTS AND PROCEEDS:**

Work-Made-For-Hire: Writer acknowledges that all results, product and proceeds of Writer's services (including all original ideas in connection therewith) are being specially ordered by Producer for use as part of a Motion Picture and shall be considered a "work made for hire" for Producer as specially commissioned for use as a part of a motion picture and any and all other uses and exploitations in accordance with Sections 101 and 201 of Title 17 of the U.S. Copyright Act. Therefore, Producer shall be the sole author and copyright owner thereof for all purposes throughout the universe without limitation of any kind or nature. In consideration of the monies paid to Writer hereunder, Producer shall solely and exclusively own throughout the universe in perpetuity all rights of every kind and nature whether now or hereafter known or created in and in connection with such results, product and proceeds, in whatever stage of completion as may exist from time to time, including: (i) the copyright and all rights of copyright; (ii) all neighboring rights, trademarks and any and all other ownership and exploitation rights now or hereafter recognized in any Territory, including all rental, lending, fixation, reproduction, broadcasting (including satellite transmission), distribution and all other rights of communication by any and all means, media, devices, processes and technology; (iii) the rights to adapt, rearrange, and make changes in, deletions from and additions to such results, product and proceeds, and to use all or any part thereof in new versions, adaptations, and other Motion Pictures including Remakes and Sequels; (iv) the right to use the title of the Work in connection therewith or otherwise and to change such title; and (v) all rights generally known as the "moral rights of authors."

**WARRANTY AND INDEMNIFICATION:**

1. Writer is free to enter into this Agreement and no rights of any third parties are or will be violated by Writer entering into or performing this Agreement. Writer will not subject to any conflicting obligation or any disability, and Writer has not made and shall not hereafter make any agreement with any third party, which could interfere with the rights granted to Company hereunder or the full performance of Writer's obligation and services hereunder.

2. All of the Work (and the Property, if any) shall be wholly original with Writer and none of the same has been or shall be copied from or based upon any other work unless assigned in this contract. The reproduction, exhibition, or any use thereof or any of the rights herein granted shall not defame any person or entity nor violate any copyright or right of privacy or publicity, or any other right of any person or entity. The warranty in this subparagraph shall not apply to any material as furnished to Writer by Company (unless such furnished material was written or created by Writer or originally furnished to Company by Writer) or material inserted in the Work by Company, but shall apply to all material which Writer may add thereto.

3. Writer shall indemnify and hold harmless Company (and its affiliated companies, successors, assigns, and the directors, officers, employees, agents, and representatives of the foregoing) from any damage, loss, liability, cost, penalty, guild fee or award, or expense of any kind (including attorney's fees (hereinafter "Liability") arising out of, resulting from, based upon or incurred because of a breach by Writer of any agreement, representation, or warranty made by Writer hereunder. The party receiving notice of such claim, demand or action shall promptly notify the other party thereof. The pendency of

Page 3 of 5

such claim, demand, or action shall not release Company of its obligation to pay Writer sums due hereunder.

4. Company agrees to indemnify Writer and hold Writer harmless from and against any and all damages and expenses (other than with respect to any settlement entered into without Company's written consent) arising out of any third party claim against Writer resulting from Company's development, production, distribution and/or exploitation of the Project.

**AGREEMENT OF THE PARTIES:**

This document [including Attachments as Addendums, if any] shall constitute the agreement between the parties until modified or amended by a subsequent writing by mutual consent.

**ACCEPTED AND AGREED:**

By _____          By _____

B. David Mehmet – Producer              Eric B. Anderson – Writer
Badime Productions – Company

Page 4 of 5

H

Accordingly, good cause appearing, **IT IS HEREBY ORDERED THAT**:

    (a) Defendant's motion to dismiss the Complaint is denied; and

    (b) Plaintiff's Cross-Motion for partial summary judgment on liability for defamation is granted; and

    (c) Determination of damages is to be held in abeyance until trial.

**IT IS SO ORDERED.**

Dated_____

                                            _____

                                            Hon. Ronald M. Whyte
                                            United States District Judge

1  COOLEY GODWARD KRONISH LLP
   MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2  OLEG CROSS (246680) (ocross@cooley.com)
   4401 Eastgate Mall
3  San Diego, CA 92121
   Telephone: (858) 550-6000
4  Facsimile: (858) 550-6420

5  Attorneys for Defendant
   PAYPAL, INC.

6

7

8                UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11

12  B. DAVID MEHMET,                    Case No. 5:08-cv-01961-RMW

13              Plaintiff,              **OPPOSITION TO PLAINTIFF'S MOTION
                                        FOR PARTIAL SUMMARY JUDGMENT**
14         v.
                                        DATE:     July 25, 2008
15  PAYPAL, INC.,                       TIME:     9:00 a.m.
                                        CTRM:     6, 4th Floor
16              Defendant.              JUDGE:    Hon. Ronald M. Whyte

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT

I.    **STATEMENT OF ISSUES TO BE DECIDED.**

A.    Whether this Court can determine, based on the evidence in the record, and before any discovery was conducted, that the e-mail Defendant PayPal, Inc. ("PayPal") sent to another PayPal user, Eric Anderson ("Anderson"), stating that Plaintiff's money transfer was determined to be fraudulent, constituted defamation, even though admissible evidence demonstrates that PayPal's statement was true?

II.    **LEGAL STANDARD GOVERNING PLAINTIFF'S MOTION.**

Summary judgment is only appropriate where evidence in the record presents no genuine issue of material fact. *See* FED. R. CIV. P. 56. For the purposes of summary judgment, the moving party bears the burden of proving the absence of a genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Moreover, this Court should "construe all facts in the light most favorable to the non-moving party." *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

III.    **PLAINTIFF HAS NOT ESTABLISHED THE ABSENCE OF GENUINE ISSUES OF MATERIAL FACTS WITH RESPECT TO HIS DEFAMATION CLAIM.**

Plaintiff contends that he is entitled to summary judgment on his defamation claim. (*See* Mem. of P&As i/s/o Cross-Motion for Partial Summary Judgment, Doc. # 13, at 19.) The "evidence" Plaintiff offers consists of (a) an e-mail in which PayPal informs a PayPal user to whom Plaintiff attempted to transfer money (Anderson) that Plaintiffs' funds were determined to be fraudulent (*see* Doc. # 12, at 76); and (b) an affidavit by Anderson stating that he received PayPal's e-mail, and that this "email justified [Anderson's] termination of the contract with" Plaintiff. (*See* Doc. # 12, at 75.) These documents do not (and cannot) show, however, that the e-mail in question was actually false.

It is well settled that truth is an absolute defense to defamation. *See, e.g., Gill v. Hughes*, 227 Cal. App. 3d 1299, 1309 (Cal. Ct. App. 1991). Here, Plaintiff has not established that e-mail, stating that the funds in question were determined to be fraudulent, was false. To the contrary, credible and admissible evidence shows that the funds in question were, in fact, fraudulent. Specifically, PayPal's Legal Support Specialist, who has investigated the transaction in question

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

2.

OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT

1    and reviewed Mr. Mehmet's accounts with PayPal, concluded that the e-mail in question, stating

2    that Plaintiff's funds were fraudulent, was true.  (*See* Declaration of Tina Taylor in Support of

3    Opposition to Motion for Partial Summary Judgment ("Taylor Decl.").)  Specifically, Ms. Taylor

4    declared:

5
> I concluded that Mr. Mehmet's practice of circumventing previously
6  > locked accounts, opening new accounts, and using new accounts to make
   > transfers without rectifying past debs to PayPal, which at the time
7  > amounted to $2088.66, constituted fraud on PayPal.

8    (Taylor Decl. ¶ 15.)  Plaintiff has not provided any evidence to the contrary.  In any event, at the

9    very minimum, Ms. Taylor's declaration directly contradicts Plaintiff's claim that the statement

10    was false, raising a genuine issue of material fact.  Accordingly, Plaintiff's motion for partial

11    summary judgment should be denied.  *See Anderson*, 477 U.S. at 248 ("summary judgment will

12    not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a

13    reasonable jury could return a verdict for the nonmoving party.")

14    **IV.    PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE PAYPAL HAS NOT HAD THE
    OPPORTUNITY TO CONDUCT ANY DISCOVERY.**

15    Courts routinely deny summary judgment where parties have not conducted any

16    discovery.  *See, e.g., Crawford-El v. Britton*, 523 U.S. 574, 599 n.20 (1998); *Burlington N. Santa*

17    *Fe R.R. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 774 (9th Cir.

18    2003) (noting that "lightning-quick summary judgment motions [made prior to discovery] can

19    impede informed resolution of fact-specific disputes").  In fact, courts have held that Rule 56(f)

20    requires that the nonmoving be given  the opportunity to discover evidence that is essential to its

21    opposition.  *See Metabolife Int'l v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (Rule 56(f)

22    "requir[es], rather than merely permit[s], discovery 'where the nonmoving party has not had the

23    opportunity to discover information that is essential to its opposition.'") (citing *Anderson*, 477

24    U.S. at 250 n.5); *see also Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1992)

25    (summary judgment should be entered "after adequate time for discovery.")

26    Here, Plaintiff filed his motion for summary judgment -- simultaneously with his amended

27    complaint -- before the parties have finished briefing the motion to dismiss, before PayPal filed an

28

3.

1   answer, and before the parties have had an opportunity to conduct any discovery (or even conduct

2   a Rule 26(f) conference), including initial disclosures. PayPal should be granted the opportunity

3   to discover, *inter alia*, evidence pertaining to the alleged falsity of the e-mail in question as a

4   matter of course. Such discovery would likely include: (a) written discovery from Plaintiff

5   regarding ownership of multiple accounts with PayPal and unresolved debts on some of those

6   accounts; (b) deposition of Plaintiff on the same issues; and (c) deposition of Eric Anderson

7   regarding the circumstances surrounding receipt of the e-mail in question and cancellation of his

8   contract with Plaintiff. Such discovery is essential to PayPal's ability to oppose Plaintiff's

9   defamation claim. Accordingly, Plaintiff's motion for partial summary should be denied as

10  premature because the parties have not yet conducted any discovery.

11  **V.    CONCLUSION**

12      For all the foregoing reasons, the Court should deny Plaintiff's motion for partial

13  summary judgment.

14

15

16  Dated: June 27, 2008                    COOLEY GODWARD KRONISH LLP
                                            MICHAEL G. RHODES (116127)
17                                          OLEG CROSS (246680)

18

19

20                                          /s/
                                            _____
21                                          Oleg Cross
                                            Attorneys for Defendant
22                                          PAYPAL, INC.

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

4.

OPPOSITION TO MOTION FOR PARTIAL
SUMMARY JUDGMENT

1   COOLEY GODWARD KRONISH LLP
    MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2   OLEG CROSS (246680) (ocross@cooley.com)
    4401 Eastgate Mall
3   San Diego, CA 92121
    Telephone: (858) 550-6000
4   Facsimile: (858) 550-6420

5   Attorneys for Defendant
    PAYPAL, INC.

6

7

8                   UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11

12   B. DAVID MEHMET,                    Case No. 5:08-cv-01961-RMW

13            Plaintiff,                 DECLARATION OF TINA TAYLOR IN
                                         SUPPORT OF OPPOSITION TO MOTION
14       v.                              FOR PARTIAL SUMMARY JUDGMENT

15   PAYPAY, INC.,
                                         CTRM:    6, 4th Floor
16            Defendant.                 JUDGE:   Hon. Ronald M. Whyte

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO                        1.    DECL. OF TINA TAYLOR I/S/O OPPOSITION TO
                                       MOTION FOR PARTIAL SUMMARY JUDGMENT
                                       CV-08-01961

1        I, Tina Taylor, declare as follows:

2        **1.**    I am employed at PayPal, Inc. ("PayPal"), defendant in this matter, as a Legal

3 Support Specialist. I have personal knowledge of the matter stated herein and, if called as a

4 witness, could and would testify competently thereto.

5        **2.**    I have read plaintiff's pleadings in this matter and have undertaken an

6 investigation, both prior to the filing of this lawsuit and thereafter, into the facts alleged therein and

7 related matters regarding the money transfers at issue. This investigation involves the ordinary

8 course of my daily employment activities as a Legal Support Specialist for PayPal. In that

9 capacity, I frequently review financial transactions for PayPal users of the type covered by

10 plaintiff's allegations in this case.

11        **3.**    As a company policy, PayPal does not permit its users to maintain multiple

12 accounts. The relevant portion of PayPal's User Agreement, Section 2.2, expressly states that all

13 users must maintain only one "Personal" account and either one "Premier" or "Business" account.

14 The relevant excerpts of the User Agreement in force for plaintiff are attached hereto collectively

15 as "Exhibit A" and incorporated by reference herein as though set forth in full.

16        **4.**    In order to become a PayPal user, all users, like plaintiff Badisse David Mehmet

17 ("Mr. Mehmet"), are taken through a page flow, in which they must agree to the terms and

18 conditions of the User Agreement. The PayPal system is set up so that no account can be

19 established without the contract (User Agreement) being agreed to by the user.

20        **5.**    In violation of the User Agreement and the company's policy, Mr. Mehmet has

21 eight accounts with PayPal. Five of these accounts are registered to "Badisse David Mehmet." Of

22 these five accounts, three are "Business" accounts, one is a "Premier" account, and one is a

23 "Personal" account.

24        **6.**    In addition, there are two other "Business" accounts registered to "Bahia Mehmet"

25 and one "Premier" account registered to "Kheira Mehmet" – all three of which are linked to Mr.

26 Mehmet by: (1) same last name; (2) mailing address; (3) phone number; (4) visitor ID or cookies;

27 and (5) internet protocol address.

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

2.

DECL. OF TINA TAYLOR I/S/O OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT
CV-08-01961

7.    On September 9, 2006, PayPal locked an account registered to "Bahia Mehmet," ending in "5412," but linked to Mr. Mehmet, due to several returned payments by Mr. Mehmet's banking institution, which resulted in a negative balance of $1,258.66 that was not rectified for an extended period of time. Because the account ending in "5412" was locked, its registered user could not make any money transfers from that account without first bringing the account in good standing.

8.    On October 8, 2006, PayPal locked an account registered to Mr. Mehmet ending in "3464," due to the extended amount of time that the account held a negative balance of $695.00. That balance was subsequently referred to a collection agency, but to the best of my knowledge from my personal investigation into the matter, has not been collected. Because the account ending in "3464" was locked, Mr. Mehmet could not make any money transfers from that account without first bringing the account in good standing.

9.    On February 1, 2007, PayPal placed a limitation, based on an "Aggregated Suspicious Activity," on an account ending in "6634," registered to "Kheira Mehmet," but linked to Mr. Mehmet. The limitation was placed because this account was linked to the account ending in "5412," which had a negative balance of $1,258.66 and was linked to Mr. Mehmet.

10.    On February 1, 2007, without rectifying the account ending in "6634," Mr. Mehmet opened an account ending in "7132."

11.    On July 25, 2007, Mr. Mehmet initiated a payment from the account ending in "7132" in the amount of $750.00 to another user, Mr. Eric Anderson. The payment was set to be funded using Mr. Mehmet's VISA card ending in "9024."

12.    On July 25, 2007, Mr. Mehmet also initiated a payment from the account ending in "7132" in the amount of $1,200 to another user, Mr. Alexander Gutin. The payment was set to be funded using Mr. Mehmet's VISA card ending in "9024." On that same date, Mr. Mehmet's account ending in "7132" entered PayPal's fraud queue.

13.    Mr. Mehmet's account ending in "7132" entered PayPay's fraud queue for two reasons: (1) this account was linked to the account ending in "3464," registered to Mr. Mehmet, which had a negative balance of $695.00; and (2) Mr. Mehmet payments of $750.00 and

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

3.

DECL. OF TINA TAYLOR I/S/O OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT
CV-08-01961

1    $1200.00 were both for intangible services, which had to be verified according PayPay's policy

2    and User Agreement.

3       **14.**    On August 3, 2007, Mr. Anderson provided PayPal with evidence of an agreement

4    between Mr. Mehmet and himself, satisfying PayPay's policy for payments for intangible

5    services. However, after review of all the above-referenced accounts, PayPal determined that Mr.

6    Mehmet used new accounts to make transfers without rectifying debts on previously opened

7    accounts with PayPal. As of August 3, 2007, Mr. Mehmet owed PayPal a total of $2088.66:

8    $695.00 for the account ending in "7132" plus $1,258.66 for the account ending in "5412,"

9    registered to "Bahia Mehmet," but linked to Mr. Mehmet.

10       **15.**    Based on the above facts, I concluded that Mr. Mehmet's practice of

11    circumventing previously locked accounts, opening new accounts, and using new accounts to

12    make transfers without rectifying past debs to PayPal, which at the time amounted to $2088.66,

13    constituted fraud on PayPal.

14       **16.**    Accordingly, in an e-mail dated August 6, 2007, responding to Mr. Anderson's

15    concerns about why Mr. Mehmet's $750.00 were not transferred, PayPal stated that the funds in

16    questions were suspected of being fraudulent and were subsequently determined to be fraudulent.

17    Based on the above facts, and to the best of my knowledge, that statement was true. The e-mail

18    in question is attached hereto as "Exhibit B" and incorporated by reference herein as though set

19    forth in full.

20       **17.**    On August 6, 2007, PayPal reversed Mr. Mehmet's transfer to Mr. Gutin, and

21    returned the $1200.00 to Mr. Mehmet's VISA card ending in "9024."

22       **18.**    On August 11, 2007, PayPal reversed Mr. Mehmet's transfer to Mr. Anderson, and

23    returned the $750.00 to Mr. Mehmet's VISA card ending in "9024."

24       **19.**    To the best of my knowledge, as of this date, Mr. Mehmet has not paid the

25    $695.00 he owed to PayPal for the account ending "7132" or the $1,258.66 owed for the account

26    ending "5412."

27       **20.**    I hereby declare under penalty of perjury under the laws of the United States and

28    the State of California that the foregoing is true to the best of my knowledge.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

4.

DECL. OF TINA TAYLOR I/S/O OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT
CV-08-01961

1    Executed on June 24, 2008 at LaVista, Nebraska.

2

3

4

5    _____
                TINA TAYLOR

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO                          5.    DECL. OF TINA TAYLOR I/S/O OPPOSITION TO
                                         MOTION FOR PARTIAL SUMMARY JUDGMENT
                                         CV-08-01961

# Exhibit A

This Agreement is a contract between you and PayPal and applies to your use of PayPal's Services. You must read, agree with and accept all of the terms and conditions contained in this Agreement. We may amend this Agreement at any time by posting a revised version on our website. The revised version will be effective at the time we post it. In addition, if the revised version includes a Substantial Change, we will provide you with 30 Days' prior notice of Substantial Change by posting notice on the "Policy Updates" page of our website. We last modified this Agreement on January 10, 2007.

This Agreement contains fifteen sections, and you may jump directly to any section by selecting the appropriate link below. The headings and subheadings below are for reference only and do not limit the scope of each section. Some capitalized terms have specific definitions, and we have provided them in section 15. You will also find underlined words in this Agreement and on our website that hyperlink to relevant information.

1.   **Our Relationship With You**
2.   **Eligibility and Types of Accounts**
3.   **Sending Money**
4.   **Receiving Money**
5.   **Account Balances**
6.   **Withdrawing Money**
7.   **Closing your Account**
8.   **Fees**
9.   **Restricted Activities**
10.  **Your Liability – Actions We May Take**
11.  **Seller Protection Policy**
12.  **Errors and Unauthorized Transactions**
13.  **Disputes between Buyers and Sellers - Buyer Protection Programs**
14.  **Disputes with PayPal**
15.  **Definitions**

**1.  Our Relationship With You**

**1.1 PayPal is only a Payment Service Provider**. PayPal helps you make payments to and accept payments from third parties. PayPal is an independent contractor for all purposes, except that PayPal acts as your agent only with respect to the custody of your funds. PayPal does not have control of or liability for the products or services that are paid for with our Service. We do not guarantee the identity of any User or ensure that a buyer or a seller will complete a transaction.

**1.2 Your Privacy.**  Protecting your privacy is very important to PayPal.  Please review our Privacy Policy in order to better understand our commitment to maintaining your privacy, as well as our use and disclosure of your Information.

**1.3 Privacy of Others.** If you receive Information about another PayPal User through the Service, you must keep the Information confidential and only use it in connection with the Service. You may not disclose or distribute a PayPal User's Information to a third party or use the Information for marketing purposes unless you receive the User's express consent to do so.

**1.4 Intellectual Property.**  "PayPal.com," "PayPal," and all related logos, products and services described in our website are either trademarks or registered trademarks of PayPal or its licensors. You may not copy, imitate or use them without PayPal's prior written consent. In addition, all page headers, custom graphics, button icons, and scripts are service marks, trademarks, and/or trade dress of PayPal. You may not copy, imitate, or use them without our prior written consent. You may use HTML logos provided by PayPal through our merchant services, auction tools features or affiliate programs without prior written consent for the purpose

of directing web traffic to the Service. You may not alter, modify or change these HTML logos in any way, use them in a manner that is disparaging to PayPal or the Service or display them in any manner that implies PayPal's sponsorship or endorsement.

**1.5 Assignment.** You may not transfer or assign any rights or obligations you have under this Agreement without PayPal's prior written consent. PayPal reserves the right to transfer or assign this Agreement or any right or obligation under this Agreement at any time.

**1.6 Notices to You.** You agree that PayPal may provide notice to you by posting it on our website, emailing it to the email address listed in your Account, or mailing it to the street address listed in your Account. Such notice shall be considered to be received by you within 24 hours of the time it is posted to our website or email to you unless we receive notice that the email was not delivered. If the notice is sent by mail, we will consider it to have been received by you three Business Days after it is sent. You may request a paper copy of any legally required disclosures and you may terminate your consent to receive required disclosures through electronic communications by contacting PayPal as described in section 1.7 below. PayPal will charge you a Records Request Fee (per section 8) to provide a paper copy. PayPal reserves the right to close your Account if you withdraw your consent to receive electronic communications.

**1.7 Notices to PayPal.** Except as otherwise stated below in section 12 (Errors and Unauthorized Transactions) and section 14 (Disputes with PayPal), notice to PayPal must be sent by postal mail to: PayPal, Inc., Attention: Legal Department, 2211 North First Street, San Jose, California 95131.

**1.8 Transaction History.** You can access your full transaction history and Balance at any time by logging into your Account and clicking on the "History" tab.

**1.9 Regulation E Disclosures.** Our commitments to you in this Agreement related to liability for unauthorized transactions, stop-payment rights and procedures, error resolution rights and procedures, Fees, contact information, our Business Days, limitations we may impose on transfers, and your rights to statements of your transaction history, constitute disclosures under the Electronic Fund Transfer Act and Federal Reserve Board Regulation E, 12 C.F.R. § 205.1 *et seq.*

**1.10 Singapore Consumer Advisory.** The PayPal payment service is regarded as a stored value facility under Singapore law. PayPal, the holder of the PayPal stored value facility, does not require the approval of the Monetary Authority of Singapore. Consumers are advised to read these terms and conditions carefully.

## 2. Eligibility and Types of Accounts

**2.1 Eligibility.** To be eligible for our Services, you must be at least 18 years old and a resident of the United States or one of the countries listed on the PayPal World-Wide page. This Agreement applies only to Users who are residents of the United States and Singapore. If you are a resident of another country, you may access your agreement from our website in your country (if applicable).

**2.2 Personal, Premier and Business Accounts.** We offer three different types of Accounts: Personal, Premier and Business Accounts. You may only hold one Personal Account and either one Premier or one Business Account. By opening a Premier or Business Account and accepting the terms as outlined in this Agreement, you attest that you are not establishing the Account primarily for personal, family, or household purposes.

**2.3 Identity Authentication.** You authorize PayPal, directly or through third parties, to make any inquiries we consider necessary to validate your identity. This may include asking you for further information, requiring you to take steps to confirm ownership of your email address or financial

# Exhibit B

*"pending-reversal@paypal.com" <pending-reversal@paypal.com>* wrote:

Date: Mon, 6 Aug 2007 05:51:03 -0500 (CDT)
From: "pending-reversal@paypal.com" <pending-reversal@paypal.com>
To: Eric Anderson <eanderso@yahoo.com>
Subject: Re: Protections/Privacy/Security (Routing Code:C840-L001-Q414-T3335-S111) :kd2
(KMM78622I95L0KM)

Dear Eric Anderson,

Thank you for contacting PayPal. We regret the delay in responding to
your service request.

We regret that you have had this experience. We received notification
that the funds in question used for this transaction were possibly
fraudulent. We did an investigation and it was determined that the
funds, indeed, were fraudulent. As such, we had to return the funds to
the party that had them taken from them without their authorization.
You are not protected from this reversal of funds under our Seller
Protection Policy, as this transaction was not listed as eligible. I do
regret any frustration that this may cause.

Thanks again for writing, and thank you for being part of the PayPal
community.

Sincerely,
PayPal Account Review Department
PayPal, an eBay Company


Original Message Follows:
------------------------
Form Message
customer subject: I'm trying to figure out why a claim has been filed.
customer message: Additional Information: I'm trying to determine if
this
is simply a part of PayPal's security process, or if the client reversed

the charges.

Eric Anderson'

1  COOLEY GODWARD KRONISH LLP
   MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2  OLEG CROSS (246680) (ocross@cooley.com)
   4401 Eastgate Mall
3  San Diego, CA 92121
   Telephone:    (858) 550-6000
4  Facsimile:    (858) 550-6420

5  Attorneys for Defendant
   PAYPAL, INC.

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11

12  B. DAVID MEHMET,                    Case No.  C08 01961

13              Plaintiff,              **PROOF OF SERVICE**

14        v.

15  PAYPAY, INC.,

16              Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**
**(FRCP 5)**

I am a citizen of the United States and a resident of the State of California.  I am employed in San Diego County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made.  I am over the age of eighteen years, and not a party to the within action.  My business address is Cooley Godward Kronish LLP, 4401 Eastgate Mall, San Diego, California  92121.  On the date set forth below I served the documents described below in the manner described below:

1.   OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT;

2.   DECLARATION OF TINA TAYLOR IN SUPPORT OF OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

[X]   (BY U.S. MAIL) I am personally and readily familiar with the business practice of Cooley Godward Kronish LLP for collection and processing of correspondence for mailing with the United States Postal Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at San Diego, California.

[ ]   (BY MESSENGER SERVICE) by consigning the document(s) to an authorized courier and/or process server for hand delivery on this date.

[ ]   (BY FACSIMILE) I am personally and readily familiar with the business practice of Cooley Godward Kronish LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

[ ]   (BY OVERNIGHT MAIL) I am personally and readily familiar with the business practice of Cooley Godward Kronish LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by _____ for overnight delivery.

[X]   (BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Cooley Godward Kronish LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

on the following part(ies) in this action:

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

586844 v1/SD

1.

5:08-CV-01961-RMW
PROOF OF SERVICE

B. David Mehmet
130 Church Street, Suite 251
New York, NY 10007

Executed on June 27, 2008, at San Diego, California.

_Shelley Williams_
Shelley Williams

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

586844 v1/SD

2.

5:08-CV-01961-RMW
PROOF OF SERVICE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| B. David Mehmet,<br><br>          Plaintiff,<br><br>vs.<br><br>Paypal, Inc.<br><br>          Defendant. | Case No. 5:08-cv-01961 (RMW)<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:    July 25, 2008<br>Time:   9:00am<br>CTRM:  6,4[th] Floor<br>Judge:  Hon. Ronald M. Whyte |

**B. David Mehmet**, states the following to be true under the penalty of perjury:

1.      That I have personal knowledge of the facts stated herein and I am making the following statements in support of my cross-motion for partial summary judgment against the Defendant on liability for defamation and defamation per se pursuant to Rule 56(d)(2) of the Fed. R. of Civ. P.

2.      That after reading the Defendant's reply and opposition papers, it is clear that the Defendant has defamed me in its email dated August 6, 2007, and that the Defendant has failed to properly plead or prove fraud.

3.      That the Defendant failed to establish that the statements in its email dated August 6, 2007 were referring to a <u>fraudulent opening of a second account</u> instead of a <u>theft of funds</u>.[1]

---

[1] In attempting to manufacture an issue of fact to defeat the summary motion, the Defendant is asking this Court to accept that the statements in its email dated August 6, 2007 were referring to a <u>fraudulent opening of an account</u> instead of a <u>theft of funds.</u> However, the Defendant fails to explain how the following sentence fits in its argument: "<u>**As such, we had to return the funds to the party that had them taken from them without their authorization**</u>." See exhibit "B" of Defendant's opposition papers.

4.      That the Defendant has failed to establish any facts showing that the upgrading of the second account to a business account was fraudulent instead of a breach of contract under section 2.2 of the User-Agreement.[2] The defendant is actually alleging a fraud in the <u>performance</u> of the User-Agreement NOT in the inducement of it. In fact, the Defendant has completely failed to plead, with specificity, a claim of fraud in the inducement of the User-Agreement pertaining to the account ending in "7132" as required by Rule 9(b) of the Fed. R. of Civ. P. In addition, the Defendant's fraud claim in the performance of the User-Agreement is barred by the <u>Economic Loss Doctrine</u>. Under this doctrine, no matter how the Defendant words its claims, they still sound in a breach of contact. See ***East River Steamship Corp. v. Transamerica Deleval, Inc.,*** **476 US 858, 866-75, 106 S Ct 2295, 2299-2304, 90 LEd2d 865 (1986);** ***Apollo Group, Inc. vs. Avnet, Inc.*** **58 F.3d 477, 479 (9 Cir 1995)**("Generally, under the 'economic loss' rule, a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort.").[3]

5.      That in reference to the summary motion, the evidence submitted proves the following facts: (a) Defendant admitted that two (2) accounts are permissible, (b) Defendant failed to provide notice of a breach, (c) Defendant admitted that the $695.00 debt was not fraudulent, (d) Defendant admitted that it wrongly imputed liability for third-party accounts, (e) Defendant made a misleading statement, (f) Defendant admitted that its August 6, 2007 email

---

[2] The evidence proves that I only had two (2) active accounts at the same time ("3464" and "7132"), which was allowed by Sec. 2.2 of the User-Agreement. Thus, the actual fraud claim of the Defendant pertains to the <u>upgrading</u> and not to the <u>opening</u> of the second account "7132". Emails "FleaMarket@MyStockroom.com and Payments@StockWanted.com are associated with account "7132".

[3] Federal Courts have applied the Economic Loss Doctrine to service contracts. Also, the Defendant has not stated an exception to this doctrine. A fraudulent inducement cause of action, among other pleaded causes of action in the Amended Complaint, is an exception to this doctrine. This includes defamation because it involves more then an economic loss (i.e. personal injury). See ***Maine Rubber International v. Environmental Management Group. Inc.,*** 298. F.Supp.2d 133, 136-37 (D.Me. 2004). ***Fireman's Fund Ins. Co. v. SEC Donohue, Inc.,*** 679 N.E.2d 1197, 1200–01 (Ill. 1997); ***Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.***, 930 P.2d 1182, 1190 (Utah 1996); ***Floor Craft Floor Covering, Inc. v. Parma Cmt'y Gen. Hosp. Ass'n***, 560 N.E.2d 206, 212 (Ohio 1990); ***Berschauer/Phillips Const. Co. v. Seattle Sch***. Dist. No. 1, 881 P.2d 986 (Wash. 1994); ***Boston Inv. Prop. No. 1 v. E.W. Burman, Inc.***, 658 A.2d 515 (R.I. 1995).; ***Grynberg v. Agri Tech, Inc.***, 10 P.3d 1267, 1269 (Col. 2000).

referred to a theft of funds, (g) Defendant failed to produce the third-party that had $750.00 stolen from them, (h) Defendant admitted that its August 6, 2007 email is defamatory, (i) Defendant admitted malice, (j) general damages are presumed under defamation per se, and punitive damages are allowed, (k) Defendant's limited liability clause in its User-Agreement is moot, (l) Defendant was not entitled to the interest payments, (m) Discovery is no warranted, and (n) Defendant has admitted that there are no issues of fact pertaining to its email dated August 6, 2007.

6.    **Defendant admitted that two (2) accounts are permissible.** In the affidavit of Tina Taylor (P.3), and section 2.2 of the User-Agreement, the Defendant has admitted that I was allowed to have two active accounts at the same time.[4] Although paragraph 5 of Tina Taylor's affidavit claims that I had eight (8) accounts, I deny having that many accounts and that I closed all other accounts and I only had two (2) active accounts. The Defendant has not identified or informed this Court of any other accounts that were active at the same time other than the accounts ending in "3464 and 7132". I was not aware that I could not upgrade the second account to a business account, nor did the Defendant's software stop the upgrade when it could have. The Defendant then received and accepted fees on a number of transactions before it blocked the account ending in "7132" due to Eric Anderson initiating a bank transfer to move the $750.00 out of the Defendant's pooled bank account, which produced a false positive.

7.    **Defendant failed to provide notice of a breach.** Tina Taylor's affidavit confirms that the Defendant was aware of the account ending in "7132" being upgraded to a business account; but the Defendant failed to place me on notice of any breach pursuant to section 10.3 of its User-Agreement and failed to provide me with an opportunity to correct the breach. This wasn't a substantial breach since it could have been easily corrected by downgrading account

---

[4]My account ending in "3464" contained the $695.00 debt, and my account ending in "7132" was used to send $750.00 to Eric Anderson and $1,200.00 to Web Scribble Solutions, Inc .

"7132" to a personal account, and such an opportunity to downgrade the account should have been afforded to me. Especially given the fact that the Defendant had accepted fees generated from account "7132" for prior transactions. Not once did the Defendant allege fraud in any of the 40+ prior transactions. See ***James W. Kippen vs. American Automatic Typewriter Company***, **324 F.2d 742 (9th Cir. 1963)**. See also Defendant's emails witnessing prior transactions from account ending in "7132" attached hereto as exhibit "A"[5]

8.    **Defendant admitted that the $695.00 was not fraudulent.** The Defendant DID NOT claim that the outstanding $695.00 in account ending in "3464" was fraudulent. Also, the Defendant has admitted in paragraph 8 of Tina Taylor's affidavit that the $695.00 was a debt and that "the account ["3464] held a negative balance of $695.00". The accounts ending in "3464" and "7132" were both located on the Defendant's website at www.Paypal.com so common sense always dictated to me that the Defendant could grab funds from any of my accounts to satisfy any debt I owed. This is confirmed by section 5.6 and 5.7 of the User-Agreement. The Defendant could have used the $1,950.00 it withheld between July 25, 2007 and August 6, 2007 in account ending in "7132" to setoff the $695.00 negative balance in account ending in "3464"; but the Defendant intentionally failed to do so even after I instructed its customer service representation, Rene, on July 31, 2007 to setoff the $695.00 negative balance from the $1,950.00. The Defendant then sent Eric Anderson an email on August 6, 2007 accusing me of stealing $750.00 of the $1,950.00 from a third-party and informed Eric Anderson that the

---

[5] On April 18, 2007, the Defendant approved an ATM/debit card for account "7132" in my name and activated it on May 1, 2007. On and about June 21, 2007, I filed an "unauthorized account activity claim" with the Defendant pertaining to account "7132", and on June 23, 2007, the Defendant's fraud department reviewed account "7132" and found no fraud. On June 20, 2007, the Defendant requested that I verify account "7132 and on August 31, 2007, the Defendant lifted my withdrawal limit after I verified the account. **See Defendant's emails attached hereto as exhibit "B".**

Defendant "had to return the funds to the party that had them taken from them without their authorization".[6]

> **"5.6  Setoff of Balances. If you have more then one Account, then Paypal may debit one of your Accounts to setoff a negative Balance in another Account,"**

> **"5.7 Security Interest. To secure your performance of this Agreement, you grant to Paypal a lien on and security interest in your Account"**

9.     **Defendant admitted that it wrongly imputed liability for third-party accounts.**

In Tina Taylor's affidavit (P.7), the Defendant admitted that the account ending in "5412" was owned by my mother, Bahia Mehmet; and the affidavit further admitted in paragraph 9 that the account ending in "6634" was owned by my wife, Kheira Mehmet. Furthermore, the Defendant held me liable for my wife's account when it stated in Paragraph 10 that "without rectifying the account ending in "6634", Mr. Mehmet opened an account ending in "7132". In multiple Paragraphs of Tina Taylor's affidavit, the Defendant held me liable for both my wife's and my mother's accounts. The Defendant has failed to prove that I was legally liable for those third-party accounts. In Tina Taylor's affidavit (P.6 & P.7), the Defendant admitted that it created a link between my account, my mother's account and my wife's account solely on the criteria that (1) same last name; (2) mailing address; (3) phone number; (4) visitor ID or cookies, (5) internet protocol address, and (6) business Bank account. What this criteria proves is that we are a family doing business together at the same location, with the same computer and with the same

---

[6] No monies are owed to the Defendant because it is liable to me for over $1,000.00 in overdraft fees as it intentionally went into my bank account instead of using my debit card as I instructed it to do. The Defendant has not denied this fact. 28 U.S. Attorney Generals sued the Defendant for this wrongful practice in avoiding debit and credit card fees. The Defendant signed an Assurance promising not to engage in this practice again; but the Defendant violated that assurance with my account "3464". **See Defendant's Assurance attached hereto as exhibit "C"**

business bank account. It does not prove fraud. Nor does it establish a fraudulent conspiracy. The Defendant has not pled, or provided any facts witnessing a fraudulent conspiracy.[7]

10.    **Defendant made a misleading statement**. That in Tina Taylor's affidavit (P. 7), the Defendant's statement is misleading as to whether the $1,258.66 attached to my mother's account, "5412", was paid. The Defendant states that the $1,258.66 "was not rectified for an extended period of time", which may give the impression that it was not paid. That statement is ambiguous to whether the $1,258.66 was paid or not, and appears to be deliberate. Upon information and belief, my mother did pay the $1,258.66 to the Defendant. This is witnessed by the fact that the Defendant DID NOT give the $1,258.66 to a collection agency as it did with the $695.00 debt and the Defendant DID NOT state that it was not paid; but merely "not rectified for an extended period of time". Nevertheless, the $1,258.66 payment delay originated from the third-party account "5412", which I was not legally liable for.

11.    **Defendant admitted that its August 6, 2007 email referred to a theft of funds**. In Paragraph 16 of Tina Taylor's affidavit, the Defendant admits that the "e-mail dated August 6, 2007, responding to Mr. Anderson's concerns about why Mr. Mehmet's $750.00 were not transferred, Paypal stated that the funds in questions were suspected of being fraudulent and were subsequently determined to be fraudulent." This statement proves that the August 6, 2007 email pertained to the $750.00. Thus, when the Defendant wrote in that email that it "had to return the funds to the party that had them taken from them without their authorization", the Defendant was referring to the $750.00 being stolen from a third-party and inferred that I stole the funds, and that I violated Cal. Penal Code § 484.

---

[7] Account ending in "6634" owned by my wife was not involved in any fraud. In fact, the Defendant sent my wife an email on August 2, 2007 that stated "Your PayPal funds are now eligible for withdrawal". The Defendant still owes my wife the funds in her account. The Defendant simply interrupted my wife's account because it used the criteria above to link our accounts together. Many other consumers with family accounts have been similarly victimized by the Defendant. **See Defendants email attached hereto as exhibit "D"**.

12.    **Defendant failed to produce the third-party that had $750 stolen from them.**
The defendant's email dated August 6, 2007 to Eric Anderson stated that the Defendant "had to
return the funds to the party that had them taken from them without their authorization". The
Defendant neither produced nor identified any third-party that had the $750.00 taken from them
by me without their authorization. Nor did the Defendant return the $750.00 to any third-party.

13.    **Defendant admitted that the August 6, 2007 email is defamatory.** Tina Taylor's
affidavit admits that the Defendant obtained the $750.00 from my debit card ending in …9024
and then refunded the $750.00 back to me via the same debit card, which proves that the
$750.00 wasn't stolen from any third-party and the Defendant defamed me.

14.    **Defendant admitted malice.**  In Tina Taylor's affidavit, the Defendant admits that
it decided (1) not to satisfy the $695.00 debt pursuant to Sec. 5.6 and 5.7 of its User-Agreement
when it had $1,950.00 in its possession, (2) to refund the $1,950.00 to me, (3) to falsely inform
Eric Anderson that I stole $750.00 of the $1,950.00 from a third-party, (4) to wrongly impute
liability for third-party accounts to fabricate a fraud claim against me, (5) to falsely accuse me of
committing fraud in the inducement of the User-Agreement instead of a breach in its
performance pursuant to Sec. 2.2 of the User-Agreement, and (6) to use the $695.00 debt to
further falsely accuse me of fraud. These acts are clearly intentional and prove malice pursuant
to Cal. Civil Code § 3294(c)(1), and thus, the Defendant is deprived of any privilege under Cal.
Civil Code § 47(c), and punitive damages are warranted pursuant to Cal. Civil Code § 3294(a).[8]

15.    **General damages are presumed under defamation per se, and punitive
damages are allowed.** It is impossible for the Defendant to state with a legal certainty how
much a jury at trial will award for general and punitive damages under the defamation causes of

---

[8] The fact that Sec. 5.6 and 5.7 of the User-Agreement granted the Defendant permission to use
the $1,950.00 in account "7132" to satisfy the $695.00 negative balance in account "3464"
completely negates the Defendant's argument that I opened a separate account to avoid paying
the $695.00 negative balance. Especially since both accounts are under my name.

action, which can easily be above $75,000.00. Especially since defamation per se presumes

general damages pursuant to Cal. Civil Code § 45a and Cal. Civil Code § 48a(4)(a) defines

general damages due to libel as being "damages for loss of reputation, shame, mortification and

hurt feelings". The Defendant has completely failed to identify an amount under $75,000.01 that

a jury at trial would award in general damages, and punitive damages pursuant to Cal Civil Code

§ 3294(a)[9] that would represent the injury inflicted on my reputation and for the shame,

mortification and hurt feelings I experienced from its defamatory words to Eric Anderson. To

prevail on its motion to dismiss, the Defendant would have to show with a legal certainty that a

jury at trial would NOT award me more then $7,500.00 for general damages under defamation

and defamation per se and punitive damages at a ratio of 9 to 1, which would give an additional

award of more then $67,500.00. The Defendant would also have to show the same legal

certainty for the other pleaded causes of action. The Defendant has failed to meet this burden.[10]

16.   **Defendant's limited liability clause in its User-Agreement is moot.**   The

remedy of rescission has been requested in the Amended Complaint pursuant to Cal. Civil Code

§ 1689(b)(1) based on the causes of action sounding in fraud and negligent misrepresentation.

The Defendant's limited liability clause in the User-Agreement is a moot issue for the purpose of

its motion to dismiss on the grounds that the rescission would rescind the clause along with the

entire contract.

---

[9] If this Court finds an issue of fact as to the Defendant's malice, which is predicated on an intent to injure or a reckless disregard pursuant to Cal. Civil Code 3294(c)(1), this Court may make a determination on liability for defamation pursuant to Rule 56(e)(2) of the Fed. R. Civ. P. and Cal. Civil Code 45 and 45(a). Malice, which goes to punitive damages pursuant to Cal Civil Code § 3294(a), can be determined by the jury at trial.

[10] *HS Services, Inc. v. Nationwide Mutual Insurance Co.*, 109 F.3d 642, 644 (9th Cir. 1997)($1 million award–falsely claimed ex-employee was dishonest); *Weller v. American Broadcasting Companies, Inc.* (1991) 232 Cal. App 3d. 991(The First District affirmed a jury award of $2.3 million in this defamation case).

17.    **Defendant is not entitled to the interest payments.** Because there was no fraud in the upgrading of the second account to a business account, the Defendant wrongly withheld the $1,950.00, and thus, wrongly converted the interest payments to its own use. The Defendant has been using these types of tactics to wrongly convert to its own use millions of dollars in interest payments of other consumers. The Defendant's statement in its footnote number 4 of its REPLY that the interest payments are frivolous is another example of the Defendant's attitude toward harming consumers. This attitude was established by the Defendant's ex-interim vice president Eric M. Jackson when he stated that the Defendant had the attitude that it was an "acceptable cost" that consumers were being harmed by false positives.

18.    **Discovery is not warranted.** Pursuant to Rule 56(f) of the Fed. R. Civ. P., the Court may order a continuance of the summary motion on the grounds that the Defendant's affidavit identifies that it cannot defend its position without further discovery. The Defendant's affidavit must also identify (1) the specific facts it seeks to obtain from the discovery, (2) that the facts exist, and (3) the facts sought are to be used to oppose the motion. See ***Cal. On behalf of Cal. Dep't of Toxic Substances Control vs. Campbell***, 138 F.3d 772, 779 (9th Cir. 1998). See also ***Brae Transp., Inc. vs. Coopers & Lybrand***, 790 F.2d 1439, 1443 (9th Cir. 1986). Failure to meet the above requirements "is a proper ground for denying discovery and proceeding to summary judgment". The Defendant has failed to show how further discovery would uncover facts needed to oppose the summary motion that are not already in Tina Taylor's affidavit, in my papers, or in the sworn statement of Eric Anderson attached to the Notice for Partial Summary Judgment. In fact, Tina Taylor's affidavit clearly provides a defense to the summary motion, which is confirmed in Paragraph 16 of her affidavit where she states "Accordingly, in an e-mail dated August 6, 2007, responding to Mr. Anderson's concerns about why Mr. Mehmet's $750.00 were not transferred, Paypal stated that the funds in questions were suspected of being

fraudulent and were subsequently determined to be fraudulent. Based on the above facts, and to the best of my knowledge, that statement was true." The Defendant has failed to show how Tina Taylor's affidavit does not provide a defense to the summary motion when it clearly states it does.

19.    **Defendant has admitted that there are no issues of fact.**  Since the Defendant admitted that its August 6, 2007 email referred to a theft of funds, there are no issues of fact pertaining to the interpretation of the August 6, 2007 email. The August 6, 2007 email was clearly stating that the $750.00 was stolen from a third-party and the Defendant "had to return the funds to the party that had them taken from them without their authorization". The Defendant's email also claimed that a violation of California's Penal code § 484 had occurred. And since the Defendant admitted that the $750.00 was not stolen, the statements in the Defendant's August 6, 2007 email to Eric Anderson were false, and thus, defamatory. Therefore, partial summary judgment on liability for defamation and defamation per se is warranted by law under Rule 56(e)(2) of the Fed. R. Civ. P.

**Wherefore**, I pry and demand that the Defendant's motion to dismiss be denied, the motion for partial summary judgment on liability for defamation and defamation per se be granted, damages be held in abeyance until trial and for such other and further relief as this Court deems just and proper.

Dated; New York, NY
       July 8th, 2008

I, B. David Mehmet, pursuant to 28 U.S.C. § 1746, declare under the penalty of perjury that the forgoing is true and correct.

B. David Mehmet
Plaintiff Pro Se



**Receipt for your payment**                                Wednesday, July 25, 2007 12:35 PM
From: "service@paypal.com" <service@paypal.com>
To: "Badisse Mehmet" <FleaMarket@MyStockroom.com>

*ERIC Anderson Payment*

Dear Badisse Mehmet,

This email confirms that you sent a payment for $750.00 USD to

------------------------------------------------

**Payment Details**

------------------------------------------------

Amount: $750.00 USD
Subject: Deposit for Ultimate Hit Treatment

------------------------------------------------

This payment was sent using your credit card.

For your future payments, try using Instant Transfer instead!

- Pay instantly and securely

- Faster than paying with checks

- Pay directly from your bank account - purchases won't show up on bills at the end of the month.
------------------------------------------------

Sincerely,
PayPal

Your monthly account statement is available anytime; just log in to your account at
                                  . To correct any errors, please contact us through our Help Center at

 Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For
assistance, log in to your PayPal account and click the Help link located in the top right corner of any PayPal
page.

------------------------------------------------

*Ex A*

1 of 2                                                      7/8/2008 1:49 PM

**Your Payment Has Been Sent**

**From:** "service@paypal.com" <service@paypal.com>

**To:** "Badisse Mehmet" <FleaMarket@MyStockroom.com>

Wednesday, July 25, 2007 4:09 PM

*web scribble*
*Payment*

**Dear Badisse Mehmet,**

Your payment for $1,200.00 USD to          has been sent.

---

**Payment Details**

---

Amount: $1,200.00 USD

Transaction ID: 10K08359E3198674W

Subject: RentMyCar website modifications

View the details of this transaction online at:

---

This payment was sent using your credit card.

For your future payments, try using Instant Transfer instead!

- Pay instantly and securely

- Faster than paying with checks

- Pay directly from your bank account - purchases won't show up on bills at the end of the month.

---

Get Verified

**Your Payment Has Been Sent**                                    Monday, July 16, 2007 6:56 PM

From: "service@paypal.com" <service@paypal.com>
To: "Badisse Mehmet" <FleaMarket@MyStockroom.com>

Dear Badisse Mehmet,

Your payment for $150.00 USD to                          has been sent.

---

Payment Details

---

Amount: $150.00 USD

Transaction ID: 8D245395ES2606740

Subject: Error Fix and Html page

Message:
Fixing a max_user error

and

creating one Html page.

Thank You,

B. David Mehmet

View the details of this transaction online at:

---

This payment was sent using your credit card.

For your future payments, try using Instant Transfer instead!

**Receipt for Your Payment to Go Daddy Software, Inc.**                 Thursday, July 5, 2007 5:19 PM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <FleaMarket@MyStockroom.com>

Pay

Dear Badisse Mehmet,

This email confirms that you have paid Go Daddy Software, Inc. (                    ) $2.95 USD
using PayPal.

This credit card transaction will appear on your bill as "PAYPAL *GODADDYSOFT".

| | |
|---|---|
| **Transaction ID:** | 9E10053498824931F |
| **Item Price:** | $2.95 USD |
| **Total:** | $2.95 USD |
| **Invoice ID:** | 73522533 |
| **Buyer:** | Badisse Mehmet |
| **PayPal Receipt ID:** | B-3EB777321A1866032 |
| **Description of Billing Agreement:** | |
| **Visa Card XXXX-XXXX-XXXX-9024:** | $2.95 USD |

| | |
|---|---|
| **Business:** | Go Daddy Software, Inc. |
| **Contact E-Mail:** | billing@godaddy.com |

If you have questions about the shipping and tracking of your purchased item or service, please
contact Go Daddy Software, Inc. at billing@godaddy.com.

To reach PayPal Customer Support, call 1-888-221-1161

For more information on Billing Agreements, go to the PayPal site and click the "Help" link in the
upper right corner. Then type "Billing Agreements" into the search box to find answers to your
questions.

Get Verified and help increase the security of your PayPal transactions for yourself and for everyone
with whom you do business. You can also:

**Receipt for Your Payment to Halftime Book Project Ltd.**                    Tuesday, July 3, 2007 2:24 PM

From: "service@paypal.com" <service@paypal.com>
To: "Badisse Mehmet" <FleaMarket@MyStockroom.com>

Dear Badisse Mehmet,

This email confirms that you have paid Halftime Book Project Ltd. (                    ) $25.00
USD using PayPal.

This credit card transaction will appear on your bill as "PAYPAL *HALFTIMEBOO".

| | |
|---|---|
| **Transaction ID:** | 0RT93775WK615533V |
| **Item Price:** | $25.00 USD |
| **Total:** | $25.00 USD |
| **Order Description:** | 6389687: 1 Great Moments in Football Halftime @ 19.95 |
| **Item/Product Number:** | 6389687 |
| **Invoice ID:** | 6389687 |
| **Buyer:** | Badisse Mehmet |

| | |
|---|---|
| **Business:** | Halftime Book Project Ltd. |
| **Contact E-Mail:** | halftimeproject@aol.com |

| | |
|---|---|
| **Shipping Info:** | Badisse David Mehmet
424 Park Avenue South, Ste 117
New York, NY 10016
United States |

**Shipping Method:**

If you have questions about the shipping and tracking of your purchased item or service, please
contact Halftime Book Project Ltd. at halftimeproject@aol.com.

Get Verified and help increase the security of your PayPal transactions for yourself and for everyone
with whom you do business. You can also:

- Fund purchases directly from your checking or savings account, in addition to using credit

**Your Payment Has Been Sent**                                                    Friday, June 29, 2007 1:46 PM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <FleaMarket@MyStockroom.com>

Dear Badisse Mehmet,

Your payment for $200.66 USD to                              has been sent.

---

**Payment Details**

---

Amount: $200.66 USD

Transaction ID: 0GG55566AE564551Y

Subject: Invoice 6/29/2007

Message:
Settlements

file# 6446

file# 6845

View the details of this transaction online at:

---

This payment was sent using your credit card.

For your future payments, try using Instant Transfer instead!

- Pay instantly and securely

- Faster than paying with checks

**Your Payment Has Been Sent**
   **From:** "service@paypal.com" <service@paypal.com>
    **To:** "Badisse Mehmet" <FleaMarket@MyStockroom.com>

                                                        Wednesday, June 20, 2007 12:41 PM

Dear Badisse Mehmet,

Your payment for $250.00 USD to                      has been sent.

-------------------------------

Payment Details

-------------------------------

Amount: $250.00 USD

Transaction ID: 0A582671RP346645Y

Subject: Invoice for eBay integration

Message:
I didn't realize you were going to use Paypal. Anyway, I'm sending you the funds from my Paypal account.
Just cancel your invoice.

View the details of this transaction online at:

-------------------------------

This payment was sent using your credit card.

For your future payments, try using Instant Transfer instead!

- Pay instantly and securely

- Faster than paying with checks

- Pay directly from your bank account - purchases won't show up on bills at the end of the month.

-------------------------------

**Receipt for Your Payment to SitePoint Pty. Ltd.**

Monday, June 18, 2007 7:05 PM

**From:** "service@paypal.com" <service@paypal.com>

**To:** "Badisse Mehmet" <FleaMarket@MyStockroom.com>

Dear Badisse Mehmet,

This email confirms that you have paid SitePoint Pty. Ltd.
(                  ) $29.95 USD using PayPal.

This credit card transaction will appear on your bill as "PAYPAL *SITEPOINT".

| | |
|---|---|
| **Transaction ID:** | 613661666M7111241 |
| **Item Price:** | $29.95 USD |
| **Total:** | $29.95 USD |
| **Order Description:** | SitePoint Book Purchase |
| **Item/Product Number:** | 115716 |
| **Buyer:** | Badisse Mehmet |

| | |
|---|---|
| **Business:** | SitePoint Pty. Ltd. |
| **Contact E-Mail:** | order@sitepoint.com |

If you have questions about the shipping and tracking of your purchased item or service, please contact SitePoint Pty. Ltd. at order@sitepoint.com.

Thank you for using PayPal!
The PayPal Team

Your monthly account statement is available anytime; just log in to your account at https://www.paypal.com/us/HISTORY. To correct any errors, please contact us through our Help Center at https://www.paypal.com/us/HELP.

FOR INTERNATIONAL PAYMENTS ONLY

Commissions and Fees incurred by sender: $0.00

Rate of Exchange: The above exchange rate includes a 2.5% spread above the wholesale exchange rate at which PayPal obtains foreign currency, and the spread is retained by PayPal. If and when the Recipient chooses to withdraw these funds from the PayPal System, and if the withdrawal involves a currency conversion, the Recipient will convert the funds at the applicable currency exchange rate at the time of the withdrawal, and the Recipient may incur a withdrawal fee.

**RIGHT TO REFUND**

**Receipt for Your Multiple Payments**        Sunday, June 17, 2007 11:14 PM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <FleaMarket@MyStockroom.com>

Dear Badisse Mehmet,

This email confirms that you, cindys-giftsshop, have paid for the following transactions using PayPal.

This credit card transaction will appear on your bill as "PAYPAL *SMITTYAUCTI".

**Purchased From:** ythed44
**Transaction ID:** 93A88266NK827971L

| Item # | Item Title | Quantity | Price | Subtotal |
|--------|-----------|----------|-------|----------|
| 200119196887 | | 1 | $21.50 USD | $21.50 USD |

| | | |
|---|---|---|
| Shipping & Handling via USPS Priority Mail to 073XX (includes any seller handling fees) | $8.99 USD |
| Shipping Insurance (not offered): | -- |
| **Total:** | **$30.49 USD** |

**Purchased From:** smitty762
**Transaction ID:** 4P0452231J783053C

| Item # | Item Title | Quantity | Price | Subtotal |
|--------|-----------|----------|-------|----------|
| 290128350928 | | 1 | $6.50 USD | $6.50 USD |

| | | |
|---|---|---|
| Shipping & Handling via Standard Delivery to 073XX (includes any seller handling fees) | $10.00 USD |
| Shipping Insurance (optional): | -- |
| **Total:** | **$16.50 USD** |

The above purchases are separate transactions. If in the future you have a question about one of the transactions, please refer to that purchase using its individual transaction ID.

**Your Payment Has Been Sent**

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <FleaMarket@MyStockroom.com>

Friday, June 15, 2007 12:40 PM

Dear Badisse Mehmet,

Your payment for $554.30 USD to                                    has been sent.

---

Payment Details

---

Amount: $554.30 USD

Transaction ID: 9RH31783C7144701U

Subject: Settlements

Message:
Files

6670  $305.00
6796  $249.30

View the details of this transaction online at:

---

This payment was sent using your credit card.

For your future payments, try using Instant Transfer instead!

- Pay instantly and securely

- Faster than paying with checks

**Your Payment Has Been Sent**

From: "service@paypal.com" <service@paypal.com>
To: "Badisse Mehmet" <FleaMarket@MyStockroom.com>

Friday, June 8, 2007 11:32 AM

Dear Badisse Mehmet,

Your payment for $386.51 USD to               has been sent.

---------------------------------

Payment Details
---------------------------------

Amount: $386.51 USD

Transaction ID: 8TG51499VJ964390N

Subject: Settlements

Message:
Files

6756    $246.35

6640    $39.28

1736    $53.38

1995    $25

6151    $22.50

View the details of this transaction online at:

---------------------------------

This payment was sent using your credit card.

**Receipt for Your Payment to Gabbana916@aol.com**        Wednesday, June 6, 2007 7:58 PM

From: "service@paypal.com" <service@paypal.com>
To: "Badisse Mehmet" <FleaMarket@MyStockroom.com>

Dear Badisse Mehmet,

This email confirms that you, cindys-giftsshop, have paid Gabbana916@aol.com $62.13 USD using PayPal.

**Purchased From:** jaqi209
**Transaction ID:** 9EF92979RG9922124

| Item #<br>170117931777 | Item Title | Quantity<br>1 | Price<br>$50.00 USD | Subtotal<br>$50.00 USD |
|---|---|---|---|---|

| | | | |
|---|---|---|---|
| Shipping & Handling via USPS Parcel Post to 073XX<br>(includes any seller handling fees) | | | $10.48 USD |
| Shipping Insurance (required): | | | $1.65 USD |
| **Total:** | | | $62.13 USD |

| | |
|---|---|
| **Shipping Info:** | David & Cindy Mehmet<br>c/o Mystockroom.com<br>180 Thorne Street, Apt 2<br>Jersey City, NJ 07307<br>United States |
| **Address Status:** | Unconfirmed |

If you have questions about the shipping and tracking of your purchased item or service, please contact the seller Gabbana916@aol.com.

Thank you for using PayPal!
The PayPal Team

Your monthly account statement is available anytime; just log in to your account at

**Receipt for Your Payment to middleclear@comcast.net**          Wednesday, June 6, 2007 7:57 PM

**From:** "service@paypal.com" <service@paypal.com>
  **To:** "Badisse Mehmet" <FleaMarket@MyStockroom.com>

Dear Badisse Mehmet,

This email confirms that you, cindys-giftsshop, have paid middleclear@comcast.net $68.99 USD
using PayPal.

**Purchased From:** middleclear
**Transaction ID:** 6PH59479BY829884P

| Item #<br>130118815159 | Item Title | Quantity<br>1 | Price<br>$61.00 USD | Subtotal<br>$61.00 USD |
|---|---|---|---|---|

|  | Shipping & Handling via USPS Parcel Post to 073XX<br>(includes any seller handling fees) | $7.99 USD |
|---|---|---|
|  | Shipping Insurance (included): | -- |
|  | **Total:** | $68.99 USD |

| Shipping Info: | David & Cindy Mehmet<br>c/o Mystockroom.com<br>180 Thorne Street, Apt 2<br>Jersey City, NJ 07307<br>United States |
|---|---|
| Address Status: | Unconfirmed |

If you have questions about the shipping and tracking of your purchased item or service, please
contact the seller middleclear@comcast.net.

Thank you for using PayPal!
The PayPal Team

**Receipt for Your Payment to silver101905@hotmail.com**    Tuesday, June 5, 2007 2:33 PM

**From:** "service@paypal.com" <service@paypal.com>

**To:** "Badisse Mehmet" <FleaMarket@MyStockroom.com>

Dear Badisse Mehmet,

This email confirms that you, cindys-giftsshop, have paid silver101905@hotmail.com $71.00 USD using PayPal.

**Purchased From:** 1silver2005

**Transaction ID:** 8PR05526R6172544N

| Item # | Item Title | Quantity | Price | Subtotal |
|---|---|---|---|---|
| 200113818158 | | 1 | $46.00 USD | $46.00 USD |

|  |  |
|---|---|
| Shipping & Handling via Standard Delivery to 073XX (includes any seller handling fees) | $25.00 USD |
| Shipping Insurance (optional): | -- |
| **Total:** | $71.00 USD |

| | |
|---|---|
| **Shipping Info:** | David & Cindy Mehmet<br>c/o Mystockroom.com<br>180 Thorne Street, Apt 2<br>Jersey City, NJ 07307<br>United States |
| **Address Status:** | Unconfirmed |

If you have questions about the shipping and tracking of your purchased item or service, please contact the seller silver101905@hotmail.com.

Thank you for using PayPal!
The PayPal Team

**Receipt for Your Payment to ryanrtu@yahoo.com**                    Tuesday, June 5, 2007 2:29 PM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <FleaMarket@MyStockroom.com>

Dear Badisse Mehmet,

This email confirms that you, cindys-giftsshop, have paid ryanrtu@yahoo.com $31.39 USD using PayPal.

**Purchased From:** ryans_games
**Transaction ID:** 26H15214PH489613N

| Item #<br>270123414726 | Item Title | Quantity<br>1 | Price<br>$21.50 USD | Subtotal<br>$21.50 USD |
|---|---|---|---|---|

|  |  |
|---|---|
| Shipping & Handling via USPS Priority Mail to 073XX<br>(includes any seller handling fees) | $9.89 USD |
| Shipping Insurance (optional): | -- |
| **Total:** | $31.39 USD |

**Shipping Info:**        David & Cindy Mehmet
c/o Mystockroom.com
180 Thorne Street, Apt 2
Jersey City, NJ 07307
United States
**Address Status:**        Unconfirmed

If you have questions about the shipping and tracking of your purchased item or service, please contact the seller ryanrtu@yahoo.com.

Thank you for using PayPal!
The PayPal Team

**Your Payment Has Been Sent**                                    Monday, June 4, 2007 11:20 AM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <FleaMarket@MyStockroom.com>

Dear Badisse Mehmet,

Your payment for $3.00 USD to                           has been sent.

---

Payment Details

---

Amount: $3.00 USD

Transaction ID: 1FY71802YD915423D

Subject: Reimburse eBay fees

Message:
Thank you.

View the details of this transaction online at:

---

This payment was sent using your bank account.

By using your bank account to send money, you just:

- Paid easily and securely

- Sent money faster than writing and mailing paper checks
- Paid instantly — your purchase won't show up on bills at the end of the month.

Thanks for using your bank account!

**You have authorized a payment to Movielink, LLC**                    Saturday, June 2, 2007 7:23 PM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <FleaMarket@MyStockroom.com>

Dear Badisse Mehmet,

This email confirms that you have authorized a payment to
Movielink, LLC (service@movielinkhelp.com) for using PayPal.

Your funds will be transferred at a later time when the merchant processes your payment. If you
hold a PayPal balance at that time, your payment will be drawn from your PayPal balance before the
funding sources you have selected.

| | |
|---|---|
| **Transaction ID:** | 5TM84385G5828950P |
| **Item Price:** | $19.99 USD |
| **Total:** | $19.99 USD |
| **Buyer:** | Badisse Mehmet |

| | |
|---|---|
| **Business:** | Movielink, LLC |
| **Contact E-Mail:** | service@movielinkhelp.com |

If you have questions about the shipping and tracking of your purchased item or service, please
contact Movielink, LLC at service@movielinkhelp.com.

Thank you for using PayPal!
The PayPal Team

Your monthly account statement is available anytime; just log in to your account at
https://www.paypal.com/us/HISTORY. To correct any errors, please contact us through our Help
Center at https://www.paypal.com/us/HELP.
Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For
assistance,       to your PayPal account and choose the Help link located in the top right corner of any
PayPal page.

To receive email notifications in plain text instead of HTML, update your preferences       .

PayPal Email ID PP120

**Receipt for Your Payment to CinemaNow, Inc.**      Wednesday, May 30, 2007 10:40 PM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <FleaMarket@MyStockroom.com>

*Pay*

Dear Badisse Mehmet,

This email confirms that you have paid CinemaNow, Inc.
(              ) $2.99 USD using PayPal.

| | |
|---|---|
| **Transaction ID:** | 39196533EY5832240 |
| **Item Price:** | $2.99 USD |
| **Total:** | $2.99 USD |
| **Order Description:** | I, Robot for $2.99 |
| **Buyer:** | Badisse Mehmet |

| | |
|---|---|
| **Business:** | CinemaNow, Inc. |
| **Contact E-Mail:** | paypal@cinemanow.com |

If you have questions about the shipping and tracking of your purchased item or service, please
contact CinemaNow, Inc. at paypal@cinemanow.com.

Thank you for using PayPal!
The PayPal Team

Your monthly account statement is available anytime; just log in to your account at
https://www.paypal.com/us/HISTORY. To correct any errors, please contact us through our Help
Center at https://www.paypal.com/us/HELP.
Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For
assistance,      to your PayPal account and choose the Help link located in the top right corner of any
PayPal page.

To receive email notifications in plain text instead of HTML, update your preferences     .

PayPal Email ID PP120

**Receipt for Your Payment to austinsmail@juno.com**      Sunday, May 27, 2007 6:36 PM

**From:** "service@paypal.com" <service@paypal.com>
    **To:** "Badisse Mehmet" <FleaMarket@MyStockroom.com>

Dear Badisse Mehmet,

This email confirms that you, cindys-giftsshop, have paid austinsmail@juno.com $11.23 USD using PayPal.

**Purchased From:** queentonia
**Transaction ID:** 5XH57808AN056305T

| Item #<br>250117909553 | Item Title | Quantity<br>1 | Price<br>$2.24 USD | Subtotal<br>$2.24 USD |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| | Shipping & Handling via USPS Priority Mail to 073XX<br>(includes any seller handling fees) | | | $8.99 USD |
| | Shipping Insurance (optional): | | | -- |
| | | | **Total:** | **$11.23 USD** |

**Note:** We would appreciate shipment of this product as soon as possible as we would like to use it next weekend. Thank You, Cindy

| | |
|---|---|
| **Shipping Info:** | David & Cindy Mehmet<br>c/o Mystockroom.com<br>180 Thorne Street, Apt 2<br>Jersey City, NJ 07307<br>United States |
| **Address Status:** | Unconfirmed |

If you have questions about the shipping and tracking of your purchased item or service, please contact the seller austinsmail@juno.com.

Thank you for using PayPal!

*2nd email for*
*ACCT "7132"*

**New email address added to your PayPal account**

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <payments@stockwanted.com>

*(Friday, May 25, 2007 2:02 AM)*

*Flea Market @ mystockwn .com was add to this accT "7132"*

Dear Badisse Mehmet,

You have added                  as a new email address for your PayPal account.

If you did not authorize this change or if you need assistance with your account, please contact PayPal customer service at:

Thank you for using PayPal!
The PayPal Team

Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance, log in to your PayPal account and click the Help link located in the top right corner of any PayPal page.

PROTECT YOUR PASSWORD

NEVER give your password to anyone, including PayPal employees. Protect yourself against fraudulent websites by opening a new web browser (e.g. Internet Explorer or Netscape) and typing in the PayPal URL every time you log in to your account.

PayPal Email ID PP007

**Your Payment Has Been Sent**                                    Thursday, May 24, 2007 11:39 AM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <payments@stockwanted.com>

Dear Badisse Mehmet,

Your payment for $177.00 USD to                              has been sent.

------------------------------------------------

Payment Details

------------------------------------------------

Amount: $177.00 USD

Transaction ID: 39X64129BX509100V

Subject: Invoice for file# 6666

Message:
Payment for Empire settlement file# 6666

View the details of this transaction online at:

------------------------------------------------
This payment was sent using your credit card.

For your future payments, try using Instant Transfer instead!

- Pay instantly and securely

- Faster than paying with checks

- Pay directly from your bank account – purchases won't show up on bills at the end of the month.
------------------------------------------------

**Receipt for Your Payment to CinemaNow, Inc.**       Wednesday, May 23, 2007 8:32 PM

**From:** "service@paypal.com" <service@paypal.com>

**To:** "Badisse Mehmet" <payments@stockwanted.com>

*Pay*

Dear Badisse Mehmet,

This email confirms that you have paid CinemaNow, Inc.
(              ) $2.99 USD using PayPal.

| | |
|---|---|
| **Transaction ID:** | 7H60380828892783R |
| **Item Price:** | $2.99 USD |
| **Total:** | $2.99 USD |
| **Order Description:** | Danika for $2.99 |
| **Buyer:** | Badisse Mehmet |

| | |
|---|---|
| **Business:** | CinemaNow, Inc. |
| **Contact E-Mail:** | paypal@cinemanow.com |

If you have questions about the shipping and tracking of your purchased item or service, please contact CinemaNow, Inc. at paypal@cinemanow.com.

Thank you for using PayPal!
The PayPal Team

Your monthly account statement is available anytime; just log in to your account at https://www.paypal.com/us/HISTORY. To correct any errors, please contact us through our Help Center at https://www.paypal.com/us/HELP.
Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance,      to your PayPal account and choose the Help link located in the top right corner of any PayPal page.

To receive email notifications in plain text instead of HTML, update your preferences     .

PayPal Email ID PP120

**Receipt for your eBay Gift Certificate purchase**                    Wednesday, May 23, 2007 12:58 PM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <payments@stockwanted.com>

*Pay*

Dear Badisse Mehmet,

This email confirms that you have purchased an eBay Gift
Certificate.

| | |
|---|---|
| **Recipient Email:** | Receipts@MyStockroom.com |
| **Recipient Name:** | Not Provided |
| **Payment For:** | eBay Gift Certificate |
| **Amount:** | $10.00 USD |
| **Note from the buyer:** | A big thank you from MyStockroom. |
| **Delivery Method:** | To be printed |

To purchase another eBay Gift Certificate, click

Thank you for using PayPal!
The PayPal Team

PayPal Email ID PP100

**Receipt for Your Payment to stopchoose@orangemega.com**                Saturday, May 19, 2007 12:17 AM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <payments@stockwanted.com>

Dear Badisse Mehmet,

This email confirms that you, cindys-giftsshop, have paid stopchoose@orangemega.com $8.98 USD using PayPal.

**Purchased From:** stopchoose
**Transaction ID:** 8BD75697VP5595011

| Item #<br>330120780544 | Item Title | Quantity<br>1 | Price<br>$2.99 USD | Subtotal<br>$2.99 USD |
|---|---|---|---|---|

| | | |
|---|---|---|
| Shipping & Handling via Standard Delivery to 073XX<br>(includes any seller handling fees) | | $5.99 USD |
| Shipping Insurance (not offered): | | -- |
| **Total:** | | $8.98 USD |

**Shipping Info:**  David & Cindy Mehmet
c/o Mystockroom.com
180 Thorne Street, Apt 2
Jersey City, NJ 07307
United States
**Address Status:**  Confirmed

If you have questions about the shipping and tracking of your purchased item or service, please contact the seller stopchoose@orangemega.com.

Thank you for using PayPal
The PayPal Team

**Receipt for Your Payment to liza5412@bellsouth.net**        Friday, May 18, 2007 10:16 PM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <payments@stockwanted.com>



Dear Badisse Mehmet,

This email confirms that you, cindys-giftsshop, have paid liza5412@bellsouth.net $43.75 USD using PayPal.

This credit card transaction will appear on your bill as "PAYPAL *LIZA5412".

**Purchased From:** gritsinsc
**Transaction ID:** 9WE55487RP738592R

| Item # | Item Title | Quantity | Price | Subtotal |
|--------|-----------|----------|-------|----------|
| 110128749147 | | 1 | $30.00 USD | $30.00 USD |

| | | | |
|---|---|---|---|
| Shipping & Handling via UPS Ground to 073XX (includes any seller handling fees) | | $13.75 USD | |
| Shipping Insurance (optional): | | -- | |
| **Total:** | | $43.75 USD | |

**Shipping Info:**
David & Cindy Mehmet
c/o Mystockroom.com
180 Thorne Street, Apt 2
Jersey City, NJ 07307
United States

**Address Status:** Confirmed

If you have questions about the shipping and tracking of your purchased item or service, please contact the seller liza5412@bellsouth.net.

Thank you for using PayPal!

**Receipt for Your Payment to donh36@surfplus.net**       Friday, May 18, 2007 8:27 PM

From:  "service@paypal.com" <service@paypal.com>

To:  "Badisse Mehmet" <payments@stockwanted.com>

Dear Badisse Mehmet,

This email confirms that you, cindys-giftsshop, have paid donh36@surfplus.net $148.00 USD using PayPal.

**Purchased From:** surfplusauctions
**Transaction ID:** 2K266745AN177563E

| Item # | Item Title | Quantity | Price | Subtotal |
|---|---|---|---|---|
| 180118056121 | | 1 | $119.00 USD | $119.00 USD |

| | | |
|---|---|---|
| Shipping & Handling via USPS Priority Mail to 073XX (includes any seller handling fees) | | $29.00 USD |
| Shipping Insurance (optional): | | --- |

**Total:** $148.00 USD

**Note:** We need this monitor asap. It will be appreciated. We've paid for priority shipping.

| | |
|---|---|
| **Shipping Info:** | David & Cindy Mehmet c/o Mystockroom.com 180 Thorne Street, Apt 2 Jersey City, NJ 07307 United States |
| **Address Status:** | Confirmed |

If you have questions about the shipping and tracking of your purchased item or service, please contact the seller donh36@surfplus.net.

Thank you for using PayPal!
The PayPal Team

**Receipt for Your Payment to eBay, Inc**                     Friday, May 18, 2007 6:26 AM

From: "service@paypal.com" <service@paypal.com>
To: "Badisse Mehmet" <payments@stockwanted.com>

Pay

Dear Badisse Mehmet,

This email confirms that you have paid eBay, Inc
(                    ) $145.19 USD using PayPal.

| | |
|---|---|
| **Transaction ID:** | 9LP1014471245800L |
| **Item Price:** | $145.19 USD |
| **Total:** | $145.19 USD |
| **Order Description:** | eBay Seller Fees |
| **Item/Product Number:** | 00000000000382894956 |
| **Invoice ID:** | 00000000000382894956 |
| **Buyer:** | Badisse Mehmet |

| | |
|---|---|
| **Business:** | eBay, Inc |
| **Contact E-Mail:** | support@ebay.com |

If you have questions about the shipping and tracking of your purchased item or service, please
contact eBay, Inc at support@ebay.com.

Thank you for using PayPal!
The PayPal Team

Your monthly account statement is available anytime; just log in to your account at
https://www.paypal.com/us/HISTORY. To correct any errors, please contact us through our Help
Center at https://www.paypal.com/us/HELP.
Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For
assistance,      to your PayPal account and choose the Help link located in the top right corner of any
PayPal page.

To receive email notifications in plain text instead of HTML, update your preferences      .

PayPal Email ID PP120

**You have authorized a payment to Movielink, LLC**    Wednesday, May 16, 2007 8:04 PM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <payments@stockwanted.com>

Dear Badisse Mehmet,

This email confirms that you have authorized a payment to
Movielink, LLC (service@movielinkhelp.com) for using PayPal.

Your funds will be transferred at a later time when the merchant processes your payment. If you
hold a PayPal balance at that time, your payment will be drawn from your PayPal balance before the
funding sources you have selected.

| | |
|---|---|
| **Transaction ID:** | 25T13605KV0052613 |
| **Item Price:** | $3.95 USD |
| **Total:** | $3.95 USD |
| **Buyer:** | Badisse Mehmet |

| | |
|---|---|
| **Business:** | Movielink, LLC |
| **Contact E-Mail:** | service@movielinkhelp.com |

If you have questions about the shipping and tracking of your purchased item or service, please
contact Movielink, LLC at service@movielinkhelp.com.

Thank you for using PayPal!
The PayPal Team

Your monthly account statement is available anytime; just log in to your account at
https://www.paypal.com/us/HISTORY. To correct any errors, please contact us through our Help
Center at https://www.paypal.com/us/HELP.
Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For
assistance,    to your PayPal account and choose the Help link located in the top right corner of any
PayPal page.

To receive email notifications in plain text instead of HTML, update your preferences    .

PayPal Email ID PP120

1 of 1    7/8/2008 2:51 PM

**Your Payment Has Been Sent**

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <payments@stockwanted.com>

Thursday, May 10, 2007 8:48 AM

Dear Badisse Mehmet,

Your payment for $170.00 USD to           has been sent.

---

**Payment Details**

---

Amount: $170.00 USD

Transaction ID: 69L147202B582430X

Subject: $170

Message:
For file# 5359

View the details of this transaction online at:

---

This payment was sent using your credit card.

For your future payments, try using Instant Transfer instead!

- Pay instantly and securely

- Faster than paying with checks

- Pay directly from your bank account - purchases won't show up on bills at the end of the month.

---

**Receipt for your Payment to eBay, Inc**                    Wednesday, May 9, 2007 2:38 PM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <mbk20001@yahoo.com>

Dear Badisse Mehmet,

This email confirms that you have paid eBay, Inc $18.22 USD using PayPal.
This credit card transaction will appear on your bill as "PAYPAL *EBAY INC".

|  |  |
|---|---|
| **Item Price:** | $18.22 USD |
| **Total:** | $18.22 USD |
| **Order Description:** | eBay Seller Fees |
| **Item/Product Number:** | 00000000000378558948 |
| **Invoice ID:** | 00000000000378558948 |
| **Buyer:** | Badisse Mehmet |

|  |  |
|---|---|
| **Business:** | eBay, Inc |
| **Contact E-Mail:** | support@ebay.com |

## Receipt Number: 1485-6817-6449-4745

Keep your Receipt Number (shown above) for future reference. You will need to refer to this number if you need customer service from eBay, Inc or from PayPal.

If you have questions about your purchase, such as shipping and tracking, we encourage you to contact the seller, eBay, Inc at support@ebay.com.

If you have been unable to resolve your questions with the merchant, PayPal offers a free buyer complaint resolution service that offers a quick, easy resolution to your concerns. It covers physical goods purchases made through PayPal, and is offered at no charge when you register for a free PayPal account. To sign up for an account, click on the 'Save My Information' link above.

Thank you for using PayPal!
The PayPal Team

Please do not reply to this email. Email sent to this address cannot be answered.

**Your Payment Has Been Sent**

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <payments@stockwanted.com>

Wednesday, May 9, 2007 12:06 PM

Dear Badisse Mehmet,

Your payment for $76.03 USD to                            has been sent.

--------------------------------

Payment Details

--------------------------------

Amount: $76.03 USD

Transaction ID: 5R7362589N063371Y

View the details of this transaction online at:

--------------------------------

This payment was sent using your credit card.

For your future payments, try using Instant Transfer instead!

- Pay instantly and securely

- Faster than paying with checks

- Pay directly from your bank account - purchases won't show up on bills at the end of the month.

--------------------------------

Thank you for using PayPal!
The PayPal Team

**You have authorized a payment to Movielink, LLC**                    Thursday, May 3, 2007 9:07 PM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <payments@stockwanted.com>

*Pay*

Dear Badisse Mehmet,

This email confirms that you have authorized a payment to
Movielink, LLC (service@movielinkhelp.com) for using PayPal.

Your funds will be transferred at a later time when the merchant processes your payment. If you
hold a PayPal balance at that time, your payment will be drawn from your PayPal balance before the
funding sources you have selected.

| | |
|---|---|
| **Transaction ID:** | 7SM338498B0726942 |
| **Item Price:** | $0.99 USD |
| **Total:** | $0.99 USD |
| **Buyer:** | Badisse Mehmet |

| | |
|---|---|
| **Business:** | Movielink, LLC |
| **Contact E-Mail:** | service@movielinkhelp.com |

If you have questions about the shipping and tracking of your purchased item or service, please
contact Movielink, LLC at service@movielinkhelp.com.

Thank you for using PayPal!
The PayPal Team

Your monthly account statement is available anytime; just log in to your account at
https://www.paypal.com/us/HISTORY. To correct any errors, please contact us through our Help
Center at https://www.paypal.com/us/HELP.
Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For
assistance,       to your PayPal account and choose the Help link located in the top right corner of any
PayPal page.

To receive email notifications in plain text instead of HTML, update your preferences       .

PayPal Email ID PP120

**Receipt for Your Payment to Go Daddy Software, Inc.**                    Wednesday, May 2, 2007 4:08 PM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <payments@stockwanted.com>

Dear Badisse Mehmet,

This email confirms that you have paid Go Daddy Software, Inc.
(                    ) $8.93 USD using PayPal.

| | |
|---|---|
| **Transaction ID:** | 8C969880Y34315124 |
| **Item Price:** | $8.93 USD |
| **Total:** | $8.93 USD |
| **Invoice ID:** | 67029461 |
| **Buyer:** | Badisse Mehmet |

| | |
|---|---|
| **PayPal Receipt ID:** | B-4RP45031FC024042X |
| **Description of Billing Agreement:** | |

| | |
|---|---|
| **PayPal Balance:** | $8.93 USD |

| | |
|---|---|
| **Business:** | Go Daddy Software, Inc. |
| **Contact E-Mail:** | billing@godaddy.com |

If you have questions about the shipping and tracking of your purchased item or service, please contact Go Daddy Software, Inc. at billing@godaddy.com.

To reach PayPal Customer Support, call 1-888-221-1161

For more information on Billing Agreements, go to the PayPal site and click the "Help" link in the upper right corner. Then type "Billing Agreements" into the search box to find answers to your questions.

Thank you for using PayPal!
The PayPal Team

Your monthly account statement is available anytime; just log in to your account at https://www.paypal.com/us/HISTORY. To correct any errors, please contact us through our Help Center at https://www.paypal.com/us/HELP.
Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance,        to your PayPal account and choose the Help link located in the top right corner of any

**You have authorized a payment to Movielink, LLC**                    Saturday, April 28, 2007 8:55 PM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <payments@stockwanted.com>

Dear Badisse Mehmet,

This email confirms that you have authorized a payment to
Movielink, LLC (service@movielinkhelp.com) for using PayPal.

Your funds will be transferred at a later time when the merchant processes your payment. If you
hold a PayPal balance at that time, your payment will be drawn from your PayPal balance before the
funding sources you have selected.

| | |
|---|---|
| **Transaction ID:** | 3ST036582E265774V |
| **Item Price:** | $14.99 USD |
| **Total:** | $14.99 USD |
| **Buyer:** | Badisse Mehmet |

| | |
|---|---|
| **Business:** | Movielink, LLC |
| **Contact E-Mail:** | service@movielinkhelp.com |

If you have questions about the shipping and tracking of your purchased item or service, please
contact Movielink, LLC at service@movielinkhelp.com.

Thank you for using PayPal
The PayPal Team

Your monthly account statement is available anytime; just log in to your account at
https://www.paypal.com/us/HISTORY. To correct any errors, please contact us through our Help
Center at https://www.paypal.com/us/HELP.
Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For
assistance,      to your PayPal account and choose the Help link located in the top right corner of any
PayPal page.

To receive email notifications in plain text instead of HTML, update your preferences      .

PayPal Email ID PP120

**Your Payment Has Been Sent**              Saturday, April 28, 2007 7:48 PM

From: "service@paypal.com" <service@paypal.com>
To: "Badisse Mehmet" <payments@stockwanted.com>

Dear Badisse Mehmet,

Your payment for $30.00 USD to              has been sent.

---

Payment Details

---

Amount: $30.00 USD

Transaction ID: 8UK07849AJ6960456

Subject: Thank You.

Message:
Invoice $30

View the details of this transaction online at:

---

This payment was sent using your bank account.

By using your bank account to send money, you just:

- Paid easily and securely

- Sent money faster than writing and mailing paper checks
- Paid instantly -- your purchase won't show up on bills at the end of the month.

Thanks for using your bank account!

**Your Payment Has Been Sent**

Wednesday, April 18, 2007 4:37 PM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <payments@stockwanted.com>

Dear Badisse Mehmet,

Your payment for $60.00 USD to                                      has been sent.

-----------------------------------
**Payment Details**
-----------------------------------

Amount: $60.00 USD

Transaction ID: 7PY29384KP2502153

Subject: Vonage Phone

Message:
Please forward the invoice after purchase.

View the details of this transaction online at:

-----------------------------------
This payment was sent using your credit card.

For your future payments, try using Instant Transfer instead!

- Pay instantly and securely

- Faster than paying with checks

- Pay directly from your bank account – purchases won't show up on bills at the end of the month.
-----------------------------------

**Your Payment Has Been Sent**

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <payments@stockwanted.com>

Saturday, March 31, 2007 8:47 PM

Dear Badisse Mehmet,

Your payment for $55.00 USD to                    has been sent.

-----------------------------------------

**Payment Details**
-----------------------------------------

Amount: $55.00 USD

Transaction ID: 8VL50871549578921

Subject: Mindfreeze Video Monitor

Message:
Thank You.

View the details of this transaction online at:

-----------------------------------------

This payment was sent using your credit card.

For your future payments, try using Instant Transfer instead!

- Pay instantly and securely

- Faster than paying with checks

- Pay directly from your bank account - purchases won't show up on bills at the end of the month.
-----------------------------------------

**You have authorized a payment to Movielink, LLC**          Tuesday, March 27, 2007 5:25 PM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <payments@stockwanted.com>

Dear Badisse Mehmet,

This email confirms that you have authorized a payment to
Movielink, LLC (service@movielinkhelp.com) for using PayPal.

Your funds will be transferred at a later time when the merchant processes your payment. If you
hold a PayPal balance at that time, your payment will be drawn from your PayPal balance before the
funding sources you have selected.

| | |
|---|---|
| **Transaction ID:** | 9J824681H56701607 |
| **Item Price:** | $14.99 USD |
| **Total:** | $14.99 USD |
| **Buyer:** | Badisse Mehmet |

| | |
|---|---|
| **Business:** | Movielink, LLC |
| **Contact E-Mail:** | service@movielinkhelp.com |

If you have questions about the shipping and tracking of your purchased item or service, please
contact Movielink, LLC at service@movielinkhelp.com.

Thank you for using PayPal!
The PayPal Team

Your monthly account statement is available anytime; just log in to your account at
https://www.paypal.com/us/HISTORY. To correct any errors, please contact us through our Help
Center at https://www.paypal.com/us/HELP.
Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For
assistance,        to your PayPal account and choose the Help link located in the top right corner of any
PayPal page.

To receive email notifications in plain text instead of HTML, update your preferences        .

PayPal Email ID PP120

**Receipt for Your Payment to Elsten Jerson, S.L.**                    Wednesday, March 14, 2007 7:13 PM

**From:** "service@paypal.com" <service@paypal.com>

**To:** "Badisse Mehmet" <payments@stockwanted.com>

Pay

Dear Badisse Mehmet,

This email confirms that you have paid Elsten Jerson, S.L.
(                              ) $4.95 USD using PayPal.

| | |
|---|---|
| **Transaction ID:** | 2443623398358510B |
| **Item Price:** | $4.95 USD |
| **Total:** | $4.95 USD |
| **Order Description:** | Vvmer / GRABBEE III USB Drivers / Windows 98-98Se-Me-2000-XP |
| **Item/Product Number:** | 2210565 |
| **Buyer:** | Badisse Mehmet |

| | |
|---|---|
| **Business:** | Elsten Jerson, S.L. |
| **Contact E-Mail:** | drivers2@helpdrivers.com |

If you have questions about the shipping and tracking of your purchased item or service, please
contact Elsten Jerson, S.L. at drivers2@helpdrivers.com.

Thank you for using PayPal!
The PayPal Team

Your monthly account statement is available anytime; just log in to your account at
https://www.paypal.com/us/HISTORY. To correct any errors, please contact us through our Help
Center at https://www.paypal.com/us/HELP.

FOR INTERNATIONAL PAYMENTS ONLY

Commissions and Fees incurred by sender: $0.00

Rate of Exchange: The above exchange rate includes a 2.5% spread above the wholesale exchange rate at
which PayPal obtains foreign currency, and the spread is retained by PayPal. If and when the Recipient
chooses to withdraw these funds from the PayPal System, and if the withdrawal involves a currency
conversion, the Recipient will convert the funds at the applicable currency exchange rate at the time of the
withdrawal, and the Recipient may incur a withdrawal fee.

**RIGHT TO REFUND**
**You, the customer, are entitled to a refund of the money to be transmitted as a result of this**

**Receipt for Your Payment to CinemaNow, Inc.**            Tuesday, March 13, 2007 8:15 PM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <payments@stockwanted.com>

Dear Badisse Mehmet,

This email confirms that you have paid CinemaNow, Inc.
(                ) $14.95 USD using PayPal.

| | |
|---|---|
| **Transaction ID:** | 7Y876707CY155290Y |
| **Item Price:** | $14.95 USD |
| **Total:** | $14.95 USD |
| **Order Description:** | Casino Royale for $14.95 |
| **Buyer:** | Badisse Mehmet |

| | |
|---|---|
| **Business:** | CinemaNow, Inc. |
| **Contact E-Mail:** | paypal@cinemanow.com |

If you have questions about the shipping and tracking of your purchased item or service, please contact CinemaNow, Inc. at paypal@cinemanow.com.

Thank you for using PayPal!
The PayPal Team

Your monthly account statement is available anytime; just log in to your account at https://www.paypal.com/us/HISTORY. To correct any errors, please contact us through our Help Center at https://www.paypal.com/us/HELP.
Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance,     to your PayPal account and choose the Help link located in the top right corner of any PayPal page.

To receive email notifications in plain text instead of HTML, update your preferences    .

PayPal Email ID PP120

**B**




**Your request has been approved!**

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <payments@stockwanted.com>

Wednesday, April 18, 2007 11:41 PM

Dear Badisse Mehmet,



Congratulations! Your request for the PayPal ATM/Debit Card has been processed and approved. Your card is being manufactured and will arrive within 1 to 2 weeks.

With it, you will be able to access your PayPal balance instantly. Use it to pay for purchases at any store accepting MasterCard or to withdraw funds at ATMs.

When you receive the card in the mail, you will need to activate the card on our website before using it. With instant access to your funds, we hope the debit card makes your PayPal account even more valuable than before.

Thank you for making PayPal #1 in online payments.

Sincerely,
PayPal

---

PROTECT YOUR PASSWORD

NEVER give your password to anyone, including PayPal employees. Protect yourself against fraudulent websites by opening a new web browser (e.g. Internet Explorer or Netscape) and typing in the PayPal URL every time you log in to your account.

---

Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance, log in to your PayPal account and click the Help link located in the top right corner of any PayPal page.

---

PayPal Email ID PP041

EX B

**Your PayPal Debit Card is Activated**

From: "service@paypal.com" <service@paypal.com>
To: "Badisse Mehmet" <payments@stockwanted.com>

Tuesday, May 1, 2007 2:06 PM

P?V

*Defendant Approved ATM/Debit card for acct "7132"*

Dear Badisse Mehmet,

**Thank you for activating your PayPal ATM/Debit Card. Please remember the following when you use your card:**

1. You can spend or withdraw money that is in your PayPal balance. If you don't have enough money in your balance to cover the amount of a transaction, your Debit Card will draw the funds from your Backup Funding source.

   Many people use their debit card to withdraw funds from the PayPal system, while others add money to their PayPal account from their bank account, taking advantage of PayPal's 1% cash back program.
2. For your protection, your card has daily spending and ATM withdrawal limits.

   * Spend up to $3,000.00 USD a day at stores displaying the MasterCard logo.
   * Withdraw up to $400.00 USD a day at ATMs.
3. Choose "Checking Account" to make an ATM withdrawal

When an ATM asks from which account you would like to withdraw money, select "Checking Account".
Thank you for using PayPal!
The PayPal Team

Become PayPal Preferred to get 1% cash back on your PayPal ATM/Debit Card purchases. Click the link below to learn more and enroll:

https://www.paypal.com/DC-CASH

PROTECT YOUR PASSWORD

NEVER give your password to anyone, including PayPal employees. Protect yourself against fraudulent websites by opening a new web browser (e.g. Internet Explorer or Netscape) and typing in the PayPal URL every time you log in to your account.

Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance,        to your PayPal account and choose the Help link located in the top right corner of any PayPal page.

**PayPal Investigation of the Received Unauthorized Claim: Case ID #PP-299-544-747**

Thursday, June 21, 2007 7:23 PM

From: "service@paypal.com" <service@paypal.com>
To: FleaMarket@MyStockroom.com

Dear Badisse Mehmet,

An unauthorized account activity claim was recently filed against the following transaction:

Transaction Date: Jun 8, 2007
Transaction Amount: -$225.00 USD
Your Transaction ID: 3LY31592FD802673A
Buyer's Transaction ID: 73A97820Y9800510V
Case Number: PP-299-544-747
Buyer's Name: MyStockroom
Buyer's Email:

To complete our investigation, you must provide additional information within the next seven days. Please log in to your PayPal account at                     and go to the Resolution Center to view the details of this case. You will have the opportunity to enter any details or information regarding this case which will help PayPal investigate the matter fully.

Thanks for your cooperation through this process. We are continuing to work to ensure that PayPal is secure for all users.

Sincerely,

PayPal
Protection Services Department

Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance, log in to your PayPal account and click the Help link located in the top right corner of any page. If your inquiry is regarding a claim, log in to your PayPal account and go to the Resolution Center.

BC:PP-299-544-747:R1:USD225.00:06212007:3LY31592FD802673A

PayPal Email ID PP927

*Ex "B"*

**RE:Unauthorized Use of Your PayPal Account**                    Saturday, June 23, 2007 9:54 PM

**From:** "service@paypal.com" <service@paypal.com>

**To:** Receipts@MyStockroom.com

Dear MyStockroom,

 Through careful research of the transaction(s) you submitted, PayPals Fraud Team has determined there is insufficient evidence in support of your claim. As a result, we have denied your Unauthorized Account Use Claim.

If you would like a copy of the documentation that was used in the course of our investigation, please send a letter via mail to:

PayPal, Inc.
Attn: Unauthorized account Access Appeal
P.O. Box 45950
Omaha, NE 68145

In your letter, please include your name, the email address on your PayPal account, and the date you filed the Unauthorized Account access Claim.

Sincerely,

Protection Services Department

Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance, log in to your PayPal account and click the Help link located in the top right corner of any page. If your inquiry is regarding a claim, log in to your PayPal account and go to the Resolution Center.

BC:PP-299-544-739:R1::06212007:

_____

PayPal Email ID PP1218

Ex B

**Get Verified and Remove Your Sending Limit**                                    Wednesday, June 20, 2007 12:41 PM
**From:** "service@paypal.com" <service@paypal.com>
**To:** "Badisse Mehmet" <FleaMarket@MyStockroom.com>

Pay

Dear Badisse Mehmet,

**Did you know that Unverified PayPal members have a Sending Limit?**

**You can send unlimited payments when you become Verified. It's easy! Just** or **. Click the link below to get started.**

**As a security measure, PayPal asks members to get Verified. This process is a secure and easy way to confirm a member's identity and leads to safer transactions between buyers and sellers.**

**Become Verified and help increase the security of your PayPal transactions for yourself and for everyone with whom you do business.**

Verification gives you:

- **Higher spending power** - There's no limit to the amount of money you can send once you are Verified.
- **Increased security** - Verification not only offers you increased security, it lets others know you are a confirmed member of the PayPal community.
- **More buyer and seller confidence** - Buyers and sellers value your Verified status.

If you have questions concerning Verification or your Sending Limit, please

Thank you for using PayPal!
The PayPal Team
Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance,     to your PayPal account and choose the Help link located in the top right corner of any PayPal page.

**You have successfully lifted your withdrawal limit**       Tuesday, July 31, 2007 7:15 AM

**From:** "service@paypal.com" <service@paypal.com>

**To:** "Badisse Mehmet" <FleaMarket@MyStockroom.com>

Dear Badisse Mehmet,

Congratulations! Your withdrawal limit has now been lifted, and you may withdraw unlimited funds from your PayPal account.

Sincerely,
PayPal

---

PROTECT YOUR PASSWORD

NEVER give your password to anyone, including PayPal employees. Protect yourself against fraudulent websites by opening a new web browser (e.g. Internet Explorer or Netscape) and typing in the PayPal URL every time you log in to your account.

---

Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance, log in to your PayPal account and click the Help link located in the top right corner of any PayPal page.

---

PayPal Email ID PP337

C

In the Matter of:
PayPal, Inc.
A Delaware Corporation.

## ASSURANCE OF VOLUNTARY COMPLIANCE OR DISCONTINUANCE

This Assurance of Voluntary Compliance or Discontinuance ("Assurance") is entered

into by the Attorneys General of the States of Alabama, Arizona, California, Delaware, Florida,

Georgia[1], Hawaii[2], Illinois, Indiana, Iowa, Louisiana, Maryland, Minnesota, Mississippi,

Nebraska, Nevada, New Jersey, New York[3], North Carolina, Ohio, Oklahoma, Oregon, South

Dakota, Tennessee[4], Texas, Vermont, Washington, and West Virginia ("Attorneys General" or

"States"), acting pursuant to their respective Consumer Protection Statutes[5], and PayPal, Inc.

---

[1]With regard to Georgia, the Administrator of the Fair Business Practices Act, appointed pursuant to
O.C.G.A. 10-1-395, is statutorily authorized to undertake consumer protection functions, including
acceptance of Assurances of Voluntary Compliance for the State of Georgia. Hereafter, when the signatory
States are referred to as the "States" or "Attorneys General," such designation, as it pertains to Georgia,
refers to the Administrator of the Fair Business Practices Act.

[2] With regard to Hawaii, the Director of the State of Hawaii Office of Consmer Protection is statutorily
authorized to undertake consumer protection functions, including acceptance of Assurances of Voluntary
Compliance for the State of Hawaii. Hereafter, when the signatory States are referred to as the "States" or
"Attorneys General," such designation, as it pertains to Hawaii refers to the Executive Director of the State
of Hawaii Office of Consumer Protection.

[3]New York, having entered into an Assurance of Discontinuance with PayPal, Inc. in 2004, limits its
participation in this Assurance solely to those terms resolving issues unaddressed in the 2004 document.

[4] "The Tennessee Attorney General is acting on behalf of the Division of Consumer Affairs."

[5]**ALABAMA**- Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, et seq.; **ARIZONA**- Arizona
Consumer Fraud Act, Ariz. Revised Statutes, section 44-1521 *et seq.*, and 17500 *et seq.*; **CALIFORNIA** - Bus. & Prof.
Code §§ 17200 *et seq.*, and 17500 *et seq.*; **DELAWARE**: Consumer Fraud Act, 6 Del.C. §2511, *et
seq.* and Deceptive Trade Practices Act, 6 Del.C. § 2531, *et. seq.* **FLORIDA** -Deceptive and Unfair Trade
Practices Act, Fla. Stat. Ch. 501.201 *et seq.*; **GEORGIA** - Fair Business Practices Act of 1975, O.G.C.A. §
10-1-390 *et seq.*; **HAWAII**-Uniform Deceptive Trade Practice Act Haw. Rev. Stat. Chpt. 481A and Haw.
Rev. Stat. Chpt. 480. **ILLINOIS** - Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1
*et seq.*; **INDIANA**- Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-1 *et seq.* **IOWA** –
Consumer Fraud Act, Iowa Code section 714.16 **LOUISIANA** – Unfair Trade Practices and Consumer
Protection Law, LSA-R.S. 51:1401, *et seq.*; **MARYLAND** - Md. Code Ann., Com. Law §§ 13-101, *et seq.*;
**MINNESOTA**- Minn. Stat. sec. 8.31 **MISSISSIPPI** -Consumer Protection Act, Miss. Code Ann. § 75-24-
1 *et seq*; **NEBRASKA** - Neb. Rev. Stat. §§ 59-101 *et. seq.* (Reissue 2004) and Neb. Rev. Stat. § 87-301
et seq. (Reissue 1999; Cum. Supp. 2004); **NEVADA** – Nevada Deceptive Practices Act, Nevada
Revised Statutes 598.0903 to 598.0999; **NEW JERSEY**- New Jersey Consumer Fraud Act, N.J.S.A. 56:8-
1 *et seq.*; **NEW YORK** - N.Y. Gen. Bus. Law §§ 349 & 350 and Executive Law § 63(12); **NORTH
CAROLINA**- North Carolina Consumer Protection Statute, N.C.G.S. § 75-1.1 *et seq.* **OHIO** – Consumer
Sales Practice Act, R.C. 1345.01 *et seq.*;

EX C

(hereinafter "PayPal"), a wholly owned subsidiary of eBay Inc.

## I. BACKGROUND

1.     PayPal is incorporated under the laws of the State of Delaware.  Its principal place of business is 2211 North First Street, San Jose, California 95131.

2.     PayPal offers a number of financial services to Users, including a money transfer service that may be used for Payments.

3.     PayPal facilitates Payments by use of credit card protocols, electronic funds transfer banking protocols, lines of credit issued by a third party, and other financial transfer protocols.

4.     PayPal states that it has developed primarily as a low-cost Payments alternative to merchant accounts for internet sellers, and has historically operated as a substitute for checks or money orders being sent through the mail.  PayPal further states that it offers Users the ability to make Payments with a credit card and get credit card purchase protection, with PayPal as the merchant of record required to pay for any chargebacks, whether or not PayPal can recover from the seller.  PayPal further asserts that it does encourage Users who have a bank account on file to pay with a bank account, but most Users pay with a credit card because they do not have a verified bank account on file.  PayPal requires only those Users who will have cumulatively sent ten thousand dollars ($10,000) or more through their accounts to place a bank account on file. PayPal also states that, unlike the pre-existing alternatives of sending checks and money orders through the mail, it offers its own purchase-protection programs at no cost to Users regardless of funding source, as well as an optional Money Back Guarantee program on selected items that does carry a cost.  PayPal also states that through its efforts to protect its customers around the world, it has absorbed more than one hundred million dollars ($100,000,000) in losses from Payments that otherwise would have been losses to Users if paid by cash, check, or money order.

---

**OKLAHOMA** - Oklahoma Consumer Protection Act, 15 OS  §751 *et seq.*; **OREGON**- Oregon Unlawful Trade Practices Act, Oregon Revised Statutes 646.605 *et seq.* **SOUTH DAKOTA**- Deceptive Trade Practices and Consumer Protection, SDCL Ch. 37-24.; **TENNESSEE**- Tennessee Consumer Protection Act of 1977, T.C.A. §§ 47-18-101, *et seq.*; **TEXAS**- Texas Business and Commerce Code Ann. §17.41 *et seq.*; **VERMONT**- Consumer Fraud Act- 9 Vt. Stat. Annot. ch. 63; **WASHINGTON** – Unfair Business Practices – Consumer Protection Act, RCW 19.86 *et.seq.*; **WEST VIRGINIA** -West Virginia Consumer Credit and Protection Act, W. Va. Code Section 46A-1-101 *et seq.*

PayPal also states that it has changed its policies to require all eBay sellers who want to use PayPal to accept credit card-funded Payments in addition to bank-funded Payments. The parties agree that different terms of the consumer protection programs, their relationship to credit card chargeback rights, and the pre-existing differences between EFTA and FCBA may have caused some confusion among Users making Payments, which among other issues, this Assurance seeks to address.

## II. RESOLUTION

5.    This Assurance is the settlement of a disputed matter related to certain issues raised during an inquiry by the Attorneys General. Issues comprising the subject matter of this Assurance are those issues for which remedies are provided within Section III of this Assurance. This Assurance is a complete resolution of the States' concerns related to those issues for conduct occurring prior to the Effective Date of this Assurance.

6.    PayPal states that it has chosen to resolve this matter in order to cooperate with the States, to ensure that its customers are treated fairly, and to avoid expensive and potentially protracted litigation.

7.    PayPal and the States agree that no provision of the Assurance operates as a penalty, forfeiture, or punishment under any state or federal law, that the Assurance should not be considered an admission by PayPal of any liability of any kind or nature or violation of law, statute, regulation, or ordinance for any purpose, and that the Assurance should not be construed as such in any enforcement or civil action.

8.    Other than the rights of the States expressly stated herein, nothing contained in this Assurance should be construed to empower any consumer or other persons or entity with any right, claim, or cause of action to pursue remedies pursuant to applicable law or to otherwise create any private rights or causes of action in any third parties.

9.    PayPal and the States agree that the terms of this Assurance apply only to Payment services offered directly on and through the PayPal.com website to residents of the States.

Nothing in this Assurance is intended to bind other services offered by PayPal now or in the future or similar services offered now or in the future to others. For example, this settlement does not apply to third-party credit offerings through PayPal or PayPal's mobile phone-related services. This Assurance does not constitute an approval by the Attorneys General of any of PayPal's programs, practices, or past conduct, and PayPal will not make any representation to the contrary. Conversely, nothing in this Assurance will be deemed to be an admission by PayPal or any of its parent or subsidiary corporations or affiliates of any wrongdoing of any kind or nature.

10.    As used herein, the following words or phrases have the following meaning:

   a.    **Clear and Conspicuous:** A statement is "clear and conspicuous" if it is disclosed in such size, contrast (shade), and location that it is readily noticeable and readable. A statement may not contradict any other information which is presented. If a statement modifies, explains, or clarifies any other statement with which it is presented, it must be presented in proximity to the statement it modifies, in a readily noticeable and readable manner. Visual disclosures will be of sufficient size and contrast and of a sufficient duration to be easily read.

   b.    **Chargeback:** That part of a dispute resolution process that occurs when a credit card customer disputes a billed transaction and the disputed funds are provisionally recovered from the merchant's account and provisionally credited to the consumer's credit card account pending a final disposition of the dispute. If the consumer prevails, the consumer's account is permanently credited with the funds.

   c.    **EFTA:** The Electronic Fund Transfer Act, 15 U.S.C. § 1693 (2004), and its companion Regulation E, 12 C.F.R. § 205.1 *et seq.*

   d.    **FCBA:** The Fair Credit Billing Act 15 U.S.C. § 1601 (2004), and its companion Regulation Z, 12 C.F.R. § 226.1 *et seq.*

e.   **Hyperlink:** A link from a hypertext file to another location or file, typically activated by clicking on an underlined word, statement or icon.

f.   **Payment:** A User-initiated money transfer to the User Account of a seller for payment for the purchase of goods.

g.   **User:** Any resident of the states represented by the Attorneys General who makes a Payment without opening a User Account or after opening a personal User Account by clicking on an "I Agree" radio button or similar device or icon and after having been presented with all the relevant terms of PayPal's User Agreement.

h.   **User Account:** Any open PayPal account, regardless of the name given to the account, into which a User may place funds to be transferred immediately to another User, receive funds from another User, or hold funds that PayPal will place in a bank account or, at the User's instruction, sweep to a money market mutual fund, until the User authorizes transfers or requests disbursements.

i.   **User Agreement:** A contract, presented by PayPal, that is entered into by PayPal and a User and defines the rights and responsibilities of the parties who agree to be bound by that document. Throughout this Assurance, the term User Agreement refers to the contract entered into by Users who sign up for personal money transfer accounts used for Payments only, and the obligations addressed in this Assurance do not apply to any agreements that apply to merchant and other business accounts or to other financial services offerings extended to Users.

j.   **Webpage:** Any information or document found at a single discrete internet address on PayPal.com accessed via a desktop or laptop computer whether such address is accessed directly by physical keystroke entry or accessed as a result of a physically selected Hyperlink.

k.    **Webscreen:** The section of a Webpage viewable without scrolling, provided the User's browser is fully opened on a 15-inch or larger computer monitor displaying at a minimum of 640 x 480 pixels and the User-selected text size is no larger than "medium" on Windows Internet Explorer browser, "normal" on Mozilla Firefox or the equivalent size on alternate browsers.

11.    The Effective Date of this Assurance is the date on which PayPal receives a copy of this Assurance, duly executed by each of the Attorneys General set forth below.

## III. ASSURANCES

12.    PayPal agrees to adopt, implement and enforce the following policies and procedures:

a.    **Structure of the User Agreement**: At signup and wherever the User Agreement appears, the User Agreement will be presented to Users or potential Users in two formats. Users will be given Clear and Conspicuous notice of the choice of formats. One option will allow the User to view the entire text of the agreement in scrollable format on a single Webpage. (PayPal may elect to present its Acceptable Use Policy via a separate button.) The remaining option may provide the document in a form containing Clear and Conspicuous Hyperlinks. Each option will be written in "plain English", include a table of contents (or similar internal navigation system), be printable, be savable, and accurately present all the material terms governing the relationship between the User and PayPal.

b.    **Use of Hyperlinks**: Hyperlinks will not be used to refer Users to material terms, conditions, and/or limitations, unless the Hyperlink and surrounding text convey the nature, importance and relevance of the information to which it leads. No term contained within linked text will contradict any other information presented or be false or misleading. In appropriate circumstances, a Hyperlink and its linked text can be part of Clear and Conspicuous disclosure.

c.    **Policy Disclosures to Users and Potential Users:**

     i.    **Notification of Relevant Policy Limitations:** Whenever promoting a buyer protection program on a Webpage where a User can make a Payment, PayPal will Clearly and Conspicuously disclose any additional conditions or limitations on the benefits provided by the protection program

     ii.    **Location and Disclosure of Policy Updates:** In addition to any other placement, PayPal will provide a Clear and Conspicuous Hyperlink to its "Policy Updates" Webpage on the initial User Account Webscreen presented to Users upon account log-in.

d.    **Customer Service Policies and Procedures:**

     i.    **Contact-Us Access:** PayPal will provide a "Contact Us" Hyperlink in the footer on each PayPal.com Webpage. The Hyperlink will immediately direct the User to a Webpage Clearly and Conspicuously disclosing all methods of contact, including, but not limited to, a Hyperlink reading "Contact Us by Telephone"(or similar language). Each method of contact will be displayed with equal prominence.

     ii.    **Customer Service Access:** PayPal will provide a customer service telephone number for all Users. The number will appear Clearly and Conspicuously on the "Contact Us by Telephone" Webpage. PayPal will ensure that Users incurring land-line telephone toll charges as a result of making a call to PayPal's Customer Service number during regularly scheduled hours (which will be at least eighteen (18) hours per day during weekdays and fourteen (14) hours a day on weekends) will not have to wait longer than an average of five (5) minutes before speaking with a PayPal customer service representative who either has the immediate

authority to resolve the User's problem or is capable of initiating an escalation process on behalf of the User. Such average wait-time will be measured over each calendar quarter. Time spent by the User providing information to PayPal's automated systems is excepted from the calculation of wait time. PayPal will not be responsible for any delay in customer service performance resulting from strikes, shortages, riots, insurrection, fires, flood, storm, explosions, earthquakes, general Internet outages, acts of God, acts of war, acts of terrorism, governmental action, or any other cause that is beyond the reasonable control of PayPal.

iii.    **Florida Users:** PayPal will include the mailing address and phone number of the Florida Department of Financial Services in its User Agreement, Clearly and Conspicuously disclosing that the number is provided to comply with Florida statutory requirements and for the use of Florida Users only.

e.    **Disputes, Inquiries and Remedies:**

i.    **Controlling Policies:** Other than when statutory or regulatory remedies supersede PayPal policies, the PayPal policy that controls the outcome of a dispute or inquiry related to a Payment will be the policy as it existed on the date of the disputed transaction or activity, or at PayPal's discretion, a policy more favorable to the User.

ii.    **Dispute Resolution Processes:**
If a User makes a Payment and then:
  a) timely files a Buyer Complaint claim with PayPal, and
  b) PayPal does not complete processing of that claim until after the User's credit card issuer's imposed deadline for filing a Chargeback claim or after the User's bank's deadline for filing an EFTA dispute, and

Page 8 of 45

c) the User recovers less than the full amount he or she would have
been entitled to recover from the credit card issuer or the bank, less
the amount the User has already recovered from the seller, PayPal,
eBay, and/or any other protection program,

then PayPal will pay the difference to the User.

f    **Payment Funding Disclosures:**

i.    PayPal will create a funding source information Webpage that Clearly and
Conspicuously explains the process for selecting a funding source for
Payment and PayPal's default funding policies. This Webpage will
identify: 1) the default funding priority that PayPal uses when Users have
more than one funding source on file with PayPal; 2) PayPal's policies
relating to User requests to change the funding source priority; 3) the
process by which a User can select an alternative payment source,
specifically a credit card when the User's credit card is not a default
funding source; and 4) and any other information that is material to a
User's ability to select a funding source at the time of making a Payment.

ii.   Set forth separately from the information in paragraph i above, PayPal will
summarize on the funding source information Webpage the different
statutory rights and remedies available for Payments under the EFTA and
FCBA to Users for the different types of funding sources that may be used
to fund Payments.

iii.  PayPal will Clearly and Conspicuously identify to Users making a
Payment the specific funding source from which the Payment will be
made. If PayPal sets a default funding source for Payment, PayPal will

ensure that the User is consenting to the default method of Payment and
will Clearly and Conspicuously identify the method for selecting an
alternate method of Payment. If PayPal has solicited the use of its services
to make a Payment by a specific method, including by major credit card,
PayPal will Clearly and Conspicuously identify to the User the method by
which the User can make a Payment by that specific method.

iv.   Whenever a Webpage allows a User to input bank account information in
order to add a bank account as a source for funding a PayPal User
Account, PayPal will provide on that Webpage a Clear and Conspicuous
disclosure to the User that the User's bank account, if added as a funding
source, may become the default funding source selection for Payments.
PayPal will also provide a Clear and Conspicuous Hyperlink to the
funding source information Webpage. The Hyperlink will be contained in
a Clear and Conspicuous statement which advises that the User should,
prior to committing to the addition of a bank account, review and
understand the rights and remedies available for different Payment sources
under the EFTA and FCBA.

v.   Whenever a Webpage allows a User to choose a source for funding a
Payment and the User has a usable bank account on file with PayPal,
PayPal will provide a Clear and Conspicuous Hyperlink on that page to
the funding source information Webpage.

g.   **Offers of Delivery and/or Condition Guarantees:**

i.   **Program Disclosures:** If PayPal offers Users a chance to buy any
product that guarantees a monetary reimbursement from PayPal if a User
fails to receive a service or product from a seller or if the product or
service fails to substantially conform with the qualities advertised by the
seller, PayPal will provide a Clear and Conspicuous disclosure explaining

any limitations on the types of items covered, explaining whether items are pre-screened for coverage, and explaining whether items for which a policy is purchased may ultimately not be covered by the program.

ii. **Counterfeit Goods Coverage:** If PayPal offers Users a chance to buy any product that guarantees a monetary reimbursement from PayPal, and if a User purchases coverage, PayPal will refund the User's purchase price if the items the User receives are counterfeit versions of the items the User intended to buy. As part of its refund procedures and requirements, PayPal will:

a) not require the User to transfer title of the item to PayPal, and

b) accept a written correspondence from the original manufacturer that the User has sent the counterfeit item to that manufacturer. But PayPal may require the User to turn over the item to PayPal and may request the User to turn over any title the User may have to the item to PayPal if the User does not send the counterfeit item to the manufacturer, or

c) accept an affidavit of mailing from the User with a certified mail return receipt showing that the manufacturer received the package from the User in the event the User has already sent the counterfeit item to the manufacturer entitled to possession of that item and the manufacturer will not or does not provide written correspondence confirming that it has received such.

iii. **Fee Refunds:** Under its existing Money Back Guarantee Policy, PayPal will refund to purchasers their purchase price if the Guarantee was purchased to cover an item that ultimately is not covered by the program. PayPal retains the right to stop offering the Money Back Guarantee Policy

by providing its Users with notice as required in PayPal's User
Agreement.

h.    **Prohibited Language:**

i.   Unless operating as a credit card issuer, PayPal will not advertise that its
Payments services give consumers the rights and privileges expected of a
credit card transaction. PayPal may, as long as such is a true and accurate
statement, inform Users who fund their Payment with a credit card that the
Users will be eligible for the same protections from their card issuer as if
the User's credit card payment were made directly to the merchant.

ii.  PayPal will not misrepresent the benefits or advantages provided by a
payment system or PayPal product. PayPal will not represent that a
payment method or an attribute of one payment method is superior to
another unless that representation is accurate.

iii. PayPal will not in its User Agreement or seller and buyer protection
programs use branding, descriptions or representations (including but not
limited to use of the terms "electronic funds transfer," "error resolution,"
"unauthorized transaction," "billing error," and "chargeback") in a way
that is likely to cause confusion by leading Users to believe that by using
the PayPal programs they are exercising rights pursuant to state or
federally mandated consumer protection laws or rules that do not apply to
such programs.

i.    **Disclosures Regarding the Ownership of Interest Earned on User Funds
Kept in Deposit in PayPal Accounts:**

Unless otherwise prohibited by state or federal rule or statute, PayPal may, as a result of a
contractual agreement with its Users which includes such terms, retain all interest earned

on Users' funds deposited in a "pooled funds" interest-bearing bank account. However and notwithstanding the foregoing statement:

i.   At the time it presents such contract terms to new Users, PayPal will Clearly and Conspicuously disclose in the User Agreement that it will retain the interest earned on the User's funds and that, by entering the agreement, the User will have waived any claim to such funds, and

ii.  For established Users not previously presented with such contract terms, PayPal will Clearly and Conspicuously advise those Users through its Policy Update process of the terms governing the disposition of interest earned on the User's funds while those funds remain undistributed.

j.  **Incorporation of Class Action Injunctive Relief.**

The injunctive provisions included in the settlement agreement entered in the matter In Re PayPal Litigation, CV-02-01227-JF/PVT (2004), in the United States District Court for the Northern District of California, are incorporated in this Assurance as if set forth herein and are enforceable by the States in their respective state courts. Such injunctive provisions are attached as Exhibit A.

k.     **Correction of "Incorrectly Executed Transactions"**

PayPal agrees that language in its User Agreement purportedly allowing PayPal to "correct transactions incorrectly executed" does not constitute express notice to the User that PayPal may choose to "correct" a transaction made between a User Account and a User's bank account by removing funds from the User's bank account. PayPal denies that it has used the language in its User Agreement purportedly allowing PayPal to "correct transactions incorrectly executed" as the basis for removing funds from any User's bank account.

## IV. MONETARY TERMS

13.    Upon signing this Assurance, PayPal will pay the States, through payment by certified check to the Florida Attorney General, the sum of One Million Seven Hundred Thousand and no One Hundredths Dollars ($1,700,000.00) to be divided and distributed among the Attorneys General in a manner which is in their sole discretion.  The check is to be made payable to "The Florida Department of Legal Affairs Revolving Escrow Trust Fund" and delivered to the Office of the Florida Attorney General at (address) within 10 days of the Effective Date of this Assurance.  Such sum may be used by the Attorneys General for any purpose allowed pursuant to applicable law, including, but not limited to, consumer education, consumer protection efforts, investigative costs, costs to administer the Assurance, attorney's fees, donations to charitable organizations, improvements to school systems or other educational purposes.

14.    PayPal states that as part of the settlement in the matter of In Re PayPal Litigation, CV-02-01227-JF/PVT (2004), in the United States District Court for the Northern District of California (terms of which are adopted herein in Paragraph 12 j), PayPal has paid $9,250,000 in damages and fees to consumers.

## V. GENERAL PROVISIONS

15.    Unless otherwise noted herein, PayPal will create written policies and adopt written procedures to comply with the terms of this Assurance within one hundred and twenty (120) days after the Effective Date of this Assurance.

16.    PayPal will make available two (2) written compliance reports, each signed by an officer with knowledge of PayPal's obligations under this Assurance, setting forth the steps PayPal has taken to comply with the terms and provisions of this Assurance.  The first report will be made available one hundred and twenty (120) days after the Effective Date of this Assurance.  The second report will be made available eighteen (18) months after the Effective Date.  The second report, in addition to other information necessary to explain in detail the policies and procedures PayPal has implemented to comply with this Assurance, will also contain a section that

21.    This Assurance constitutes the entire agreement of the parties hereto and supersedes all prior agreements or understandings, whether written or oral, between the parties and/or their respective counsel with respect to the issues dealt with in this Assurance.

22.    Notices, compliance reports, and other correspondence to PayPal or the Attorneys General as required by this Assurance will, unless notified otherwise, be provided to the parties at their addresses, facsimile numbers, email addresses, or phone numbers listed in the signature blocks below.

23.    PayPal will, within twenty (20) days of the Effective Date of this Assurance, appoint an individual to whom the Attorneys General may direct consumer inquiries or complaints received by the Attorneys General, and within such period of time give notice to the Attorneys General of the individual's name and address. This channel of communication will be considered fully established forty-five (45) days after the Effective Date of this Assurance. Following the full establishment of the channel, PayPal will respond to all consumer inquiries or complaints that come through this channel within fourteen (14) business days after receipt of the inquiry or complaint by the designated individual.

24.    Where allowed by applicable State law, the respective Attorneys General, without further notice, may make ex parte application to any appropriate State court for an order approving this Assurance, which will be considered an Assurance of Voluntary Compliance or an Assurance of Discontinuance as provided by the States' respective laws, or otherwise file this Assurance in any appropriate State court.

25.    The States agree that before seeking any relief from any court for any alleged violation of this Assurance, and if in the States' sole discretion the violation does not threaten the health, safety, or welfare of the citizens of the States, the States will give PayPal fourteen (14) days written notice of the alleged violation so that PayPal may address the alleged violation.

26.    This Assurance may be executed in counterparts. The parties must submit the requisite number of original signatures such that each party has an executed original.

Page 16 of 45

summarizes the nature and volume of written (including email) consumer complaints that PayPal's Executive Escalations team has received from Users who reside in the States and which cite as the basis for the complaints a problem related to User Agreement term disclosures, contact information disclosures, dispute resolution disclosures, account funding disclosures, or the Money Back Guarantee Program.

17.     PayPal will provide a copy of this Assurance and an accurate summary of the applicable specific terms to all those officers, managers, and other persons responsible at PayPal and eBay Inc. for the implementation of and compliance with those terms.

18.     This Assurance will be governed by the laws of the States.  Nothing in this Assurance will be deemed to permit or authorize any violation of the laws of any State or otherwise be construed to relieve PayPal of any duty to comply with the applicable laws, rules, and regulations of any State, nor will anything herein be deemed to constitute permission for PayPal to engage in any acts or practices prohibited by such laws, rules, or regulations.  Further, this Assurance does not in any way vitiate, negate, or otherwise modify any law of any State or federal authority requiring licensing, registration or permission to do business, including, but not limited to, licenses required to transmit money and/or sell insurance products.

19.     If a federal or State law, rule or regulation respecting the subject matter of any section herein is passed, adopted, officially communicated or rendered after the Effective Date ("New Law") of this Assurance, and such New Law makes it such that PayPal cannot comply with both the New Law and this Assurance, then compliance with the New Law in the jurisdiction in which the New Law is applicable will constitute compliance with the counterpart provision of this Assurance with respect to those jurisdictions.

20.     The parties agree that PayPal may approach the States to request amending the provisions of this Assurance in light of new or evolving technologies, business models, laws, regulations, or other changes in circumstances, and that the States will reasonably consider such requests.

We the undersigned, who have the authority to consent and sign on behalf of the parties in this matter, hereby consent to the form and content of the foregoing Assurance and to its entry:

**PAYPAL, INC.**
2211 North First Street
San Jose, California 95131

By: _____
Title:_____

**Signed this** ____ **day of** _____, 2006

D

Your PayPal Funds are Eligible for Withdrawal - Yahoo! Mail       file:///C:/Mehmet_vs_Paypal/FEDERAL_LAWSUIT/Motion/exhibi...

Case 5:08-cv-01961-RMW       Document 29-3       Filed 08/21/2008       Page 77 of 86

**Your PayPal Funds are Eligible for Withdrawal**                    Thursday, August 2, 2007 3:06 AM

**From:** "service@paypal.com" <service@paypal.com>
**To:** "Kheira Mehmet" <payments@MyStockroom.com>

Dear Kheira Mehmet,

Your PayPal funds are now eligible for withdrawal.

You may transfer the funds directly to your bank account via online bank transfer or you may request a check from PayPal. Please let us know how you would like to receive the funds by logging in to your account. As a reminder, access to your account will remain limited until you perform the steps required to lift the limitation.

While access to your account is limited, you may:
* place logos into your auction listings or on your website
* update your account information
* withdraw funds from your account

You may not:
* send or request money
* receive payments
* add funds to your account
* close your account

Thank you for using PayPal.

Sincerely,
The PayPal Team

Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance, log in to your PayPal account and click the Help link located in the top right corner of any PayPal page.

_____

PayPal Email ID PP524

Ex D

1

2

3

4                                                      E-FILED on   8/12/2008

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9               FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                              SAN JOSE DIVISION

11

12   B. DAVID MEHMET,                          No. C-08-01961 RMW

13                  Plaintiff,

14         v.                                   ORDER DENYING DEFENDANT'S
                                                MOTION TO DISMISS FOR LACK OF
                                                SUBJECT-MATTER JURISDICTION AND
15   PAYPAL, INC.,                              DENYING PLAINTIFF'S MOTION FOR
                                                PARTIAL SUMMARY JUDGMENT
16                  Defendant.
                                                **[Re Docket Nos. 10, 12]**
17

18

19        On April 14, 2008 plaintiff B. David Mehmet sued defendant Paypal, Inc. ("PayPal"),

20   asserting multiple causes of action arising from Mr. Mehmet's use of PayPal's online money transfer

21   service.  PayPal moves to dismiss Mr. Mehmet's complaint for lack of subject-matter jurisdiction

22   pursuant to Rule 12(b)(1).  Mr. Mehmet opposes the motion and moves for partial summary

23   judgment.  For the reasons set forth below, the court denies PayPal's motion to dismiss for lack of

24   subject-matter jurisdiction and denies Mr. Mehmet's motion for partial summary judgment as

25   premature.

26

27

28

United States District Court
For the Northern District of California

# I. BACKGROUND

## A.    Factual Background

PayPal operates an online money transfer service at its website, www.paypal.com.  Am. Compl. ¶ 5 ("AC").  On or about July 25, 2007, Mr. Mehmet used PayPal's service to transfer $750 to Eric Anderson to pay for a "film treatment." AC ¶¶ 6-7, 36.  PayPal's fraud detection software flagged this payment as possibly fraudulent, reversed the transfer, and suspended Mr. Mehmet's accounts with PayPal, effectively freezing $1,950 belonging to Mr. Mehmet.  AC ¶ 79.  On July 31, 2007, Mr. Mehmet contacted PayPal and was told that his account had been suspended because a previous PayPal account of his carried a negative balance and that this, combined with his recent transfers, caused PayPal's fraud detection software automatically to flag his account for possible fraudulent activity.  AC ¶ 81.  On August 6, 2007, PayPal sent an email to the recipient Eric Anderson in connection with this payment, stating that "the funds in question used for this transaction were possibly fraudulent.  We did an investigation and it was determined that the funds, indeed, were fraudulent.  As such, we had to return the funds to the party that had them taken from them without their authorization." AC ¶¶ 13-16.  PayPal subsequently released and returned the funds to Mr. Mehmet, conceding that the payment was not fraudulent or unauthorized, but rather a "false positive." AC ¶¶ 25-28.  However, PayPal did not pay Mr. Mehmet any interest earned on those funds while they were frozen.  AC ¶ 25.

Around this time, Mr. Mehmet was planning to develop a film, "The Ultimate Hit." AC ¶ 35. Mr. Mehmet had engaged a private investor to finance the film in the amount of $250,000, contingent on delivery of the film treatment.  AC ¶ 36.  As a result of PayPal's reversal of the money transfer and the suspension of his PayPal account, Mr. Mehmet was unable to pay for and acquire the film treatment from Eric Anderson.  AC ¶ 33.  Subsequently, the investor backed out.  AC ¶ 36. Mr. Mehmet also had plans to enter into an agreement with Carmike Cinemas, Inc. ("Carmike") to distribute the film in Carmike's theaters.  AC ¶ 37.  However, after Mr. Mehmet was unable to acquire the film treatment or secure financing for his film, Carmike declined to enter into such an agreement with the Mr. Mehmet.  AC ¶ 45.

Based on these allegations, Mr. Mehmet asserts the following eleven causes of action:

United States District Court
For the Northern District of California

(1)    fraudulent misrepresentation, based on representations in PayPal's user agreement that it would not wrongly interfere with Mr. Mehmet's online money transfers without good cause;

(2)    fraudulent concealment, based on PayPal's alleged concealment of the possibility and risk of "false positives";

(3)    fraudulent inducement, based on the same conduct;

(4)    negligent misrepresentation, based on the same conduct;

(5)    defamation, based on the email sent by PayPal to Eric Anderson allegedly accusing Mr. Mehmet of fraud;

(6)    defamation per se, based on the same conduct;

(7)    conversion, based on PayPal's alleged initial refusal to transfer Mr. Mehmet's funds to Eric Anderson or return them to Mr. Mehmet, and PayPal's conduct in refusing to pay Mr. Mehmet for interest accrued on the withheld funds;

(8)    tortious interference with business relationship, based on PayPal's refusal to transfer Mr. Mehmet's funds to Eric Anderson after Mr. Mehmet provided PayPal with a copy of the contract between Mr. Mehmet and Mr. Anderson;

(9)    intentional infliction of emotional distress, based on the alleged emotional distress Mr. Mehmet suffered as a result of PayPal's conduct;

(10)   unlawful, unfair and fraudulent business practices violating Cal. Bus. & Prof. Code § 17200, based on PayPal's overall conduct and in particular its alleged concealment of the existence of "false positives"; and

(11)   racketeering, in violation of 18 U.S.C. § 1961 ("RICO"), based on PayPal's alleged concealment of the existence of false "positives" and its use of electronic communications to do so, its erroneous characterization of Mr. Mehmet's transaction as fraudulent and its use of electronic communications to do so, and its failure to pay interest accrued on Mr. Mehmet's funds while those funds were withheld.

United States District Court
For the Northern District of California

**B.    Procedural Background**

On April 14, 2008 Mr. Mehmet filed his original complaint, and on May 19, PayPal filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  On May 27, Mr. Mehmet filed an opposition, an amended complaint, and a cross-motion for partial summary judgment on his claims for defamation (Fifth Cause of Action) and defamation per se (Sixth Cause of Action).

## II. ANALYSIS

PayPal challenges this court's subject-matter jurisdiction, arguing both that the complaint fails on its face to satisfy the amount-in-controversy requirement of 28 U.S.C. § 1332(a) and that Mr. Mehmet's RICO claim, which would provide an independent basis for federal jurisdiction, is "insubstantial and frivolous" because Mr. Mehmet does not allege any predicate racketeering activity. Mot. to Dismiss at 3.  Because the court finds that Mr. Mehmet's defamation claim satisfies the amount-in-controversy requirement of 28 U.S.C. § 1332(a), it is unnecessary at this time to consider whether his RICO claims provides an independent basis for this court's jurisidction.

**A.    Judicial Notice of PayPal's User Agreement**

As a preliminary matter, PayPal asks that this court take judicial notice of its user agreement. Req. for Judicial Notice at 1 ("RJN").  A court may take notice of a document outside the complaint if that document is referenced in, or relied on by, the complaint. *United States v. Richie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1110 (N.D. Cal. 2003) ("Where a plaintiff fails to attach to the complaint documents referred to in it, and upon which the complaint is premised, a defendant may attach to the motion to dismiss such documents in order to show that they do not support plaintiff's claim.").  The court notes that the complaint both references the PayPal user agreement and relies on it in support of its substantive allegations. *See* AC ¶¶ 58-61, 63.  Accordingly, it is appropriate that the court take judicial notice of this document.

**B.    Diversity Jurisdiction**

For this court to have diversity jurisdiction under 28 U.S.C. § 1332, Mr. Mehmet must demonstrate that "the matter in controversy exceeds the sum or value of $75,000, exclusive of

1  recovery of any lost profits or opportunities arising from Mr. Mehmet's use of PayPal's services.[2]  It

2  thus appears to a legal certainty that Mr. Mehmet can not recover from PayPal for these alleged lost

3  opportunities, and therefore cannot rely on these to satisfy the amount-in-controversy requirement of

4  28 U.S.C. § 1332.

5  **2.    Damages for Defamation**

6  Mr. Mehmet also seeks compensatory and punitive damages for shame, mortification and

7  hurt feelings under Cal. Civ. Code § 48a(4), alleging that the email PayPal sent to Eric Anderson

8  was defamatory and resulted in "embarrassment, humiliation, outrage and extreme distress" to him.

9  AC ¶¶ 156, 170 (Fifth and Sixth Causes of Action).  In its email to Eric Anderson, PayPal wrote:

10  We received notification that the funds in question used for this transaction were
   possibly fraudulent.  We did an investigation and it was determined that the funds,
11  indeed, were fraudulent.  As such, we had to return the funds to the party that had them
   taken from them without their authorization.

12  AC ¶¶ 13-16; Not. of Cross-Motion, Ex. C (Statement of Eric Anderson).  Mr. Mehmet alleges that

13  this email is defamatory and libelous because in it, PayPal accuses him of fraud.  AC ¶ 157; Opp'n at

14  20.  In California, compensatory damages for defamation at least as high as $2 million have been

15  upheld.  *See Weller v. Am. Broad. Cos., Inc.*, 232 Cal. App. 3d 991 (1991).  In *Weller*, an antique

16  silver dealer sued a television broadcasting company after it aired a report implying that he sold a

17  stolen silver candelabra to a local museum.  *Id.* at 998.  The jury awarded $1 million to the plaintiff

18  for mental suffering, $500,000 for proven injury to reputation and $500,000 for presumed damages

19  to reputation.  *Id.* At 998.  Importantly, this verdict was upheld on appeal as not excessive.  *Id.* at

20  1014.  Furthermore, if Mr. Mehmet proves that PayPal acted with malice, he would be eligible to

21  collect punitive damages.  Cal. Civ. Code § 3294 (plaintiff may recover exemplary damages "where

22  it is proven . . . that the defendant has been guilty of oppression, fraud, or malice"); *Di Giorgio Fruit*

23  *Corp. v. Am. Fed'n of Labor and Cong. of Indus. Orgs.*, 215 Cal. App. 2d 560, 580 (1963) (quoting §

24  3294).  In light of the fact that compensatory damage verdicts as high as $2 million have been

25

26

27  [2] It is worth noting that limited liability provisions like this have been upheld in a variety of
   contexts.  *See, e.g. Deiro v. Am. Airlines, Inc.*, 816 F.2d 1360 (9th Cir. 1987) (upholding provision
28  on passenger's ticket limiting airline's liability to $750).

ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT — No. C-08-01961 RMW
VN                                                                6

United States District Court
For the Northern District of California

1    interest and costs." 28 U.S.C. § 1332(a).  If made in good faith, the allegations in the complaint are

2    determinative.  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938).

3    However, if a party challenging jurisdiction can demonstrate "to a legal certainty that the claim is

4    really for less than the jurisdictional amount," the action must be dismissed.  *Pachinger v. MGM*

5    *Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986) (citing *St. Paul*) (holding dismissal

6    for lack of the required amount in controversy proper where hotel's liability for losing guest's

7    jewelry was capped at $750 by state law).  This "legal certainty" can be achieved either (1) when the

8    terms of a contract limit the plaintiff's possible recovery, (2) when plaintiff's damages are limited by

9    law (as was true in *Pachinger*), or (3) when independent facts show the amount of damages have

10   been selected merely to obtain federal diversity jurisdiction.  *Id.* at 364 (quoting 14A Wright, Miller

11   & Cooper, Federal Practice and Procedure: Jurisdiction § 3702 (2d ed. 1985)).

### 1.    Damages for Lost Profits

13        Mr. Mehmet seeks compensatory damages for the loss of multiple contracts and

14   opportunities related to the development of his film.  AC ¶¶ 129, 138, 145, 153, 162, 171, 178, 186

15   (First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Causes of Action).  He alleges that

16   PayPal's reversal of his money transfer and the allegedly defamatory email sent to Eric Anderson

17   resulted in the loss of these opportunities.  *Id.*  According to Mr. Mehmet, he is entitled to recover

18   the aggregate value of the lost contracts and opportunities (in essence, the expected net profit on his

19   film), which he claims is $330,500.  AC ¶ 55.  However, PayPal's user agreement[1] provides that:

20        IN NO EVENT SHALL WE, OUR PARENT, EMPLOYEES OR OUR SUPPLIERS BE
         LIABLE  FOR  LOST  PROFITS  OR  ANY  SPECIAL,  INCIDENTAL  OR
21       CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH
         OUT WEB SITE, OUR SERVICE, OR THIS AGREEMENT (HOWEVER ARISING,
22       INCLUDING NEGLIGENCE).

23   RJN, Ex. A at 19 (§ 14.7 of User Agreement) (formatting in original).  This language expressly

24   limits PayPal's liability for "special, incidental or consequential" damages, and appears to preclude

25

26

27

28   [1]  Mr. Mehmet concedes he accepted the terms of PayPal's user agreement.  AC ¶ 58.

United States District Court
For the Northern District of California

1    upheld in California and that Mr. Mehmet may further be eligible to recover punitive damages, it

2    does not appear to a legal certainty that his claims are for less than the required amount in

3    controversy.

4            **3.**      **Other Claims**

5        Because Mr. Mehmet's claim for defamation meets the amount-in-controversy requirement

6    of 28 U.S.C. § 1332, it is unnecessary to address whether Mr. Mehmet's other claims add to the

7    amount at stake in this litigation.

8       **D.**      **Motion for Partial Summary Judgment**

9        Contemporaneously with filing his amended complaint and his opposition to PayPal's motion

10    to dismiss, Mr. Mehmet moved for partial summary judgment on his defamation claims. PayPal

11    opposes the motion, arguing that summary judgment would be premature and urging that it should

12    be given the opportunity to conduct discovery to find, among other things, "evidence pertaining to

13    the alleged falsity of the e-mail in question." Opp'n to Mot. for Partial Summ. J. at 4.

14        It is true that Rule 56(a) permits a party asserting a claim to move for summary judgment at

15    any after the expiration of 20 days from commencement of the action. Fed. R. Civ. P. 56. "Where,

16    however, a summary judgment motion is filed so early in the litigation, before a party has had any

17    realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant

18    any Rule 56(f) motion [for a continuance] fairly freely." *Burlington N. Santa Fe R.R. Co. v.*

19    *Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003); *Wichita*

20    *Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915, 919 n. 4 (5th Cir. 1992) (Rule 56(f)

21    continuance of a motion for summary judgment for purposes of discovery should be granted as a

22    matter of course unless the non-moving party has not diligently pursued discovery of the evidence).

23    As an alternative to a continuance, courts have denied summary judgment without prejudice to its

24    being renewed. *See* 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil § 2717 (3d

25    ed. 1998) ("Deferring a motion is a particularly appropriate step for the court if it believes that the

26    summary judgment request is premature."). Because neither party has had the opportunity to

27    conduct discovery and because this does not appear to be the result of a lack of diligence, the motion

28    for partial summary judgment is denied as premature without prejudice to its renewal.

**III. ORDER**

For the foregoing reasons, the court denies PayPal's motion to dismiss for lack of subject-matter jurisdiction and denies Mr. Mehmet's motion for partial summary judgment.

DATED:    8/12/2008

*Ronald M Whyte*

RONALD M. WHYTE
United States District Judge

1  **Notice of this document has been electronically sent to:**

2  **Plaintiff Pro Se:**

3  B. David Mehmet                david@appellateterm.com

4

5  **Counsel for Defendants:**

   Michael Graham Rhodes          rhodesmg@cooley.com
6  Oleg Cross                     ocross@cooley.com

7

8  Counsel are responsible for distributing copies of this document to co-counsel that have not
   registered for e-filing under the court's CM/ECF program.
9

10

11                                              TSF
   **Dated:**    8/12/2008                 **Chambers of Judge Whyte**
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT — No. C-08-01961 RMW
VN                                                    9

*United States District Court*
*For the Northern District of California*